KATHRYN C. WANNER (Cal. Bar No. 269310)
Email: wannerk@sec.gov
ALEC JOHNSON (Cal. Bar No. 270960)
Email: johnsonstu@sec.gov
GARY Y. LEUNG (Cal. Bar No. 302928)
Email: leungg@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Michele Wein Layne, Regional Director
Alka N. Patel, Associate Regional Director
Amy J. Longo, Regional Trial Counsel
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>        Plaintiff,<br><br>    vs.<br><br>GINA CHAMPION-CAIN AND ANI DEVELOPMENT, LLC<br><br>        Defendants, and<br><br>AMERICAN NATIONAL INVESTMENTS, INC.,<br><br>        Relief Defendant. | Case No. '19CV1628 H    BLM<br><br>**COMPLAINT** |

Plaintiff Securities and Exchange Commission ("SEC") alleges:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1) and 22(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77t(b), 77t(d)(1) & 77v(a), and Sections 21(d)(1), 21(d)(3)(A), 21(e) and 27(a) of the

1

Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d)(1), 78u(d)(3)(A), 78u(e) & 78aa(a).

2. Defendants have, directly or indirectly, made use of the means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange in connection with the transactions, acts, practices and courses of business alleged in this complaint.

3. Venue is proper in this district pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Section 27(a) of the Exchange Act, 15 U.S.C. § 78aa(a), because certain of the transactions, acts, practices and courses of conduct constituting violations of the federal securities laws occurred within this district. In addition, venue is proper in this district because Defendant Gina Champion-Cain resides in this district, and because Defendant ANI Development, LLC ("ANI Development") and Relief Defendant American National Investments, Inc. ("American National Investments") have their principal places of business in this district.

## SUMMARY

4. Since 2012, Defendant Gina Champion-Cain ("Cain") and Defendant ANI Development, the entity she controls, have raised over $300 million, including over $100 million in the past year, from approximately 50 investors nationwide. When raising those investor funds, defendants claimed to be offering investors an opportunity to make short-term, high-interest loans to parties seeking to acquire California alcohol licenses. In truth, that investment opportunity was a sham.

5. Under California state law, liquor license applicants are required to escrow an amount equal to the license purchase price while their application remains pending with the State. Cain told investors that this regulatory requirement presented an investment opportunity. She directed investors to deposit their money into specified escrow accounts maintained by ANI Development, and represented to them that their funds were being loaned to liquor license applicants at a high interest rate. Cain represented that those applicants would in turn use those now-escrowed funds to

2

meet California's escrow requirement. Cain provided investors with a purported list of pending applications, from which investors selected the license application that they wished to fund. She also provided investors with escrow agreements, ostensibly executed between ANI Development and its escrow company, which provided that investors' principal would be kept safe in an escrow account, and that once the underlying liquor license had become final, would then be returned to the investors with interest. These representations were materially false and misleading, and ANI Development's stated business – financing the transfer of liquor licenses with money it was raising from investors for an investment profit – was wholly illusory.

6. First, the lists of pre-selected liquor license applicants contained largely cancelled or expired liquor licenses, and many of the license applicants whom ANI Development told investors they were funding had never heard of ANI Development, much less taken a short-term loan from ANI Development. Second, the escrow agreements that Cain and ANI Development provided to their investors were fabricated. The escrow agreements were not executed by the escrow company's representatives, had never been seen by its executives, and contained the forged signatures of its escrow officers. Third, the real escrow agreements governing the escrow accounts – which defendants concealed from their investors – gave ANI Development and Cain complete discretion and control over the deposited investor funds. With that control, defendants transferred significant amounts of investor funds to Relief Defendant American National Investments, the corporate parent of ANI Development. The consequences of this misappropriation have been severe: while ANI Development currently owes its investors over $120 million, just $11 million remains in ANI Development's escrow account.

7. By engaging in the conduct alleged herein, defendants violated the antifraud provisions of Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, and relief defendant has unjustly retained investor funds that it has no legitimate entitlement to.

8.  To halt defendants' unlawful conduct and preserve the status quo, the SEC seeks a preliminary injunction that, among other relief, appoints a permanent receiver over ANI Development, American National Investments, and all of their subsidiaries and affiliates.  The SEC also seeks permanent injunctions prohibiting defendants' future violations of the federal securities laws, and an order requiring defendants and relief defendant to disgorge their ill-gotten gains, along with pre-judgment interest, and imposing civil penalties on defendants.

## DEFENDANTS

9.  **Gina Champion-Cain**, age 57, is a resident of San Diego, California.  She is the founder and CEO of American National Investments, Inc., a real estate development company that has over 40 affiliated businesses, including ANI Development, LLC.

10.  **ANI Development, LLC**, is a California limited liability company located in San Diego.  The entity's managing member is Cain, and it is an affiliate of American National Investments, Inc.

## RELIEF DEFENDANT

11.  **American National Investments, Inc.** is a California corporation based in San Diego.  American National Investments is the parent company of approximately 40 other business, including several restaurants, rental properties, coffee shops and a surfing supply store.  Cain is the founder and CEO of American National Investments.

## FACTUAL ALLEGATIONS

A.  **ANI Development's Purported Liquor License Loan Funding Program**

12.  Beginning in 2012, Cain, a San Diego businessperson and real estate investor, began offering investors the opportunity to make high-interest, short-term loans to applicants seeking California liquor licenses.

13.  The state of California requires applicants to escrow the license purchase

price during the application transfer process, and Cain told investors that they would be loaning the required escrow funds to these liquor license applicants.

14. In exchange for her services, Cain and her company, ANI Development, told investors that defendants would secure an interest payment for each license approved by the state of California, which they would then split with investors.

15. Cain's first investor was a high net-worth real-estate investor with whom Cain had previously done business ("First Investor").

16. To ensure that his investment was secure, First Investor drafted a form escrow agreement to be executed by ANI Development and defendants' escrow company ("Escrow Company"). That form escrow agreement provided that: (i) his money could only be used to fund a specified underlying liquor license transfer(s); (ii) his money would be held in an escrow account for this purpose at Escrow Company; and (iii) at the conclusion of the license transfer, his money would then be transferred back to him with interest. According to the form agreement, First Investor's escrowed funds could be used for no other purpose, and transferred under no other circumstances.

17. Cain falsely represented to First Investor that she had worked with Escrow Company's lawyers to approve his form escrow agreement, and represented to him that his agreement would be the operative form escrow agreement governing his investments.

18. For each license funded going forward, Cain and ANI Development also claimed to other investors that their investments would be subject to the same form of escrow agreement.

19. However, Cain and ANI Development maintained complete control over the funding program, instructing investors never to contact the escrow company to inquire about their investments.

20. To illustrate, in a July 18, 2017 e-mail to two Escrow Company officers, Cain apologized for an investor who had contacted Escrow Company directly, stating

5

"I told them NEVER to call and bother you ladies." Cain's email concluded by saying:

> "[I]f they call asking about escrow agreements and alcohol licenses, blah, blah, blah… just say 'SURE WHATEVER NOW SHOW ME THE MONEY… HAHAHAHA'"

### B. Investors in ANI Development's Purported Liquor License Loan Funding Program

#### 1. First Investor Group

21. First Investor estimates that he has personally invested approximately $250 million in ANI Development's liquor license loan funding program, which includes rollovers of principal and interest due him from the alleged liquor license loans financed by his investment.

22. In 2015, First Investor began bringing other investors to the ANI Development liquor license funding loan program, who were likewise told by First Investor, based on defendants representations to him, that their money would be used to fund short-term, high-interest loans (between 15 to 25 percent) to individuals and entities seeking to obtain California liquor licenses.

23. In all, First Investor's additional investors invested approximately $50 million with ANI Development, either by wiring money directly to a pooled escrow account, or through an LLC First Investor had formed to funnel investor monies to the pooled escrow accounts, which would then be used to fund the liquor license transfers.

24. Cain and ANI Development regularly provided First Investor with lists of applicants for alcoholic beverage licenses in need of financing for a given escrow period. Cain told First Investor she had obtained those lists from a California attorney who practiced in that area of law.

25. First Investor then chose, from the list, the applicants that he and his investors wished to fund, and they wired their investments to escrow accounts

6

identified by Cain and ANI Development. That money was then supposed to be used to make the short-term loans to the alcohol license applicants, after which the escrow company would file the proper transfer forms with the state alcohol licensing board.

26. Cain provided First Investor with escrow agreements for every license that his group agreed to fund. These escrow agreements were purportedly countersigned by an escrow officer at Escrow Company, and the agreement represented that the investors' escrowed money was secure as it could only be transferred out of the escrow account once the associated liquor license had been acquired, and in that event, only transferred back to the investor. At the conclusion of the license transfer, investors were told they would then receive their principal and interest.

27. Based on these representations from defendants, First Investor believed that he and his investor group had funded over 2000 alleged licenses.

### 2. Second Investor Group

28. In addition to raising funds from First Investor and his investors, ANI Development and Cain raised another several million dollars from a group of at least ten investors affiliated with a second individual (the "Second Investor Group").

29. Investors in the Second Investor Group funded the same pooled escrow accounts as the First Investor's investors and understood they were investing in the same liquor license loan funding program, from which they were to receive interest payments of between 15 to 25 percent depending on the loan.

30. Unlike the First Investor Group, the Second Investor Group investors received promissory notes from both Cain and ANI Development. These notes identified the investors pooling their funds, listed the liquor licenses the investors were supposedly funding, and specified the interest to be paid to the investors for each license, with interest being paid no later than 364 days from the receipt of the investors' funds.

31. Under the terms of the notes, ANI Development and Cain personally

7

guaranteed the principal and interest due to the investors.

### C. Defendants' Fraudulent Scheme

#### 1. Defendants used the forged signatures of Escrow Company's escrow officers in fabricated escrow agreements

32. ANI Development and Cain fabricated the escrow agreements that they provided to their investors.

33. Among other things, defendants used forged escrow officer countersignatures on each bogus escrow agreement.

34. The type of escrow accounts that defendants actually maintained at Escrow Company cannot be used for liquor license transfer transactions (which require a special kind of escrow), and the escrow agents at Escrow Company who interacted with Cain do not act as escrow agents in that area. Defendants never opened escrow accounts at Escrow Company that were appropriate for their claim that investor funds would be used to finance the transfer of liquor licenses.

35. Defendants provided their investors with forged and fabricated escrow agreements in order to lead them to believe that their investment was secure, and that ANI Development was using their funds – as represented to them – to finance the transfer of a liquor license. By falsifying documents that established a veneer of legitimacy, defendants sought to conceal their fraud.

#### 2. Defendants misappropriated investor funds

36. In contrast to the bogus escrow agreements provided by defendants to their investors, the actual agreements governing the escrow accounts maintained by ANI Development at Escrow Company gave Cain unfettered access to and control over the funds deposited by investors in those accounts.

37. With that authority, Cain routinely misappropriated investor funds by directing their transfer from the ANI Development escrow accounts to other bank accounts controlled by her, including those held in the name of Relief Defendant American National Investment.

8

38. For example, in 2017, ANI Development investors deposited an approximate total of $87.7 million into a pooled ANI Development escrow account.

39. Defendants, however, did not escrow a single dollar of that $87.7 million in order to facilitate, as represented to investors, the transfer of any of the alcohol licenses identified by the bogus escrow agreements that corresponded to the $87.7 million in investments.

40. Rather, Cain – who controlled ANI Development and American National Investment's financial accounts – diverted investor funds from the ANI Development escrow account to: (i) transfer $22 million to American National Investments; and (ii) pay existing investors the principal and interest that ANI Development owed to them.

41. Cain's transfers to American National Investments, which played no role in ANI Development's claimed liquor license lending program, were misappropriations of investors' funds.

### 3. Defendants engaged in lulling when forwarding fake electronic mail correspondence to First Investor

42. Cain recently forwarded to First Investor email correspondence, dated July 16, 2019, purportedly authored by an escrow officer at Escrow Company.

43. In that email, the escrow officer reported that as of June 5, First Investor and his investors currently had $140 million in funds deposited with 554 open escrows at Escrow Company.

44. Thereafter, First Investor and his group invested another $2.2 million with ANI Development.

45. The July 16, 2019 email that Cain sent First Investor, however, was not authored or sent by the escrow company, or any of its representatives. Among other things, the bogus email was sent from an email domain that is not owned by or connected to Escrow Company.

46. Significantly, as of late August 2019, the ANI Development escrow

9

account referenced in the falsified July 16, 2019 email that Cain forwarded to First Investor, actually contained little more than $11 million, far less than the $140 million represented in the fraudulent email.

47. Through these lulling efforts – a doctored email intended to allay any concerns about the safety of investors' transferred funds – Cain and ANI Development sought to conceal their fraud.

### D. Defendants' Materially Misleading Statements and Omissions

48. The escrow agreements ANI and Cain provided investors were phony and contained false and misleading statements about how investors' funds would be used.

49. Cain falsely told investors that their money would be used to fund the transfer of liquor licenses, and represented that their proceeds would be kept safe in the escrow account until they were transferred back to the investor.

50. For example, a representative escrow agreement stated that ANI Development and Escrow Company "understand that this is a limited escrow only and is being opened for the benefit of" a specified liquor license applicant, "who is applying for approval of a transfer to Applicant of a license issued by the California Department of Alcoholic Beverage Control." The escrow agreement then identified the license to be transferred by license number.

51. With respect to the escrowed funds, ANI Development's form escrow agreement stated that they would be placed "into an interest-bearing account," and would only be released upon written instructions by ANI Development, and in that event, could only be transferred to a financial account maintained by ANI Development's investors.

52. Defendants made related representations in a funding agreement executed between Cain and First Investor.

53. In that funding agreement, defendants represented to First Investor, among other things, that:

- Cain had entered into an agreement with a law firm which anticipated that Cain would provide funding for the firm's liquor license applicants
- Investor funds would be placed in escrow at Escrow Company for the benefit of the firm's liquor license applicants
- Pursuant to her agreement with the law firm, Cain would be paid a fee for escrowing funds in connection with firm clients' liquor license applications

Based on the foregoing recitals, First Investor agreed to participate in ANI Development's liquor license funding program by providing Cain and ANI Development with the funds they needed to perform on their putative agreement with the law firm.

54. But in reality, ANI Development and Cain had unfettered access to escrow funds, and, at least in part, used that access to fund American National Investment's unrelated business operations.

55. For example, in 2017, investors cumulatively deposited approximately $87.7 million into a pooled escrow account, yet no money was ever escrowed to actually facilitate, as represented to investors, the transfer of the alcohol licenses identified in the false investor escrow agreements.

56. At no point did Escrow Company ever notify California liquor licensing authorities that these funds had been placed in escrow for the transfer of a liquor license, as required under state regulations.

57. Instead, Cain, who controlled ANI Development's and American National Investment's bank accounts, primarily used these investor funds to pay back investors the principal and interest they were owed, as well as to transfer approximately $22 million to Relief Defendant American National Investments.

58. A reasonable investor would have wanted to know that ANI Development's investment strategy was wholly fictitious; that the real escrow agreements allowed Cain to withdraw investor funds at any time; that ANI does not appear to have made a single loan to alcohol-license applicants; that the escrow

company accounts were not suitable for the transfer of alcohol licenses; and that the escrow officers involved did not handle these types of transactions.

59. Cain acted knowingly, recklessly, and negligently in making material misstatements and omissions concerning ANI Development's investment strategy and use of funds, and she failed to exercise reasonable care to ensure that investors were not deceived as to this information. Because she is ANI Development's controlling principal, Cain's scienter and negligence are imputed to ANI Development.

### E. The Investments Offered and Sold by ANI Development and Cain are Securities

60. As directed by defendants, investors' funds were pooled in a common escrow account, which defendants claimed was being used to fund the transfer of California state liquor licenses.

61. Whether investors would profit from their investment was dependent on the success of defendants' represented liquor license funding program.

62. Cain and ANI Development's efforts in identifying liquor license escrow participants who were appropriate for investment, executing the loans to those entities, and collecting the purported interest payments from those participants, were critical to the enterprise's success, as investors were not allowed to play an active role in managing ANI Development's investment decisions under the claimed liquor license funding program.

63. Moreover, the promissory notes that defendants distributed to the Second Investor Group were issued to raise money for ANI Development's supposed funding program, and in exchange, those notes provided noteholders with interest returns of 15 to 25 percent. Investors in the Second Investor Group intended to profit from the high interest rates promised, and ANI Development allegedly used the monies raised to fund its operations.

64. Defendants distributed these promissory notes to at least ten investors; the notes were unsecured and uninsured.

65. A reasonable investor would believe that the promissory notes were investments based on the high interest rates promised to be paid to ANI Development from the licensees it identified.

# FIRST CLAIM FOR RELIEF

**Fraud in the Connection with the Purchase and Sale of Securities**

**Violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder**

**(against Defendants Cain and ANI Development)**

66. The SEC realleges and incorporates by reference paragraphs 1 through 65 above.

67. Defendants Cain and ANI Development each made false and misleading statements and omissions and engaged in deceptive conduct towards the investors in ANI Development's liquor license loan funding program. Both through the phony escrow agreements and in information provided to the First Investor which he provided to subsequent investors, Cain and ANI Development provided false and misleading information that investor money would be used to fund the transfer of liquor licenses, and represented that investor proceeds would be kept safe in the escrow account until they were transferred back to the investor. In reality, ANI and Cain had unfettered access to escrow funds and used that access to fund American National Investment's unrelated business operations such that the entire ANI Development investment strategy was fictitious.

68. The misrepresentations and omissions made by Cain and ANI Development were material because investors in the liquor license loan funding program would have wanted to know: that ANI Development's investment strategy was wholly fictitious; that the real escrow agreements allowed Cain to withdraw investor funds at any time; that ANI Development does not appear to have made a single loan to alcohol-license applicants; that the escrow company accounts were not suitable for the transfer of alcohol licenses; that the escrow officers involved did not handle these types of transactions; and that the real escrow agreements allowed Cain

to withdraw investor funds at any time.

69. Defendant Cain knew, or was reckless in not knowing, that the following representations she made to investors were false: ANI Development would make loans to alcohol license applicants; an escrow account would be opened to facilitate those loans; and investor money would be held securely in an escrow account and would only be released when the license transferred and the funds were repaid with interest. Cain controlled the flow of money out of the escrow accounts, and knowingly transferred a portion of them to American National Investments, for purposes unrelated to the original investments. Cain's scienter can be imputed to ANI Development.

70. Cain, ANI Development's managing member, knowingly engaged in a multi-year scheme to defraud investors. Cain committed acts in furtherance of the scheme by using the forged signatures of escrow officers to make investors believe that the agreements they received were legitimate and by directing that funds be transferred from escrow accounts set up for ANI Development to American National Investment bank accounts controlled by her. These transfers to American National Investments, which played no role in the alleged lending program, violated the terms of the phony escrow agreements that Cain provided investors. Moreover, when First Investor sought assurances from Cain about the loans, she used a false email address with a phony domain name to deceive him as to the status of his investments.

71. By engaging in the conduct described above, Defendants Cain and ANI Development with scienter, and each of them, directly or indirectly, in connection with the purchase or sale of a security, by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange: (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices, or courses of business which

operated or would operate as a fraud or deceit upon other persons.

72. By engaging in the conduct described above, Defendants Cain and ANI Development violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

## SECOND CLAIM FOR RELIEF

### Fraud in the Offer or Sale of Securities

### Violations of Section 17(a) of the Securities Act

### (against Defendants Cain and ANI Development)

73. The SEC realleges and incorporates by reference paragraphs 1 through 65 above.

74. Defendants Cain and ANI Development each engaged in deceptive conduct and obtained money by means of false and misleading statements and omissions in connection with ANI Development's liquor license loan funding program. Both through the phony escrow agreements and in information provided to the First Investor which he provided to subsequent investors, Cain and ANI Development provided false and misleading information that investor money would be used to fund the transfer of liquor licenses, and represented that investor proceeds would be kept safe in the escrow account until they were transferred back to the investor. In reality, ANI and Cain had unfettered access to escrow funds and used that access to fund American National Investment's unrelated business operations, such that the entire ANI Development investment strategy was fictitious.

75. The misrepresentations and omissions made by Cain and ANI Development were material because investors in the liquor license loan funding program would have wanted to know: that ANI Development's investment strategy was wholly fictitious; that the real escrow agreements allowed Cain to withdraw investor funds at any time; that ANI Development does not appear to have made a single loan to alcohol-license applicants; that the escrow company accounts were not

suitable for the transfer of alcohol licenses; that the escrow officers involved did not handle these types of transactions; and that the real escrow agreements allowed Cain to withdraw investor funds at any time.

76. Cain and ANI Development's statements regarding the use of investors' funds and the high interest rates promised, enticed investors to invest in the liquor license loan funding program, and ANI Development used the monies raised to fund its operations, thereby obtaining money by means of the misrepresentations.

77. Defendant Cain knew, or at a minimum was negligent in not knowing, that the following representations she made to investors were false: ANI Development would make loans to alcohol license applicants; an escrow account would be opened to facilitate those loans; and investor money would be held securely in an escrow account and would only be released when the license transferred and the funds were repaid with interest. Cain controlled the flow of money out of the escrow accounts, and knowingly transferred a portion of them to American National Investments, for purposes unrelated to the original investments. Cain's negligence and scienter can be imputed to ANI Development.

78. Cain, ANI Development's managing member, knowingly and/or unreasonably engaged in a multi-year scheme to defraud investors. Cain committed acts in furtherance of the scheme by using the forged signatures of escrow officers to make investors believe that the agreements they received were legitimate and by directing that funds be transferred from escrow accounts set up for ANI Development to American National Investment bank accounts controlled by her. These transfers to American National Investments, which played no role in the alleged lending program, violated the terms of the phony escrow agreements that Cain provided investors. Moreover, when the First Investor sought assurances from Cain about the loans, she used a false email address with a phony domain name to deceive him as to the status of his investments.

79. By engaging in the conduct described above, Defendants Cain and ANI

Development, and each of them, directly or indirectly, in the offer or sale of securities, and by the use of means or instruments of transportation or communication in interstate commerce or by use of the mails directly or indirectly: (a) employed devices, schemes, or artifices to defraud; (b) obtained money or property by means of untrue statements of a material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

80. Defendants Cain and ANI Development, with scienter, employed devices, schemes and artifices to defraud; with scienter or negligence, obtained money or property by means of untrue statements of a material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and, with scienter or negligence, engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

81. By engaging in the conduct described above, Defendants Cain and ANI Development violated, and unless restrained and enjoined will continue to violate, Section 17(a) of the Securities Act, 15 U.S.C. §§ 77q(a).

### THIRD CLAIM FOR RELIEF

**Unjust Enrichment**

**(against Relief Defendant American National Investments)**

82. The SEC realleges and incorporates by reference paragraphs 1 through 65 above.

83. Relief Defendant American National Investments received and retained at least $22 million in investor funds, funds over which it has no legitimate claim.

84. Relief Defendant American National Investments obtained these ill-gotten gains described above as part of the securities law violations alleged above, under circumstances in which it is not just, equitable, or conscionable for it to retain

the funds.

85. By engaging in the foregoing conduct, American National Investments has been unjustly enriched and must disgorge its ill-gotten gains.

## **PRAYER FOR RELIEF**

WHEREFORE, the SEC respectfully requests that the Court:

### I.

Issue findings of fact and conclusions of law that Defendants committed the alleged violations.

### II.

Issue judgments, in forms consistent with Rule 65(d) of the Federal Rules of Civil Procedure, preliminarily and permanently enjoining Cain and ANI Development, and their officers, agents, servants, employees and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the judgment by personal service or otherwise, and each of them, from violating Section 17(a) of the Securities Act [15 U.S.C. §77q(a)], and Section 10(b) of the Exchange Act [15 U.S.C. §§ 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

### III.

Issue, in a form consistent with Fed. R. Civ. P. 65, an order freezing the assets of defendants and relief defendants; ordering an accounting by defendants and relief defendants; prohibiting defendants and relief defendants from destroying relevant documents; and appointing a permanent receiver over ANI Development, American National Investments, and all of their subsidiaries and affiliates.

### IV.

Order Defendants Cain and ANI Development and Relief Defendant American National Investments to disgorge all funds received from their illegal conduct, together with prejudgment interest thereon.

### V.

Order Defendants to pay civil penalties under Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

### VI.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

### VII.

Grant such other and further relief as this Court may determine to be just and necessary.

Dated: August 28, 2019

*/s/ Kathryn C. Wanner*
KATHRYN C. WANNER
Attorney for Plaintiff
Securities and Exchange Commission