UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                              Plaintiff,<br><br>v.<br><br>GINA CHAMPION-CAIN AND ANI DEVELOPMENT, LLC,<br><br>                              Defendants, and<br><br>AMERICAN NATIONAL INVESTMENT, INC.,<br><br>                              Relief Defendant. | Case No.:  3:19-cv-1628-LAB-AHG<br><br>**REPORT AND RECOMMENDATION RECOMMENDING THE COURT GRANT RECEIVER'S EX PARTE APPLICATION AND FIND CHICAGO TITLE COMPANY IN CIVIL CONTEMPT**<br><br>[ECF NO. 15] |

## I.  BACKGROUND

On August 28, 2019, the Securities and Exchange Commission ("SEC") brought this action against Defendants ANI Development, LLC ("ANI Development") and Gina Champion-Cain and Relief Defendant American National Investments, Inc. ("ANI Inc."). ECF No. 1. According to the Complaint, Defendants violated federal securities laws by engaging in a fraudulent investment scheme that involved inducing investors to place funds into escrow accounts for the purported purpose of supplying short-term, high-interest loans

to borrowers seeking to obtain liquor licenses from the State of California. *Id.* ¶¶ 4-6. The SEC alleges that as part of the scheme, Defendant Champion-Cain provided to investors bogus escrow agreements between ANI Development and its escrow company, which falsely indicated that the loaned funds could not be taken out of the ANI Development escrow account without prior written consent of the lenders. In reality, the SEC contends, the true escrow agreements governing the accounts permitted Defendants to withdraw and use funds at their sole discretion, which they allegedly did, transferring significant amounts of the funds to Relief Defendant ANI Inc. According to the Complaint, although Defendant ANI Development currently owes investors over $120 million, only $11 million remains in its escrow account. *Id.* ¶ 7.

The Court entered a Preliminary Injunction and Appointment Order ("Appointment Order") on September 3, 2019. ECF No. 6. Among other things, the Court in Section V of the Appointment Order placed an immediate freeze on all monies and assets in all accounts at any bank, financial institution, or brokerage firm, held in the name of, for the benefit of, or over which account authority is held by Defendants, Relief Defendant, and/or all of their subsidiaries and affiliates. *Id.* at 7. The Court specifically listed ANI Development's escrow account, Account No. XXXX2122, at Chicago Title Insurance Company in that portion of the Appointment Order. *Id.* at 9. Additionally, in Section X of the Appointment Order, the Court appointed Krista L. Freitag ("the Receiver") as permanent receiver of ANI Development and ANI Inc. as well as their subsidiaries and affiliates, which entailed granting her:

> . . . full powers of an equity receiver, including, but not limited to, full power over all funds, assets, collateral, premises (whether owned, leased, occupied, or otherwise controlled), . . . and other property belonging to, being managed by or in the possession of or control of Defendant ANI Development and Relief Defendant [ANI Inc.] and their subsidiaries and affiliates, and [] such receiver is immediately authorized, empowered and directed . . . to have access to and to collect and take custody, control, possession, and charge of all funds, assets, collateral premises (whether owned, leased, pledged as collateral, occupied, or otherwise controlled), . . . wherever located, of or managed by Defendant ANI Development and Relief Defendant [ANI Inc.]

and their subsidiaries and affiliates (collectively, the "Assets"), with full power to sue, foreclose, marshal, collect, receive, and take into possession all such Assets[.]

*Id.* at 14. Significantly, Section X also expressly ordered that the Receiver "have control of, and [] be added as the sole authorized signatory for, all accounts of the entities of receivership, including all accounts at any . . . escrow agent . . . which has possession, custody or control of any Assets, or which maintains accounts over which Defendant ANI Development and Relief Defendant [ANI Inc.] . . . have signatory authority[.]" *Id.* at 15.

On September 13, 2019, the Receiver filed the Ex Parte Application ("the Application") that is presently before the Court, and which was referred to the undersigned for a hearing and Report and Recommendation. ECF Nos. 15; 26. The Receiver asks the Court to issue an Order to Show Cause why non-party Chicago Title Company ("Chicago Title") should not be held in civil contempt due to its refusal to turn over to the Receiver the $11 million remaining in ANI Development's escrow account, in violation of the Appointment Order. The Court set an expedited briefing schedule and, once briefing was complete, held a hearing on the Application on September 25, 2019. Having considered the arguments presented at the hearing as well as those contained in the parties' and non-parties' briefing on the Application, the undersigned recommends that the Court **GRANT** the Application and find Chicago Title in civil contempt, for the reasons explained more fully below.

## II. LEGAL STANDARD

Courts "have inherent power to enforce compliance with their lawful orders through civil contempt." *Spallone v. United States*, 493 U.S. 265, 276 (1990). While the purpose of criminal contempt sanctions is to punish the contemnor, civil contempt sanctions are instead "penalties designed to compel future compliance with a court order," and "are considered to be coercive and avoidable through obedience." *Int'l Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 827 (1995).

3

The party moving for a civil contempt order bears the burden of showing by clear and convincing evidence that the alleged contemnor violated the Court's order. *United States v. Ayres*, 166 F.3d 991, 994 (9th Cir. 1999) (quoting *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993)). A party may be held in civil contempt for disobeying "a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *Dual-Deck*, 10 F.3d at 695. Even if a party's disobedience is in good faith, the Court may find the party in contempt because contempt "need not be willful, and there is no good faith exception to the requirement of obedience to a court order." *Id.* (internal quotations and citation omitted). Nonetheless, "a person should not be held in contempt if his action appears to be based on a good faith and reasonable interpretation of the court's order." *Id.* (internal quotations, alteration, and citation omitted).

### III. DISCUSSION

In its Response to the Receiver's Application (ECF No. 34), Chicago Title argues it is not in contempt of the Appointment Order because there is a good-faith dispute over the ownership of the funds in ANI Development's escrow account. Additionally, Chicago Title makes two affirmative requests for relief: (1) that the Court direct Chicago Title to place the funds in trust with the Court until ownership disputes over the funds are resolved; and (2) that the Court extend to Chicago Title the protection of the "prosecution bar" in Section XIII of the Appointment Order, which prohibits any person seeking legal or equitable relief from ANI Development, ANI Inc., or their subsidiaries and affiliates from filing suit against them, using self-help, or otherwise interfering with the Receiver's discharge of her duties as outlined in the order.[1]

---

[1] Although Chicago Title requests both of these forms of relief in its response brief, the Court notes that prior to the Receiver filing the instant Application, Chicago Title sought the prosecution bar as a condition of turning over the funds directly to the Receiver. In other words, Chicago Title previously requested the prosecution bar in the alternative.

4

Before turning to Chicago Title's affirmative requests to modify and/or vacate the Appointment Order, I will first address the question of whether the Receiver has established by clear and convincing evidence that Chicago Title's refusal to turn over the funds in the escrow account constitutes civil contempt.

A. <u>Whether Chicago Title Company is in Contempt</u>

As discussed during the hearing, the Appointment Order is clear that the funds in the Chicago Title escrow account are subject to its scope. Specifically, by refusing to give access and control of the escrow funds in Account No. XXXX2122 to the Receiver, Chicago Title is in violation of Sections V, X, and XI of the Appointment Order. Although Chicago Title argues that "[b]oth sides interpret the [Appointment] order as requiring *only* the turnover of property owned by the entities in receivership[,]" ECF No. 34 at 4, such an interpretation by either side is unreasonable. In Section X(C) of the Appointment Order, the Court explicitly ordered that the receiver was "immediately authorized, empowered and directed . . . to have control of, and to be added as the sole authorized signatory for, *all accounts of the entities in receivership*, including all accounts at any bank, title company, [or] *escrow agent* . . . which has possession, custody or control of any Assets, *or which maintains accounts over which Defendant ANI Development . . . ha[s] signatory authority*[.]" ECF No. 6 at 15 (emphasis added). Indeed, Section V of the Appointment Order expressly lists the account at issue, and Chicago Title complied with that section by freezing the funds. *See* ECF No. 34 at 5 n.11. Section V further requires "[a]ny bank, financial institution or brokerage firm . . . holding such monies and assets described above [including Account No. XXXX2122 at Chicago Title] . . . shall take direction from the receiver and shall cooperate with the receiver to allow for, notwithstanding the asset freeze provided for herein, the immediate release of funds necessary to make payroll, pay operating expenses, and/or meet any other payment obligations, as deemed necessary by the permanent receiver." *Id.* at 10.

Chicago Title does not dispute that Account No. XXXX2122 is held in the name of ANI Development and that ANI Development has signatory authority over it. Rather,

5

Chicago Title argues that because the funds were potentially procured by fraud, they "never became ANI property." ECF No. 34 at 2. However, such an argument does not change the plain language of the Appointment Order just quoted. Whether or not ANI Development rightfully owns the funds in the account held in its name, the Receiver is expressly authorized by the Appointment Order to have control of Account No. XXXX2122 because ANI Development has signatory authority over that account and it is held in its name. Moreover, Section XI orders "any . . . persons who are in custody, possession or control of any assets, collateral, . . . or other property *or managed by* any of the entities in the receivership, shall forthwith give access to and control of such property to the permanent receiver." *Id.* at 16. Therefore, the Receiver has proven by clear and convincing evidence that Chicago Title is in violation of the Appointment Order by failing to give her control of the funds in the account.

The Fifth Circuit case on which Chicago Title relies does not change the analysis. *See SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 841 (5th Cir. 2019) ("[T]he court may not exercise unbridled authority over assets belonging to third parties to which the receivership estate has no claim."). Chicago Title quotes that portion of the opinion for the proposition that "the Receiver only acquires the rights and properties lawfully held in the Receivership entities." ECF No. 34 at 4. However, the fact that the Court cannot exercise authority over assets "to which the receivership estate has *no claim*" does not mean the Court or the Receiver it appoints lack authority to exercise control over funds held in the name of a receivership entity, even if those funds were procured by fraud. *Stanford Int'l* dealt with a district court that approved a settlement encompassing the claims of third parties, which improperly exceeded the court's *in rem* jurisdiction by reaching beyond the *res* to "every *claim* relating to that property." 927 F.3d at 821. Here, in contrast, the Court's Appointment Order extends only to *res* that is currently within the ownership, control, possession, or management of Defendants, including bank accounts held in Defendants' or the Relief Defendant's name. *Stanford Int'l* is thus inapposite. The funds at issue here are part of the *res*. That is, the $11 million currently in the escrow account

held in the name of ANI Development comprises the remaining funds Defendants obtained from investors as part of the alleged fraudulent scheme at the root of this enforcement action. Indeed, every party and non-party who opposes the Receiver's control over the funds ties its opposition to the underlying fact that the funds were procured from investors as part of the (purportedly fraudulent) liquor license investment scheme.

Moreover, even if the Court's Appointment Order had exceeded its jurisdiction by granting the Receiver authority over assets to which the receivership entities had no claim, that is no defense to defying a court order. Defenses to civil contempt include substantial compliance and impossibility of compliance with a court order, neither of which Chicago Title asserts here. *See In re Dual Deck*, 10 F.3d at 695; *Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1379 (9th Cir. 1986) (citation omitted); *FTC v. Affordable Media*, 179 F.3d 1228, 1240 (9th Cir. 1999) (citation omitted). The proper vehicle to challenge such an overreach would be a motion for affirmative relief such as modification or vacatur of the order, not outright defiance of it.

Chicago Title's position that property procured by fraud cannot be subject to control by an appointed Receiver is tenuous given that an SEC civil enforcement action against defendants accused of having obtained their assets by fraud is the quintessential case in which federal courts create equity receiverships:

> The appointment of a receiver is a well-established equitable remedy available to the SEC in its civil enforcement proceedings for injunctive relief. . . . The district court's exercise of its equity power in this respect is *particularly necessary in instances in which the corporate defendant, through its management, has defrauded members of the investing public*; in such cases, it is likely that, in the absence of the appointment of a receiver to maintain the status quo, the corporate assets will be subject to diversion and waste to the detriment of those who were induced to invest in the corporate scheme and for whose benefit, in some measure, the SEC injunctive action was brought.

*SEC v. First Fin. Grp. of Tex.*, 645 F.2d 429, 438 (5th Cir. 1981) (emphasis added).

During the hearing, counsel for Chicago Title as well as counsel for the interested non-parties including the defrauded investors and lender-victims objected that the

7

Appointment Order effectively determined ownership without giving all claimants to the funds notice or an opportunity to be heard. They did not, however, cite any authority—and the Court can find none—that establishing an equity receivership to have control over the *res* within the possession and control of the receivership entities amounts to a judicial finding that the *res* is rightfully owned by the receivership entities. Rather, the Receiver's role in securities litigation like the case before the Court is to determine the fair disposition of the remaining funds among an accused fraudster's creditors and defrauded victims, a tall order given the fact their competing claims stem from separate, inconsistent contracts, some of which are purportedly fraudulent. *See SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986) ("The basis for broad deference to the district court's supervisory role in equity receiverships arises out of the fact that most receiverships involve multiple parties and complex transactions.").

The Court has reviewed and considered the filings submitted by interested non-parties, including creditors CalPrivate Bank (ECF No. 31) and Ovation Finance Holdings 2 LLC (ECF No. 50), and numerous defrauded lenders and investors (ECF Nos. 40; 41), and the Court understands and appreciates their position. However, these filings do not directly address the question before the Court—that is, whether Chicago Title Company is in contempt of the Court's Appointment Order. Rather, they weigh in on the propriety of Chicago Title's requests raised in its Response to the Application (more on that issue below), the Receiver's intended use of the funds at issue, and the priority they should receive in the disbursement of the funds.[2] These are issues best left to the Receiver, under

---

[2] Additionally, CalPrivate Bank makes its own affirmative request that the Court order the escrow account at issue remain subject to its security interest and that the funds cannot be used without its prior written consent. ECF No. 31 at 3-4. Not only is this request not properly raised by way of an unsolicited response to the Receiver's Application, but also CalPrivate Bank and other persons who challenge the Receiver's authority without first requesting leave of Court to do so are cautioned that they may be acting in violation of Sections XIII(B) and XIII(C).

the supervision of the Court, as the "primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." *Hardy*, 803 F.2d at 1038.

In any event, the question of whether ANI Development legally owns the funds in Acct. No. XXXX2122 is beside the point. It is not up to Chicago Title to determine that since the ownership of the funds is in dispute, it may disregard the Court's Appointment Order, which unmistakably extends to the funds in the account. Nor does a finding of contempt imply that Chicago Title acted in bad faith or with malicious motive. "Willfulness is not an element of civil contempt." *United States v. Asay*, 614 F.2d 655, 661 (9th Cir. 1980). Therefore, whether or not Chicago Title's refusal to turn over the funds was done in good faith or with a reasonable belief that ANI Development did not rightfully own them, it has failed to present any cogent argument that its position is based on a "good faith and reasonable interpretation of *the court's order*[,]" as necessary to defend against a finding of contempt. *Dual-Deck*, 10 F.3d at 695. In short, Chicago Title's reading of the Appointment Order not to encompass Account No. XXXX2122 strains credulity. Consequently, I recommend the Court find that Chicago Title is required to turn over the funds at issue to the Receiver under any possible good-faith or reasonable interpretation of the Appointment Order, and to issue civil contempt sanctions if Chicago Title does not do so immediately.

B. <u>Whether the Court should Place the Funds in Trust or Extend the Prosecution Bar to Chicago Title</u>

Chicago Title makes two related requests in addition to arguing that it should not be held in contempt of the existing Appointment Order. First, it asks that the funds be deposited with the Court and held in trust until the Court determines the "true ownership" of the assets, in the nature of an interpleader action. ECF No. 34 at 6. However, as explained above, an equity receivership serves the same purpose and the receiver is better-equipped than the Court to sort out the competing claims to a limited set of funds. *See Hardy*, 803 F.2d at 1038.

9

If the SEC's allegations against Defendants are true, all defrauded investors will inevitably suffer significant losses because, according to the Complaint, "while ANI Development currently owes its investors over $120 million, just $11 million remains in ANI Development's escrow account." ECF No. 1 ¶ 6. Chicago Title's Response confirms the same, expressing fear of liability because it "has already received numerous requests from individuals and their counsel claiming to have an interest in the funds deposited in Escrow Acct. No. ##2122." ECF No. 34 at 3, 4; ECF No. 34-1 ¶ 5. Additionally, at least four attorneys—collectively representing dozens of creditors and lender-victims—represented to the Court during the hearing that their clients had claims to the funds at issue that all far exceeded the funds available. Thus, the approach urged by Chicago Title of holding the funds in trust until the "true" ownership is determined fails to acknowledge the circumstances giving rise to this litigation and to the Court's appointment of the receiver in the first place. The "primary purpose" of an equitable receivership "is the marshaling of the estate's assets for the benefit of aggrieved investors and other creditors of the receivership entities." *SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 840 (5th Cir. 2019) (citing *Hardy*, 803 F.2d at 1038).

"The Receiver acts as an officer of the Court, and the Court is tasked with supervising the equity receivership and determining the appropriate action to be taken in the administration of the receivership." *SEC v. Schooler*, No. 3:12-CV-2164-GPC-JMA, 2016 WL 3031824, at *4 (S.D. Cal. May 25, 2016). By appointing a Receiver, then, the Court has already determined the proper way to proceed in disbursing the remaining funds in Defendants' control or possession, *including the funds held in Defendants' names in various bank accounts*. Therefore, Chicago Title's position that interpleader is the "historic[]" remedy for competing claims to disputed assets in escrow amounts to a belated objection to the appointment of a receiver altogether. It is also not entirely accurate given that "federal courts have inherent equitable authority to issue a variety of 'ancillary relief' measures in actions brought by the SEC to enforce the federal securities laws[,]" and the Ninth Circuit "has repeatedly approved imposition of a receivership in appropriate

10

circumstances." *SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980) (collecting SEC civil enforcement cases in which courts established equity receiverships).

Second, Chicago Title asks the Court to extend the prosecution bar contained in Section XIII of the Appointment Order, which enjoins all creditors, defrauded investors, and others seeking relief from Defendants and Relief Defendant from commencing any suit or proceeding against any of them, using self-help, or otherwise interfering with the Receiver's control over the Assets that are the subject of the Order during the pendency of the receivership. *See* ECF No. 6 at 17-18. The undersigned recommends the Court deny that request as premature, particularly since it is opposed by the SEC and the defrauded lenders have raised the concern that Chicago Title may have participated in the alleged fraud in their submissions to the Court. *See* ECF Nos. 40 at 4-5; 50 at 2-3.

More importantly, neither of Chicago Title's requests is properly raised in a response in opposition to the Application. *See, e.g.*, *SolarCity Corp. v. Doria*, No. 16CV3085-JAH (RBB), 2018 WL 4204024, at *6 n.4 (S.D. Cal. Sept. 4, 2018) ("This Court and others have concluded that a request for affirmative relief is not properly presented when raised for the first time in an opposition brief"), *report and recommendation adopted*, No. 16-CV-3085-JAH-RBB, 2018 WL 4538191 (S.D. Cal. Sept. 20, 2018). Accordingly, the undersigned recommends that the Court reject Chicago Title's requests to place the funds in trust and to extend the prosecution bar of Section XIII to protect it from liability.

## IV. CONCLUSION AND RECOMMENDATION

The Court submits this Report and Recommendation to United States District Judge Larry A. Burns under 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California. In addition, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) **GRANTING** the Receiver's Ex Parte Application for an Order to Show Cause why Chicago Title Company Should not be Held in Civil Contempt (ECF No. 15), and holding Chicago Title Company in civil contempt for violating Sections V, X, and XIII of the Appointment Order (ECF No. 6); (3) **ORDERING** Chicago Title

1  Company to comply immediately with the Receiver's request to turn over all funds in
2  Account No. XXXX2122, held in the name of Defendant ANI Development, LLC; and (4)
3  **ISSUING CIVIL CONTEMPT SANCTIONS**.

As for appropriate sanctions, I recommend the Court (1) order Chicago Title Company to pay the Receiver's reasonable attorney fees incurred as a result of Chicago Title's failure to comply with the Appointment Order, to be determined by the undersigned on a written motion, and (2) if Chicago Title does not immediately comply, to issue additional monetary sanctions in the form of daily compounding interest at a static rate of 5% of the total funds in Account No. XXX2122, to begin on the day the Court issues an Order adopting this Recommendation until and inclusive of the day Chicago Title complies.

**IT IS HEREBY ORDERED** that any party to this action may file written objections with the Court and serve a copy on all parties no later than **October 3, 2019**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any Reply to the Objections shall be filed with the Court and served on all parties no later than **October 10, 2019**.

**IT IS SO ORDERED.**

Dated: September 26, 2019

_____
Honorable Allison H. Goddard
United States Magistrate Judge