UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                         Plaintiff,<br><br>v.<br><br>GINA CHAMPION-CAIN AND ANI DEVELOPMENT, LLC,<br><br>                      Defendants, and<br><br>AMERICAN NATIONAL INVESTMENT, INC.,<br><br>               Relief Defendant. | Case No.:  3:19-cv-1628-LAB-AHG<br><br>**ORDER:**<br><br>**(1) GRANTING RECEIVER'S MOTION TO APPROVE SALE OF REAL PROPERTY LOCATED AT 132 KELLER STREET; and**<br><br>**(2) SETTING DEADLINE FOR RECEIVER TO FILE PROPOSED DISTRIBUTION OF PORTION OF SALE PROCEEDS TO RECEIVERSHIP**<br><br>**[ECF No. 98]** |

## I.     BACKGROUND

On August 28, 2019, the Securities and Exchange Commission ("SEC") brought this action against Defendants ANI Development, LLC ("ANI Development") and Gina Champion-Cain and Relief Defendant American National Investments, Inc. ("ANI Inc."), alleging violations of federal securities laws based on a purportedly fraudulent liquor license loan scheme.  ECF No. 1.  Along with the Complaint, the SEC filed a Joint Motion

and Stipulated Request seeking a preliminary injunction, appointment of a permanent Receiver, and other related relief (ECF No. 2), which the Court granted on September 3, 2019. ECF No. 6 ("the Appointment Order"). In the Appointment Order, the Court established an equity receivership, appointing Krista Freitag as Receiver of ANI Development and ANI Inc. and authorizing her to take control over all funds and assets owned, managed, or in the possession or control of the receivership entities. *See id.* at 14-16. Relevant here, the Receiver was granted full power over all premises owned, leased, occupied, or otherwise controlled by the receivership entities. *Id.* at 14. Additionally, Section VI of the Appointment Order placed "an immediate freeze" on the title of certain listed properties within the receivership estate, ordering that the titles "shall not be mortgaged, transferred, or otherwise hypothecated[.]" *Id.* at 10. The listed properties included 132 Keller Street, Petaluma, CA 94952 ("132 Keller Street"), which is a former restaurant space owned by 132 & 142 Keller Street, LLC. *Id.*

On October 3, 2019, the Receiver filed a Motion for Order in Aid of Receivership (ECF No. 76), which included the Receiver's Verified Initial Report. ECF No. 76-1 at 11-24. According to the Report, the receivership encompasses approximately 70 entities, including over 60 real properties and operating businesses at the time of the Receiver's appointment. *Id.* at 11. Attached to the Report is a Preliminary Real Estate and Liquor License Asset Schedule (ECF No. 76-2), which lists all premises leased or owned by the receivership entities, including the commercial 132 Keller Street property. *Id.* at 5.

After filing the Motion for Order in Aid of Receivership, the Receiver began filing motions seeking Court approval of various real property sales, including the present Motion for Order Approving Sale of Real Property Located at 132 Keller Street Free and Clear of Mechanic's Lien and Authorizing Payment of Broker's Commission ("the 132 Keller Street Motion"), filed on October 31, 2019. ECF No. 98.

On November 15, 2019, the Presiding Judge in this matter, Chief Judge Larry A. Burns, issued a Minute Order stating in pertinent part:

The Court is inclined to refer certain other matters to Magistrate Judge Allison Goddard to take evidence, if necessary, and to submit to this Court a Report and Recommendation with her findings and recommendations, with regard to the proposed sale and management of properties and assets and the allocation of proceeds from such sales.

ECF No. 113.

On November 22, 2019, interested non-party Adam Lewis Construction Company ("Adam Lewis") filed a Response in opposition to the 132 Keller Street Motion, on the basis that the Court does not have jurisdiction to approve the sale of the property free and clear of its mechanic's lien on the property. ECF No. 128. The Receiver filed a Reply on December 2, 2019. ECF No. 140. On December 5, 2019, Chief Judge Larry A. Burns formally referred the 132 Keller Street Motion to Judge Goddard, who held a hearing on the Motion the same day, during which counsel for the Receiver and Adam Lewis were able to present oral argument to supplement their briefing.[1] *See* ECF Nos. 135, 154.

On December 11, 2019, Chief Judge Burns granted the parties' Joint Motion (ECF No. 156) to give limited consent to the undersigned to decide all motions filed in this action to approve sales of receivership assets. ECF No. 160. Consequently, this Order resolves the 132 Keller Street Motion directly pursuant to the grant of limited consent rather than serving merely as a report and recommendation to Chief Judge Burns. *See* 28 U.S.C. § 636(c); CivLR 72.1(g).

Having reviewed the relevant briefing and considered the testimony at the hearing, the Court **GRANTS** the Motion, for the reasons explained more fully below.

---

[1] Initially, the undersigned set the December 5, 2019 hearing on the Receiver's Motion for Approval of Sale of 4205 Lamont Street, #12 and Authority to Pay Broker's Commission. ECF No. 84. However, on November 26, 2019, in light of Chief Judge Burns's stated inclination to refer all such matters, the undersigned issued a Minute Order permitting oral argument on this and another pending property sale motion in addition to the 4205 Lamont Street Motion at the hearing. ECF No. 135.

## II.    LEGAL STANDARD

"[I]t is a recognized principle of law that the district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership." *SEC v. Lincoln Thrift Ass'n*, 577 F.2d 600, 606 (9th Cir. 1978). *See also SEC v. Hardy*, 803 F.2d 1034, 1037 (9th Cir. 1986) ("[A] district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad.").

Where a district court sits in equity, "[u]nless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied. 'The great principles of equity, securing complete justice, should not be yielded to light inferences, or doubtful construction.'" *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946). The Court thus has "inherent equitable authority to issue a variety of 'ancillary relief' measures in actions brought by the SEC to enforce the federal securities laws." *SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980). In recognition of such "inherent equitable authority" of federal district courts, the Ninth Circuit "has repeatedly approved imposition of a receivership in appropriate circumstances." *Id.*

As part of its wide discretion to direct the appropriate relief in an equity receivership, the district court sitting in equity and having custody and control of property "has power to order a sale of the same in its discretion. The power of sale necessarily follows the power to take control of and to preserve property[.]" *SEC v. Am. Capital Investments, Inc.*, 98 F.3d 1133, 1144 (9th Cir. 1996), *abrogated on other grounds by Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998) (quoting 2 Ralph E. Clark, <u>Treatise on Law & Practice of Receivers</u> § 482 (3d ed. 1992) (hereinafter "<u>Clark on Receivers</u>")). Consequently, a federal equity receiver "can conduct a judicial sale of real property that is property within their 'possession and control' and within the court's territorial jurisdiction, where all parties of interest have been brought before the court." *Am. Capital Investments, Inc.*, 98 F.3d at 1145 n.17 (citation omitted). However, if the court approves the sale, such

approval does not purport to convey legal title to the buyer; rather, the sale conveys "'good,' equitable title enforced by an injunction against suit." *Id.* (citing <u>Clark on Receivers</u> §§ 342, 344, 482(a), 487, 489, 491). In so doing, the court "protects the purchaser against interference and assures him a quiet title and quiet enjoyment." *Id.* (quoting <u>Clark on Receivers</u> § 487).

"The power of a district court to impose a receivership or grant other forms of ancillary relief does not in the first instance depend on a statutory grant of power from the securities laws. Rather, the authority derives from the inherent power of a court of equity to fashion effective relief." *Wencke*, 622 F.2d at 1369. *See also Am. Capital Investments, Inc.*, 98 F.3d at 1145 (rejecting the assertion that "there is no federal common law of receiverships" as "vastly overstated" because "the powers of sale of federal equity receivers are well-established."). Nonetheless, federal statutes do provide some authority and guidance for courts overseeing equity receiverships. Pertinent here, 28 U.S.C. § 2001(a) provides for a public sale process of realty in the possession of an appointed receiver "upon such terms and conditions as the court directs." 28 U.S.C. § 2002 further requires that notice be published once a week for at least four weeks prior to the sale in at least one newspaper regularly issued and of general circulation in the county, state, or judicial district where the realty is located.[2] These statutory safeguards of notice and opportunity to submit overbids help to ensure that the sale is able to fetch the best price possible, which is consistent with the principle that "a primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." *Hardy*, 803 F.2d at 1038. *See also United States v. Grable*, 25 F.3d 298, 303 (6th Cir. 1994) (noting that "the intent of" the requirement in 28 U.S.C. § 2001 that property be sold in the county in which the land is situated is "to bring

---

[2] 28 U.S.C. § 2001 also provides for a private sale process under subsection (b), but the requirements of that subsection are more stringent. The Receiver does not propose a private sale here.

a better price at the sale"); *SEC v. Billion Coupons, Inc.*, No. CIV. 09-00068 JMSLEK, 2009 WL 2143531, at *3 (D. Haw. July 13, 2009), *report and recommendation adopted,* No. CIV. 09-00068JMS-LEK, 2009 WL 2365696 (D. Haw. July 29, 2009) (approving a receiver's proposed alternative procedure for the sale of real property because the alternative procedure "ha[d] sufficient safeguards in order to solicit the highest price that a willing buyer in an arms-length negotiation will offer while conducting the sales in a timely and cost-efficient manner that will maximize the net sales proceeds.").

## III. DISCUSSION

### A. Background of Proposed Sale and Mechanic's Lien

The 132 Keller Street Property is a former restaurant space owned by 132 & 140 Keller Street, LLC, one of the receivership entities, which purchased both 132 Keller Street and neighboring property 140 Keller Street for $2.9 million on November 2, 2015. ECF No. 98-2, Freitag Decl. ¶ 2. *See also* ECF No. 6 at 4 (listing 132 & 140 Keller Street, LLC as one of the receivership entities). Both Keller Street properties are encumbered by a mortgage held by Seattle Funding Group. The principal balance due on the interest-only mortgage is $2,700,000. ECF No. 98-1 at 6.

After 132 & 140 Keller Street, LLC purchased the lot, it was split into two lots— 132 Keller Street, which operated as a restaurant, and 140 Keller Street, which continues to operate as a co-working office space under the Receiver's supervision. ECF No. 98-2, Freitag Decl. ¶ 3. In September 2018, 132 Keller Street was listed for lease on the Multiple Listing Service with licensed broker Keegan & Coppin Co., Inc. ("Broker"). In February 2019, 132 Keller Street along with all the restaurant equipment in the property were listed for sale on the Multiple Listing Service for the purchase price of $2,000,000. *Id.* ¶ 4. In March 2019, a buyer offered $1,750,000 and then accepted the counter-offer of $1,800,000. *Id. See also* ECF No. 98-3 at 19. The buyer, "David Ducommun or his assignee," and seller 132 & 140 Keller Street, LLC – Gina Champion Cain ("Seller") then executed a Standard Commercial/Investment Purchase Agreement, and the property went into escrow on April 6, 2019. ECF No. 98-2, Freitag Decl. ¶ 4. Mr. Ducommun subsequently assigned his rights

under the Purchase Agreement to Petaluma Restaurant Services Holdings, LLC ("Buyer"). *Id.*; ECF No. 98-3 at 48-49.

In June 2019, Defendant Champion-Cain, on behalf of the seller 132 & 140 Keller Street LLC, executed a First Amendment to the Purchase Agreement allowing Buyer to conduct a Phase 2 environmental test at the property. ECF No. 98-2, Freitag Decl. ¶ 5. In September 2019, Buyer received the Phase 2 results and approved them. *Id.* The lot split between 132 Keller Street and 140 Keller Street was approved on August 12, 2019, at which time a lease went into effect permitting Buyer to store equipment and non-alcohol inventory in the property rent-free pending sale closing. *Id.*

In the meantime, on or around April 18, 2019, Adam Lewis Construction Company entered into a contract with 132 & 140 Keller Street, LLC and Defendant Gina Champion-Cain to work as a general contractor to make various improvements to the 132 and 140 Keller Street properties, including work involving the lot split. ECF No. 128 at 2; ECF No. 128-1, Lewis Decl. ¶¶ 2-3. *See also* ECF No. 128-1 at 4-12 (contract governing the agreement). Adam Lewis completed the work prior to the Receiver's Appointment in this action, but he was not paid the full amount due under the contract. *See* ECF No. 128 at 2; ECF No. 98-2, Freitag Decl. ¶ 9. On September 27, 2019, Adam Lewis recorded a mechanic's lien for $82,587.17. ECF No. 128-1 at 14-17. The property subject to the lien includes both 132 and 140 Keller Street. *Id.* at 14. Then, on November 20, 2019, Adam Lewis filed a complaint in the Sonoma County Superior Court to foreclose the mechanic's lien. ECF No. 128-1, Lewis Decl. ¶ 5; ECF No. 128-1 at 18-38. According to the Receiver, Adam Lewis had at least constructive notice of the Appointment Order at the time it recorded the mechanic's lien on September 27, 2019 because, on September 16, 2019, the Receiver recorded a notice of the Appointment Order in the official records of Sonoma County and also filed the Order in the district where the property was located pursuant to 28 U.S.C. § 754. ECF No. 140 at 3. Moreover, the Receiver's counsel gave actual notice of the Appointment Order to Adam Lewis on October 24, 2019, prior to Adam Lewis's

commencement of the enforcement action. *See* ECF No. 140-1, Fates Decl. ¶ 2. Counsel for Adam Lewis did not dispute these facts at the December 5, 2019 hearing.

Turning to the terms of the proposed sale, following her appointment, the Receiver and her staff performed their own evaluation of the 132 Keller Street property. After reviewing the appraisal Buyer had previously procured that appraised the real property at a value of $1,750,000 and the kitchen equipment therein at $50,000, the Receiver concluded that the proposed purchase price of $1,800,000 is fair and reasonable. ECF No. 98-2, Freitag Decl. ¶ 6. Consequently, on October 11, 2019, the Receiver and Buyer executed a Second Amendment to Standard Commercial/Investment Purchase Agreement, which made court approval of the sale a condition to closing and provided for the overbid and auction process required by 28 U.S.C. § 2001(a). *Id.*; *see also* ECF No. 98-3 at 2-47, Freitag Decl, Ex. A (copy of the Purchase Agreement, including First and Second Amendments and lease agreement).

On October 31, 2019, the Receiver filed the present Motion seeking approval of the proposed sale of 132 Keller Street property free and clear of the mechanic's lien. The Receiver proposed compliance with the overbid and auction process by publishing the following notice once a week for four weeks in the Santa Rosa Press Democrat, a newspaper of general circulation in Sonoma County:

> In the action pending in U.S. District Court for the Southern District of California, Case No. 19-CV-01628-LAB-AHG, Securities and Exchange Commission v. Gina Champion-Cain, et al., notice is hereby given that the court-appointed receiver will conduct a public auction for the real property located at 132 Keller Street, Petaluma in Sonoma County, California. Sale is subject to Court confirmation after the auction is held. Minimum bid price is at least $1,850,000. The auction will take place on December 5, 2019 at 1:30 p.m. in front of the entrance to the United States Courthouse, 221 W. Broadway, San Diego, California. To be allowed to participate in the auction, prospective purchasers must meet certain bid qualification requirements, including submitting a signed purchase and sale agreement, an earnest money deposit of $55,000, and proof of funds. All bidders must be qualified by 5:00 p.m. PT on December 2, 2019, by submitting the required materials to the receiver at 401 W. A Street, Suite 1830, San Diego, California, 92101.

8

ECF No. 98-1 at 12.

For those interested in qualifying as bidders, the notice also provided a phone number and email address for the relevant point of contact. *Id.* In her Reply to the present Motion, the Receiver reported that no qualified overbids were received by the deadline of December 2, 2019 at 5:00 p.m. ECF No. 140 at 7; *see also* ECF No. 140-1, Fates Decl. ¶ 3. Therefore, Petaluma Restaurant Services Holdings, LLC remains the intended Buyer. Buyer has deposited $50,000 into escrow. The Receiver intends to pay Broker a commission of 6% of the final sale price.[3] *See* ECF No. 98-3 at 9 (reflecting a 3% commission to Broker for acting as the listing broker and another 3% commission for acting as the selling broker).

In addition to paying the Broker's commission and costs of sale, the Receiver intends to use the net proceeds of the sale to partially pay off the $2.7 million balance due to senior creditor Seattle Funding Group on the mortgage, leaving approximately $1.1 million owed on the mortgage after the sale closes.[4] ECF No. 98-1 at 7. Further, the Receiver is working with Broker to list 140 Keller Street and intends to market that property at a purchase price

---

[3] Significantly, if the proposed sale is approved, the Receiver's request for authority to pay the Broker's commission has already been granted by the Court's December 5, 2019 Order Authorizing Hiring of Agents and Brokers. *See* ECF No. 153 ("[T]he Receiver is authorized to hire brokers, auctioneers, and similar agents to list, market, and . . . to sell such property as she is otherwise authorized to sell. In other words, to the extent the Receiver is authorized to sell property, the Court authorizes her to pay the expenses of selling it.").

[4] During the hearing, counsel for the Receiver explained that the Receiver and Seattle Funding Group have reached an agreement regarding the mortgage loan, which includes as one of its material terms that the receivership estate will be permitted to take some small portion of the proceeds from the 132 Keller Street sale to cover costs of operating the receivership entities, and to defer that portion of the mortgage payment until the 140 Keller Street property is sold. The Court will address this newly raised proposal in greater detail below.

of $2,500,000 (subject to overbid and Court approval). ECF No. 98-2, Freitag Decl. ¶ 8. The Receiver intends to honor the contract with Adam Lewis by paying off the mechanic's lien out of the anticipated proceeds of the sale of 140 Keller Street, after first paying senior creditor Seattle Funding Group the approximately $1.1 million remaining due on the mortgage. ECF No. 98-1 at 14.

### B. Analysis

#### i. *Whether the filing of the lien violates the Appointment Order*

During the December 5, 2019 hearing, the Court gave its tentative opinion that Adam Lewis violated Section VI of the Appointment Order, which froze the titles of all listed properties, including the 132 Keller Street property, and prohibited the mortgage, transfer, or hypothecation of any of them. ECF No. 6 at 10. The Court opined that recording the lien and bringing the enforcement action violated this section by hypothecating the title of the 132 and 140 Keller Street properties. However, Adam Lewis contended that the recording of the lien and the bringing of the enforcement action on the lien did nothing to hypothecate the title of 132 Keller Street, because the lien arose at the time the labor was performed and not at the time it was recorded.

Upon review of relevant authorities, the Court finds that California law bears out the contention that a mechanic's lien, once recorded, dates back to the time the labor was performed and becomes senior to any encumbrances filed in the interim between the labor and the recording of the lien. *See Connolly Dev., Inc. v. Superior Court*, 553 P.2d 637, 640 (Cal. 1976). Additionally, a mechanic's lien is a statutory lien, which "arises solely by force of statute, not by agreement of the parties." *See* statutory lien, Black's Law Dictionary (8th ed. 2004); Cal. Const. art. XIV, § 3 (granting to all laborers "a lien upon the property upon which they have bestowed labor or furnished material for the value of such labor done and material furnished"); Cal. Civ. Code § 8400 (implementing the California constitutional provision just cited); Cal. Civ. Code § 8450 (giving a mechanic's lien priority over any other encumbrance that attached after the work was performed or that was unrecorded at the commencement of the work and of which the claimant had no notice).

10

Further, to "hypothecate" a property is to pledge the property as security without delivery of title or possession. Where, as here, a lien is created by operation of law and without the parties' express agreement, it is a "tacit hypothecation" rather than a "general hypothecation." Hypothecation, Black's Law Dictionary (8th ed. 2004). *See also* C. C. Langdell, Classification of Rights and Wrongs, 13 Harv. L. Rev. 537, 541 (1900) ("The legal or tacit hypothecation, on the other hand, has been admitted into our common law to some extent, though under the name of lien"). Thus, the Court gives due credit to Adam Lewis's argument that the 132 Keller Street property was already subject to the tacit hypothecation of the mechanic's lien before the Court issued the Appointment Order, and the recording of the lien therefore did not violate the Court's bar on hypothecation.

Nonetheless, the recording of the lien and the subsequent enforcement action plainly violate Section XIII of the Appointment Order. In Section IV of the Appointment Order, the Court expressly included 132 & 140 Keller Street, LLC in its list of "officers, agents, servants, employees, attorneys, subsidiaries and affiliates" of Defendants Champion-Cain and ANI Development and Relief Defendant American National Investments. *Id.* at 4. In Section XIII of the Appointment Order, the Court enjoined all creditors "and all other persons or entities seeking relief of any kind, in law or in equity, from Defendant ANI Development and Relief Defendant American National Investments, or their subsidiaries or affiliates *(including, but not limited to those subsidiaries and affiliates identified above in Section IV)*" from "commencing, prosecuting, continuing, or enforcing any suit or proceeding (other than the present action by the SEC or any other action by the government) against any of them[.]" *Id.* at 17 (emphasis added).

In its opposition brief, Adam Lewis argues that it also did not violate Section XIII of the Appointment Order, because subsection B of Section XIII prohibits the creation or enforcement of a lien upon any property "owned by or in possession of Defendant ANI Development and Relief Defendant American National Investments[,]" and Defendant Gina Champion-Cain is the sole member of 132 & 140 Keller Street, LLC. *See id*; *see also*

11

ECF No. 128 at 6. However, as just explained, Section XIII of the Court's Appointment Order expressly prohibited all creditors from enforcing any suit or proceeding against 132 & 140 Keller Street, LLC by its reference to the "subsidiaries and affiliates" identified in Section IV.

Notwithstanding the foregoing analysis, the question of whether Adam Lewis is in contempt of the Appointment Order due to its commencement of the foreclosure action is not squarely before the Court and need not be decided to approve the sale in any event. As the Receiver rightly posits, the Court has equitable jurisdiction to approve the sale free and clear of any liens or encumbrances, valid or not. Adam Lewis also challenges this contention. The Court turns now to his argument on that question.

> ii. *Whether the Court has jurisdiction to approve the sale free and clear of the mechanic's lien no matter its validity*

Adam Lewis asserts that federal courts "do not have federal subject matter or supplemental state jurisdiction over claims unless the maker of a motion or petitioner complies with all the requirements of California civil law that are mandatory for receiving the relief sought." ECF No. 128 at 3 (citing *Hernandez v. McClanahan*, 996 F. Supp. 975 (N.D. Cal. 1998) and *Luers v. Smith*, 941 F. Supp. 105, 107-08 (C.D. Cal. 1996)). Consequently, Adam Lewis reasons, the Receiver's motion to sell the 132 Keller Street property free and clear of its mechanic's lien fails because the Receiver did not comply with any of the requirements of California state law to petition for release of a mechanic's lien. *See* ECF No. 128 at 3-4; *see also* Cal. Civ. Code §§ 8480, 8482, 8484.

Contrary to Adam Lewis's position, "'it has long been recognized that under appropriate circumstances, a federal court presiding over a receivership may authorize the assets of the receivership to be sold free and clear of liens and related claims.'" *SEC v. Capital Cove Bancorp LLC*, No. SACV15980JLSJCX, 2015 WL 9701154, at *4 (C.D. Cal. Oct. 13, 2015) (quoting *Pennant Mgmt., Inc. v. First Farmers Fin., LLC*, No. 14-CV-7581, 2015 WL 4511337, at *4 (N.D. Ill. July 24, 2015) and *Regions Bank v. Egyptian Concrete Co.*, No. 4:09-CV-1260 CAS, 2009 WL 4431133, at *7 (E.D. Mo. Dec. 1, 2009)). The

district court cases just cited in turn rely on an 1889 Supreme Court opinion in which a similar dispute arose to the one at issue here, *Mellen v. Moline Malleable Iron Works*, 131 U.S. 352 (1889). There, the Supreme Court affirmed that the lower court, sitting in equity to administer the estate of an insolvent corporation, had jurisdiction to direct the sale of certain real property by a receiver free and clear of a certain creditor's lien. *Id.* at 365-69. Indeed, the Court held that jurisdiction existed even if the sale took place prior to the creditor's notice of the sale and without an opportunity for hearing, because even if such circumstances made the sale "irregular, . . . that is not a matter affecting the *jurisdiction* of the court to render a final decree in respect to [the creditor's] interest in the property; for the proceeds took the place of the property, and whatever rights [the creditor] had in the latter were transferred to the former." *Id.* at 370 (emphasis added).

Although the facts of the case are not on all fours with the case at hand, the Court finds the rationale set forth in another Supreme Court case arising in equity both relevant and persuasive here. *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156 (1946). In *Vanston*, the Supreme Court affirmed the lower court's refusal to enforce a mortgage document providing for payment of interest on unpaid interest against a debtor in bankruptcy, because the unpaid interest did not accrue until *after* the district court had appointed an equity receiver to take control of the estate. *See id.* at 159, 163-67. In reaching this holding, the Court began with the "general rule in bankruptcy and in equity receivership . . . that interest on the debtors' obligations ceases to accrue at the beginning of proceedings." *Id.* at 163. The Court then explained the reason underlying the general rule:

> Exaction of interest, where the power of a debtor to pay even his contractual obligations is suspended by law, has been prohibited because it was considered in the nature of a penalty imposed because of delay in prompt payment—*a delay necessitated by law if the courts are properly to preserve and protect the estate for the benefit of all interests involved.* Thus this Court has said: "We cannot agree that a penalty in the name of interest should be inflicted upon the owners of the mortgage lien for resisting claims which we have disallowed. As a general rule, after property of an insolvent passes into

13

the hands of a receiver. . ., interest is not allowed on the claims against the funds. The delay in distribution is the act of the law; it is a necessary incident to the settlement of the estate." Courts have felt that it would be inequitable for anyone to gain an advantage or suffer a loss because of such delay.

*Id.* at 163 (emphasis added) (quoting *Thomas v. Western Car Co.*, 149 U.S. 95, 116-17 (1893)) (other internal citations omitted).

Further probing the underlying equitable rationale of this "general rule," the *Vanston* court explained that the moment an equity receivership intervened, the obligations under the pre-existing contract "were drastically changed." 329 U.S. at 166. Specifically, once the district court appointed an equity receiver, there could be no breach of the contract by the debtor because "[t]he contingency which might have created a present obligation to pay interest on interest—i.e., a free decision by the debtor that it would not or could not pay simple interest promptly—was prohibited from occurring by order of the court. That order issued for a good cause, we may assume: *to preserve and protect the debtor's estate pending a ratable distribution among all the creditors according to their interests as of the date the receivership began*." *Id.* (emphasis added).

The same underlying principle that the creation of an equity receivership "drastically change[s]" the pre-existing obligations and interests attached to the property in the receivership applies with equal force here. In particular, the Court notes the paramount concern that equitable distribution of the receivership assets be made according to creditors' interests "as of the date the receivership began." *Id.* The Court discerns from this directive that, even if under California law Adam Lewis's lien arose from labor performed prior to the Receiver's appointment, it would be inequitable to require the Receiver to satisfy a lien that Adam Lewis recorded *after* her appointment for the very purpose of transforming its inchoate right into an enforceable one. *See* Cal. Civ. Code § 8412 (barring a contractor from enforcing a lien unless the contractor records the claim of lien within 90 days after completion of the work of improvement). By the time Adam Lewis recorded the lien and brought the enforcement action against receivership

14

entity 132 & 140 Keller Street, LLC and Defendant Champion-Cain, the property at issue had already passed into the hands of the Receiver pursuant to the Appointment Order. It was no longer in the possession, custody, or control of either Defendant Gina Champion-Cain or 132 & 140 Keller Street, LLC. Therefore, analogous to the circumstances in *Vanston*, once this Court appointed an equity receiver, there was no enforceable lien against the 132 Keller Street property because the "contingency which might have created" the enforceable lien—that is, the recording of it—"was prohibited from occurring by order of the court." And, like in *Vanston*, "that order issued for a good cause[:] to preserve and protect the debtor's estate pending a ratable distribution among all the creditors according to their interests as of the date the receivership began." 329 U.S. at 166.[5]

The cases that Adam Lewis cites to argue the Court has no jurisdiction to approve the sale free and clear of its lien are inapposite. *Luers* and *Hernandez* both stand solely for the proposition that federal courts have no jurisdiction to expand the State's narrow waiver of sovereign immunity set forth in the California Tort Claims Act ("CTCA"). *See Hernandez*, 996 F. Supp. at 977 ("Like all other states, California enjoys sovereign

---

[5] The Court notes that even in the California state court case on which Adam Lewis relies for the proposition that, as a "direct corollary," a laborer may file a mechanic's lien against a bankrupt debtor without violating the automatic bankruptcy stay, the court makes clear that "postpetition lien foreclosure actions (as opposed to the mere recording of a lien) are enforcement actions prohibited by the automatic stay." *Pioneer Constr., Inc. v. Glob. Inv. Corp.*, 135 Cal. Rptr. 3d 785, 790 (Cal. Dist. Ct. App. 2011), *as modified on denial of reh'g* (Jan. 13, 2012). Thus, even if the Court were to apply the Bankruptcy Code as a corollary, it would be compelled to find that Adam Lewis was precluded from suing Defendant Champion-Cain and receivership entity 132 & 140 Keller Street, LLC to foreclose the lien. Under the Bankruptcy Code, a mechanic's lien may be recorded against property within the estate, but any state law requiring an enforcement action to be filed within a certain amount of time after recordation is tolled pursuant to 11 U.S.C. § 108(c) while the property subject to the lien is property of the estate. *Id*; *see also In re Hunters Run Ltd. P'ship*, 875 F.2d 1425, 1427-29 (9th Cir. 1989) (finding § 108(c) tolls the mechanic's lien enforcement period under Washington State law).

immunity against tort claims for money damages. The CTCA represents a limited waiver of this immunity. Plaintiffs can therefore bring tort claims against state and local public entities only if the plaintiffs comply with the strict procedural requirements enumerated in the CTCA."). *See also id.* at 978 ("Eleventh Amendment immunity may be waived only in limited circumstances. Waiver by a state statute must be found in the express language of the statute or by such overwhelming implications from the text as to leave no room for any other reasonable construction. In other words, federal courts cannot assume that a state has waived its sovereign immunity unless the state has explicitly done so.") (internal citations, quotations, and alterations omitted); *Luers*, 941 F. Supp. at 107 (finding that federal courts lack subject matter jurisdiction to consider petitions for relief from the CTCA's notice requirement under Cal. Govt. Code § 946.6).

Therefore, *Luers* and *Hernandez* do not stand for any broad proposition that federal courts sitting in equity and overseeing receiverships must first, before approving proposed sales or distributions of property, permit interested parties to proceed in collateral state court proceedings to resolve their competing claims. Nor, unsurprisingly, can the Court locate any authority to support such an argument. "The basis for broad deference to the district court's supervisory role in equity receiverships arises out of the fact that most receiverships involve multiple parties and complex transactions." *Hardy*, 803 F.2d at 1037. "A district court enjoys broad equitable powers to appoint a receiver over assets disputed in litigation before the court. The receiver's role, and the district court's purpose in the appointment, is to safeguard the disputed assets, administer the property as suitable, and to assist the district court in achieving a final, equitable distribution of the assets[.]" *Liberte Capital Grp., LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006). Accordingly, "[o]nce assets are placed in receivership, a district court's equitable purpose demands that the court be able to exercise control over claims brought against those assets." *Id.* Thus, if Adam Lewis's proposition were true, one of the "primary purpose[s]" of equitable jurisdiction in the context of equity receiverships—to allow for the district court's "orderly and efficient administration of [an] estate" to which numerous creditors have competing claims "for the

benefit of creditors"—would be utterly defeated. *See Hardy*, 803 F.2d at 1038. The notion that a federal court, sitting in equity and exercising control over receivership assets, must bend to accommodate all manner of separate process under state law, flies in the face of existing jurisprudence on the purpose and goal of equity receiverships.

In short, the Court has jurisdiction to approve the proposed sale of 132 Keller free and clear of any encumbrances whether or not the Adam Lewis lien is valid. *See Capital Cove*, 2015 WL 9701154, at *4. *See also Mellen*, 131 U.S. at 367 ("Besides, the removal of alleged liens or incumbrances upon property, the closing up of the affairs of insolvent corporations, and the administration of and distribution of trust funds are subjects over which courts of equity have general jurisdiction"); *Miners' Bank of Wilkes-Barre v. Acker*, 66 F.2d 850, 853 (3d Cir. 1933) ("A court of equity under proper circumstances has power to order a receiver to sell property free and clear of all incumbrances, and to deny the mortgagee the right to foreclose his mortgage."). And even if the mechanic's lien is valid because—although unrecorded—it arose prior to the creation of the receivership, the Court's approval of the sale does not purport to extinguish the lien and convey legal title to the Buyer. As explained above, a judicial sale of receivership assets instead conveys "'good,' equitable title enforced by an injunction against suit." *Am. Capital Investments, Inc.*, 98 F.3d at 1145 n.17 (citing <u>Clark on Receivers</u> §§ 342, 344, 482(a), 487, 489, 491).

### iii.    *Whether the proposed sale is fair and reasonable*

The Court has reviewed the documents submitted by the Receiver in support of the 132 Keller Street Motion and finds the purchase price of $1,800,000 for the real property and the kitchen equipment therein to be fair and reasonable in light of the appraisal of the real property at $1,750,000 and the appraisal of the kitchen equipment at $50,000. *See* ECF No. 98-2, Freitag Decl. ¶ 6. Before Buyer and Seller entered into the Purchase Agreement, Broker showed the property to prospective tenants and buyers a total of 23 times. *Id.* ¶ 4. The parties also negotiated the terms of sale over the course of several weeks, going back and forth three separate times with counter-offers before coming to a final agreement on terms and price of the sale.

Moreover, the Receiver's publication of notice seeking qualified overbids in the San Diego Union-Tribune complies with the requirements for the public sale procedures set forth in 28 U.S.C. §§ 2001(a) and 2002. Therefore, upon a thorough review of the relevant factual history and the Purchase Agreement itself, the Court finds the Purchase Agreement was negotiated at arm's-length and, further, that the Receiver implemented sufficient safeguards by way of the notice and overbid process to solicit the highest possible price for the property despite significant time and cost restraints. The Court is thus satisfied that the intent of the statutory scheme—to ensure that the best and highest possible price is paid for property within the receivership estate—has been fulfilled. A broker's commission of 6% of the purchase price is consistent with industry standards and, as noted above, the Court has already authorized Receiver to pay the Broker's commission and all sale costs in connection to any approved property sale. ECF No. 153.

In addition, the Court allowed extensive oral argument regarding the contested mechanic's lien at the December 5, 2019 hearing and questioned the Receiver's counsel further regarding the proposed distribution of the proceeds, which permitted the Court to flesh out the details of the proposed sale. As noted above, counsel for the Receiver introduced a new proposed distribution during the hearing that is not reflected in the Receiver's motion seeking approval of the sale. Namely, mortgage lender Seattle Funding Group and the Receiver have reached their own agreement which entails, in part, that Seattle Funding Group will receive only 90-95% of the net proceeds after payment of the Broker's commission and costs are deducted.[6] The remainder would go to the receivership estate to use towards operating the receivership entities for the benefit of all creditors. At first blush, the Court has no reason to consider such an arrangement inequitable and is inclined to approve it. However, the Court is concerned that the record lacks any information regarding the details of this proposed additional distribution to the receivership

---

[6] Counsel for the Receiver explained at the hearing that the agreement also entails certain default forgiveness and an extension on the maturity date of the loan.

estate, which raises an issue of lack of notice to other interested non-parties. Therefore, the Court will approve the proposed sale that is reflected in the motion before the Court. If the Receiver provides supplemental briefing reflecting the proposed distribution to the receivership estate, the Court will give it expedited consideration.

Finally, in her Reply to the present Motion, the Receiver agreed to stipulate that the mechanic's lien may be recorded as to 140 Keller Street, pursuant to an agreement whereby the lien attaches to a portion of the anticipated sale proceeds of that property. ECF No. 140 at 4. In addition, the Receiver further stated a willingness to stipulate to an extension of credit in accordance with California law that would allow for a continuance of up to one year of the statutory 90-day period to file a complaint to enforce a mechanic's lien. *Id.* at 7. Adam Lewis did not agree.

The Court finds that the Receiver's proposed solution of permitting the lien to attach to the proceeds of the 140 Keller Street property sale is fair and reasonable and thus consistent with the goals of equity. That way, the lien will not take unfair precedence over the claims of other creditors who have compliantly refrained from taking action outside of the confines of the orderly receivership procedures. Yet neither will Adam Lewis's claim become an unsecured debt tethered only to a contract. *See Mellen*, 131 U.S. at 370 (transferring the creditor's rights from the property to the proceeds of the sale); *see also Capital Cove*, 2015 WL 9701154, at *8 (protecting the interests of a creditor by attaching the interests to the proceeds of the sale); *In re Clark*, 266 B.R. 163, 171 (explaining that in the analogous bankruptcy context, to protect disputed interests, "[t]ypically, the proceeds of sale are held subject to the disputed interest and then distributed as dictated by the resolution of the dispute; such procedure preserves all parties' rights by simply transferring interests from property to dollars that represent its value."). The Court finds the Receiver's proposed solution equitable, particularly given that (1) Adam Lewis's lien was filed against both the 132 and 140 Keller Street properties, ECF No. 128-1 at 14; and (2) Adam Lewis is a junior creditor to Seattle Funding Group and thus its rights to the proceeds are not

superior to those of Seattle Funding Group regardless. The Receiver must include this proposed distribution when she seeks approval of the sale of 140 Keller Street.

In sum, the Court finds the Receiver has sufficiently established that the proposed sale of 132 Keller Street and proposed distribution of the sale proceeds, as set forth in the Motion (ECF No. 98) are consistent with the principles of equity that must guide the Court in overseeing the "orderly and efficient administration of the estate by the district court for the benefit of creditors." *Hardy*, 803 F.2d at 1038.

## IV.   CONCLUSION

Based on the foregoing considerations, the Court **GRANTS** the Motion (ECF No. 98) and **APPROVES** the sale of 132 Keller Street, Petaluma, CA 94952 to Buyer Petaluma Restaurant Services Holdings, LLC at the proposed purchase price of $1,800,000. The Court orders the proceeds of the sale to be distributed from escrow at the close of sale as follows:

(1) Payment of the Broker's Commission in the amount of $108,000.00 shall be paid to Keegan & Coppin Co., Inc.;

(2) Payment of any outstanding real property taxes, to the extent any are due;

(3) Payment of reasonable and customary costs of sale, such as escrow fees, title insurance, and recording fees. The Receiver shall provide a full accounting of sale costs once the sale is complete for the Court to take into consideration in approving future real property sales;

(4) Payment of the remainder of the sale proceeds to Seattle Funding Group to go towards the mortgage loan balance.

The Court will consider on an expedited basis any supplemental request by the Receiver to approve the distribution of some portion of these proceeds to the receivership estate pursuant to the Receiver's agreement with Seattle Funding Group. Any such request should include the full details of the agreement and should be filed no later than **December 18, 2019**.

None of the proceeds from the sale of 132 Keller Street shall go to pay the mechanic's lien recorded by Adam Lewis Construction, Inc. However, the Receiver is **DIRECTED** to include a proposed distribution of the sale proceeds of 140 Keller Street to pay the mechanic's lien, if and when such sale occurs during the pendency of the receivership.

**IT IS SO ORDERED.**

Dated:  December 13, 2019

_____
Honorable Allison H. Goddard
United States Magistrate Judge