UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>GINA CHAMPION-CAIN AND ANI DEVELOPMENT, LLC,<br><br>Defendants, and<br><br><br>AMERICAN NATIONAL INVESTMENT, INC.,<br><br>Relief Defendant. | Case No.: 3:19-cv-1628-LAB-AHG<br><br>**ORDER ESTABLISHING UNIFORM PROPERTY SALE PROCEDURES** |

## I. BACKGROUND

On August 28, 2019, the Securities and Exchange Commission ("SEC") brought this action against Defendants ANI Development, LLC ("ANI Development") and Gina Champion-Cain and Relief Defendant American National Investments, Inc. ("ANI Inc."), alleging violations of federal securities laws based on a purportedly fraudulent liquor license loan scheme. ECF No. 1. Along with the Complaint, the SEC filed a Joint Motion and Stipulated Request seeking a preliminary injunction, appointment of a

1

permanent Receiver, and other related relief (ECF No. 2), which the Court granted on September 3, 2019. ECF No. 6 ("the Appointment Order"). In the Appointment Order, the Court established an equity receivership, appointing Krista Freitag as Receiver of ANI Development and ANI Inc. and authorizing her to take control over all funds and assets owned, managed, or in the possession or control of the receivership entities. *See id.* at 14-16. The Receiver was granted full power over all premises owned, leased, occupied, or otherwise controlled by the receivership entities. *Id.* at 14.

On December 10, 2019, Chief Judge Burns granted the parties' Joint Motion (ECF No. 156) to give limited consent to the undersigned to hear and directly decide all motions filed in this action to approve sales of receivership assets. ECF No. 160. Pursuant to that grant of authority, on December 11, 2019, the undersigned ordered the Receiver to file proposed Property Sale Procedures to govern all future sales of receivership assets and all ancillary relief sought in connection therewith, for the purpose of streamlining the property sale process. ECF No. 164. The Receiver filed her proposed Property Sale Procedures on January 3, 2020. ECF No. 195.

The Court permitted objections to the Receiver's proposal to be filed by January 10, 2020. ECF No. 164. While no formal objections were filed, interested non-party creditor CalPrivate Bank filed a Response to the Receiver's proposal (ECF No. 205), asking that the Sale Procedures include a provision that all property sales are subject to CalPrivate Bank's claim of a priority security interest.[1] CalPrivate Bank seeks such a provision in the interest of efficiency, to avoid having to repeatedly file responses to each proposed sale to preserve its claim. *Id.* at 2.

---

[1] CalPrivate Bank's claim of a priority security interest arises from a $5 million commercial loan it made to ANI License Fund, LLC in September 2015, which was later increased to $12.5 million. ECF No. 205 at 4 (citing ECF No. 31-1, Sowers Decl.). According to CalPrivate Bank, the loan is secured by agreements between CalPrivate Bank and ANI License Fund, LLC and Defendant ANI Development LLC, which grant CalPrivate Bank security interests in all their assets. *Id.*

Having reviewed the Receiver's proposal and CalPrivate Bank's response, the Court hereby **ORDERS** as follows:

## II. LEGAL STANDARD

"[I]t is a recognized principle of law that the district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership." *SEC v. Lincoln Thrift Ass'n*, 577 F.2d 600, 606 (9th Cir. 1978). As part of its wide discretion, the district court sitting in equity and having custody and control of property "has power to order a sale of the same in its discretion. The power of sale necessarily follows the power to take control of and to preserve property[.]" *SEC v. Am. Capital Investments, Inc.*, 98 F.3d 1133, 1144 (9th Cir. 1996), *abrogated on other grounds by Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998) (quoting 2 Ralph E. Clark, <u>Treatise on Law & Practice of Receivers</u> § 482 (3d ed. 1992)). If the court approves an equitable receiver's proposed property sale, the sale "does not . . . purport to convey 'legal' title, but rather 'good,' equitable title enforced by an injunction against suit." *Id.* (citing 2 Clark, <u>Treatise on Law & Practice of Receivers</u>, §§ 342, 344, 482(a), 487, 489, 491).

"The power of a district court to impose a receivership or grant other forms of ancillary relief does not in the first instance depend on a statutory grant of power from the securities laws. Rather, the authority derives from the inherent power of a court of equity to fashion effective relief." *SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980). Nonetheless, federal statutes do provide some authority and guidance for courts overseeing equity receiverships. In particular, 28 U.S.C. §§ 2001 and 2002 set forth procedural and notice requirements for the sale of real property in the possession of a court-appointed receiver, while § 2004 governs the sale of personal property.

Pursuant to 28 U.S.C. § 2001(a), realty in the possession of an appointed receiver is subject to a public sale process, "upon such terms and conditions as the court directs."[2]

---

[2] 28 U.S.C. § 2001 also provides for a private sale process under subsection (b), but the Court's uniform sale procedures established herein do not anticipate or provide for private

3

3:19-cv-1628-LAB-AHG

Thus, the statute lends great discretion to the Court to direct the terms and conditions of the sale. 28 U.S.C. § 2002 creates an additional notice requirement, mandating that prior to the sale of any realty in the possession of a court-appointed receiver, notice must be published once a week for at least four weeks in at least one newspaper regularly issued and of general circulation in the county, state, or judicial district where the realty is located. These safeguards of notice and opportunity to submit overbids help to ensure that the sale is able to fetch the best price possible, which is consistent with the principle that "a primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986).

As for the sale of personal property, 28 U.S.C. § 2004 also lends the Court great discretion in directing sales of personalty, requiring such sales to comply with § 2001 "unless the court orders otherwise." The notice requirement of § 2002 governing realty sales by the receiver does not apply to sales of personalty.

### III. UNIFORM SALE PROCEDURES GOVERNING SALES OF RECEIVERSHIP ASSETS

Because sales of realty and sales of personalty are subject to different requirements, the Court will issue separate uniform procedures for each type of sale.

### A. SALES OF REAL PROPERTY

For all sales of real property included in the receivership estate:

(1) The Receiver must list each property with qualified, licensed real estate brokers to market the property to potential buyers. In the proposal, the Receiver states that she interviews and assesses multiple brokers before determining the listing broker. ECF No. 195 at 2 n.1. The Receiver must

---

sales. If the Receiver wishes to pursue a private sale of any realty, the Receiver must seek give notice to all interested parties and seek a hearing on any such motion to do so in accordance with § 2001(b).

continue considering at least two brokers before choosing the listing broker with respect to each proposed property sale, except if the Receiver has previously worked with the same broker to sell receivership property or otherwise obtains an excusal of this requirement by the Court.

(2) As she has done thus far, the Receiver must follow the publication of notice and public auction requirements of 28 U.S.C. §§ 2001-2002. Specifically, the Court adopts the Receiver's following proposal for compliance with these statutes:

    a. For **residential properties**, after (1) an offer is received, negotiated and determined to be in the best interests of the receivership estate, (2) the buyer's ability to complete the transaction is verified, (3) a purchase and sale agreement is signed and earnest money deposited into escrow, and (4) the purchaser has removed all contingencies (thereby putting their earnest money deposit at risk if they fail to complete the transaction[3]), the Receiver will file a noticed motion seeking Court approval of the sale, subject to overbid. The Receiver will publish notice of the sale in a newspaper of general circulation in the area in which the property is located for four consecutive weeks. The notice will state the deadline and requirements for submitting a qualified overbid.

    b. For **commercial properties**, the Court approves the Receiver's proposal that the process may vary slightly from residential properties by including a "Call for Offers" date. As is customary in commercial transactions, upon execution of a confidentiality agreement and access agreement, the broker will make available

---

[3] If the buyer is unable to close because they fail to win the auction or the Court does not approve the sale, the buyer's earnest money deposit will be returned to them.

certain due diligence materials (including a form purchase and sale agreement) for buyer review. Depending on the marketing prospects of the property, the Receiver, in consultation with the broker, may set a "Call for Offers" date or may wait for offers to be received (similar to the marketing process for a residential property). In a Call for Offers scenario, once (1) prospective purchasers have completed their due diligence and removed all contingencies (thereby putting their earnest money deposit at risk if they fail to complete the transaction[4]), (2) the buyer's ability to complete the transaction is verified, and (3) purchase and sale agreements have been submitted for review prior to the Call for Offers deadline, the Receiver will review all submitted agreements and select the highest and best offer. Thereafter, the Receiver will notify all prospective buyers of the highest and best offer, will qualify prospective overbidders (as applicable), and upon deposit of the earnest money into escrow by the proposed buyer, the Receiver will file a noticed motion seeking Court approval of the sale, subject to overbid. The Receiver will publish notice of the sale in a newspaper of general circulation in the area in which the property is located for four consecutive weeks. The notice will state the deadline and requirements for submitting a qualified overbid. If, instead of a Call for Offers deadline, the Receiver determines, in consultation with the broker, that it would be better to wait for offers, the process will be materially similar to the residential sale process, except that commercial property customary confidentiality agreements and access agreements will

---

[4] If the buyer is unable to close because they fail to win the auction or the Court does not approve the sale, the buyer's earnest money deposit will be returned to them.

still be required before due diligence information is made available to prospective buyers.

    c. In **all real property sale scenarios**, if a qualified overbid is received on or before the published deadline and the proposed buyer (with highest and best offer) is prepared to continue to bid, the Receiver will (1) give notice to the Court that an auction will be conducted, and (2) invite all qualified bidders to said auction. Such invitation and notice to the Court will include auction instructions for the qualified bidders. At the conclusion of the auction, the Receiver will file a notice of the highest/winning (and if applicable, backup)[5] bid, along with an amended proposed order seeking approval of the sale to the highest/winning (and if applicable, backup) bidder. If no qualified overbids are received on or before the published deadline, the Receiver will advise the Court and seek approval of the sale to the original proposed buyer.

(3) In all noticed sale motions for real property, the Receiver must include a detailed breakdown of the Receiver's proposed distribution of the sale proceeds, except that the Receiver need not propose an exact estimate of reasonable and customary costs of sale, such as escrow fees, title insurance, and recording fees. If the Receiver is unable to provide a specific dollar figure for any portion of the proposed distribution other than the costs just described, the notice must explain why a specific proposal for that portion of the distribution cannot be made. The proposed

---

[5] If multiple qualified overbids are received, the Receiver will ask the Court to approve the highest/winning bid *and* the next highest/backup bid such that if the highest/winning bidder fails to close the sale, the Receiver may proceed to close the sale with the backup bidder without delay.

7

distribution must account for every creditor known to the Receiver to have a claim of a secured interest in the real property at issue, and must certify that Receiver or her counsel have conferred—or attempted to confer—with any such creditor prior to filing the noticed motion. If conferral attempts were unsuccessful, the Receiver must explain what steps she took to confer with such known creditors. The Court will consider waiving the conferral requirement on a case-by-case basis where expedited approval of a given sale is needed and prior conferral is impracticable, but the Receiver must file a *separate* motion seeking such waiver. Creditors (or anyone claiming an interest in the property at issue) will be permitted a minimum of seven days to object to any motion seeking such waiver.[6]

(4) With respect to all sales of real property, the Receiver must provide a full accounting of sale costs once the sale is complete for the Court to take into consideration in approving future real property sales.

Insofar as the uniform sale procedures set forth herein differ from those proposed by the Receiver, the Court will offer additional clarity. First, with respect to all noticed sale motions, the Receiver proposed a requirement to seek authority to pay the commission for the real estate broker (including the buyer's broker) from the sale proceeds. While the Court will not prohibit the Receiver from seeking such authority in noticed sale motions, the Court will not require it in its uniform procedures in light of the Court's December 5, 2019 Order Authorizing Hiring of Agents and Brokers. *See* ECF No. 153 ("[T]he Receiver is authorized to hire brokers, auctioneers, and similar agents to list, market, and . . . to sell such property as she is otherwise authorized to sell. In other words, to the extent the Receiver is authorized to sell property, the Court authorizes her to pay the expenses of

---

[6] This waiver process applies only to the conferral requirement, not the requirement that the Receiver provide a proposed distribution in every motion for sale of realty.

selling it."). Rather, the Receiver may simply include the broker's commission in her proposed distribution of sale proceeds.

Second, as noted above, non-party creditor CalPrivate Bank requested that the Court include in its established sales procedures a provision that all property sales are subject to CalPrivate Bank's claim of a priority security interest. ECF No. 205. The Court declines to carve out a specific protection for CalPrivate Bank's claim over the claims of all other interested non-parties to this action. However, the Court acknowledges and is sensitive to CalPrivate Bank's desire for efficiency and eliminating the need for CalPrivate Bank (or any other creditor) to file responses or objections to noticed sale motions for the purpose of preserving its claims. Indeed, the Court has already resolved two realty sale motions filed by the Receiver to which interested non-parties initially filed some form of opposition, only for such opposition to be withdrawn after conferral between counsel for the Receiver and counsel for the responding non-parties confirmed that the interest at issue would be protected. *See* ECF Nos. 84, 124, 132 (concerning the sale of the 4205 Lamont Street property); ECF Nos. 100, 131, 141 (concerning the sale of the 1617 Thomas Avenue property). The Court's dual requirements of a proposed distribution of sale proceeds and conferral with non-parties known to the Receiver as having a claim of a secured interest in a given real property *prior* to the Receiver's filing of the motion should cut down on unnecessary motion practice. Further, these requirements should result in fewer opposed (or seemingly opposed) sale motions, thus permitting the Court to issue quicker rulings.

### B. SALES OF PERSONAL PROPERTY

The Court adopts the Receiver's proposed personalty sale procedures in full, as follows:

As an initial matter, the Court will not require the Receiver to file a noticed motion seeking approval of sales of personal property within the receivership estate. The requirements of 28 U.S.C. § 2001 are hereby **WAIVED** pursuant to the Court's discretion set forth in 28 U.S.C. § 2002. However, the Receiver must report on the outcome of all personal property sales in her quarterly interim reports.

The Receiver must follow standard auction procedures through one or more licensed auctioneers for sales of personal property and is granted authority to complete such sales. As noted above, the Court has already authorized the Receiver to engage auctioneers to sell receivership assets. ECF No. 153. Sales of liquor licenses must be approved by the California Department of Alcoholic Beverage Control ("ABC"). For liquor licenses that are sold to third parties not associated with former restaurant locations, the Receiver is authorized to use AAA Liquor License Consulting ("ALLC") to assist in marketing the licenses and negotiating sales. The Court authorizes ALLC to receive the industry standard of a 10% commission, to be paid by the buyers.

## IV. CONCLUSION

For the reasons explained above, the Receiver's proposed sale procedures are **ADOPTED IN PART** and **REJECTED IN PART**. All future sales of receivership assets by the Receiver in this action must comply with the Uniform Property Sale Procedures established herein, unless excused by order of the Court. If the Receiver seeks relief from any of these requirements in a noticed motion, the Court will afford all interested parties and non-parties an opportunity to be heard on such motion prior to ruling.

**IT IS SO ORDERED.**

Dated: January 22, 2020

_____
Honorable Allison H. Goddard
United States Magistrate Judge