UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SECURITIES AND EXCHANGE
COMMISSION,

Plaintiff,

v.

GINA CHAMPION-CAIN AND ANI
DEVELOPMENT, LLC,

Defendants, and

AMERICAN NATIONAL
INVESTMENTS, INC.,

Relief Defendant.

Case No.: 3:19-cv-1628-LAB-AHG

**ORDER REGARDING PENDING
PROPERTY SALE MOTIONS**

**[ECF Nos. 148, 150, 165, 169, 176]**

## I.    BACKGROUND

The Court has recounted the procedural background of this case in several other orders and will not rehash it in its entirety herein. *See* ECF Nos. 54, 162, 163, 166. Relevant here, the Securities and Exchange Commission ("SEC") brought this action against Defendants Gina Champion-Cain and ANI Development, LLC, and Relief Defendant American National Investments, Inc., on August 28, 2019, alleging Defendants engaged in a liquor license escrow scheme that purportedly defrauded lenders and investors out of more than $120 million. Upon a stipulated joint motion by the parties, the Court established an equity receivership and appointed Krista Freitag as a permanent Receiver of Defendant ANI Development, LLC and Relief Defendant American National Investments, Inc. on September 3, 2019. ECF No. 6 ("the Appointment Order"). In the Appointment Order, the Court authorized the Receiver to take control over all funds and assets owned, managed, or in the possession or control of the receivership entities. *See id.* at 14-16. The receivership assets include all premises owned, leased, occupied, or otherwise controlled by the receivership entities. *Id.* at 14.

On December 11, 2019, Chief Judge Burns granted the parties' Joint Motion (ECF No. 156) to give limited consent to the undersigned to hear and directly decide all motions filed in this action to approve sales of receivership assets. ECF No. 160. *See also* 28 U.S.C. § 636(c); CivLR 72.1(g). Pursuant to the grant of consent, the Court set a hearing on all then-pending property motions for January 24, 2020. ECF No. 164. Further, the Court set a briefing schedule dictating that any additional property sale motions related to receivership assets that the Receiver filed by December 27, 2019 would be addressed at the January 24th hearing. *Id.* The Court also set response and reply deadlines on any such motions for January 10 and January 17, 2020, respectively. *Id.* Finally, the Court ordered the Receiver to file proposed uniform sale procedures to govern all future property sale motions in this action, which the Receiver did by the deadline of January 3, 2020, and permitted objections to her proposal to be filed by January 10, 2020. *Id.*; ECF No. 195.

Adopting in part the Receiver's proposal, the Court issued an order establishing uniform sale procedures on January 22, 2020. ECF No. 219.

In addition to the two pending property sale motions the Receiver had already filed when the Court set its briefing schedule for the January 24, 2020 hearing, the Receiver filed three more property sale motions by the deadline of December 27, 2019. These motions include:

(1) the Receiver's Motion for (A) Approval of Sale of Real Property Located at 805 Brighton Court; and (B) Authority to Pay Broker's Commission (ECF No. 148) ("the Brighton Court Motion");

(2) the Receiver's Motion for Authority to (A) Engage Licensed Auctioneer, (B) Utilize Liquor License Broker to Sell Liquor Licenses, and (C) Sell Personal Property (ECF No. 150) ("the Auctioneer Motion");

(3) the Receiver's Motion for (A) Approval of Sale of Rancho Mirage Property; and (B) Authority to Pay Broker's Commission (ECF No. 165) ("the Rancho Mirage Motion");

(4) a Joint Motion for Approval of Sale of Personal Property and Liquor License Associated with the Restaurant Formerly Known as the Patio on 101 (ECF No. 169) ("the Patio on 101 Motion"), filed by the Receiver, Plaintiff Securities and Exchange Commission ("the SEC"), and Defendant Gina-Champion Cain; and

(5) a Joint Motion for Approval of Sale of Personal Property and Liquor License Associated with the Patio on Goldfinch Restaurant (ECF No. 176) ("the Patio on Goldfinch Motion"), filed by the Receiver, the SEC, and Defendant Gina-Champion Cain.

No express opposition was filed by any party or interested non-party by the deadline of January 10, 2020. However, interested non-party CalPrivate Bank filed responses to the Auctioneer Motion and the Rancho Mirage Motion on January 8 and January 9, 2020, respectively. ECF Nos. 198, 204. The Court will discuss CalPrivate Bank's responses in more detail in its Discussion Section.

The Court held a hearing on all five motions on January 24, 2020. ECF No. 225. Upon review of the relevant briefing and in consideration of the testimony at the hearing, the Court **GRANTS** all five motions, for the reasons explained more fully below.

## II.    LEGAL STANDARD

"[I]t is a recognized principle of law that the district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership." *SEC v. Lincoln Thrift Ass'n*, 577 F.2d 600, 606 (9th Cir. 1978). *See also SEC v. Hardy*, 803 F.2d 1034, 1037 (9th Cir. 1986) ("[A] district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad.").

Where a district court sits in equity, "[u]nless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied. 'The great principles of equity, securing complete justice, should not be yielded to light inferences, or doubtful construction.'" *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946). The Court thus has "inherent equitable authority to issue a variety of 'ancillary relief' measures in actions brought by the SEC to enforce the federal securities laws." *SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980). In recognition of such "inherent equitable authority" of federal district courts, the Ninth Circuit "has repeatedly approved imposition of a receivership in appropriate circumstances." *Id.*

As part of its wide discretion to direct the appropriate relief in an equity receivership, the district court sitting in equity and having custody and control of property "has power to order a sale of the same in its discretion. The power of sale necessarily follows the power to take control of and to preserve property[.]" *SEC v. Am. Capital Investments, Inc.*, 98 F.3d 1133, 1144 (9th Cir. 1996), *abrogated on other grounds by Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998) (quoting 2 Ralph E. Clark, Treatise on Law & Practice of Receivers § 482 (3d ed. 1992) (hereinafter "Clark on Receivers"). Consequently, a federal equity receiver "can conduct a judicial sale of real property that is

4

property within their 'possession and control' and within the court's territorial jurisdiction, where all parties of interest have been brought before the court." *Am. Capital Investments, Inc.*, 98 F.3d at 1145 n.17 (citation omitted). However, if the court approves the sale, such approval does not purport to convey legal title to the buyer; rather, the sale conveys "'good,' equitable title enforced by an injunction against suit." *Id.* (citing <u>Clark on Receivers</u> §§ 342, 344, 482(a), 487, 489, 491). In so doing, the court "protects the purchaser against interference and assures him a quiet title and quiet enjoyment." *Id.* (quoting <u>Clark on Receivers</u> § 487).

"The power of a district court to impose a receivership or grant other forms of ancillary relief does not in the first instance depend on a statutory grant of power from the securities laws. Rather, the authority derives from the inherent power of a court of equity to fashion effective relief." *Wencke*, 622 F.2d at 1369. *See also Am. Capital Investments, Inc.*, 98 F.3d at 1145 (rejecting the assertion that "there is no federal common law of receiverships" as "vastly overstated" because "the powers of sale of federal equity receivers are well-established."). Nonetheless, federal statutes do provide some authority and guidance for courts overseeing equity receiverships. Pertinent here, 28 U.S.C. § 2001(a) provides for a public sale process of realty in the possession of an appointed receiver "upon such terms and conditions as the court directs." 28 U.S.C. § 2002 further requires that notice be published once a week for at least four weeks prior to the sale in at least one newspaper regularly issued and of general circulation in the county, state, or judicial district where the realty is located.[1] These statutory safeguards of notice and opportunity to submit overbids help to ensure that the sale is able to fetch the best price possible, which is consistent with the principle that "a primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district

---

[1] 28 U.S.C. § 2001 also provides for a private sale process under subsection (b), but the requirements of that subsection are more stringent. The Receiver does not propose a private sale here.

court for the benefit of creditors." *Hardy*, 803 F.2d at 1038. *See also United States v. Grable*, 25 F.3d 298, 303 (6th Cir. 1994) (noting that "the intent of" the requirement in 28 U.S.C. § 2001 that property be sold in the county in which the land is situated is "to bring a better price at the sale"); *SEC v. Billion Coupons, Inc.*, No. CIV. 09-00068 JMSLEK, 2009 WL 2143531, at *3 (D. Haw. July 13, 2009), *report and recommendation adopted,* No. CIV. 09-00068JMS-LEK, 2009 WL 2365696 (D. Haw. July 29, 2009) (approving a receiver's proposed alternative procedure for the sale of real property because the alternative procedure "ha[d] sufficient safeguards in order to solicit the highest price that a willing buyer in an arms-length negotiation will offer while conducting the sales in a timely and cost-efficient manner that will maximize the net sales proceeds.").

## III. DISCUSSION

As a preliminary matter, the Court turns to CalPrivate Bank's responses to the Brighton Court Motion and the Auctioneer Motion. The Court will address both responses at the outset rather than repeating the same analysis in its separate discussions of those motions.

Both responses make clear that CalPrivate Bank "does not oppose" either motion "but wants to ensure that its claim of a first priority perfected security interest in the assets of Defendant ANI Development, LLC and of ANI License Fund, LLC, is preserved[.]" ECF No. 198 at 1; *see also* ECF No. 204 at 1-2. CalPrivate Bank's claim of a priority security interest arises from a $5 million commercial loan it made to ANI License Fund, LLC in September 2015, which was later increased to $12.5 million. *See* ECF No. 31-1, Sowers Decl. According to CalPrivate Bank, the loan is secured by commercial security agreements between CalPrivate Bank and ANI License Fund, LLC and Defendant ANI Development LLC, which grant CalPrivate Bank a broad form security interest in all of the assets of these two entities. *See id.*, Sowers Decl., Exs. C, D, E, & F. Additionally, CalPrivate Bank indicated in its Response to the Receiver's Proposed Procedures Governing Future Property Sales Motions (ECF No. 205) that it would have filed similar responses to both the Patio on 101 Motion and the Patio on Goldfinch Motion (collectively,

6

"the Joint Motions") if not for its mistaken belief that no hearings had been set on those motions. *See id.* at 205 ("Both sales [proposed in the Joint Motions], if approved, apparently will generate significant net proceeds for the Receiver. Because no hearings have been set for the joint motions, [CalPrivate Bank] has not responded to them, but again asks that any approved Sales Procedures apply to such joint motions and include a provision reserving [CalPrivate Bank's] claim of a priority perfected security interest.").

The Court finds that CalPrivate Bank's responses do not raise any live dispute, and thus warrant no action by the Court in this Order. In the response regarding the Brighton Court property, CalPrivate Bank states that "the source of funds used by ANI Inc., as a Receivership Entity, to purchase the property is not identified[,]" but "[t]he most likely source of some or all of the funds used to purchase the property is the massive fraud that the SEC alleges was perpetrated by Defendants . . . . Indeed, ANI Inc. is identified by the SEC as the 'Relief Defendant.'" ECF No. 204 at 2. Similarly, the brief lodged in response to the Auctioneer Motion acknowledges that "[t]he source of funds used by Receivership Entities to acquire the liquor licenses and personal property [at issue in the motion] is not identified and does not appear to be known at this stage in the receivership. However, it should be expected, until established to the contrary, that some or all of the funds originated in the massive fraud that the SEC's Complaint alleges was perpetrated by Defendants . . . ." ECF No. 198 at 2. Therefore, it is clear from the responses that CalPrivate Bank merely wants to preserve its claim to the assets of Defendant ANI Development, LLC and ANI License Fund, LLC described above, although it admits that it is not yet known whether the receivership assets at issue in the motion qualify as such. Therefore, the Court finds the responses do not raise any ripe controversy. Indeed, CalPrivate Bank confirmed during the hearing that it has no opposition to the proposed sales at issue, and merely wants to ensure that its claim of a first-priority interest in the proceeds of the sales has been properly reserved. As is true of all interested non-parties who have appeared in this action, CalPrivate Bank's claim of an interest is not waived by the Court's approval of any sale of

receivership assets. The Court will thus treat as unopposed all property sale motions addressed in this Order.

### A. Brighton Court Motion (ECF No. 148)

The Brighton Court Motion concerns a residential property within the receivership estate located at 805 Brighton Court, San Diego, California. *See* ECF No. 76-1, Ex. A; ECF No. 148-1 at 5. Receivership Entity 6050 El Cajon Blvd, LLC purchased the Brighton Court property for $950,000 on December 23, 2015. ECF No. 148-2, Freitag Decl. ¶ 2; *see also* ECF No. 6 at 6 (Appointment Order listing 6050 El Cajon Blvd, LLC as a receivership entity).

Following her appointment, the Receiver and her staff performed an analysis of the value of the Brighton Court property, by reviewing automated valuation scores for the property and surveying the market-comparable properties. ECF No. 148-1 at 5. The Receiver also interviewed licensed brokers with experience selling residential properties in the same area, ultimately selecting Pacific Pines Real Estate ("Broker") as the broker to list the property for sale on the Multiple Listing Service ("MLS") at the end of September 2019 with a listing price of $1,249,900. *Id.*; Freitag Decl. ¶ 3. Broker listed the property on its own website in addition to the MLS and held an open house, ultimately receiving two offers at or near the full list price. After negotiations, the property went into escrow in early November 2019 with a purchase price of $1,275,000. The intended buyer is Gregory John and JoAnne Bliss Armer ("Buyer"). *Id.* ¶ 4.

Significantly, the Brighton Court property is one of seven properties in the receivership estate encumbered by a deed of trust in favor of Axos Bank. Another such property was the 1617 Thomas Avenue property, whose sale the Court has already approved. ECF No. 163. *See also* ECF No. 148-2, Freitag Decl. ¶ 5. According to the Receiver's calculations, the total estimated market value of the other five properties subject to the Axos Bank portfolio loan (not including the 1617 Thomas Avenue or Brighton Court properties) is $8,244,000. ECF No. 148-1 at 6 n.1. As explained in the Court's prior order on the 1617 Thomas Avenue property, the documents governing the loan provide for partial

8

release prices to facilitate the sale of separate properties. *See* ECF No. 163 at 7. The Receiver's estimate of the release price for the Brighton Court property is $1,183,000, and the Receiver represents to the Court in the Motion that she will verify the principal and interest balances, as well as the release price, prior to closing.[2] ECF No. 148-1 at 6.

The Receiver filed the Brighton Court Motion on December 3, 2019. ECF No. 148. The Receiver provided a breakdown of the key terms of the proposed Residential Purchase Agreement and Joint Escrow Instructions ("Purchase Agreement") between the Receiver and Buyer therein. According to those terms, the sale is subject to qualified overbids pursuant to the overbid and auction process mandated by 28 U.S.C. §§ 2001 and 2002, and described in more detail below. Buyer has deposited $40,000 into escrow. Per the listing agreement, the Receiver intends to pay Broker a commission of $12,000, plus 2.5% of the gross sale price to be paid to Buyer's broker, for a total commission of $43,875.[3] *See* ECF No. 148-1 at 7.

Additionally, the Receiver proposed compliance with the overbid and auction process set forth in 28 U.S.C. §§ 2001 and 2002 by publishing the following notice once a week for four weeks in the San Diego Union-Tribune, a newspaper of general circulation in San Diego County:

---

[2] During the January 24, 2020 hearing, the Court confirmed on the record that this estimate remains accurate, although the timing of the closings on the Thomas Avenue and Brighton Court properties may affect these numbers slightly.

[3] The Court notes that if the proposed sale is approved, the Receiver's request for authority to pay the Broker's commission has already been granted by the Court's December 5, 2019 Order Authorizing Hiring of Agents and Brokers. *See* ECF No. 153 ("[T]he Receiver is authorized to hire brokers, auctioneers, and similar agents to list, market, and . . . to sell such property as she is otherwise authorized to sell. In other words, to the extent the Receiver is authorized to sell property, the Court authorizes her to pay the expenses of selling it.").

In the action pending in U.S. District Court for the Southern District of California, Case No. 19-CV-01628-LAB-AHG, Securities and Exchange Commission v. Gina Champion-Cain, et al., notice is hereby given that the court-appointed receiver will conduct a public auction for the real property located at 805 Brighton Court in San Diego County, California. Sale is subject to Court confirmation after the auction is held. Minimum bid price is at least $1,325,000. The auction will take place on December 19, 2019 at 1:30 p.m. in front of the entrance to the United States Courthouse, 221 W. Broadway, San Diego, California. To be allowed to participate in the auction, prospective purchasers must meet certain bid qualification requirements, including submitting a signed purchase and sale agreement, an earnest money deposit of $44,000, and proof of funds. All bidders must be qualified by 5:00 p.m. PT on December 17, 2019, by submitting the required materials to the receiver at 401 W. A Street, Suite 1830, San Diego, California, 92101.

*Id.* at 11. For those interested in qualifying as bidders, the notice also provided a phone number and email address for the relevant point of contact. *Id.*

On January 13, 2020, the Receiver filed a Notice of Non-Receipt of Qualified Overbids regarding the Brighton Court Motion. ECF No. 208. There, the Receiver reported that, consistent with the Motion, she published the above notice of the sale in the *San Diego Union-Tribune* as required by 28 U.S.C. § 2002 and also posted the sale motion on the receivership website www.anireceivership.com. *Id.* Additionally, the Broker continued to market the property and notify potential purchasers about the opportunity to submit an overbid and the proposed deadline to do so. *Id.* No overbids were submitted. *Id.* Therefore, Gregory John and JoAnne Bliss Armer remain the intended Buyer.

The Court has reviewed the documents submitted by the Receiver in support of the Brighton Court Motion and finds the purchase price of $1,275,000 to be fair and reasonable. This price exceeds the listing price by $25,100 and exceeds the 2015 purchase price of the property by $325,000. ECF No. 148-2, Freitag Decl. ¶¶ 2-3. Before Buyer and Receiver entered into the Purchase Agreement, Broker listed the property on MLS, held an open house, and showed the property to interested buyers. *Id.* ¶ 7. The parties also negotiated the terms of sale, going back and forth twice with counter-offers before coming to a final agreement on terms and price of the sale. *See* ECF No. 148-3 at 13, 14.

Moreover, the Receiver's publication of notice seeking qualified overbids in the San Diego Union-Tribune complies with the requirements for the public sale procedures set forth in 28 U.S.C. §§ 2001(a) and 2002. Therefore, upon review of the relevant factual history and the Purchase Agreement itself, the Court finds the Purchase Agreement was negotiated at arm's-length and, further, that the Receiver implemented sufficient safeguards by way of the notice and overbid process to solicit the highest possible price for the property despite significant time and cost restraints. The Court is thus satisfied that the intent of the statutory scheme—to ensure that the best and highest possible price is paid for property within the receivership estate—has been fulfilled. The proposed broker's commission of approximately 3.5% of the purchase price (with 2.5% to go to the Buyer's broker and only $12,000 to go to Broker) is consistent with industry standards and, as noted above, the Court has already authorized Receiver to pay the Broker's commission and all sale costs in connection to any approved property sale. ECF No. 153.

Perhaps most importantly, the Receiver estimates that the principal balance of the Axos Bank portfolio loan will be approximately $3.2 million after the sale of 1617 Thomas Avenue (already approved) and 805 Brighton Court, while the estimated market value of the other five properties subject to the loan is $8,244,000. Thus, the Receiver estimates that net proceeds from the sale of all of the properties encumbered by the Axos Bank loan, if sold within the next six months, will produce a net recovery to the receivership estate between $3.5 and $4 million in the aggregate, not including rental revenues accrued in the interim. ECF No. 148-1 at 6. Thus, approving the sale of the Brighton Court property will permit the Receiver to pay off a significant portion of the remaining balance on the Axos Bank loan and help the Receiver to sooner realize a significant recovery to the estate, for the benefit of all creditors.

Finally, the Court questioned the Receiver further at the hearing to clarify certain details of the proposed sale, including, e.g., whether the Receiver's estimate in the Motion regarding the amount to be paid to Axos Bank from the proceeds remains accurate, confirming the approximate balance that will be left on the Axos Bank loan after the

closings of this property and the Thomas Avenue property encumbered by the same deed of trust, and the status of the Receiver's efforts to sell the five other properties encumbered by the loan. Based on these considerations, and noting in particular the lack of any express opposition to the Motion, the Court finds the Receiver has sufficiently established that the proposed sale of 805 Brighton Court and proposed distribution of the sale proceeds are consistent with principles of equity and the goal of a receivership to ensure the orderly and efficient administration of the estate for the benefit of creditors. *See Hardy*, 803 F.2d at 1038.

Therefore, the Court **GRANTS** the Motion (ECF No. 148) and **APPROVES** the sale of 805 Brighton Court, San Diego, California to Buyer Gregory John and JoAnne Bliss Armer at the proposed purchase price of $1,275,000, to be paid in cash. The Court orders the proceeds of the sale to be distributed from escrow at the close of sale as follows:

(1) Payment of the Broker's Commission in the amount of $43,875 shall be paid to Pacific Pines Real Estate;

(2) Payment of any outstanding real property taxes, to the extent any are due;

(3) Payment of reasonable and customary costs of sale, such as escrow fees, title insurance, and recording fees. The Receiver shall provide a full accounting of sale costs once the sale is complete for the Court to take into consideration in approving future real property sales;

(4) Payment of the remainder of the sale proceeds to Axos Bank to go towards the balance of the portfolio loan.

**B. Auctioneer Motion (ECF No. 150)**

The Receiver's Motion to engage a licensed auctioneer, utilize a liquor license broker to sell liquor licenses, and to sell personal property explains that the receivership estate includes restaurant and retail operations, many of which had to be quickly closed during the initial month of the Receiver's appointment due to the cash shortage in the receivership. ECF No. 150-1 at 2. These operations had equipment and other personal property of material value, including liquor licenses. Therefore, the Receiver seeks to sell

the personal property so that the former restaurant and other retail locations can be turned over to the possession of the respective landlords. *Id.* The Receiver proposes that the personal property be sold by licensed auctioneers, and plans to engage Abamex Auction Company as the primary auctioneer. With respect to the liquor licenses, the Receiver proposes to use AAA Liquor License Consulting to market and sell the liquor licenses. *Id.* at 3. Broadly, the Auctioneer Motion requests authority to sell personal property including "furniture, fixtures, equipment, and liquor licenses associated with the closed restaurant, retail and other operations," as well as "office furniture, computer equipment and some general household furniture." ECF No. 150-1 at 7-8.[4] The Receiver also requests waiver of further notices/appraisals regarding sales of receivership personalty. *Id.* at 9-10.

Notably, the Motion has already been granted in significant part by Chief Judge Burns in his Order Authorizing the Hiring of Agents and Brokers, which specifically authorizes the Receiver to hire "brokers, auctioneers, and similar agents to list, market, and to sell such property as she is otherwise authorized to sell." ECF No. 153 at 1.

Additionally, as explained in the Court's Order Establishing Uniform Property Sale Procedures (ECF No. 219), sales of personal property within a receivership estate are not constrained by the same statutory notice and auction requirements as sales of real property. *See* 28 U.S.C. § 2004 (requiring sales of personalty to comply with § 2001 "unless the court orders otherwise."). Thus, the Court has already waived the requirements of § 2001 and ordered that the Receiver need not file noticed motions seeking approval of such sales, which renders moot the same request in the Auctioneer Motion. Further, the Court adopted

---

[4] Because the personalty at issue goes beyond the restaurant equipment and liquor licenses, the Receiver notes that it may also be deemed necessary to engage one or more additional auctioneers to sell the personalty, particularly for the office furniture, fixtures, and equipment and household furniture. Additionally, the Receiver may engage other agents such as art dealers and auto dealers to sell other personalty and requests "authority to do so in her business judgment and at rates competitive in the auctioneer/broker industry[,]" promising to "use her experience in selling personal property to obtain the highest and best net recovery from all personal property assets." ECF No. 150-1 at 3.

the Receiver's proposed personalty sale procedures in full, which (1) require the Receiver to follow standard auction procedures through one or more licensed auctioneers for sales of personal property; (2) require sales of liquor licenses to be approved by the California Department of Alcoholic Beverage Control; (3) authorize the Receiver to use AAA Liquor License Consulting to assist in marketing the licenses and negotiating sales of liquor licenses that are sold to third parties not associated with former restaurant locations; and (4) authorize AAA Liquor License Consulting to receive the industry standard of a 10% commission, to be paid by the buyers. ECF No. 219 at 9-10.

Having reviewed the Auctioneer Motion, the Court finds nothing requested therein to be inconsistent with the procedures the Court has already authorized. In the interest of maximum clarity, however, the Court expressly **WAIVES** the requirements of 28 U.S.C. § 2001 and § 2004 regarding the appointment of appraisers by the Court and publication of notices with respect to personalty sales. Finally, as explained above, no express opposition to the Auctioneer Motion has been filed. Based on these considerations, the Court **GRANTS** the Motion (ECF No. 150) in full. The Receiver may engage Abamex as the primary auctioneer of restaurant equipment and use AAA Liquor License Consulting as the broker to market and sell liquor licenses. This grant of authority also includes authorizing the Receiver to engage additional liquor license brokers and/or auctioneers as she deems necessary to sell the personalty in the receivership estate, particularly since, in the Court's view, Chief Judge Burns has already authorized the Receiver to engage such agents as she sees fit, as long as the related property sales themselves are approved.

The Receiver shall be bound by the Court's Uniform Property Sale Procedures in conducting these sales. The grant of authority also incorporates by reference the Receiver's own acknowledgment in the Auctioneer Motion that "some of the Personal Property is subject to UCC security interests in favor of lenders[,]" and that "[n]othing herein is intended to adjudicate or alter any UCC security interests or rights of secured lenders with respect to Personal Property assets[.]" ECF No. 150-1 at 5. The Court finds that this

assurance adequately responds to CalPrivate Bank's request that its claim to a first-priority perfected security interest in certain receivership assets not be deemed waived.

### C. Rancho Mirage Motion (ECF No. 165)

The Rancho Mirage Motion concerns a single-family residence located at 83 Royal Saint Georges Way, Rancho Mirage, California. ECF No. 165-1 at 5. The property is part of the receivership estate because Relief Defendant American National Investments, Inc. purchased the property for $3.2 million on April 15, 2019. *Id.*

Following her appointment, the Receiver and her staff performed an analysis of the value of the Rancho Mirage property, by reviewing automated valuation scores for the property and surveying the market-comparable properties. *Id.* Additionally, the Receiver took into account that, prior to Relief Defendant's purchase, the property had previously been on the market for 593 days. The Receiver also interviewed licensed brokers with experience selling residential properties in the same area, two of whom believed that the April 2019 $3.2 million purchase price was too high and recommended a sale price of $3 million instead. *Id.* Because of its recent lengthy exposure on the market, there was little interest from brokers generally. Ultimately, the Receiver selected Keller Williams Realty ("Broker"), which listed the property for sale on the MLS for the list price of $2,999,000 on or about October 5, 2019. *Id.* at 6. Broker listed the property on its own website in addition to the MLS and held an open house, ultimately receiving two offers at the full list price in cash a few weeks apart. *Id.* After negotiations, the property went into escrow on or around November 15, 2019 with a purchase price of $2,999,000, to be paid in cash. The intended buyer is Paul Antle ("Buyer"). *Id.*

The Rancho Mirage Property is encumbered by a deed of trust in favor of Seattle Funding Group ("SFG"). The outstanding balance on the interest-only loan from SFG is approximately $1.55 million, and deferred interest through December 31, 2019 is $26,666.69. *Id.* Notably, both the short-term payment rate and the actual note rate will jump to 8.99% (from 5.99% and 8.49%, respectively) on March 1, 2020, increasing the debt service payment from $7,737.08 per month to $14,608.75 per month. *Id.* at 6 n.2. However,

SFG has agreed to waive default interest if the loan is brought current and taxes are paid current, the loan does not go into monetary default again, and the loan is paid in full before the maturity date in November 2020. *Id.* at 6.

The Receiver filed the Rancho Mirage Motion on December 12, 2019. ECF No. 165. The Receiver provided a breakdown of the key terms of the proposed Residential Purchase Agreement and Joint Escrow Instructions, including an Addendum ("Purchase Agreement") between the Receiver and Buyer therein. According to those terms, the sale is subject to qualified overbids pursuant to the overbid and auction process mandated by 28 U.S.C. §§ 2001 and 2002. Buyer has deposited $89,990 into escrow. Per the listing agreement, the Receiver intends to pay Broker a commission of 4% of the gross sale price, which will be split with Buyer's broker, with 2.5% going to Buyer's broker and 1.5% going to Broker. ECF No. 165-1 at 7. The Receiver intends to pay the full balance owed to SFG directly from escrow at closing, and estimates the net proceeds from the sale after that payment will be $1.26 million.

Additionally, the Receiver proposed compliance with the overbid and auction process set forth in 28 U.S.C. §§ 2001 and 2002 by publishing the following notice once a week for four weeks in the Desert Sun, a newspaper of general circulation in the Rancho Mirage area:

> In the action pending in U.S. District Court for the Southern District of California, Case No. 19-CV-01628-LAB-AHG, Securities and Exchange Commission v. Gina Champion-Cain, et al., notice is hereby given that the court-appointed receiver will conduct a public auction for the real property located at 83 Royal St. Georges Way, Rancho Mirage in Riverside County, California. Sale is subject to Court confirmation after the auction is held. Minimum bid price is at least $3,049,000. The auction will take place on January 9, 2020 at 1:30 p.m. in front of the entrance to the United States Courthouse, 221 W. Broadway, San Diego, California. To be allowed to participate in the auction, prospective purchasers must meet certain bid qualification requirements, including submitting a signed purchase and sale agreement, an earnest money deposit of $98,989, and proof of funds. All bidders must be qualified by 5:00 p.m. PT on January 7, 2020, by submitting the required materials to the receiver at 401 W. A Street, Suite 1830, San

Diego, California, 92101.

*Id.* at 11. For those interested in qualifying as bidders, the notice also provided a phone number and email address for the relevant point of contact. *Id.*

In her Reply to the present Motion, the Receiver reported that in addition to running the above-described publication of notice in the Desert Sun as proposed, she also posted the sale motion on the receivership website [www.anireceivership.com](www.anireceivership.com) and continued to market the property through Broker, notifying potential purchasers about the opportunity to submit an overbid and the deadline to do so. ECF No. 209. No qualified overbids were received by the deadline of January 7, 2020 at 5:00 p.m. *Id.* Therefore, Paul Antle remains the intended Buyer.

Upon review of the documents submitted by the Receiver in support of the Rancho Mirage Motion, the Court **GRANTS** the Motion (ECF No. 165). Although it is lower than the previous purchase price of $3.2 million, the proposed purchase price of $2,999,000 is nonetheless fair and reasonable when viewed in light of all relevant circumstances. As already explained, multiple brokers familiar with the real estate market in the area opined that the previous purchase price was too high, and that the property would not sell for a similar or higher price after its recent lengthy exposure to the market. The Court must also take into account the need for the sale to occur quickly due to the nature of the Receiver's agreement with SFG. If the proceeds of the sale are not realized and used to pay off the loan in full prior to March 1, 2020, the debt service payments on the SFG loan will nearly double. Further, if the Receiver does not meet her end of bargain by November 2020, SFG's agreement to waive default interest will also fall through. Therefore, the Court recognizes that time was of the essence in finding a buyer, and given the amount of time the property previously languished on the market before Relief Defendant's purchase, the Receiver acted reasonably in taking the advice of knowledgeable brokers to choose the list price (and ultimate purchase price) of $2,999,000. And after the sale is completed, the Receiver will be able to pay off a significant debt of the receivership estate and return a net gain of approximately $1.26 million to the estate, which will ultimately benefit all creditors.

Additionally, before Buyer and Receiver entered into the Purchase Agreement, Broker listed the property on MLS, held an open house, and showed the property to interested buyers. The Receiver continued to market the property after entering into the contingent Purchase Agreement with Buyer and made significant efforts to solicit qualified overbids. The proposed broker's commission of approximately 4% of the gross sale price, to be split with Buyer's broker, is consistent with industry standards and, as noted above, the Court has already authorized Receiver to pay the Broker's commission and all sale costs in connection to any approved property sale. ECF No. 153.

Moreover, the Receiver's publication of notice seeking qualified overbids in the Desert Sun and on the receivership website complies with the requirements for the public sale procedures set forth in 28 U.S.C. §§ 2001(a) and 2002. Therefore, upon review of the relevant factual history and the Purchase Agreement itself, the Court finds the Purchase Agreement represents a fair, arm's-length negotiation and, further, that the Receiver implemented adequate safeguards by way of the notice and overbid process to solicit the highest possible price for the property despite significant time and cost restraints. As the Court has found with respect to the other approved real estate sales, the Court is satisfied that the proposed sale is consistent with the aims of an equitable receivership to ensure the orderly and efficient administration of the estate for the benefit of creditors. *See Hardy*, 803 F.2d at 1038.

Finally, the Court questioned the Receiver further at the hearing to clarify certain details of the proposed sale, including, e.g., confirming that the details included in the Motion regarding the Receiver's agreement with Seattle Funding Group are still current, confirming that the Receiver could not state the precise amount to be paid to SFG at closing, but that SFG and the Receiver agreed that the Court should require payment of an amount sufficient to discharge the SFG lien, and confirming that the Receiver has not entered into agreements with any other creditors regarding the use of the estimated remaining net proceeds, and that those proceeds will go into the receivership estate. Based on these considerations, and noting in particular the lack of opposition to the Motion, the

3:19-cv-1628-LAB-AHG

Court finds the Receiver has sufficiently established that the proposed sale of the Rancho Mirage property and proposed distribution of the sale proceeds is in the best interest of the receivership estate and should be approved.

Therefore, the Court **GRANTS** the Motion (ECF No. 165) and **APPROVES** the sale of 83 Royal Saint Georges Way, Rancho Mirage, California to the intended Buyer Paul Antle at the proposed purchase price of $2,999,000, to be paid in cash. The Court orders the proceeds of the sale to be distributed from escrow at the close of sale as follows:

(1) Payment of the Broker's Commission in the amount of $119,960 shall be paid to Keller Williams Realty, which will bear the responsibility of fulfilling the agreement to split that amount with Buyer's broker;

(2) Payment of any outstanding real property taxes, to the extent any are due;

(3) Payment of reasonable and customary costs of sale, such as escrow fees, title insurance, and recording fees. The Receiver shall provide a full accounting of sale costs once the sale is complete for the Court to take into consideration in approving future real property sales;

(4) Payment to Seattle Funding Group directly from escrow at closing, in an amount sufficient to extinguish SFG's interest in the property;

(5) The remainder of the proceeds will go to the receivership estate.

The Court's grant of this Motion should not be construed to extinguish any purported creditor's asserted interest in the remainder of the proceeds that will go into the estate.

**D. Patio on 101 and Patio on Goldfinch Motions (ECF Nos. 169, 176)**

Unlike the other motions at issue in this Order, the Patio on 101 and Patio on Goldfinch Motions are Joint Motions joined by the SEC and Defendant Champion-Cain. The Joint Motions are considered together because they ask for nearly identical relief. Broadly, both motions concern former restaurant spaces that were leased to receivership entities by landlord entities. Subject to court approval, the Receiver and the landlords have entered into sale agreements allowing the landlord entities to purchase the liquor licenses, the restaurant equipment, and other personal property in the former restaurant locations. In

both cases, the landlords have further agreed to excuse unpaid rent owed by the receivership entity tenants as part of the sale agreements.

More specifically, in the Patio on 101 Motion, the parties ask the Court to approve the sale agreement between the Receiver and Buyer MP1 RFE, LLC, who leased commercial space to receivership entity ANI Commercial CA III, LP for the purpose of operating the restaurant The Patio on 101. ECF No. 169 at 2. Now that The Patio on 101 has closed, Buyer wishes to obtain restaurant furniture, fixtures, and equipment left in the space as well as the liquor license associated with the restaurant for a total price of $120,000. Per the terms of the proposed sale agreement, Buyer also agrees to release any and all claims for unpaid rent owed by ANI Commercial CA III, LP or the receivership estate, which the Receiver estimated at approximately $51,000 through November 30, 2019. *Id.* at 3.

In considering whether the tentative agreement with Buyer is in the best interest of the receivership estate, the Receiver obtained appraisals from Abamex Auction Company estimating that the personal property would fetch between $18,000 and $36,000 at auction, netting only $15,000-$30,000 after auctioneer expenses. *Id.* at 2-3. Additionally, the Receiver obtained an estimate from a licensed broker who specializes in the purchase and sale of liquor licenses in California as well as from an attorney with experience in liquor license matters, who opined that the liquor license value is approximately $100,000-$150,000 (if tied to the leased premises) or approximately $65,000-$80,000 if sold to a buyer who has to have the approved location associated with the license changed. *Id.* at 3. Based on these estimates, the Receiver calculates that the highest possible price the estate could obtain for the personalty and liquor license, if pulled from the premises, would be $110,000. Therefore, the Receiver believes that the sale agreement with Buyer MP1 RFE, LLC for $120,000 and forgiveness of unpaid rent will bring the highest possible amount of money to the receivership estate, compared to having to sell the personal property through auction and selling the liquor license on the open market. *Id.* at 3-4.

Similarly, the Patio on Goldfinch Motion is premised on a sale agreement, subject to Court approval, between Receiver and Buyer Mission Hills, Retail, LLC, who initially leased the restaurant space to receivership entity American National Investments, Inc. ECF No. 176 at 2. The lease was later amended and assigned to ANI Commercial CA III, LP. *Id.* Now that the restaurant has closed, Buyer seeks to purchase the restaurant furniture, fixtures, and equipment in the former space as well as the liquor license associated with the premises for a proposed purchase price of $152,000. As part of the agreement, Buyer will also release any and all claims for unpaid rent owed by ANI Commercial CA III, LP, which the Receiver estimates at $77,000 through December 31, 2019. Again, the Receiver obtained an appraisal from Abamex Auction Company estimating the value of the personal property to be $68,895, which would net approximately $60,000, and the Receiver obtained an estimate of the value of liquor license at $100,000-$150,000 (if tied to the leased premises) or approximately $65,000-$80,000 if sold to a buyer who has to have the approved location associated with the license changed. *Id.* at 3. Consequently, the Receiver estimates that the highest possible price the estate could obtain for the personalty and liquor license, if pulled from the premises, would be $140,000, and thus asserts that the proposed sale for $152,000 plus forgiveness of unpaid rent is fair, reasonable, and exceeds the value the Receiver could otherwise obtain from these assets. *Id.* at 3-4.

Based on these considerations, the Court **GRANTS** both unopposed Joint Motions (ECF Nos. 169, 176). The Court finds no significant analysis is required here, because the details of the proposed sales, as outlined above, are fair and reasonable on their face. The Court has reviewed the underlying sale agreements and finds them consistent with the representations in the Joint Motions. The Court is persuaded that not only are the proposed sales fair and reasonable, but they also represent the best and most efficient available use of the personalty at issue for the benefit of the receivership estate. Further, the sales at issue involve only personal property. Thus, in light of the Court's Order Establishing Uniform Sale Procedures (ECF No. 219) and its analysis above regarding the Auctioneer Motion,

the Court finds these proposed personalty sales have already met the Court's established requirements and have been impliedly approved under its prior analyses.

The Court thus **APPROVES** the proposed sales and distributions as follows:

(1) With respect to the sale of personal property and liquor license associated with the restaurant formerly known as Patio on 101, the Court approves payment of $120,000 from Buyer MP1 RFE, LLC to the Receiver, less escrow costs, with all net proceeds to go to the receivership estate.

(2) With respect to the sale of personal property and liquor license associated with the restaurant formerly known as Patio on Goldfinch, the Court approves payment of $152,000 from Buyer Mission Hills, Retail, LLC to the Receiver, less escrow costs, with all net proceeds to go to the receivership estate.

The Court's grant of these Motions should not be construed to extinguish any purported creditor's asserted interest in the remainder of the proceeds that will go into the estate.

## IV.    CONCLUSION

For the reasons set forth above, the Court **ORDERS** as follows:

(1) the Receiver's Motion for (A) Approval of Sale of Real Property Located at 805 Brighton Court; and (B) Authority to Pay Broker's Commission (ECF No. 148) is **GRANTED**;

(2) the Receiver's Motion for Authority to (A) Engage Licensed Auctioneer, (B) Utilize Liquor License Broker to Sell Liquor Licenses, and (C) Sell Personal Property (ECF No. 150) is **GRANTED**;

(3) the Receiver's Motion for (A) Approval of Sale of Rancho Mirage Property; and (B) Authority to Pay Broker's Commission (ECF No. 165) is **GRANTED**;

(4) the Joint Motion for Approval of Sale of Personal Property and Liquor License Associated with the Restaurant Formerly Known as the Patio on 101 filed by the Receiver, the SEC, and Defendant Gina-Champion Cain (ECF No. 169) is **GRANTED**;

(5) the Joint Motion for Approval of Sale of Personal Property and Liquor License Associated with the Patio on Goldfinch Restaurant filed by the Receiver, the SEC, and Defendant Gina-Champion Cain (ECF No. 176) is **GRANTED**.

Nothing herein should be construed as a waiver or extinguishment of any purported creditor's claim of any interest in the net proceeds of the approved sales of receivership assets that are slated for distribution to the receivership estate.

**IT IS SO ORDERED.**

Dated: January 24, 2020

_____
Honorable Allison H. Goddard
United States Magistrate Judge