UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>         Plaintiff,<br><br>v.<br><br>GINA CHAMPION-CAIN AND ANI DEVELOPMENT, LLC,<br><br>         Defendants, and<br><br>AMERICAN NATIONAL INVESTMENTS, INC.,<br><br>         Relief Defendant. | Case No.: 3:19-cv-1628-LAB-AHG<br><br>**ORDER GRANTING RECEIVER'S MOTION FOR APPROVAL OF SALE OF CARMEL PROPERTY**<br><br>**[ECF No. 246]** |

## I. BACKGROUND

On August 28, 2019, the Securities and Exchange Commission ("SEC") brought this action against Defendants ANI Development, LLC ("ANI Development") and Gina Champion-Cain and Relief Defendant American National Investments, Inc. ("ANI Inc."), alleging violations of federal securities laws based on a purportedly fraudulent liquor license loan scheme. ECF No. 1. Along with the Complaint, the SEC filed a Joint Motion and Stipulated Request seeking a preliminary injunction, appointment of a permanent Receiver, and other related relief (ECF No. 2), which the Court granted on September 3, 2019. ECF No. 6 ("the Appointment Order"). In the Appointment Order, the Court established an equity receivership, appointing Krista Freitag as Receiver of ANI Development and ANI Inc. and authorizing her to take control over all funds and assets owned, managed, or in the possession or control of the receivership entities. *See id.* at 14-16. Relevant here, the Receiver was granted full power over all premises owned, leased, occupied, or otherwise controlled by the receivership entities. *Id.* at 14. On December 11, 2019, Chief Judge Burns granted the parties' Joint Motion (ECF No. 156) to give limited consent to the undersigned to hear and directly decide all motions filed in this action to approve sales of receivership assets. ECF No. 160. *See also* 28 U.S.C. § 636(c); CivLR 72.1(g). Accordingly, all property sale motions are set before the undersigned pursuant to that grant of consent.

According to the Receiver's Verified Initial Report, the receivership encompasses approximately 70 entities, including over 60 real properties and operating businesses at the time of the Receiver's appointment. ECF No. 76-1 at 11. Attached to the Report is a Preliminary Real Estate and Liquor License Asset Schedule (ECF No. 76-2), which lists all premises leased or owned by the receivership entities, including a vacation rental home located at the SE Corner of Casanova Street and Palou Ave in Carmel by the Sea, 93921 (the "Carmel Property"). ECF No. 76-2 at 6. On February 13, 2020, the Receiver filed the present Motion for Approval of Sale of Carmel Property. ECF No. 246 ("the Carmel Property Motion"). On February 14, 2020, the Court entered an order setting a briefing

schedule and hearing on March 16, 2020. ECF No. 248. The Court set a deadline of March 2, 2020 to file any response in opposition to the Carmel Property Motion, and noted that "if no opposition is filed by the deadline, the Court may take the motion under submission without oral argument." *Id.* at 2. No opposition was filed. Therefore, being fully advised and noting the lack of opposition, the Court will **GRANT** the Carmel Property Motion without oral argument,[1] for the reasons explained more fully below.

## II. LEGAL STANDARD

"[I]t is a recognized principle of law that the district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership." *SEC v. Lincoln Thrift Ass'n*, 577 F.2d 600, 606 (9th Cir. 1978). Where a district court sits in equity, "[u]nless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied. 'The great principles of equity, securing complete justice, should not be yielded to light inferences, or doubtful construction.'" *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946).

As part of its wide discretion, the district court sitting in equity and having custody and control of property "has power to order a sale of the same in its discretion. The power of sale necessarily follows the power to take control of and to preserve property[.]" *SEC v. Am. Capital Investments, Inc.*, 98 F.3d 1133, 1144 (9th Cir. 1996), *abrogated on other grounds by Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998) (quoting 2 Ralph E. Clark, Treatise on Law & Practice of Receivers § 482 (3d ed. 1992)). If the court approves an equitable receiver's proposed property sale, the sale "does not . . . purport to convey 'legal' title, but rather 'good,' equitable title enforced by an injunction against suit."

---

[1] For the same reasons, the Court took both the present motion and another pending property sale motion under submission on the papers on March 12, 2020 and accordingly vacated the March 16th hearing. ECF No. 273.

*Id.* (citing 2 Clark, Treatise on Law & Practice of Receivers, §§ 342, 344, 482(a), 487, 489, 491).

Pursuant to 28 U.S.C. § 2001(a), realty in the possession of an appointed receiver is subject to a public sale process, "upon such terms and conditions as the court directs." 28 U.S.C. § 2002 further requires that notice be published once a week for at least four weeks prior to the sale in at least one newspaper regularly issued and of general circulation in the county, state, or judicial district where the realty is located.[2] These safeguards of notice and opportunity to submit overbids help to ensure that the sale is able to fetch the best price possible, which is consistent with the principle that "a primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986). *See also United States v. Grable*, 25 F.3d 298, 303 (6th Cir. 1994) (noting that "the intent of" the requirement in 28 U.S.C. § 2001 that property be sold in the county in which the land is situated is "to bring a better price at the sale").

### III. DISCUSSION

#### A. Background of the Property and Proposed Sale

The Carmel Property is held by the Cain Family Trust and was originally purchased on September 30, 2016 for $1,395,000. ECF No. 246-1 at 5. Months before the Receiver's appointment in September 2019, Defendant Gina Champion-Cain and her husband Steven Cain, as Trustees of the Cain Family Trust, engaged licensed broker Carmel Realty Company ("Broker") to list the Carmel Property for sale. The Carmel Property was put on the market in May 2019 at a list price of $1,950,000. *Id.*

Following her appointment, the Receiver and her staff reviewed automated valuation scores for the Carmel Property and a survey of market-comparable properties. *Id.* The

---

[2] 28 U.S.C. § 2001 also provides for a private sale process under subsection (b), but the requirements of that subsection are more stringent. The Receiver does not propose a private sale here.

4

Receiver also reviewed the listing agreement with Broker and conferred with Broker over time regarding the list price. *Id.* at 5-6. According to Broker, the Carmel Property was advertised through multiple real estate websites and database and through print media, and Broker held a total of 21 open houses and 21 private showings in addition to broker tours, without receiving any offers. *Id.* at 6. Following detailed discussions with Broker regarding the passage of time with no offers, and considering closed sales comparisons in the market, the Receiver concluded the list price was too high and instructed the Broker to lower the price intermittently to generate more interest from prospective buyers. *Id.*

In early December 2019, Michael Ward McColl and Gwyn Fawcett McColl ("Buyer") made an offer of $1,450,000 on the Carmel Property. *Id.* After negotiations, the Receiver and Buyer ultimately agreed on a sale price of $1,550,000 on December 16, 2019. *Id.*; *see also* ECF No. 246-3 at 14, Ex. A to Freitag Decl. (Receiver's acceptance of Buyer Counter Offer No. 1). The Receiver and Buyer executed a California Residential Purchase Agreement and Joint Escrow Instructions ("Purchase Agreement"), along with an Addendum making court approval of the sale a condition to closing and providing for the overbid and auction process required by 28 U.S.C. § 2001(a). ECF No. 246-3 at 15-22. Buyer has deposited $43,500 into escrow. ECF No. 246-1 at 7.

**B. Proposed Procedures and Distribution**

In the motion seeking approval of the sale, the Receiver proposed compliance with the overbid and auction process by publishing the following notice in the Monterey Herald once a week for four weeks:

> In the action pending in U.S. District Court for the Southern District of California, Case No. 19-CV-01628-LAB-AHG, Securities and Exchange Commission v. Gina Champion-Cain, et al., notice is hereby given that the court-appointed receiver will conduct a public auction for the real property located at SE CNR Casanova & Palou, Carmel by the Sea, California 93921 in Monterey County, California. Sale is subject to Court confirmation after the auction is held. Minimum bid price is at least $1,600,000. The auction will take place on March 12, 2020 at 1:30 p.m. in front of the entrance to the United States Courthouse, 221 W. Broadway, San Diego, California. To be allowed to participate in the auction, prospective purchasers must meet certain bid

5

qualification requirements, including submitted a signed purchase and sale agreement, an earnest money deposit of $47,850, and proof of funds. All bidders must be qualified by 5:00 p.m. PT on March 10, 2020, by submitting the required materials to the receiver at 501 West Broadway, Suite 290, San Diego, California, 92101.

ECF No. 246-1 at 11. For those interested in qualifying as bidders, the notice also provided a phone number and email address for the relevant point of contact. *Id.*

The above notice was published as proposed. On March 11, 2020 the Receiver filed a Notice of Non-Receipt of Qualified Overbids Regarding the Carmel Property Motion. ECF No. 270. In the Notice, the Receiver informs the Court that, after filing the Carmel Property Motion and in addition to publishing the notice in the Monterey Herald, she posted notice of the Motion on the receivership website anireceivership.com, and continued to market the property and notify potential purchasers about the opportunity to submit an overbid by March 10, 2020. *See id*. No overbids were submitted by the deadline. Therefore, Michael Ward McColl and Gwyn Fawcett McColl are still the intended Buyer.

Turning to the Receiver's proposed distribution of the anticipated sale proceeds, the Carmel Property is encumbered by a deed of trust in favor of Select Portfolio Servicing, Inc. ("SPS"). ECF No. 246-1 at 6. The outstanding principal balance of the loan was approximately $908,000 as of February 1, 2020, and the Receiver continues to pay the loan current. *Id.* The Receiver intends to use the proceeds of the sale of the Carmel Property to pay off the SPS loan and estimates the amount required to do so will be between $905,000 and $915,000, assuming a late March or early April 2020 closing. *Id.* The Receiver also estimates that the property taxes to be paid at closing will be between $4,000 and $6,000, and that costs of sale including escrow, title and recording fees will be approximately $8,000. Additionally, the Receiver estimates that the cost to perform statutorily mandated repairs of the sewer line and installation of carbon monoxide detectors, along with other maintenance items, will total approximately $9,000, to be paid from escrow. The Broker's fee pursuant to the listing agreement is 5% of the sale price, or $77,500, to be split with Buyer's broker. *Id.* at 6-7. Based on these estimates, the Receiver anticipates that the net

sale proceeds remaining to be distributed to the receivership estate will be in the range of $535,000 to $545,000. *Id.* at 7.

Notably, the Court's Order Establishing Uniform Property Sale Procedures ordinarily requires the Receiver to "consider[] at least two brokers before choosing the listing broker with respect to each proposed property sale, except if the Receiver has previously worked with the same broker to sell receivership property or otherwise obtains an excusal of this requirement by the Court." ECF No. 219 at 4-5. Here, the Receiver seeks relief from this requirement because the Carmel Property was already subject to a listing agreement with Broker Carmel Realty Company prior to the Receiver's appointment, and the Receiver therefore "did not (and could not) consider other licensed brokers for the listing." ECF No. 246-1 at 5 n.2.

**C. Court Approval of the Proposed Procedures and Sale**

The Court has reviewed the documents submitted by the Receiver in support of the Carmel Property Motion and finds the purchase price of $1,550,000 to be fair and reasonable. This price exceeds the 2016 purchase price of the property by $155,000. ECF No. 246-2, Freitag Decl. ¶ 2-3. Although this difference does not reflect an especially lucrative return, the property was on the market for approximately seven months before any offer was received despite significant efforts by Broker to market and advertise the property. Before Buyer and Receiver entered into the Purchase Agreement, Broker listed the property on the MLS, Realtor.com, and a custom website, held 21 open houses and 21 private showings, and showed the property on multiple broker tours. *Id.* ¶ 4 n.3. The Receiver only instructed the Broker to reduce the listing price after significant time passed with no offers despite diligent marketing of the property. The parties also negotiated the terms of sale, going back and forth twice with counter-offers before coming to a final agreement on terms and price of the sale. *See* ECF No. 246-3 at 13, 14.

Moreover, the Receiver's publication of notice seeking qualified overbids in the Monterey Herald, in addition to the solicitation of overbids through the receivership website and continued efforts to market the property, establish that the Receiver not only

7

met but exceeded the requirements for the public sale procedures set forth in 28 U.S.C. §§ 2001(a) and 2002 designed to ensure the best price is obtained. Therefore, upon review of the factual history and the Purchase Agreement itself, the Court finds the Purchase Agreement was negotiated at arm's-length and, further, that the Receiver implemented sufficient safeguards by way of the notice and overbid process to garner the highest possible price for the property. The Court is thus satisfied that the intent of the statutory scheme—to ensure that the best and highest possible price is paid for property within the receivership estate—has been fulfilled.

The Court will also grant the Receiver's request to excuse the requirement of considering at least two brokers for property sales. Taking into account the other information in the Carmel Property Motion, there is nothing to indicate that moving forward with the broker who already held the listing agreement has had any negative impact on the sale of the property. For example, the proposed purchase price of $1,550,000 is close to the Estimated Market Value of $1,600,000 of the Carmel Property in the October 2019 Preliminary Real Estate and Liquor License Asset Schedule, and, as already noted, it exceeds the 2016 purchase price by $155,000. Additionally, the Broker's commission of 5% of the gross sales price, to be split with the Buyer's broker, is consistent with industry standards. Most importantly, the Receiver represents that she did not have the option of considering other brokers due to the existing listing agreement. Therefore, the Court finds good cause to **WAIVE** that portion of its sale procedures requiring consideration of more than one broker, and approves the Receiver's use of Carmel Realty Company as the Broker in accordance with the listing agreement. *See SEC v. Billion Coupons, Inc.*, No. CIV. 09-00068 JMSLEK, 2009 WL 2143531, at *3 (D. Haw. July 13, 2009), *report and recommendation adopted,* No. CIV. 09-00068JMS-LEK, 2009 WL 2365696 (D. Haw. July 29, 2009) (approving a receiver's proposed alternative procedure for the sale of real property because the alternative procedure "ha[d] sufficient safeguards in order to solicit the highest price that a willing buyer in an arms-length negotiation will offer while

conducting the sales in a timely and cost-efficient manner that will maximize the net sales proceeds.").

All other uniform property sale procedures have been satisfied. Based on these considerations, and noting in particular the lack of any express opposition to the Motion, the Court finds the Receiver has sufficiently established that the proposed sale of the Carmel Property and proposed distribution of the sale proceeds are consistent with principles of equity and the goal of a receivership to ensure the orderly and efficient administration of the estate for the benefit of creditors. *See Hardy*, 803 F.2d at 1038.

## IV.  CONCLUSION

Having considered the Receiver's Motion for Approval of Sale of Carmel Property (ECF No. 246) on its merits and noting that there is no opposition thereto, the Court **GRANTS** the Motion, and **APPROVES** the proposed sale of the single-family residence located at SE CNR Casanova & Palou, Carmel by the Sea, California 93921 to Buyer Michael Ward McColl and Gwyn Fawcett McColl at the purchase price of $1,550,000.

The Court further **ORDERS** the proceeds of the sale to be distributed from escrow at the close of sale as follows:

(1) Payment of the Broker's Commission in the amount of $77,500 shall be paid to Carmel Realty Company in accordance with the listing agreement;

(2) Payment of any outstanding real property taxes;

(3) Payment of reasonable and customary costs of sale, such as escrow fees, title insurance, and recording fees;

(4) Payment of the amount required to pay off the loan from Select Portfolio Servicing, Inc., estimated to be in the range of $905,000 to $915,000;

(5) Payment of the amount necessary to repair the sewer line, install carbon monoxide detectors, and to complete other repairs for which the Seller is responsible pursuant to the Purchase Agreement, including the "minor maintenance items" noted in the Motion, estimated to total approximately $9,000; and

(6) Remainder of the net sale proceeds to go to the receivership estate.

The distribution ordered above should not be read to place strict limits on the approved use of the sale proceeds. Rather, because the Carmel Property Motion is approved in its entirety, the Receiver is also granted the authority to take all steps necessary to close the sale and make third-party payments so long as such steps are clearly anticipated by the motion, e.g., splitting the Broker's Commission with Buyer's broker. Additionally, many of the distributed amounts approved herein are mere estimates at this stage. After closing, the Receiver shall provide a full accounting of sale, maintenance, and repair costs, the precise amount used to pay off the SPS loan, and the amount ultimately returned to the receivership estate from the sale proceeds.

**IT IS SO ORDERED.**

Dated: March 12, 2020

_____
Honorable Allison H. Goddard
United States Magistrate Judge