UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SECURITIES AND EXCHANGE
COMMISSION,

                              Plaintiff,

v.

GINA CHAMPION-CAIN AND ANI
DEVELOPMENT, LLC,

                              Defendants, and

AMERICAN NATIONAL
INVESTMENTS, INC.,

                              Relief Defendant.

Case No.:  3:19-cv-1628-LAB-AHG

**ORDER GRANTING RECEIVER'S
MOTION FOR APPROVAL OF
SALE OF TENNYSON STREET
PROPERTY**

**[ECF No. 252]**

## I.    BACKGROUND

As described in prior orders, *see, e.g.*, ECF Nos. 54, 162, 163, this is an action brought by the Securities and Exchange Commission ("SEC") against Defendants ANI Development, LLC ("ANI Development") and Gina Champion-Cain and Relief Defendant American National Investments, Inc. ("ANI Inc."), alleging violations of federal securities laws based on a purportedly fraudulent liquor license loan scheme. ECF No. 1.

On September 3, 2019, the Court established an equitable receivership and appointed Krista L. Freitag ("Receiver") as a permanent receiver of ANI Development and ANI Inc., authorizing her to take control over all funds and assets owned, managed, or in the possession or control of the receivership entities. *See* ECF No. 6 at 14-16. In that role, the Receiver acts under the control and direction of the Court to facilitate the "orderly and efficient administration of the estate . . . for the benefit of creditors." *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986). *See also Atl. Tr. Co. v. Chapman*, 208 U.S. 360, 370 (1908) (explaining that a motion to appoint a receiver to take charge of property is "to the end that the property might be cared for and preserved for all who had or might have an interest in the proceeds of its sale. . . . Immediately upon such appointment and after the qualification of the receiver, the property passed into the custody of the law, and thenceforward its administration was wholly under the control of the court by its officer [], the receiver."). On December 11, 2019, the presiding judge in this action, Chief Judge Burns, granted the parties' Joint Motion (ECF No. 156) to give limited consent to the undersigned to hear and directly decide all motions filed in this action to approve sales of receivership assets. ECF No. 160. *See also* 28 U.S.C. § 636(c); CivLR 72.1(g). All property sale motions are set before the undersigned pursuant to that grant of consent.

On February 21, 2020, the Receiver filed the present Motion for Approval of Sale of Tennyson Street Property (the "Tennyson Property Motion"). ECF No. 252. The motion concerns one of the residential real properties within the receivership estate, a single-family residence located at 3548 Tennyson Street, San Diego, California, 92106 (the "Tennyson Property"). *See* ECF No. 252; ECF No. 76-2 at 6 (listing the Tennyson Property in the

Preliminary Real Estate and Liquor License Asset Schedule filed on October 3, 2019). The Court entered an order the same day setting a briefing schedule and hearing on March 16, 2020. ECF No. 255. The Court set a deadline of March 6, 2020 to file any response in opposition to the Tennyson Property Motion, and noted that "if no opposition is filed by the deadline, the Court may take the motion under submission without oral argument." *Id.* at 2. No opposition was filed. Therefore, being fully advised and noting the lack of opposition, the Court will **GRANT** the Tennyson Property Motion without oral argument,[1] for the reasons explained more fully below.

## II.   LEGAL STANDARD

"[I]t is a recognized principle of law that the district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership." *SEC v. Lincoln Thrift Ass'n*, 577 F.2d 600, 606 (9th Cir. 1978). Where a district court sits in equity, "[u]nless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied. 'The great principles of equity, securing complete justice, should not be yielded to light inferences, or doubtful construction.'" *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946).

"[A] district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad." *Hardy*, 803 F.2d at 1037. As part of this broad discretion, the district court sitting in equity and having custody and control of property "has power to order a sale of the same in its discretion. The power of sale necessarily follows the power to take control of and to preserve property[.]" *SEC v. Am. Capital Investments, Inc.*, 98 F.3d 1133, 1144 (9th Cir. 1996), *abrogated on other grounds by Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83,

---

[1] Because of the lack of opposition and non-receipt of qualified overbids, the Court took both the present motion and another pending property sale motion under submission on the papers on March 12, 2020 and vacated the March 16th hearing. ECF No. 273.

93-94 (1998) (quoting 2 Ralph E. Clark, <u>Treatise on Law & Practice of Receivers</u> § 482 (3d ed. 1992)). If the court approves an equitable receiver's proposed property sale, the sale "does not . . . purport to convey 'legal' title, but rather 'good,' equitable title enforced by an injunction against suit." *Id.* (citing 2 Clark, <u>Treatise on Law & Practice of Receivers</u>, §§ 342, 344, 482(a), 487, 489, 491).

Pursuant to 28 U.S.C. § 2001(a), realty in the possession of an appointed receiver is subject to a public sale process, "upon such terms and conditions as the court directs." 28 U.S.C. § 2002 further requires that notice be published once a week for at least four weeks prior to the sale in at least one newspaper regularly issued and of general circulation in the county, state, or judicial district where the realty is located.[2] These safeguards of notice and opportunity to submit overbids help to ensure that the sale is able to fetch the best price possible, which is consistent with the principle that "a primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." *Hardy*, 803 F.2d at 1038. *See also United States v. Grable*, 25 F.3d 298, 303 (6th Cir. 1994) (noting that "the intent of" the requirement in 28 U.S.C. § 2001 that property be sold in the county in which the land is situated is "to bring a better price at the sale").

## III. DISCUSSION

### A. Background of the Property and Proposed Sale

The Tennyson Property was purchased for $840,000 on August 20, 2019, only two weeks before the receivership in this case was established. ECF No. 252-1 at 5. Title was taken in the name of Relief Defendant American National Investments, Inc. *Id.*

Following her appointment, the Receiver and her staff reviewed automated valuation scores for the Tennyson Property and a survey of market-comparable properties. *Id.*

---

[2] 28 U.S.C. § 2001 also provides for a private sale process under subsection (b), but the requirements of that subsection are more stringent. The Receiver does not propose a private sale here.

4

Though habitable, the property was unoccupied and in need of various repairs. The Receiver consulted with multiple licensed brokers about the value of the property and terms of a potential listing agreement, ultimately selecting Resonate Real Estate ("Broker") and listing the Tennyson Property for sale at a purchase price of $865,000. *Id.*

Broker held two open houses and received two offers near the listing price soon after. Because there were multiple offers, the Receiver counter-offered the prospective buyers for their highest and best price and accepted the highest offer of $885,000 from Matthew Minnick and Peyton Shealy ("Buyer") on January 22, 2020. *Id.*; *see also* ECF No. 252-3 at 14, Ex. A to Freitag Decl. The Receiver and Buyer executed a California Residential Purchase Agreement and Joint Escrow Instructions ("Purchase Agreement"), along with an Addendum making court approval of the sale a condition to closing and providing for the overbid and auction process required by 28 U.S.C. § 2001(a). ECF No. 252-3. Buyer has removed all contingencies other than Court approval and deposited $8,450 into escrow. ECF No. 252-1 at 6, 7.

**B. Proposed Procedures and Distribution**

In the motion seeking approval of the sale, the Receiver proposed compliance with the overbid and auction process by publishing the following notice in the San Diego Union-Tribune once a week for four weeks:

> In the action pending in U.S. District Court for the Southern District of California, Case No. 19-CV-01628-LAB-AHG, Securities and Exchange Commission v. Gina Champion-Cain, et al., notice is hereby given that the court-appointed receiver will conduct a public auction for the real property located at 3548 Tennyson Street, San Diego, California 92106-1847 in San Diego County, California. Sale is subject to Court confirmation after the auction is held. Minimum bid price is at least $910,000. The auction will take place on March 12, 2020 at 1:30 p.m. in front of the entrance to the United States Courthouse, 221 W. Broadway, San Diego, California. To be allowed to participate in the auction, prospective purchasers must meet certain bid qualification requirements, including submitted a signed purchase and sale agreement, an earnest money deposit of $9,295, and proof of funds. All bidders must be qualified by 5:00 p.m. PT on March 10, 2020, by submitting

the required materials to the receiver at 501 West Broadway, Suite 290, San Diego, California, 92101.

ECF No. 252-1 at 11-12. For those interested in qualifying as bidders, the notice also provided a phone number and email address for the relevant point of contact. *Id.* at 12.

The above notice was published as proposed. On March 11, 2020 the Receiver filed a Notice of Non-Receipt of Qualified Overbids Regarding the Tennyson Property Motion. ECF No. 271. In the Notice, the Receiver informs the Court that, after filing the Tennyson Property Motion and in addition to publishing the notice in the San Diego Union-Tribune, she posted notice of the Motion on the receivership website anireceivership.com, and continued to market the property through Broker and notify potential purchasers about the opportunity to submit an overbid by March 10, 2020. *See id*. No overbids were submitted by the deadline. Therefore, Matthew Minnick and Peyton Shealy are still the intended Buyer.

The Tennyson Property is encumbered by a deed of trust in favor of Seattle Funding Group ("SFG"). ECF No. 252-1 at 6. The outstanding principal balance on the interest-only loan is approximately $546,000, and the Receiver continues to pay the loan current. *Id.* The Receiver intends to use the proceeds of the sale of the Tennyson Property to pay off the SFG loan and estimates the amount required to do so will be between $546,000 and $550,000, assuming a late March or early April 2020 closing. *Id.* The Receiver also estimates that the property taxes to be paid at closing will be between $6,700 and $8,600,[3] and that costs of sale including escrow, title and recording fees will be approximately $7,200. Additionally, the Receiver agreed to give Buyer a credit in the amount of $4,000 to be used for repairs to the sewer line and termite damage, to be paid from escrow. The Broker's fee pursuant to the listing agreement is 4% of the sale price, or $35,400, to be

---

[3] This estimate incorporates a supplemental tax bill stemming from the August 2019 purchase of the property.

split with Buyer's broker. *Id.* Based on these estimates, the Receiver anticipates that the net sale proceeds for the receivership estate will be in the range of $280,000 to $285,000.

At the time the Tennyson Property Motion was filed, there was another encumbrance on the property in the form of a lien recorded by the California Employment Development Department ("EDD"), standing at a balance of approximately $6,000. *Id.* at 6-7. EDD recorded the lien against the Tennyson Property for unpaid payroll taxes for the ownership entity, Relief Defendant American National Investments, Inc., from the second and third quarter of 2016. However, after filing the motion, the Receiver continued to negotiate with EDD to release the lien, and filed a notice informing the Court that the EDD lien had been released on March 17, 2020. ECF No. 279. Consequently, the Court need not address whether to approve the sale free and clear of the lien and will deny as moot that portion of the Tennyson Property Motion asking the Court to remove the lien and order it to attach to the net sale proceeds. *See* ECF No. 252-1 at 7.

## C. Court Approval of the Proposed Procedures and Sale

The Court has reviewed the documents submitted by the Receiver in support of the Tennyson Property Motion and finds the purchase price of $885,000 to be fair and reasonable. This price exceeds the August 2019 purchase price of the property by $45,000, representing a return of more than 5%. ECF No. 252-1 at 5. After Broker listed the property for sale at $865,000, two prospective buyers made offers near the listing price. The Receiver then negotiated the price upward by seeking the highest and best counter-offers from the offerors. *See* ECF No. 252-2, Freitag Decl. ¶ 4; ECF No. 252-3 at 13-14. Additionally, Broker's proposed commission of 4% of the gross sales price, to be split with the Buyer's broker, is consistent with the lower range of industry standards. ECF No. 252-2, Freitag Decl. ¶ 8. Broker broadly marketed and advertised the property and diligently responded to inquiries from interested parties. *Id.*

Moreover, the Receiver's publication of notice seeking qualified overbids in the San Diego Union Tribune, in addition to the solicitation of overbids through the receivership website and continued efforts to market the property, establish that the Receiver not only

met but exceeded the requirements for the public sale procedures set forth in 28 U.S.C. §§ 2001(a) and 2002 designed to ensure the best price is obtained. Therefore, upon review of the factual history and the Purchase Agreement itself, the Court finds the Purchase Agreement was negotiated at arm's-length and, further, that the Receiver implemented sufficient safeguards by way of the notice and overbid process to garner the highest possible price for the property. The Court is thus satisfied that the intent of the statutory scheme—to ensure that the best and highest possible price is paid for property within the receivership estate—has been fulfilled.

All uniform property sale procedures have been satisfied. Based on these considerations, and noting in particular the lack of any express opposition to the Motion, the Court finds the Receiver has sufficiently established that the proposed sale of the Tennyson Property and proposed distribution of the sale proceeds are consistent with principles of equity and the goal of a receivership to ensure the orderly and efficient administration of the estate for the benefit of creditors. *See Hardy*, 803 F.2d at 1038.

## IV. CONCLUSION

Having considered the Receiver's Motion for Approval of Sale of Tennyson Property (ECF No. 252) on its merits and noting that there is no opposition thereto, the Court **GRANTS** the Motion, and **APPROVES** the proposed sale of the single-family residence located at 3548 Tennyson Street, San Diego, California, 92106 to Buyer Matthew Minnick and Peyton Shealy, or their designee, as described in the Purchase Agreement attached as Exhibit A to the Declaration of the Receiver (ECF No. 252-3). The purchase price of $885,000 for the Tennyson Street Property is confirmed and approved.

The Court further **ORDERS** the proceeds of the sale to be distributed from escrow at the close of sale as follows:

(1) The Receiver is authorized to pay broker Resonate Real Estate a commission of 4% of the sale price, or $35,400, which amount will be split with Buyer's broker;

(2)    The Receiver is authorized to pay Seattle Funding Group the amount necessary to pay off the mortgage on the Property, which amount is estimated to be in the range of $546,000 to $550,000 (with the exact amount to be determined at closing);

(3)    The Receiver is authorized to pay the property taxes due from the seller at closing, which amount is estimated to be in the range of $6,700 to $8,600 (with the exact amount to be determined at closing);

(4)    The Receiver is authorized to pay the costs of sale due from the seller at closing, which amount is estimated to be approximately $7,200 (with the exact amount to be determined at closing);

(5)    The Receiver is authorized to pay the costs to fix the sewer line and some termite damage, which amounts are expected to total approximately $4,000;

(6)    After the aforementioned estimated amounts (with the exact amounts to be determined at closing) are paid out of escrow, the net sale proceeds, which are estimated to be in the range of $280,000 to $285,000 (with the exact amount to be determined at closing), shall be paid to the receivership estate; and

(7)    The Receiver is immediately authorized to complete the sale transaction, including executing any and all documents as may be necessary and appropriate to do so.

After closing, the Receiver shall provide a full accounting of sale, maintenance, and repair costs, property taxes paid, the precise amount used to pay off the SFG loan, and the amount ultimately returned to the receivership estate from the sale proceeds.

The Court **DENIES as moot** the request to approve the sale free and clear of the now-resolved EDD lien.

**IT IS SO ORDERED.**

Dated:  March 17, 2020

_____
Honorable Allison H. Goddard
United States Magistrate Judge