UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>GINA CHAMPION-CAIN AND ANI DEVELOPMENT, LLC,<br><br>　　　　　　　　　Defendants, and<br><br>AMERICAN NATIONAL INVESTMENTS, INC.,<br><br>　　　　　　　　　Relief Defendant. | Case No.: 3:19-cv-1628-LAB-AHG<br><br>**ORDER GRANTING:**<br><br>**(1) RECEIVER'S MOTION FOR APPROVAL OF SALE OF THE SWELL COFFEE RESTAURANT PROPERTY AND ASSOCIATED PERSONAL PROPERTY;**<br><br>**(2) RECEIVER'S MOTION FOR APPROVAL OF SALE OF THE SASKA'S RESTAURANT PROPERTY AND ASSOCIATED PERSONAL PROPERTY AND LIQUOR LICENSE; and**<br><br>**(3) RECEIVER'S MOTION FOR APPROVAL OF SALE OF PERSONAL PROPERTY AND ASSIGNMENT OF COMMERCIAL LEASE ASSOCIATED WITH BAO BEACH RESTAURANT**<br><br>[ECF Nos. 275, 276, 289] |

## I. BACKGROUND

As described in prior orders, *see, e.g.*, ECF Nos. 54, 162, 163, this is an action brought by the Securities and Exchange Commission ("SEC") against Defendants ANI Development, LLC ("ANI Development") and Gina Champion-Cain and Relief Defendant American National Investments, Inc. ("ANI Inc."), alleging violations of federal securities laws based on a purportedly fraudulent liquor license loan scheme. ECF No. 1.

On September 3, 2019, the Court established an equitable receivership and appointed Krista L. Freitag ("Receiver") as a permanent receiver of ANI Development and ANI Inc., authorizing her to take control over all funds and assets owned, managed, or in the possession or control of the receivership entities. *See* ECF No. 6 at 14-16. In that role, the Receiver acts under the control and direction of the Court to facilitate the "orderly and efficient administration of the estate . . . for the benefit of creditors." *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986). *See also Atl. Tr. Co. v. Chapman*, 208 U.S. 360, 370 (1908) (explaining that a motion to appoint a receiver to take charge of property is "to the end that the property might be cared for and preserved for all who had or might have an interest in the proceeds of its sale. . . . Immediately upon such appointment and after the qualification of the receiver, the property passed into the custody of the law, and thenceforward its administration was wholly under the control of the court by its officer [], the receiver."). On December 11, 2019, the presiding judge in this action, Chief Judge Burns, granted the parties' Joint Motion (ECF No. 156) to give limited consent to the undersigned to hear and directly decide all motions filed in this action to approve sales of receivership assets. ECF No. 160. *See also* 28 U.S.C. § 636(c); CivLR 72.1(g). All property sale motions are set before the undersigned pursuant to that grant of consent.

Before the Court are three pending motions seeking Court approval of the sale of restaurant properties and related property or property interests owned by receivership entities: (1) the Receiver's Motion for Approval of Sale of the Swell Coffee Restaurant Property and Associated Personal Property (ECF No. 275) (the "Swell Coffee Motion"), filed March 12, 2020; (2) the Receiver's Motion for Approval of Sale of the Saska's

Restaurant Property and Associated Personal Property and Liquor License (ECF No. 276) (the "Saska's Motion"), filed March 12, 2020; and (3) the Receiver's Motion for Approval of Sale of Personal Property and Assignment of Commercial Lease Associated with Bao Beach Restaurant (ECF No. 289) (the "Bao Beach Motion"), filed March 27, 2020. The Court considers these three motions together for the sake of efficiency and because many of the background facts overlap with respect to the Receiver's solicitation of brokers and marketing of the properties.

Pursuant to the Court's briefing schedule orders, responses in opposition to the Swell Coffee Motion and the Saska's Motion were due no later than March 30, 2020, and responses to the Bao Beach Motion were due no later than April 10, 2020. ECF Nos. 278, 290. No responses were filed. Additionally, in both briefing schedule orders, the Court noted that "[if] no opposition is filed by the deadline, and the overbid submission deadline has passed with no overbids, the Court may take any unopposed motion under submission without oral argument." ECF Nos. 278 at 2, 290 at 2. The Receiver reported that no overbids for any of the properties were submitted by the applicable deadlines advertised to the public in accordance with the statutorily mandated notice and overbid process. *See* ECF Nos. 296, 297, 307. Therefore, being fully advised and noting the lack of opposition, the Court will **GRANT** the Swell Coffee Motion (ECF No. 275), Saska's Motion (ECF No. 276), and Bao Beach Motion (ECF No. 289) without oral argument,[1] for the reasons explained more fully below.

## II.   LEGAL STANDARD

"[I]t is a recognized principle of law that the district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership." *SEC v. Lincoln Thrift Ass'n*, 577 F.2d 600, 606 (9th Cir. 1978). Where a district court sits in equity,

---

[1] In consideration of the lack of opposition and non-receipt of qualified overbids, the Court took all three present motions under submission on April 23, 2020 and vacated the April 27, 2020 hearing. ECF No. 315.

"[u]nless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied. 'The great principles of equity, securing complete justice, should not be yielded to light inferences, or doubtful construction.'" *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946).

"[A] district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad." *Hardy*, 803 F.2d at 1037. As part of this broad discretion, the district court sitting in equity and having custody and control of property "has power to order a sale of the same in its discretion. The power of sale necessarily follows the power to take control of and to preserve property[.]" *SEC v. Am. Capital Investments, Inc.*, 98 F.3d 1133, 1144 (9th Cir. 1996), *abrogated on other grounds by Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998) (quoting 2 Ralph E. Clark, Treatise on Law & Practice of Receivers § 482 (3d ed. 1992)). If the court approves an equitable receiver's proposed property sale, the sale "does not . . . purport to convey 'legal' title, but rather 'good,' equitable title enforced by an injunction against suit." *Id.* (citing 2 Clark, Treatise on Law & Practice of Receivers, §§ 342, 344, 482(a), 487, 489, 491).

Pursuant to 28 U.S.C. § 2001(a), real property in the possession of an appointed receiver is subject to a public sale process, "upon such terms and conditions as the court directs." 28 U.S.C. § 2002 further requires that notice be published once a week for at least four weeks prior to the sale in at least one newspaper regularly issued and of general circulation in the county, state, or judicial district where the realty is located.[2] The purpose of such notice "is to inform the public of the kind and condition of the property to be sold, the time, the place, and the terms of the sale. It is to secure bidders and prevent the sacrifice

---

[2] 28 U.S.C. § 2001 also provides for a private sale process under subsection (b), but the requirements of that subsection are more stringent. The Receiver does not propose a private sale here.

of the property." *Breeding Motor Freight Lines v. R.F.C.*, 172 F.2d 416, 422 (10th Cir. 1949). Therefore, the safeguards of notice and opportunity to submit overbids help to ensure that the sale is able to fetch the best price possible, which is consistent with the principle that "a primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." *Hardy*, 803 F.2d at 1038. *See also United States v. Grable*, 25 F.3d 298, 303 (6th Cir. 1994) (noting that "the intent of" the requirement in 28 U.S.C. § 2001 that property be sold in the county in which the land is situated is "to bring a better price at the sale").

As for the sale of personal property, 28 U.S.C. § 2004 also lends the Court great discretion in directing sales of personalty, requiring such sales to comply with § 2001 "unless the court orders otherwise." The notice requirement of § 2002 governing realty sales by the receiver does not apply to sales of personalty.

### III.  DISCUSSION

#### A. Background of the Restaurant Properties at Issue and Proposed Sales

The Swell Coffee restaurant property is located at 3833 Mission Boulevard, San Diego, California 92109. ECF No. 275-1 at 5. The property houses a coffee shop called Swell Coffee, which was in operation at the time of the Receiver's appointment. *Id.* The Swell Coffee property was purchased on February 15, 2015 at a purchase price of $615,000, and title was taken in the name of the Swell Coffee Roasting Company, LLC, one of the affiliated Receivership Entities. Title was then transferred on April 22, 2015 to another Receivership Entity, 3833 Mission Blvd., LLC. *Id.*

The Saska's Steakhouse restaurant property is located at 3768 Mission Boulevard, San Diego, California 92109. ECF No. 276-1 at 5. Saska's had been an operating restaurant at that location for many decades prior to the receivership entities' $2,000,000 purchase in August 2015 of the stock of Perils of Pauline Food Productions, Inc., the entity that owned the property and operated the restaurant. *Id.* Title to the property was transferred to affiliated receivership entity 3768 Mission Blvd., LLC on June 7, 2018. *Id.*

The Bao Beach restaurant property is located at 3735 Mission Boulevard, San Diego, CA 92109. ECF No. 289-1 at 5. However, the Bao Beach restaurant is leased—not owned—by the receivership entities. In addition to the leasehold interest, the receivership estate owns assets associated with the Bao Beach restaurant, including personal property (furniture, fixtures, and equipment), contracts, and intellectual property. *Id.* Although the Receiver has authority to sell personal property through licensed auctioneers without Court approval, *see* ECF Nos. 153, 219, the Receiver determined that the net recovery from the assets associated with the restaurant would likely be greater if they were sold as a package along with an assignment of the lease to the buyer.

The property interests at issue in this order with respect to all three properties are within the receivership estate. *See* ECF No. 76-2 at 4, 8, 9 (listing the Swell Coffee and Saska's Steakhouse properties within the "Restaurants and Real Property Owned" by the estate, listing Bao Beach property as "Real Estate Leased" by the estate, and also including the Saska's liquor license in the Preliminary Real Estate and Liquor License Asset Schedule, filed on October 3, 2019). Following the Receiver's appointment, she evaluated the profitability of the Swell Coffee, Saska's, and Bao Beach restaurant locations to determine whether to continue restaurant operations while preparing for sale in the short term, or whether instead to cease operations. The Receiver ultimately determined that Saska's could be operated at break-even or better and should remain open pending sale, but that Swell Coffee and Bao Beach were not sufficiently profitable and should thus be closed while the Swell Coffee property and the Bao Beach assets were prepared for sale in the short term.

For all of the restaurant-related properties included in the receivership estate, the Receiver and her staff interviewed three licensed brokers with experience selling restaurants in San Diego, ultimately choosing two separate brokers—broker Colliers International ("Colliers") for restaurant-related properties owned by the receivership entities, including Saska's and Swell Coffee, and broker Next Wave for the Surf Rider

Pizza and Bao Beach restaurant concepts operated at leased and owned property locations. *See* ECF Nos. 275-1, 276-1, and 289-1 at 5.

Colliers publicized and advertised Saska's and Swell Coffee on two widely used databases for commercial property listings, LoopNet and CoStar, as well as on its proprietary online database CREXi. ECF Nos. 275-1 and 276-1 at 6. Colliers also issued a press release, which was published in the San Diego Union-Tribune, and sent direct emails about the properties to over 5,000 potential buyers and investors. ECF Nos. 275-1 and 276-1 at 6. Colliers's marketing generated significant interest, resulting in a total of 28 offers for all of the properties it marketed. Additionally, at Colliers's request, the Receiver ordered various reports and provided relevant internal documents to create due diligence packages for each property, which Colliers hosted on its CREXi website along with information on the Court sale process and a form of Purchase and Sale Agreement and Joint Escrow Instructions ("Form PSA") prepared by Receiver and her counsel. ECF Nos. 275-1 and 276-1 at 6. Prospective purchasers had until the Receiver's "Call for Offers" deadline of February 3, 2020 to complete their due diligence and submit an executed Form PSA.

For the Swell Coffee property, five prospective purchasers submitted executed Form PSAs by the deadline, including Jane Cohen and Mordechai Ami Cohen ("Swell Coffee Buyer"), who provided the highest and best offer of $825,000 and thus became the intended buyer after the Receiver finalized the Form PSA and countersigned the buyer's PSA. ECF No. 275-1 at 6. The Swell Coffee Buyer deposited $25,000 into escrow in connection with the proposed sale. *Id.* at 7.

For the Saska's property, seven prospective purchasers submitted executed Form PSAs by the Call for Offers deadline. ECF No. 276-1 at 6. The highest and best offer was submitted by OMG 3768 Mission LLC ("Saska's Buyer"), in the amount of $2,300,000, making it the intended buyer after the Receiver finalized a Form PSA and countersigned the buyer's PSA. *Id.* at 7. In connection with the proposed sale, the Saska's Buyer deposited

$75,000 into escrow for the real property, and another $25,000 into a separate liquor license escrow. *Id.* at 8.

To market the Bao Beach assets, Next Wave created individual marketing flyers for the listing, and sent the listing out via email campaigns to a targeted list of over 6,200 restaurant operators, buyers, brokers, and investors. ECF No. 289-1 at 6. Next Wave also used websites including CoStar, LoopNet, BizBuySell, and Next Wave Commercial to advertise the listing and distributed press releases to numerous local news publications. *Id.* These efforts resulted in a total of nine offers for all properties and restaurant assets marketed. *Id.*

As with the Swell Coffee and Saska's properties, the Receiver created a typical due diligence package for the Bao Beach assets and set the same "Call for Offers" deadline of February 3, 2020. Next Wave hosted the due diligence materials online along with an offering memorandum and Form PSA. *Id.* Only one prospective purchaser, Oswaldo Rodriguez and Consulelo Rodriguez ("Bao Beach Assets Buyer"), submitted an executed Form PSA by the deadline, offering $28,000 to be paid in cash. *Id.* The Receiver finalized the Form PSA and countersigned the Bao Beach Assets Buyer's PSA, making them the intended buyer. The Bao Beach Assets Buyer deposited $1,000 into escrow. *Id.* at 7.

**B. Compliance with Overbid and Auction Process**

In all of the motions before the Court, the Receiver proposed compliance with the overbid and auction process of 28 U.S.C. § 2001 by publishing notice in the San Diego Union-Tribune, a newspaper of general circulation in the San Diego area, once a week for four weeks. *See* ECF Nos. 275-1 at 11-12, 276-1 at 12-13, and 289-1 at 11. Each notice follows the same general form, giving notice to the general public that "[i]n the action pending in U.S. District Court for the Southern District of California, Case No. 19-CV-01628-LAB-AHG, Securities and Exchange Commission v. Gina Champion-Cain, et al.," the Receiver would conduct a public auction for the real property located at 3768 Mission Blvd. (Saska's Property) and 3833 Mission Blvd. (Swell Coffee Property) in San Diego, California on April 9, 2020, and a public auction for the Bao Beach restaurant business and

personal property located at 3735 Mission Blvd. on April 23, 2020. The date, time, and location of the public auctions were provided. The minimum bid prices were, respectively: (1) $850,000 for the Swell Coffee Property, ECF No. 275-1 at 12; (2) $2,350,000 for the Saska's Property, ECF No. 276-1 at 13; and (3) $30,500 for the Bao Beach assets. ECF No. 289-1 at 11. The notices further informed the public that any sale would be "subject to Court confirmation after the auction is held." Prospective purchasers were required to qualify as bidders for the auctions by submitting a signed purchase agreement, an earnest money deposit (varying in amount depending on the minimum bid price amount), and proof of funds no later than 5:00 PM two days prior to the noticed date of auction. For those interested in qualifying as bidders, the notices also provided a phone number and email address for the relevant point of contact.

Each notice was published as proposed. On April 8, 2020, the Receiver filed two Notices of Non-Receipt of Qualified Overbids (ECF Nos. 296 and 297) reporting that no overbids had been received by the bid qualification deadline for either the Swell Coffee Property or the Saska's Property. On April 23, 2020 the Receiver filed a similar Notice of Non-Receipt of Qualified Overbids Regarding the Bao Beach Motion. ECF No. 307. In each Notice, the Receiver informs the Court that, in addition to publishing the proposed overbid and auction notices in the San Diego Union-Tribune, she posted notice of each motion on the receivership website anireceivership.com, and continued to market the assets and properties through her brokers and to notify potential purchasers about the opportunity to submit overbids. *See* ECF Nos. 296, 297, and 307. No overbids were submitted by the applicable deadlines.

### C. Proposed Distribution of Sale Proceeds

The Swell Coffee Property is encumbered by a deed of trust securing a Small Business Association loan ("SBA loan") from First Choice Bank. The remaining balance due on the loan, including principal and unpaid interest, was approximately $598,000 as of March 1, 2020. ECF No. 275-1 at 7. Another SBA loan, issued by CDC Small Business Finance, is secured by the personal property located at Swell Coffee. The remaining

balance on the second SBA loan is approximately $62,000, including principal and unpaid interest. *Id.* The Receiver also estimates that the receivership estate will receive a property tax credit at closing in the range of $1,400 to $1,700, since the second installment of the Swell Coffee property taxes for 2019-2020 is expected to be paid prior to closing. *Id.* The Receiver estimates costs of sale will total approximately $4,000. Colliers International also represents the Swell Coffee Buyer, and its broker's fee pursuant to the listing agreement is 2.5% of the sale price, or $20,625. *Id.* Based on these estimates, the Receiver anticipates that the net sale proceeds for the receivership estate from the proposed Swell Coffee Property sale will be in the range of $130,000 to $140,000. *Id.* at 7.

The Saska's Property is encumbered by a deed of trust securing a loan issued by American National Life Insurance Company of New York, a loan which also encumbers a nearby parking lot owned by the Receivership Entities that is the subject of another pending motion. ECF No. 276-1 at 6.[3] The amount required to pay off the loan is approximately $2,050,000. *Id*. Notably, the Saska's sale also involves the transfer of the restaurant's liquor license to the Saska's Buyer, which will require another layer of approval by the California Department of Alcohol and Beverage Control ("ABC"), and which is expected to take three to six months from Court approval. *Id.* Consequently, there are two separate escrows involved in the proposed Saska's sale—the real property escrow and the liquor license escrow—and only the real property escrow will close within five business days of Court

---

[3] The Saska's Motion erroneously names the relevant creditor as "American National Insurance Company." ECF No. 276-1 at 6. However, secured creditor American National Life Insurance Company of New York filed a Response (ECF No. 302) to the Receiver's motion seeking approval of the sale of the parking lot property (ECF No. 293), which also named "American National Insurance Company" as the relevant creditor, for the purpose of correcting the record to reflect that it is the actual noteholder of the note secured by the deed of trust encumbering both the Saska's Property and the parking lot property. *See* ECF No. 302 at 2-3. Although no such correction was filed in response to the same error in the Saska's Property motion, the Court takes judicial notice of the correction and incorporates it herein.

approval of the sale. *Id.* Nonetheless, the Receiver anticipates that the closing of the sale of the Saska's real property alone will generate sufficient funds to pay off the loan in its entirety, thus leaving the parking lot property unencumbered. *Id.*

As with the Swell Coffee property, the Receiver expects to pay the second installment of property taxes for 2019-2020 prior to the Saska's closing, and accordingly estimates the receivership estate will receive a property tax credit at closing in the range of $3,500 to $4,500. *Id.* at 7. The Receiver further estimates costs of sale will total approximately $11,500. Colliers International's broker's fee pursuant to the Saska's listing agreement is 4% of the sale price, or $92,000, to be split with the Saska's Buyer's broker. *Id.* Based on these estimates, and taking into account the full pay-off of the American National Insurance Company Loan, the Receiver anticipates that the net sale proceeds for the receivership estate from the proposed Saska's Property sale will be in the range of $145,000 to $155,000, the majority of which will come out of the liquor license escrow after ABC approval of the license transfer. *Id.* at 7.

As for the Bao Beach assets sale, Next Wave's broker's commission pursuant to the listing agreement is 10% of the sale price, or $2,800, to be split with the Bao Beach Assets Buyer's broker. ECF No. 289-1 at 6-7. The Receiver estimates the costs of sale will be approximately $2,000. *Id.* at 7. Therefore, the Receiver estimates the net sale proceeds to the receivership estate from the Bao Beach Assets sale will be approximately $23,000. *Id.*

### D. Court Approval of the Proposed Procedures and Sale

The Court has reviewed the documents submitted by the Receiver in support of each of the Swell Coffee, Saska's, and Bao Beach Motions and finds all proposed sales to be fair, reasonable, and in the best interest of the receivership estate.

In particular, each property was widely marketed and advertised, even after the Receiver secured tentative agreements with the intended buyers. Multiple prospective purchasers submitted executed Form PSAs to try to purchase the Swell Coffee and Saska's real properties, allowing the Receiver to enter into agreements with those offerors of the highest and best prices for those properties. And although there was only one executed

Form PSA submitted for the Bao Beach assets, the record persuades the Court that this fact is not due to lack of trying, and that the offer reflects fair market value. The Receiver reports that broker Next Wave's advertising on multiple websites produced over 150,000 ad views and that press releases about the Next Wave-brokered properties were placed in the San Diego Union-Tribune, San Diego Business Journal, Eater San Diego, and elsewhere. ECF No. 289-1 at 6. Additionally, the Receiver and Next Wave continued to market the Bao Beach assets up until the overbid deadline passed. ECF No. 307. Finally, the Court is also convinced that the Receiver is acting in the best interests of the receivership estate due to her decision to market and sell the Bao Beach personalty and the leasehold interest as a package, rather than immediately selling off the personal property piecemeal without the delay of seeking Court approval. This approach shows a considered regard for the type of sale that would fetch the best return for the estate overall, which in turn indicates the Receiver would not be willing to accept an offer for the Bao Beach assets that fell below fair market value in her view.

Moreover, the Receiver's publication of notice seeking qualified overbids in the San Diego Union-Tribune, in addition to the solicitation of overbids through the receivership website and continued efforts to market the property, establish that the Receiver not only met but exceeded the requirements for the public sale procedures set forth in 28 U.S.C. §§ 2001(a) and 2002 designed to ensure the best price is obtained for each property. Therefore, the Court finds that the Receiver implemented sufficient safeguards by way of the notice and overbid process to garner the highest possible price for the real properties and assets at issue. The Court is thus satisfied that the intent of the statutory scheme—to ensure that the best and highest possible price is paid for property within the receivership estate—has been fulfilled.

All uniform property sale procedures have been satisfied. Based on these considerations, and noting in particular the lack of any express opposition to any of the motions at hand, the Court finds the Receiver has sufficiently established that the proposed sales of the Swell Coffee Property, Saska's Property, and Bao Beach Assets, and proposed

distribution of the sale proceeds are consistent with principles of equity and the goal of a receivership to ensure the orderly and efficient administration of the estate for the benefit of creditors. *See Hardy*, 803 F.2d at 1038.

## IV.   CONCLUSION

Upon thorough consideration of the Receiver's Motion for Approval of Sale of the Swell Coffee Restaurant Property and Associated Personal Property (ECF No. 275), the Receiver's Motion for Approval of Sale of the Saska's Restaurant Property and Associated Personal Property and Liquor License (ECF No. 276), and the Receiver's Motion for Approval of Sale of Personal Property and Assignment of Commercial Lease Associated with Bao Beach Restaurant (ECF No. 289), the Court finds the motions well-founded and **GRANTS** each in its entirety.

Accordingly, **IT IS ORDERED** as follows:

(1)   The sale of the real property located at 3833 Mission Blvd., San Diego, California, as described in Exhibit A to the Declaration of Krista L. Freitag in support of the Swell Coffee Motion (ECF No. 275-3) ("Swell Coffee Property"), by Krista L. Freitag, as receiver, to Jane Cohen and Mordechai Ami Cohen, or their designee, is confirmed and approved;

(2)   The purchase price of $825,000 for the Swell Coffee Property is confirmed and approved;

(3)   The Receiver is authorized to pay broker Colliers International a commission of 2.5% of the sale price, or $20,625;

(4)   The Receiver is authorized to pay First Choice Bank the amount necessary to pay off the mortgage on the Swell Coffee Property, which amount is approximately $598,000 (with the exact amount to be determined at closing);

(5)   The Receiver is authorized to pay CDC Small Business Finance the amount necessary to pay off the loan secured by the personal property located at the Swell Coffee Property, which amount is approximately $62,000 (with the exact amount to be determined at closing);

(6) The Receiver is authorized to pay the costs of sale due from the seller at closing, which are expected to total approximately $4,000 (with the exact amount to be determined at closing);

(7) After the aforementioned estimated amounts (with the exact amounts to be determined at closing) are paid out of escrow, the net sale proceeds of the Swell Coffee Property, which are estimated to be in the range of $130,000 to $140,000 (with the exact amount to be determined at closing), shall be paid to the receivership estate;

(8) The sale of the real property located at 3768 Mission Blvd., San Diego, California, as described in Exhibit A to the Declaration of Krista L. Freitag in support of the Saska's Motion (ECF No. 276-3) ("Saska's Property"), by Krista L. Freitag, as receiver, to OMG 3768 Mission LLC, or its designee ("Saska's Buyer") is confirmed and approved;

(9) The purchase price of $2,300,000 for the Saska's Property is confirmed and approved;

(10) The Receiver is authorized to pay broker Colliers International a commission of 4% of the sale price, or $92,000, which amount will be split with the Saska's Buyer's broker;

(11) The Receiver is authorized to pay American National Life Insurance Company of New York the amount necessary to pay off the mortgage on the Saska's Property, which is estimated to be approximately $2,050,000, with the exact amount to be determined at closing;

(12) The Receiver is authorized to pay the costs of sale due from the seller at closing, which are expected to total approximately $11,500, with the exact amount to be determined at closing;

(13) After the aforementioned estimated amounts (with the exact amounts to be determined at closing) are paid out of escrow, the net sale proceeds of the sale of the Saska's Property, which are estimated to be in the range of $145,000 to $155,000 (with the exact amount to be determined at closing), shall be paid to the receivership estate;

(14) The sale of assets associated with the restaurant known as Bao Beach, including personal property (furniture, fixtures, and equipment), contracts, intellectual property, and a leasehold interest in the restaurant premises ("Bao Beach Assets"), as described in Exhibit A to the Declaration of Krista L. Freitag in support of the Bao Beach Motion (ECF No. 289-3), by Krista L. Freitag, as receiver, to Oswaldo Rodriguez and Consulelo Rodriguez, or their designee ("Bao Beach Assets Buyer") is confirmed and approved;

(15) The purchase price of $28,000 for the Bao Beach Assets is confirmed and approved;

(16) The Receiver is authorized to pay broker Next Wave a commission of 10% of the sale price, or $2,800, which amount will be split with the Bao Beach Assets Buyer's broker;

(17) The Receiver is authorized to pay the costs of sale due from the seller at closing, which are expected to total approximately $2,000, with the exact amount to be determined at closing;

(18) After the aforementioned estimated amounts (with the exact amounts to be determined at closing) are paid out of escrow, the net sale proceeds of the Bao Beach Assets, which are estimated to be in the range of $23,000 (with the exact amount to be determined at closing), shall be paid to the receivership estate; and

(19) The Receiver is immediately authorized to complete all sale transactions approved herein, including executing any and all documents as may be necessary and appropriate to do so.

\\
\\
\\
\\
\\
\\

**IT IS FURTHER ORDERED** that after each closing, the Receiver shall provide a full accounting of sale costs, property tax credits received and/or property taxes paid, the precise amounts used to pay off any loans on the properties, and the amount ultimately returned to the receivership estate from the sale proceeds. The Receiver may delay the accounting with respect to the Saska's Property sale until after the liquor license escrow has closed.

**IT IS SO ORDERED.**

Dated: May 6, 2020

_____
Honorable Allison H. Goddard
United States Magistrate Judge

16

3:19-cv-1628-LAB-AHG