1
2
3
4
5
6
7
8                           UNITED STATES DISTRICT COURT
9                         SOUTHERN DISTRICT OF CALIFORNIA
10

11  SECURITIES AND EXCHANGE            Case No.:  3:19-cv-1628-LAB-AHG
12  COMMISSION,
                                       **ORDER GRANTING RECEIVER'S**
13                         Plaintiff,  **MOTION FOR APPROVAL OF**
                                       **SALE OF PARKING LOT**
14  v.                                 **PROPERTY**

15  GINA CHAMPION-CAIN AND ANI         **[ECF No. 293]**
    DEVELOPMENT, LLC,
16
                      Defendants, and
17

18  AMERICAN NATIONAL
19  INVESTMENTS, INC.,
20                    Relief Defendant.
21

22    **I.     BACKGROUND**

23          As described in prior orders, *see, e.g.*, ECF Nos. 54, 162, 163, this is an action

24  brought by the Securities and Exchange Commission ("SEC") against Defendants ANI

25  Development, LLC ("ANI Development") and Gina Champion-Cain and Relief Defendant

26  American National Investments, Inc. ("ANI Inc."), alleging violations of federal securities

27  laws based on a purportedly fraudulent liquor license loan scheme. ECF No. 1.

28

                                          1

On September 3, 2019, the Court established an equitable receivership and appointed Krista L. Freitag ("Receiver") as a permanent receiver of ANI Development and ANI Inc., authorizing her to take control over all funds and assets owned, managed, or in the possession or control of the receivership entities. *See* ECF No. 6 at 14-16. In that role, the Receiver acts under the control and direction of the Court to facilitate the "orderly and efficient administration of the estate . . . for the benefit of creditors." *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986). *See also Atl. Tr. Co. v. Chapman*, 208 U.S. 360, 370 (1908) (explaining that a motion to appoint a receiver to take charge of property is "to the end that the property might be cared for and preserved for all who had or might have an interest in the proceeds of its sale. . . . Immediately upon such appointment and after the qualification of the receiver, the property passed into the custody of the law, and thenceforward its administration was wholly under the control of the court by its officer [], the receiver."). On December 11, 2019, the presiding judge in this action, Chief Judge Larry A. Burns, granted the parties' Joint Motion (ECF No. 156) to give limited consent to the undersigned to hear and directly decide all motions filed in this action to approve sales of receivership assets. ECF No. 160. *See also* 28 U.S.C. § 636(c); CivLR 72.1(g). All property sale motions are set before the undersigned pursuant to that grant of consent.

Before the Court is the Receiver's Motion for Approval of Sale of Parking Lot Property ("Parking Lot Motion"), filed March 30, 2020. ECF No. 293. Responses in opposition to the Parking Lot Motion were due no later than April 17, 2020, and overbids pursuant to the notice and auction process set forth in 28 U.S.C. § 2001 were due by April 21, 2020. *See* ECF No. 293-1 at 12; ECF No. 295; ECF No. 308 at 2.

In its Order Setting Briefing Schedule on the present motion, the Court noted that "[i]f no opposition is filed by the deadline, and the overbid submission deadline has passed with no overbids, the Court may take the motion under submission without oral argument." ECF No. 295 at 2. Non-party creditor American National Life Insurance Company of New York ("ANICO") filed a Response on April 16, 2020. ECF No. 302. However, the Response states that ANICO "does not oppose the relief sought," subject to certain

2

contingencies discussed in more detail below. *Id.* at 3. The Receiver did not file a reply. On April 23, 2020, The Receiver reported that no overbids for any of the properties were submitted by the applicable deadlines advertised to the public in accordance with the statutorily mandated notice and overbid process. *See* ECF No. 308 at 2.

Thus, in consideration of the lack of opposition to the relief sought (subject to certain contingencies) and non-receipt of qualified overbids, the Court took the present motions under submission on April 23, 2020 and vacated the April 27, 2020 hearing. ECF No. 315. For the reasons that follow, the Court **GRANTS** the Parking Lot Motion (ECF No. 293).

## II.   LEGAL STANDARD

"[I]t is a recognized principle of law that the district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership." *SEC v. Lincoln Thrift Ass'n*, 577 F.2d 600, 606 (9th Cir. 1978). Where a district court sits in equity, "[u]nless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied. 'The great principles of equity, securing complete justice, should not be yielded to light inferences, or doubtful construction.'" *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946).

"[A] district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad." *Hardy*, 803 F.2d at 1037. As part of this broad discretion, the district court sitting in equity and having custody and control of property "has power to order a sale of the same in its discretion. The power of sale necessarily follows the power to take control of and to preserve property[.]" *SEC v. Am. Capital Investments, Inc.*, 98 F.3d 1133, 1144 (9th Cir. 1996), *abrogated on other grounds by Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998) (quoting 2 Ralph E. Clark, Treatise on Law & Practice of Receivers § 482 (3d ed. 1992)). If the court approves an equitable receiver's proposed property sale, the sale "does not . . . purport to convey 'legal' title, but rather 'good,' equitable title enforced

by an injunction against suit." *Id.* (citing 2 Clark, <u>Treatise on Law & Practice of Receivers</u>, §§ 342, 344, 482(a), 487, 489, 491).

Pursuant to 28 U.S.C. § 2001(a), real property in the possession of an appointed receiver is subject to a public sale process, "upon such terms and conditions as the court directs." 28 U.S.C. § 2002 further requires that notice be published once a week for at least four weeks prior to the sale in at least one newspaper regularly issued and of general circulation in the county, state, or judicial district where the realty is located.[1] The purpose of such notice "is to inform the public of the kind and condition of the property to be sold, the time, the place, and the terms of the sale. It is to secure bidders and prevent the sacrifice of the property." *Breeding Motor Freight Lines v. R.F.C.*, 172 F.2d 416, 422 (10th Cir. 1949). Therefore, the safeguards of notice and opportunity to submit overbids help to ensure that the sale is able to fetch the best price possible, which is consistent with the principle that "a primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." *Hardy*, 803 F.2d at 1038. *See also United States v. Grable*, 25 F.3d 298, 303 (6th Cir. 1994) (noting that "the intent of" the requirement in 28 U.S.C. § 2001 that property be sold in the county in which the land is situated is "to bring a better price at the sale").

## III.   DISCUSSION

### A. Background of the Parking Lot Property and Proposed Sale

The Parking Lot Property is an approximately 3,004 square foot parking lot located at 3800 Mission Boulevard, San Diego, California. ECF No. 293-1 at 5. The property was purchased on August 13, 2015 for $1,150,000, and title was taken in the name of San Jose Parking Lot, LLC. *Id.* Title to the property was then transferred to affiliated receivership entity 3768 Mission Blvd., LLC on June 7, 2018. *Id.* The Parking Lot Property is thus an

---

[1] 28 U.S.C. § 2001 also provides for a private sale process under subsection (b), but the requirements of that subsection are more stringent. The Receiver does not propose a private sale here.

asset within the receivership estate and within the Court's jurisdiction. *See* ECF No. 6 at 5 (listing 3768 Mission Blvd., LLC as a subsidiary or affiliate of Defendants and/or Relief Defendant ANI Inc.).

Following the Receiver's appointment, she determined that due to the minimal operating expenses associated with the Parking Lot Property and the steady stream of modest revenue generated by the property, the best course of action was to continue operating the Parking Lot Property while preparing it for sale in the short term, along with other restaurant-related properties within the receivership estate. ECF No. 293-1 at 5.

For all of the restaurant-related properties included in the receivership estate, which includes the Parking Lot Property, the Receiver and her staff interviewed three licensed brokers with experience selling restaurants in San Diego, ultimately choosing broker Colliers International ("Broker") for restaurant-related properties owned by the receivership entities, including the Parking Lot Property. *Id.*

Broker publicized and advertised the Parking Lot Property (along with the other restaurant-related properties owned by the receivership entities) on two widely used databases for commercial property listings, LoopNet and CoStar, as well as on its proprietary online database CREXi. *Id.* at 6. Broker also issued a press release, which was published in the San Diego Union-Tribune, and sent direct emails about the properties to over 5,000 potential buyers and investors. *Id.* Broker's marketing generated significant interest, resulting in a total of 28 offers for all of the properties it marketed. Additionally, at Broker's request, the Receiver ordered various reports and provided relevant internal documents to create due diligence packages for each property, which Broker hosted on its CREXi website along with information on the Court sale process and a form of Purchase and Sale Agreement and Joint Escrow Instructions ("Form PSA") prepared by Receiver and her counsel. *Id.* The Form PSA has all contingencies removed and provides for the overbid, public auction, and Court approval process required for receivership properties. Prospective purchasers had until the Receiver's "Call for Offers" deadline of February 3, 2020 to complete their due diligence and submit an executed Form PSA. *Id.*

Five prospective purchasers submitted executed Form PSAs by the deadline, including Richard Uy and Josephine Jennifer Uy ("Buyer"), who provided the highest and best offer of $1,011,000, to be paid in cash. *Id.* Richard Uy and Josephine Jennifer Uy thus became the intended buyer after the Receiver finalized the Form PSA and countersigned the buyer's PSA. *Id.* Buyer deposited $25,000 into escrow in connection with the proposed sale. *Id.* at 7.

## B. Compliance with Overbid and Auction Process

In the Parking Lot Motion, the Receiver proposed compliance with the overbid and auction process of 28 U.S.C. § 2001 by publishing the following notice in the San Diego Union-Tribune, a newspaper of general circulation in the San Diego area, once a week for four weeks:

> In the action pending in U.S. District Court for the Southern District of California, Case No. 19-CV-01628- LAB-AHG, Securities and Exchange Commission v. Gina Champion-Cain, et al., notice is hereby given that the court-appointed receiver will conduct a public auction for the real property located at 3800 Mission Blvd., San Diego, California 92109 in San Diego County, California. Sale is subject to Court confirmation after the auction is held. Minimum bid price is at least $1,036,000. The auction will take place on April 23, 2020, at 1:30 p.m. in front of the entrance to the United States Courthouse, 221 W. Broadway, San Diego, California. To be allowed to participate in the auction, prospective purchasers must meet certain bid qualification requirements, including submitting a signed purchase and sale agreement, an earnest money deposit of $27,500, and proof of funds. All bidders must be qualified by 5:00 p.m. PT on April 21, 2020, by submitting the required materials to the receiver at 501 West Broadway, Suite 290, San Diego, California, 92101.

ECF No. 293-1 at 12. For those interested in qualifying as bidders, the notices also provided a phone number and email address for the relevant point of contact.

The notice was published as proposed. As previously noted, the Receiver filed a Notice of Non-Receipt of Qualified Overbids on April 23, 2020, reporting that no overbids had been received by the bid qualification deadline. ECF No. 308. In the Notice, the Receiver informs the Court that, in addition to publishing the proposed overbid and auction

notices in the San Diego Union-Tribune, she posted notice of each motion on the receivership website anireceivership.com, and continued to market the assets and properties through her brokers and to notify potential purchasers about the opportunity to submit overbids. *Id.* at 2. Accordingly, the Receiver intends to move forward with the sale to Buyer pursuant to the terms in the PSA.

### C. Proposed Distribution of Sale Proceeds

As discussed in the Court's prior order granting, *inter alia*, the Receiver's Motion for Approval of Sale of the Saska's Restaurant Property and Associated Personal Property and Liquor License (the "Saska's Motion"), both the Parking Lot Property and the Saska's Property are encumbered by the same deed of trust securing a loan issued by ANICO. *See* ECF No. 316 at 10. The Receiver anticipated that the ANICO loan could be paid off in full with the sale proceeds from the sale of the Saska's Property, thus leaving the Parking Lot Property unencumbered. *Id.* at 11.

Broker's commission pursuant to the listing agreement is 4% of the sale price, or $40,400, to be split with Buyer's broker. ECF No. 293-1 at 7. The Receiver estimates the costs of sale, including escrow, title, and recording fees, will be approximately $5,000. *Id.* at 7. The Receiver also estimates that the receivership estate will receive a property tax credit at closing in the range of $1,300 to $1,500, since the second installment of property taxes for 2019-2020 is expected to be paid prior to closing. Therefore, the Receiver estimates the net sale proceeds to the receivership estate from the Parking Lot Property sale will be in the range of $960,000 to $970,000. *Id.* The Receiver seeks approval of a distribution reflecting these estimates, without any Court-ordered contingency tied to the ANICO loan affecting the distribution.

As already noted, ANICO filed a Response to the present motion by the opposition deadline. ECF No. 302. In the response, ANICO provides additional details regarding the $2,000,000 loan—namely, that ANICO made the loan to receivership entity 3768 Mission Blvd., LLC, and the loan is secured by a promissory note dated June 7, 2018. *Id.* at 2. Further, the note is secured by a formally recorded Deed of Trust, Assignment of Rents

7

and Leases, Security and Fixture Filing that covers and describes three parcels of real property including the Parking Lot Property and the Saska's Property.[2] *Id.* However, ANICO makes clear in its Response that it "does not oppose the relief sought, to the extent that any order allowing the parking Lot to be sold free and clear of [ANICO's lien] is contingent on the Receiver paying off all amounts owed to [ANICO] in connection with the [underlying loan]." *Id.* at 3.

As an initial matter, the Receiver makes clear in both the Parking Lot Motion and in the Saska's Motion that she intends to use the funds from the sale of the Saska's property to pay off the ANICO loan in its entirety, leaving the Parking Lot Property unencumbered. ECF No. 276-1 at 6; ECF No. 293-1 at 7. Accordingly, the Court stated in its order granting the Saska's Property Motion that the Receiver "is authorized to pay American National Life Insurance Company of New York the amount necessary to pay off the mortgage on the Saska's Property, which is estimated to be approximately $2,050,000, with the exact amount to be determined at closing[.]" ECF No. 316 at 14. The Court has every expectation that the Receiver will abide by the ordered distribution of sale proceeds and pay off the loan in its entirety from the Saska's proceeds.

Moreover, "'it has long been recognized that under appropriate circumstances, a federal court presiding over a receivership may authorize the assets of the receivership to be sold free and clear of liens and related claims.'" *SEC v. Capital Cove Bancorp LLC*, No. SACV15980JLSJCX, 2015 WL 9701154, at *4 (C.D. Cal. Oct. 13, 2015) (quoting *Pennant Mgmt., Inc. v. First Farmers Fin., LLC*, No. 14-CV-7581, 2015 WL 4511337, at *4 (N.D. Ill. July 24, 2015) and *Regions Bank v. Egyptian Concrete Co.*, No. 4:09-CV-1260 CAS, 2009 WL 4431133, at *7 (E.D. Mo. Dec. 1, 2009)). *See also Mellen v. Moline Malleable Iron Works*, 131 U.S. 352, 367 (1889) ("Besides, the removal of alleged liens or

---

[2] ANICO also filed its Response to correct a scrivener's error in the Receiver's motion naming the relevant creditor as "American National Insurance Company" rather than American National Insurance Company of New York. ECF No. 302 at 2.

8

incumbrances upon property, the closing up of the affairs of insolvent corporations, and the administration of and distribution of trust funds are subjects over which courts of equity have general jurisdiction"); *Miners' Bank of Wilkes-Barre v. Acker*, 66 F.2d 850, 853 (3d Cir. 1933) ("A court of equity under proper circumstances has power to order a receiver to sell property free and clear of all incumbrances, and to deny the mortgagee the right to foreclose his mortgage."). Therefore, the Court will approve the proposed sale free and clear of the lien as requested by the Receiver.

Nonetheless, the Court acknowledges ANICO's secured interest and the need to account for any unexpected contingencies. Therefore, to ensure that ANICO's interest is protected, the Court **ORDERS** that, to the extent the lien is not fully paid off with the proceeds of the Saska's Property sale, ANICO's lien will attach to the proceeds of the Parking Lot Property sale that would otherwise be returned to the receivership estate.[3] *See Mellen*, 131 U.S. at 370 (transferring the creditor's rights from the property to the proceeds of the sale); *see also Capital Cove*, 2015 WL 9701154, at *8 (protecting the interests of a creditor by attaching the interests to the proceeds of the sale); *In re Clark*, 266 B.R. 163, 171 (B.A.P. 9th Cir. 2001) (explaining that in the analogous bankruptcy context, to protect disputed interests, "[t]ypically, the proceeds of sale are held subject to the disputed interest and then distributed as dictated by the resolution of the dispute; such procedure preserves all parties' rights by simply transferring interests from property to dollars that represent its value."). However, the lien will only attach to the proceeds of the Parking Lot Property sale in the event that there are insufficient funds to pay off the loan from the proceeds of the sale of the Saska's Property**.** In other words, the Receiver is authorized to use the proceeds from the Saska's Property sale to pay off the ANICO loan

---

[3] Any proceeds that are not slated to be distributed to the receivership estate (e.g., payment of the Broker's commission or costs of sale) are not subject to the ANICO lien.

9

first, before using any of the proceeds from the Parking Lot Property sale for such purpose, even if the closing of the Parking Lot Property sale takes place first.[4]

### D. Court Approval of the Proposed Procedures and Sale

The Court has reviewed the documents submitted by the Receiver in support of the proposed sale, and finds it to be fair, reasonable, and in the best interest of the receivership estate. In particular, the property was widely marketed and advertised, even after the Receiver secured tentative agreements with Buyer. Five prospective purchasers submitted executed Form PSAs to try to purchase the property, allowing the Receiver to choose only the best and highest offer. Additionally, the Receiver and Broker continued to market the Parking Lot Property up until the overbid deadline passed. ECF No. 308.

Further, the Receiver's publication of notice seeking qualified overbids in the San Diego Union-Tribune, in addition to the solicitation of overbids through the receivership website and continued efforts to market the property, establish that the Receiver not only met but exceeded the requirements for the public sale procedures set forth in 28 U.S.C. § 2001(a) designed to ensure the best price is obtained for realty within a receivership estate. Therefore, the Court finds that the Receiver implemented sufficient safeguards by way of the notice and overbid process to garner the highest possible price for the property, fulfilling the intent of the statutory scheme.

All uniform property sale procedures have been satisfied. Based on these considerations, and noting in particular the lack of any express opposition to any of the motions at hand, the Court finds the Receiver has sufficiently established that the proposed sale and distribution of the sale proceeds are consistent with principles of equity and the

---

[4] This caveat applies even if the proceeds required to pay off the ANICO loan in its entirety must be taken out of the liquor license escrow associated with the Saska's Property sale, which is not expected to close for 3-6 months while the liquor license transfer awaits approval by the California Department of Alcohol and Beverage Control. *See* ECF No. 316 at 10-11.

goal of a receivership to ensure the orderly and efficient administration of the estate for the benefit of creditors. *See Hardy*, 803 F.2d at 1038.

## IV.   CONCLUSION

Upon thorough consideration of the Receiver's Motion for Approval of Sale of Parking Lot Property (ECF No. 293), the Court **GRANTS** the motion in its entirety, except to the extent the approved sale is contingent upon the Receiver's ability to fully pay off the ANICO lien with the Saska's Property sale proceeds.

Accordingly, **IT IS ORDERED** as follows:

(1)   The sale of the real property located at 3768 Mission Blvd., San Diego, California, as described in Exhibit A to the Declaration of Krista L. Freitag in support of the Motion (ECF No. 293-3) ("Parking Lot Property"), by Krista L. Freitag, as receiver, to Richard Uy and Josephine Jennifer Uy, or their designee ("Buyer") is confirmed and approved;

(2)   The purchase price of $1,011,000 for the Parking Lot Property is confirmed and approved;

(3)   The Receiver is authorized to pay broker Colliers International a commission of 4% of the sale price, or $40,440;

(4)   The Receiver is authorized to pay the costs of sale due from the seller at closing, which are expected to total approximately $5,000, with the exact amount to be determined at closing;

(5)(a)   If the Receiver is able to pay American National Life Insurance Company of New York the amount necessary to pay off the mortgage encumbering the Saska's Property and the Parking Lot Property from the proceeds of the Saska's Property sale, then, after the aforementioned estimated amounts are paid out of escrow, the net sale proceeds— estimated to be in the range of $960,000 to $970,000 (with exact amount to be determined at closing)—shall be paid to the receivership estate;

(5)(b)   If, however, the sale proceeds from the Saska's property (including the proceeds from the liquor license escrow after closing) are insufficient to pay American

National Life Insurance Company of New York the full amount necessary to pay off the mortgage encumbering the Saska's Property and the Parking Lot Property, the remaining amount of the ANICO lien shall attach to the net sale proceeds of the Parking Lot Property that would otherwise be distributed to the receivership estate as set forth in paragraph (5) above. Notwithstanding the foregoing language of this provision, the Receiver is authorized to use the proceeds from the Saska's Property sale to pay off the mortgage encumbering the Saska's Property and the Parking Lot Property first, before using any of the proceeds from the Parking Lot Property sale for such purpose, even if the closing of the Parking Lot Property sale takes place first; and

(6)     The Receiver is immediately authorized to complete the sale transaction of the Parking Lot Property, including executing any and all documents as may be necessary and appropriate to do so.

**IT IS FURTHER ORDERED** that after each closing, the Receiver shall provide a full accounting of sale costs, property tax credits received and/or property taxes paid, any amount used to pay off the lien on the property, and the amount ultimately returned to the receivership estate from the sale proceeds. If necessary, the Receiver may delay the accounting until after the Saska's liquor license escrow has closed.

**IT IS SO ORDERED.**

Dated:  May 8, 2020

Honorable Allison H. Goddard
United States Magistrate Judge

3:19-cv-1628-LAB-AHG