UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>GINA CHAMPION-CAIN AND ANI DEVELOPMENT, LLC,<br><br>Defendants, and<br><br>AMERICAN NATIONAL INVESTMENTS, INC.,<br><br>Relief Defendant. | Case No.:  3:19-cv-1628-LAB-AHG<br><br>**ORDER:**<br><br>**(1) GRANTING REQUEST TO APPROVE SALE OF CROWN POINT PROPERTY TO WINNING BIDDER; and**<br><br>**(2) GRANTING IN PART AND DENYING IN PART MOTION FOR APPROVAL OF SALE OF CROWN POINT PROPERTY**<br><br>[ECF Nos. 318, 334] |

## I.   BACKGROUND

As described in prior orders, *see, e.g.*, ECF Nos. 54, 162, 163, this is an action brought by the Securities and Exchange Commission ("SEC") against Defendants ANI Development, LLC ("ANI Development") and Gina Champion-Cain and Relief Defendant American National Investments, Inc. ("ANI Inc."), alleging violations of federal securities laws based on a purportedly fraudulent liquor license loan scheme. ECF No. 1.

On September 3, 2019, the Court established an equitable receivership and appointed Krista L. Freitag ("Receiver") as the receiver of ANI Development and ANI Inc., authorizing her to take control over all funds and assets owned, managed, or in the possession or control of the receivership entities. *See* ECF No. 6 at 14-16. In that role, the Receiver acts under the control and direction of the Court to facilitate the "orderly and efficient administration of the estate . . . for the benefit of creditors." *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986). *See also Atl. Tr. Co. v. Chapman*, 208 U.S. 360, 370 (1908) (explaining that a motion to appoint a receiver to take charge of property is "to the end that the property might be cared for and preserved for all who had or might have an interest in the proceeds of its sale. . . . Immediately upon such appointment and after the qualification of the receiver, the property [within the equitable receivership] passed into the custody of the law, and thenceforward its administration was wholly under the control of the court by its officer [], the receiver.").

On December 11, 2019, the presiding judge in this action, Chief Judge Burns, granted the parties' Joint Motion (ECF No. 156) to give limited consent to the undersigned to hear and directly decide all motions filed in this action to approve sales of receivership assets. ECF No. 160. *See also* 28 U.S.C. § 636(c); CivLR 72.1(g). All property sale motions are set before the undersigned pursuant to that grant of consent.

Pursuant to 28 U.S.C. § 2001(a), realty in the possession of an appointed receiver is subject to a public sale process, "upon such terms and conditions as the court directs." 28 U.S.C. § 2002 further requires that notice be published once a week for at least four weeks prior to the sale in at least one newspaper regularly issued and of general circulation in the county, state, or judicial district where the realty is located. The purpose of such notice "is to inform the public of the kind and condition of the property to be sold, the time, the place, and the terms of the sale. It is to secure bidders and prevent the sacrifice of the property." *Breeding Motor Freight Lines v. R.F.C.*, 172 F.2d 416, 422 (10th Cir. 1949). Therefore, the safeguards of notice and opportunity to submit overbids help to ensure that the sale is able to fetch the best price possible, which is consistent with the principle that

"a primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." *Hardy*, 803 F.2d at 1038. *See also United States v. Grable*, 25 F.3d 298, 303 (6th Cir. 1994) (noting that "the intent of" the requirement in 28 U.S.C. § 2001 that property be sold in the county in which the land is situated is "to bring a better price at the sale").

The Receiver filed a Motion for Approval of Sale of Crown Point Property (the "Crown Point Motion") on May 11, 2020. ECF No. 318. The motion concerns one of the real properties within the receivership estate, a former Surf Rider Pizza restaurant location (take-out and delivery only), located at 3445-3453 Ingraham Street, San Diego, California (the "Crown Point Property"). *See* ECF No. 318-1 at 5; ECF No. 76-2 at 4 (listing the Crown Point Property in the Preliminary Real Estate and Liquor License Asset Schedule filed on October 3, 2019).

At the time the motion was filed, the intended buyer of the Crown Point Property was Greg R. Velasquez and Cynthia L. Velasquez, as Trustees of the C & G Velasquez Family Trust, Under Declaration of Trust dated October 19, 2005, and the intended sale price was $525,000. ECF No 318-1 at 7-8. In the motion, the Receiver proposed compliance with 28 U.S.C. §§ 2001 and 2002 by publishing notice in the San Diego Union-Tribune once a week for four weeks of a public auction for the property on June 11, 2020. *Id.* at 12. Potential bidders were invited to qualify for the auction by submitting a signed purchase and sale agreement, an earnest money deposit of $27,500, and proof of funds by June 8, 2020. *Id.*

The Court set a deadline of May 28, 2020 to file any response in opposition to the Crown Point Motion, and ordered the Receiver to file a notice of non-receipt of overbids if no qualified overbids were received by June 8, 2020. ECF No. 320. No opposition to the Crown Point Motion was filed. However, on June 10, 2020, the Receiver filed a Notice of Receipt of Qualified Overbids, reporting that two qualified overbids were received for the Crown Point Property. ECF No. 327. The Receiver, through her broker, obtained the

consent of the original buyer and each of the qualified overbidders to conduct the live auction via videoconference on June 11, 2020. *Id.*

On June 15, 2020, the Receiver filed a Notice of Results of Auction for Crown Point Property and Request to Approve Sale to Winning Bidder. ECF No. 334 ("Notice of Results"). In the Notice of Results, the Receiver requests that the Court approve the sale of the Crown Point Property to the winning bidder, Quinn Myers and Jacob Spitzlberger, and also to approve the sale of the property to the back-up bidder RSB Property Investors, LLC in the event the winning bidder does not close the sale for any reason. *Id.* at 2-3. The winning bidder submitted a bid of $695,000 for the property, while the back-up bidder submitted the second-highest bid of $680,000. *Id.* Other than approval of the sale to the winning bidder (and the back-up bidder if the sale falls through)[1] at a new sale price, all other relief requested in the Crown Point Property Motion, including authority to pay off the mortgage on the property and pay the costs of sale from the sale proceeds, remains the same. *Id.* at 3.

Being fully advised and noting the lack of opposition to the Crown Point Motion, the Court will **GRANT** (1) the request to approve the sale of the Crown Point Property to the winning bidder; (2) the request to approve the sale of the Crown Point Property to the back-up bidder if the winning bidder does not close the sale for any reason; and (3) all relief requested in the Crown Point Motion, other than the request to approve the sale to the former buyer at the sale price of $525,000. That portion of the Crown Point Motion will be **DENIED**.

\\
\\

---

[1] Unlike the winning bidder, the back-up bidder would also purchase the personal property located in the Crown Point Property. ECF No. 334 at 3 n.1. Consequently, the Receiver will move for court approval of the sale of the personal property if the realty sale is ultimately consummated with the back-up bidder instead of the winning bidder. *Id.*

## II. LEGAL STANDARD

"[I]t is a recognized principle of law that the district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership." *SEC v. Lincoln Thrift Ass'n*, 577 F.2d 600, 606 (9th Cir. 1978). Where a district court sits in equity, "[u]nless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied. 'The great principles of equity, securing complete justice, should not be yielded to light inferences, or doubtful construction.'" *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946).

"[A] district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad." *Hardy*, 803 F.2d at 1037. As part of this broad discretion, the district court sitting in equity and having custody and control of property "has power to order a sale of the same in its discretion. The power of sale necessarily follows the power to take control of and to preserve property[.]" *SEC v. Am. Capital Investments, Inc.*, 98 F.3d 1133, 1144 (9th Cir. 1996), *abrogated on other grounds by Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998) (quoting 2 Ralph E. Clark, Treatise on Law & Practice of Receivers § 482 (3d ed. 1992)). If the court approves an equitable receiver's proposed property sale, the sale "does not . . . purport to convey 'legal' title, but rather 'good,' equitable title enforced by an injunction against suit." *Id.* (citing 2 Clark, Treatise on Law & Practice of Receivers, §§ 342, 344, 482(a), 487, 489, 491).

## III. DISCUSSION

### A. Background of the Property and Proposed Sale

The Crown Point Property was purchased for $525,000 in May 2016, and title was taken in the name of receivership entity 3445 Ingraham Street, LLC. ECF No. 318-1 at 5. *See also* ECF No. 6 at 5 (the Court's Appointment Order, listing 3445 Ingraham Street, LLC as an entity subject to the equitable receivership).

Following her appointment, the Receiver determined that the take-out and delivery restaurant operation at the Crown Point Property location was not profitable. ECF No. 318-1 at 5. Consequently, the Receiver determined the best course of action was to close the restaurant and prepare the Property for sale in the short-term, along with other restaurant properties included in the receivership estate. *Id.*

For all of the restaurant-related properties included in the receivership estate, the Receiver and her staff interviewed three licensed brokers with experience selling restaurants in San Diego, ultimately choosing two separate brokers—broker Colliers International for restaurant-related properties owned by the receivership entities, and broker Next Wave ("Broker") for the Surf Rider Pizza and Bao Beach restaurant concepts operated at leased and owned property locations, including the Crown Point Property. *Id.*

To market the Crown Point Property, Broker created individual marketing flyers for the listing, and sent the listing out via email campaigns to a targeted list of over 6,200 restaurant operators, buyers, brokers, and investors. *Id.* at 6. Broker also used websites including CoStar, LoopNet, BizBuySell, and Next Wave Commercial to advertise the listing and distributed press releases to numerous local news publications. *Id.* These efforts resulted in a total of 43 signed confidentiality agreements and, ultimately, eleven offers for all properties and restaurant assets marketed. *Id.* Additionally, at Broker's request, the Receiver ordered various reports and provided relevant internal documents to create due diligence packages for each property. Broker hosted the due diligence materials online, prepared an offering memorandum for the properties that detailed the Court sale process, and provided a form Purchase and Sale Agreement and Joint Escrow Instructions ("Form PSA") prepared by Receiver and her counsel. *Id.* The Form PSA has all contingencies removed and provides for the overbid, public auction, and Court approval process. *Id.* Prospective purchasers had until the Receiver's "Call for Offers" deadline of February 3, 2020 to complete their due diligence and submit an executed Form PSA. *Id.*

Two prospective purchasers made offers on the Crown Point Property, but both of them withdrew their offers after the California Governor issued a "Safer-At-Home" Order

in March 2020, directing the closure of dine-in operations at all restaurants in the state. *Id.* at 6-7. Consequently, the Receiver continued to list the property without a specific "Call for Offers" deadline. *Id.* at 7. Eventually, an offer of $525,000 for the real property was received from Greg R. Velasquez and Cynthia L. Velasquez, as Trustees of the C & G Velasquez Family Trust, Under Declaration of Trust dated October 19, 2005. *Id.* As previously noted, this was the intended buyer at the time the Receiver filed the Crown Point Motion. However, the current intended buyer is winning bidder Quinn Myers and Jacob Spitzlberger, with a bid of $695,000, or back-up bidder RSB Property Investors, LLC, with a bid of $680,000. ECF No. 334 at 2-3.

To qualify as overbidders at the auction, both the winning bidder and back-up bidder had previously executed the Form PSA removing all contingencies, and each of them also provided an earnest money deposit of $27,500. *See* ECF Nos. 334-1 at 3-41; 334-2 at 2-41. Pursuant to §§ 2.2(a) and 15.4 of the Form PSAs, the earnest money deposit is non-refundable to the winning bidder, and will only be returned to the backup bidder after the closing for the winning bidder occurs. After the auction, on June 15, 2020, both the winning bidder and the back-up bidder executed a First Amendment to their respective Form PSAs with the Receiver, which, among other terms, amends the purchase price in the Form PSAs to correspond with their bids. ECF No. 334-1 at 43-46; ECF No. 334-2 at 42-45.

**B. Proposed Procedures and Distribution**

The Crown Point Property is encumbered by a deed of trust securing a loan issued by the prior owner of the property, the Renken Shaw Family Trust. ECF No. 318-1 at 7. The Receiver intends to use the proceeds of the sale of the property to pay off the loan and estimates the amount required to do so will be approximately $272,000, although that estimate in the Receiver's initial motion was based on the assumption that the sale would close in June 2020. *Id.* The Receiver also estimates that only a small amount of property taxes will be owed if the sale closes after June 30, 2020, since the second installment of property taxes for 2019-2020 has already been paid. *Id.* The Receiver estimates that costs of sale including escrow, title and recording fees will be approximately $2,500. *Id.* at 8.

The Broker's fee pursuant to the listing agreement is 2.5% of the sale price, or $13,125. *Id.* Based on these estimates, the Receiver estimated in the Crown Point Motion that the net sale proceeds for the receivership estate will be in the range of $230,000 to $240,000. *Id.*

In light of the substantially higher winning bid ($695,000) and back-up bid ($680,000) compared to the formerly agreed-upon purchase price of $525,000, however, the Court assumes an adjusted Broker's fee in the range of $17,000 to $17,375, and a resultant adjusted estimate of net sale proceeds for the receivership estate in the range of $381,125 to $405,750.

### C. Court Approval of the Proposed Procedures and Sale

The Court has reviewed the documents submitted by the Receiver in support of the Crown Point Motion, as well as the Notice of Results and request to approve the sale to the winning bidder or to the back-up bidder if the winning bidder does not close the sale for any reason. The Court finds that both the winning bid and the back-up bid are fair, reasonable, and will represent a strong return of proceeds to the receivership estate. Both bids exceed the May 2016 $525,000 purchase price of the property by more than $150,000, representing a return of approximately 32% (for the winning bid) or approximately 29% (for the back-up bid). Broker broadly marketed and advertised the property through flyers, email campaigns, online advertising, and print press releases in predominant news publications. Although the current COVID-19 pandemic interfered significantly with the Receiver's ability to secure a fruitful offer by the call-for-offers deadline, the Receiver continued to market the property, and successfully secured two overbids well above the original purchase price agreed upon with the previous intended buyer. Additionally, Broker's proposed commission of 2.5% of sale price is consistent with the lower range of industry standards.

Moreover, the Receiver's publication of notice seeking qualified overbids in the San Diego Union Tribune, in addition to the solicitation of overbids and holding of a public auction, establish that the Receiver fully satisfied the requirements for the public sale procedures set forth in 28 U.S.C. §§ 2001(a) and 2002, which are designed to ensure the

best price for real property is obtained. The Court is convinced that the carrying out of the notice and auction process alone suffices to show that the Receiver has secured the best and highest price for the Crown Point Property, whether the sale closes with either the winning bidder or the back-up bidder. The Court is thus satisfied that the intent of the statutory scheme—to ensure that the best and highest possible price is paid for property within the receivership estate—has been fulfilled. Even taking into account the need to pay off the loan on the property from the sale proceeds, the anticipated return to the receivership estate is substantial.

Based on these considerations, and noting the lack of any opposition to the Crown Point Motion, the Court finds the Receiver has established that the proposed sale of the Crown Point Property and proposed distribution of the sale proceeds, whether the sale closes with the winning bidder or the back-up bidder, are consistent with principles of equity and the goal of a receivership to ensure the orderly and efficient administration of the estate for the benefit of creditors. *See Hardy*, 803 F.2d at 1038.

### IV. CONCLUSION

Having considered the Receiver's Motion for Approval of Sale of Crown Point Property (ECF No. 318), and the Receiver's Notice of Results of Auction for Crown Point Property and Request to Approve Sale to Winning Bidder (ECF No. 334), the Court **GRANTS IN PART** and **DENIES IN PART** the Crown Point Property Motion (ECF No. 318). Specifically, the Court **GRANTS** all relief requested therein, other than the approval of the sale to the former intended buyer at the former purchase price. The Court **GRANTS** the Receiver's request to approve the sale of the Crown Point Property to the winning bidder at the winning bid price of $695,000. If the winning bidder does not close the sale for any reason, the Court further **APPROVES** the sale of the Crown Point Property to the back-up bidder at the sale price of $680,000.

Accordingly, it is **ORDERED** as follows:

(1) The sale of the real property located at 3445-3453 Ingraham Street, San Diego, California, as described in Exhibit A to the Receiver's Notice of Results of Auction for

Crown Point Property and Request to Approve Sale to Winning Bidder (ECF No. 334), by Krista L. Freitag, as receiver, to Quinn Myers and Jacob Spitzlberger, or their designee ("Winning Bidder") is confirmed and approved;

(2) The purchase price of $695,000, to be paid by Winning Bidder for the Crown Point Property, is confirmed and approved;

(3) ***If and only if the Winning Bidder does not close the sale for any reason***, the sale of the real property located at 3445-3453 Ingraham Street, San Diego, California, as described in Exhibit B to the Receiver's Notice of Results of Auction for Crown Point Property and Request to Approve Sale to Winning Bidder (ECF No. 334), by Krista L. Freitag, as receiver, to RSB Property Investors, LLC ("Back-Up Bidder"), at a purchase price of $680,000, is confirmed and approved;

(4) The Receiver is authorized to pay broker Next Wave a commission of 2.5% of the sale price;[2]

(5) The Receiver is authorized to pay the Renken Shaw Family Trust the amount necessary to pay off the loan encumbered by a deed of trust, which amount is approximately $272,000 (with the exact amount to be determined at closing);

(6) If any property taxes are owed, the Receiver is authorized to pay such property taxes;

(7) After the aforementioned estimated amounts (with the exact amounts to be determined at closing) are paid out of escrow, the net sale proceeds, which are estimated

---

[2] Broker Next Wave was also the previously intended buyer's broker, and the Receiver's Declaration attached to the Crown Point Motion indicates that the broker's commission of 2.5% of the sale price is tied to that circumstance. ECF No. 318-2, Freitag Decl. ¶ 9. If that is no longer the case, and the broker's fee has increased as a result, the Receiver should file a notice to that effect and move to modify this Order to approve a higher Broker's fee.

to be in the range of $381,125 to $405,750 (with the exact amount to be determined at closing), shall be paid to the receivership estate;[3] and

  (8) The Receiver is immediately authorized to complete the sale transaction, including executing any and all documents as may be necessary and appropriate to do so.

  (9) If the sale of the Crown Point Property ultimately closes with the Back-Up Bidder, the Receiver is ordered to submit a joint motion to the Court for approval of the sale of the personal property located in the Crown Point Property to the Back-Up Bidder, as stated in the Notice of Results. ECF No. 334 at 3 n.1.

  After closing, the Receiver shall provide a full accounting of sale costs, property taxes paid, the precise amount used to pay off the loan to Renken Shaw Family Trust, and the amount ultimately returned to the receivership estate from the sale proceeds.

**IT IS SO ORDERED.**

Dated: July 2, 2020

              *Allison H. Goddard*
              Honorable Allison H. Goddard
              United States Magistrate Judge

---

[3] Because the Court understands that numerous contingencies (e.g., whether the sale closes with the Winning Bidder or the Back-Up Bidder, the amount of property taxes owed, etc.) may affect the net sale proceeds of this particular sale, the Court approves the distribution of the net sale proceeds to the receivership estate even if the final amount is outside of this range.