UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>GINA CHAMPION-CAIN, et al.,<br><br>　　　　　　　　　　　Defendants. | Case No.:  19cv1628-LAB (AHG)<br><br>**ORDER DENYING MOTIONS TO INTERVENE;**<br><br>**ORDER WITHDRAWING LEAVE FOR NON-PARTIES TO FILE BRIEFING; AND**<br><br>**ORDER GRANTING LEAVE TO FILE DOCUMENT UNDER SEAL**<br><br>**[Docket Numbers 21, 62, 66, 89, and 114.]** |

**Motions for Leave to Intervene**

　　　Three groups of non-parties filed motions for leave to intervene (Docket nos. 62, 89, and 114.) The SEC and the Receiver opposed these. After several extensions, the motions are all full briefed and ready for decision.

　　**Legal Standards**

　　The three motions are governed by Fed. R. Civ. P. 24(a), to the extent the movants seek to intervene as of right. The Court is "guided primarily by practical

and equitable considerations, and the requirements for intervention are broadly interpreted in favor of intervention." *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004). That being said, the parties seeking to intervene bear the burden of showing that <u>all</u> requirements for intervention have been met. *Id.* These are: (1) timeliness, (2) an interest relating to property or transaction that is the subject of the action, (3) disposition of the action may impair or impede the applicants' ability to protect the interest, and (4) the applicants' interest is not adequately represented by existing parties. *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 836 (9th Cir. 1996).

The SEC argues that § 21(g) of the Securities Exchange Act of 1934, 15 U.S.C. § 78(u)(g), bars intervention without the SEC's consent. While some Courts have accepted this argument, the Ninth Circuit has not squarely addressed it and district courts in this Circuit have generally rejected the argument. *See, e.g., S.E.C. v. ABS Manager, LLC*, 2013 WL 3752119, at *2–3 (S.D. Cal., July 15, 2013); *S.E.C. v. TLC Investments & Trade Co.*, 147 F. Supp. 2d 1031, 1039–40 (C.D. Cal., 2001). Moreover, the Ninth Circuit has consistently held that district courts possess broad equitable powers in the administration and supervision of an equity receivership such as the one in this case. *See SEC v. Capital Consultants, LLC*, 397 F.3d 733, 738 (9th Cir. 2005); *SEC v. Hardy*, 803 F.2d 1034, 1037–38 (9th Cir. 1986).

**The Edelman Motion**

The first motion (Docket no. 62) is brought by three investors: Bryan, Mychal, and Robert Edelman. Their argument rests, in part, on their contention that they were entitled to notice and an opportunity to oppose the SEC's motion for preliminary injunction. The Court's order granting that motion imposed the receivership.

After the Edelmans filed their motion to intervene, however, the Receiver filed a motion for an order in aid of her receivership. The Court received briefing

on this, including briefing from interested non-parties who did not previously have an opportunity to be heard. The Edelmans filed a substantial opposition to the motion (Docket no. 101), asking the Court for various kinds of relief in connection with the receivership — including asking the Court to replace the receivership with another mechanism.

The Court invited counsel to address possible changes to the preliminary injunction, the method of notice to investors and other interested persons, and other urgent issues relating to the receivership. (*See* Docket no. 113.) Although the Court didn't intend to revisit the imposition of a receivership or the appointment of a receiver (*see id.*), it allowed their counsel to be heard on these issues. Even assuming that investors and creditors had the advance right to notice and an opportunity to be heard, the Edelmans have now had an opportunity to raise the issues they wanted to raise, and to have their positions heard and considered. (*See* Docket no. 126 at 2:7–9.)

The appointed receiver has been charged with representing the interest of all the investors. She is undertaking actions on their behalf that could not feasibly be taken by individual investors or groups of investors. She is required to file interim reports and to seek authorization before taking important actions, and she is subject to the Court's ongoing supervision. Other procedural safeguards are also in place to protect the interests of investors such as the Edelmans.

The purpose of imposing a receivership was to ensure that assets are managed as efficiently as possible and divided fairly. If this responsibility is split among numerous parties with competing interests, the Court fears that individual investors and creditors will likely end up with less than they would under the stewardship of the receivership. Moreover, vesting decision-making authority in multiple parties is destined to invite a "free-for-all" that will necessarily result in an inequitable distribution of assets with a few lucky winners and many losers, and a great deal of waste. For these reasons, the Court finds that the receiver adequately

represents the Edelmans' interest as investors. Because this prong of the test is not met, the Court finds the Edelmans are not entitled to intervene.

Furthermore, while the Edelmans' briefing has been helpful and succinct, the Court is mindful of the need to manage the case, which can fairly be described as buzzing with activity. This case is less than a year old, yet the docket already has nearly four hundred entries. Granting individual investors the status of parties with a right to weigh in on every issue would render the receivership and the case much less manageable, and introduce needless expense, duplication of effort, and delay.

### The Merit Financial Motion

Merit Financial, Inc. seeks leave to intervene the manager of the CA Fund, raising arguments similar to the Edelmans'. Merit's goal in seeking intervention is to gain the right to be heard as to the propriety of a permanent receivership, notices to be given to investors, and an opportunity to be heard. (*See* Docket no. 89-1 3:5–16.) Because Merit, like the Edelmans, has now been afforded that opportunity, this argument is unpersuasive.

Although Merit's role is somewhat more complicated than the Edelmans', it characterizes itself as an investor whose assets are now subject to control by the receiver and which, it fears, may be spent to pay other expenses of the receivership. For the same reasons identified above, the Court finds the receiver adequately represents Merit's interest.

### The Insurance Companies' Motion

Two insurance companies who are secured creditors, American National Life Insurance Company of New York and American National Insurance Company seek to intervene to protect their interest in certain commercial real estate. In this respect, they are in a somewhat different position than the investors. They argue that the receiver is acting contrary to their interests by refusing to make payments on secured debts owed to them, even though the borrowers (which are three businesses) were in default before the receivership was imposed. The debts are

secured by commercial properties, and the total value of the debt is over $9 million. The companies also argue the receiver's failure to pay bills and taxes has caused tax and mechanics' liens to attach.

The two companies' interest, however, will not be practically impaired if they are not allowed to intervene. True, they cannot enforce their interest without Court approval while the receivership owns the properties. But they have other means at their disposal to protect it. *See United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004) (lienholder's interest in ability to collect debt could be dealt with through receiver's summary claims process).

The receiver is in the process of selling off these properties to raise money. Two of the three properties have already been sold, and the insurance companies have received payouts out of the proceeds. (Docket nos. 316, 317.)  While the third property remains unsold, there is no reason to believe the receiver will be unable to sell it, or that the companies will not ultimately receive a payout once the property is sold. In short, the companies have adequate means at their disposal to protect their interest without intervening.  *See Alisal Water*, 370 F.3d at 921.

**Order on Motions to Intervene**

For the reasons set forth above, the applicants are not entitled to intervene as of right. Nor does the Court find that permissive intervention is appropriate. The three motions are **DENIED**, and the Edelmans' motion to expedite (Docket no. 66) is **DENIED AS MOOT**.

**Rescinding Leave to File Briefing**

Because it was evident that briefing on the motions for leave to intervene would be delayed, and because it appeared that other non-parties might seek leave to intervene, the Court has permitted non-parties to file briefing in the interim. With this ruling, there is no longer any need to receive briefing from non-parties. And because future motions for leave to intervene would be untimely, none are
/ / /

likely to be granted. Leave for non-parties to file briefing in this action is therefore **RESCINDED**.

Correspondingly, this ruling means that parties to related actions who are not also parties to this action may <u>not</u> file briefing in the docket without leave.

**Motion for Leave to File Document Under Seal**

Defendant Gina Champion-Cain sought leave to file under seal a three-page summary schedule of her assets (*See* Docket no. 21), which the preliminary injunction (Docket no. 6) required her to file.

All documents filed with the court are presumptively public. *San Jose Mercury News, Inc. v. U.S. Dist. Court*, 187 F.3d 1096, 1103 (9th Cir. 1999). Of the two standards for sealing, the Court assumes, *arguendo*, that the higher "compelling reasons" standard applies here. *See Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 677 (9th Cir. 2010) (identifying the two standards for sealing).

The schedule lists a number of financial accounts with associated account numbers, plus real and personal property. The summary provides valuations for each asset or group of assets. The financial account numbers could easily be misused and should not be disclosed. *See* Fed. R. Civ. P. 5.2. It also includes valuations for property, some of which is likely to be offered for sale. In this context, the valuation of property is a type of trade secret. Making it public it would give prospective buyers of the property an advantage over the seller. The summary also includes some financial information about non-parties. It includes other details about the assets, but most of them are disclosed in other documents. The public has little need to look at this summary to obtain that information.

Protecting the financial information from disclosure and misuse is a compelling reason, which the Court finds outweighs the public's right to access.

///
///
///

*See Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006). The motion is **GRANTED**, and Champion-Cain may file the summary under seal.

**IT IS SO ORDERED**.

Dated: July 10, 2020

*[signature: Larry A. Burns]*
Hon. Larry Alan Burns
Chief United States District Judge