UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SECURITIES AND EXCHANGE
COMMISSION,

                                    Plaintiff,

v.

GINA CHAMPION-CAIN AND ANI
DEVELOPMENT, LLC,

                                    Defendants, and


AMERICAN NATIONAL
INVESTMENTS, INC.,

                        Relief Defendant.

Case No.:  3:19-cv-1628-LAB-AHG

**ORDER GRANTING RECEIVER'S MOTION FOR (A) APPROVAL OF SALE OF TENNYSON STREET PROPERTY and (B) RECOVERY OF PRIOR EARNEST MONEY DEPOSIT FROM ESCROW**


**[ECF No. 346]**

## I.     BACKGROUND

As described in prior orders, *see, e.g.*, ECF Nos. 54, 162, 163, this is an action brought by the Securities and Exchange Commission ("SEC") against Defendants ANI Development, LLC ("ANI Development") and Gina Champion-Cain and Relief Defendant American National Investments, Inc. ("ANI Inc."), alleging violations of federal securities laws based on a purportedly fraudulent liquor license loan scheme. ECF No. 1.

1

On September 3, 2019, the Court established an equitable receivership and appointed Krista L. Freitag ("Receiver") as a permanent receiver of ANI Development and ANI Inc., authorizing her to take control over all funds and assets owned, managed, or in the possession or control of the receivership entities. *See* ECF No. 6 at 14-16. In that role, the Receiver acts under the control and direction of the Court to facilitate the "orderly and efficient administration of the estate . . . for the benefit of creditors." *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986). *See also Atl. Tr. Co. v. Chapman*, 208 U.S. 360, 370 (1908) (explaining that a motion to appoint a receiver to take charge of property is "to the end that the property might be cared for and preserved for all who had or might have an interest in the proceeds of its sale. . . . Immediately upon such appointment and after the qualification of the receiver, the property passed into the custody of the law, and thenceforward its administration was wholly under the control of the court by its officer [], the receiver."). On December 11, 2019, the presiding judge in this action, Chief Judge Burns, granted the parties' Joint Motion (ECF No. 156) to give limited consent to the undersigned to hear and directly decide all motions filed in this action to approve sales of receivership assets. ECF No. 160. *See also* 28 U.S.C. § 636(c); CivLR 72.1(g). All property sale motions are set before the undersigned pursuant to that grant of consent.

The motion presently before the Court (ECF No. 346) concerns the proposed sale of a residential real property within the receivership estate, a single-family residence located at 3548 Tennyson Street, San Diego, California, 92106 (the "Tennyson Street Property"). *See* ECF No. 252; ECF No. 76-2 at 6 (listing the Tennyson Street Property in the Preliminary Real Estate and Liquor License Asset Schedule filed on October 3, 2019). The Receiver previously filed a Motion for Approval of Sale of Tennyson Street Property on February 21, 2020. ECF No. 252. The Court granted the Receiver's motion and approved the sale of the Tennyson Street Property to the prior buyer on March 17, 2020. ECF No. 280. However, the prior buyer backed out of the sale before closing. ECF No. 346-1 at 6.

The Receiver continued to market the Tennyson Street Property through the broker Resonate Real Estate ("Broker"), and ultimately entered into a new purchase agreement—

2

subject to qualified overbids pursuant to the public sale process and approval by the Court—with a new buyer. *See id.* at 6-7. Accordingly, on June 22, 2020, the Receiver filed the instant Motion for (A) Approval of Sale of Tennyson Street Property and (B) Recovery of Prior Earnest Money Deposit from Escrow (the "Tennyson Street Property Motion"). ECF No. 346.

The Court set a response deadline of July 7, 2020, a reply deadline of July 14, 2020, and a hearing date of August 3, 2020 for the Tennyson Street Property Motion. ECF No. 352. Further, the Court ordered the Receiver to file a notice of non-receipt of overbids if no overbids were received by the deadline of July 14, 2020 set forth in the proposed publication of notice of the Tennyson Street Property sale. *Id.* The Receiver filed a notice of non-receipt of qualified overbids on July 16, 2020. ECF No. 394. There being no qualified overbids and no opposition to the Tennyson Street Property Motion, on July 29, 2020, the Court vacated the hearing and took this matter under submission. ECF No. 404.

For the reasons explained more fully below, the Court will **GRANT** the Tennyson Street Property Motion.

## II.   LEGAL STANDARD

"[I]t is a recognized principle of law that the district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership." *SEC v. Lincoln Thrift Ass'n*, 577 F.2d 600, 606 (9th Cir. 1978). Where a district court sits in equity, "[u]nless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied. 'The great principles of equity, securing complete justice, should not be yielded to light inferences, or doubtful construction.'" *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946).

"[A] district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad." *Hardy*, 803 F.2d at 1037. As part of this broad discretion, the district court sitting in equity and having custody and control of property "has power to order a sale of the same in its

3

discretion. The power of sale necessarily follows the power to take control of and to preserve property[.]" *SEC v. Am. Capital Investments, Inc.*, 98 F.3d 1133, 1144 (9th Cir. 1996), *abrogated on other grounds by Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998) (quoting 2 Ralph E. Clark, <u>Treatise on Law & Practice of Receivers</u> § 482 (3d ed. 1992)). If the court approves an equitable receiver's proposed property sale, the sale "does not . . . purport to convey 'legal' title, but rather 'good,' equitable title enforced by an injunction against suit." *Id.* (citing 2 Clark, <u>Treatise on Law & Practice of Receivers</u>, §§ 342, 344, 482(a), 487, 489, 491).

Pursuant to 28 U.S.C. § 2001(a), realty in the possession of an appointed receiver is subject to a public sale process, "upon such terms and conditions as the court directs." 28 U.S.C. § 2002 further requires that notice be published once a week for at least four weeks prior to the sale in at least one newspaper regularly issued and of general circulation in the county, state, or judicial district where the realty is located.[1] These safeguards of notice and opportunity to submit overbids help to ensure that the sale is able to fetch the best price possible, which is consistent with the principle that "a primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." *Hardy*, 803 F.2d at 1038. *See also United States v. Grable*, 25 F.3d 298, 303 (6th Cir. 1994) (noting that "the intent of" the requirement in 28 U.S.C. § 2001 that property be sold in the county in which the land is situated is "to bring a better price at the sale").

**III.   DISCUSSION**

**A. Background of the Property and Proposed Sale**

As described in the Court's previous order approving the sale, the Tennyson Street Property was purchased for $840,000 on August 20, 2019, only two weeks before the

---

[1] 28 U.S.C. § 2001 also provides for a private sale process under subsection (b), but the requirements of that subsection are more stringent. The Receiver does not propose a private sale here.

receivership in this case was established. ECF No. 346-1 at 5. Title was taken in the name of Relief Defendant American National Investments, Inc. *Id.*

Following her appointment, the Receiver and her staff reviewed automated valuation scores for the Tennyson Street Property and a survey of market-comparable properties. *Id.* Though habitable, the property was unoccupied and in need of various repairs. *Id.*; ECF No. 346-2, Freitag Decl. ¶ 3. After consulting with multiple licensed brokers about the value of the property and terms of a potential listing agreement, the Receiver selected Broker Resonate Real Estate and listed the Tennyson Street Property for sale at a purchase price of $865,000. ECF No. 346-1 at 5.

Broker held two open houses and received two offers near the listing price soon after. Because there were multiple offers, the Receiver counter-offered the prospective buyers for their highest and best price and accepted the highest offer of $885,000 from Matthew Minnick and Peyton Shealy ("Prior Buyer") on January 22, 2020. *Id.* The Receiver and Buyer executed a California Residential Purchase Agreement and Joint Escrow Instructions, along with an Addendum making court approval of the sale a condition to closing and providing for the overbid and auction process required by 28 U.S.C. § 2001(a). *Id.* at 5-6. Prior Buyer deposited the required earnest money deposit of $8,450 ("Prior Buyer Deposit) into escrow and removed all contingencies other than Court approval. *Id.* at 6.

As noted, Prior Buyer refused to close the transaction following Court approval of the sale. The Receiver accordingly requested that the escrow company, Granite Escrow, release the prior buyer's deposit to the Receiver. *Id.* Granite Escrow advised the Receiver a Court order was needed to release the funds to the Receiver. *Id.* The Receiver continued to market the property and, after receiving multiple offers and engaging in negotiations with prospective purchasers, the Receiver entered into a new Residential Purchase Agreement and Joint Escrow Instructions, including an Addendum thereto ("Agreement") with Gregory Campbell and Jared Mejeur ("Buyer"). *Id.* at 6-7. *See also* ECF No. 346-3. The agreed purchase price with Buyer is $885,000 (the same as the sale price agreed upon

with Prior Buyer), but the Receiver agreed to a credit to Buyer at closing in the amount of $12,500 in light of the significant repairs needed to the property. ECF No. 346-1 at 6; Freitag Decl. ¶ 6. Buyer has deposited $11,000 into escrow. ECF No. 346-1 at 7.

**B. Proposed Procedures and Distribution**

In the motion seeking approval of the sale, the Receiver proposed compliance with the overbid and auction process by publishing the following notice in the San Diego Union-Tribune once a week for four weeks:

> In the action pending in U.S. District Court for the Southern District of California, Case No. 19-CV-01628-LAB-AHG, Securities and Exchange Commission v. Gina Champion-Cain, et al., notice is hereby given that the court-appointed receiver will conduct a public auction for the real property located at 3548 Tennyson Street, San Diego, California 92106-1847 in San Diego County, California. Sale is subject to Court confirmation after the auction is held. Minimum bid price is at least $910,000. The auction will take place on July 17, 2020 at 1:30 p.m. in front of the entrance to the United States Courthouse, 221 W. Broadway, San Diego, California or as the court otherwise directs. To be allowed to participate in the auction, prospective purchasers must meet certain bid qualification requirements, including submitted a signed purchase and sale agreement, an earnest money deposit of $11,000, and proof of funds. All bidders must be qualified by 5:00 p.m. PT on July 14, 2020, by submitting the required materials to the receiver at 501 West Broadway, Suite 290, San Diego, California, 92101.

ECF No. 346-1 at 11-12. For those interested in qualifying as bidders, the notice also provided a phone number and email address for the relevant point of contact. *Id.* at 12.

The above notice was published as proposed. On July 16, 2020 the Receiver filed a Notice of Non-Receipt of Qualified Overbids Regarding the Tennyson Street Property Motion. ECF No. 394. In the Notice, the Receiver informs the Court that, after filing the Tennyson Street Property Motion and in addition to publishing the notice in the San Diego Union-Tribune, she posted notice of the Motion on the receivership website anireceivership.com, and continued to market the property through Broker and notify potential purchasers about the opportunity to submit an overbid by July 14, 2020. *See id.*

No overbids were submitted by the deadline. Therefore, Gregory Campbell and Jared Mejeur are still the intended Buyer.

As discussed in the Court's prior order ,the Tennyson Street Property is encumbered by a deed of trust in favor of Seattle Funding Group ("SFG"). ECF No. 346-1 at 6. *See also* ECF No. 280 at 6. The outstanding principal balance on the interest-only loan is approximately $546,000, and the Receiver continues to pay the loan current. *Id.* The Receiver intends to use the proceeds of the sale of the Tennyson Property to pay off the SFG loan and estimates the amount required to do so will be between $546,000 and $550,000, although that estimate was based on an assumption of a July 2020 closing. *Id.* The Receiver also estimates that the property taxes to be paid at closing will be between $6,000 and $7,000,[2] and that costs of sale including escrow, title and recording fees will be approximately $7,200. *Id.* at 6-7. In addition to the repair credit of $12,500 to be given to Buyer at closing, the Receiver also agreed to pay through escrow a sewer line repair in the amount of $15,000 directly to the repair vendor. *Id.* at 7. The Broker's fee pursuant to the listing agreement is 4% of the sale price, or $35,400, to be split with Buyer's broker. *Id.* Based on these estimates, the Receiver anticipates that the net sale proceeds for the receivership estate will be in the range of $255,000 to $265,000. *Id.*; Freitag Decl. ¶ 7.

### C. Court Approval of the Proposed Procedures and Sale

The Court has reviewed the documents submitted by the Receiver in support of the Tennyson Street Property Motion and, once more, finds the purchase price of $885,000 to be fair and reasonable. This price is the same as the sale price previously approved for the sale of the property to Prior Buyer, and as the Court explained in its prior order, it exceeds the August 2019 purchase price of the property by $45,000. ECF No. 280 at 7. Broker broadly marketed and advertised the property and diligently responded to inquiries from interested parties. ECF No. 346-1 at 11. The Receiver has demonstrated a firm commitment

---

[2] This estimate incorporates a supplemental tax bill stemming from the August 2019 purchase of the property.

to obtaining the highest and best purchase price for the property by not rushing to complete a sale of the property at a "fire sale" price after the Prior Buyer backed out of the originally approved sale in March 2020, instead continuing to market the property, receiving multiple offers, and negotiating with prospective purchasers. Notably, the sale price is still $20,000 above the original listing price of $865,000, and was negotiated upwards from an original offer of $850,000 by Buyer. *See* Freitag Decl. ¶ 3; 346-3 at 3, 19, 26-27. Although the net proceeds to the receivership estate will be approximately $20,000 - $25,000 lower than they would have been under the terms of the prior sale, the Court is persuaded that the Receiver's promised repair credit to Buyer and direct vendor payment of $15,000 to repair the sewer line are reasonable concessions given the state of the property. Moreover, after factoring in these payments, the sale price still exceeds the August 2019 purchase price by $17,500. Freitag Decl. ¶ 8. Lastly, Broker's proposed commission of 4% of the gross sales price, to be split with the Buyer's broker, is consistent with the lower range of industry standards.

The Court further finds that the Receiver's publication of notice seeking qualified overbids in the San Diego Union Tribune, in addition to the solicitation of overbids through the receivership website and continued efforts to market the property, establish that the Receiver fully satisfied the requirements for the public sale procedures set forth in 28 U.S.C. §§ 2001(a) and 2002 designed to ensure the best price is obtained. Therefore, upon review of the factual history and the Purchase Agreement itself, the Court finds the Purchase Agreement was negotiated at arm's-length and, further, that the Receiver implemented sufficient safeguards by way of the notice and overbid process to garner the highest possible price for the property. The Court is thus satisfied that the intent of the statutory scheme—to ensure that the best and highest possible price is paid for property within the receivership estate—has been fulfilled.

All uniform property sale procedures have been satisfied. Based on these considerations, and noting in particular the lack of any express opposition to the Motion, the Court finds the Receiver has sufficiently established that the proposed sale of the

Tennyson Street Property and proposed distribution of the sale proceeds are consistent with principles of equity and the goal of a receivership to ensure the orderly and efficient administration of the estate for the benefit of creditors. *See Hardy*, 803 F.2d at 1038.

## IV.   CONCLUSION

Upon due consideration of the Receiver's Motion for (A) Approval of Sale of Tennyson Property and (B) Recovery of Prior Earnest Money Deposit from Escrow (ECF No. 346), and noting that there is no opposition thereto, the Court **GRANTS** the Motion, and **APPROVES** the proposed sale of the single-family residence located at 3548 Tennyson Street, San Diego, California, 92106 to Buyer Gregory Campbell and Jared Mejeur, or their designee, as described in the Purchase Agreement attached as Exhibit A to the Declaration of the Receiver (ECF No. 346-3). The purchase price of $885,000 for the Tennyson Street Property is confirmed and approved.

The Court further **ORDERS** the proceeds of the sale to be distributed from escrow at the close of sale as follows:

(1)    The Receiver is authorized to pay Seattle Funding Group the amount necessary to pay off the mortgage on the Property, which amount is estimated to be in the range of $546,000 to $550,000 (with the exact amount to be determined at closing);

(2)    The Receiver is authorized to pay the property taxes due from the seller at closing, which amount is estimated to be in the range of $6,000 to $7,000 (with the exact amount to be determined at closing);

(3)    The Receiver is authorized to pay the costs of sale due from the seller at closing, which amount is estimated to be approximately $7,200 (with the exact amount to be determined at closing);

(4)    The Receiver is authorized to pay the repair credit at closing in the amount of $12,500;

(5)    The Receiver is authorized to pay the costs of sewer line repair in the amount of $15,000;

9

(6)     The Receiver is authorized to pay out of escrow broker Resonate Real Estate a commission of 4% of the sale price, or $35,400, which amount will be split with Buyer's broker;

(7)     After the aforementioned estimated amounts (with the exact amounts to be determined at closing), plus the Broker's commission, are paid out of escrow, the net sale proceeds, which are estimated to be in the range of $255,000 to $265,000 (with the exact amount to be determined at closing), shall be paid to the receivership estate;

(8)     The Receiver is immediately authorized to complete the sale transaction, including executing any and all documents as may be necessary and appropriate to do so; and

(9)     Granite Escrow is **DIRECTED** to release to the Receiver the earnest money deposit in the amount of $8,450 from the prior proposed sale of the Tennyson Street Property.

After closing, the Receiver shall provide a full accounting of sale costs, property taxes paid, the precise amount used to pay off the SFG loan, and the amount ultimately returned to the receivership estate from the sale proceeds.

**IT IS SO ORDERED.**

Dated:  August 11, 2020

_____
Honorable Allison H. Goddard
United States Magistrate Judge

10

3:19-cv-1628-LAB-AHG