UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                                        Plaintiff,<br><br>v.<br><br>GINA CHAMPION-CAIN AND ANI DEVELOPMENT, LLC,<br><br>                                Defendants, and<br><br><br>AMERICAN NATIONAL INVESTMENTS, INC.,<br><br>                        Relief Defendant. | Case No.:  3:19-cv-1628-LAB-AHG<br><br>**ORDER GRANTING RECEIVER'S MOTION FOR APPROVAL OF SALE OF 3415 MISSION BOULEVARD PROPERTY FREE AND CLEAR OF FEDERAL TAX LIEN**<br><br><br>**[ECF No. 350]** |

1

This matter comes before the Court on the Receiver's Motion for Approval of Sale of 3415 Mission Boulevard Property Free and Clear of Federal Tax Lien (the "Motion"). ECF No. 350. For the reasons explained more fully below, the Court **GRANTS** the Motion.

## I.    BACKGROUND

As described in prior orders, *see, e.g.*, ECF Nos. 54, 162, 163, this is an action brought by the Securities and Exchange Commission ("SEC") against Defendants ANI Development, LLC ("ANI Development") and Gina Champion-Cain and Relief Defendant American National Investments, Inc. ("ANI Inc."), alleging violations of federal securities laws based on a purportedly fraudulent liquor license loan scheme. ECF No. 1.

On September 3, 2019, the Court established an equitable receivership and appointed Krista L. Freitag ("Receiver") as a permanent receiver of ANI Development and ANI Inc., authorizing her to take control over all funds and assets owned, managed, or in the possession or control of the receivership entities. *See* ECF No. 6 at 14-16. In that role, the Receiver acts under the control and direction of the Court to facilitate the "orderly and efficient administration of the estate . . . for the benefit of creditors." *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986). *See also Atl. Tr. Co. v. Chapman*, 208 U.S. 360, 370 (1908) (explaining that a motion to appoint a receiver to take charge of property is "to the end that the property might be cared for and preserved for all who had or might have an interest in the proceeds of its sale. . . . Immediately upon such appointment and after the qualification of the receiver, the property passed into the custody of the law, and thenceforward its administration was wholly under the control of the court by its officer [], the receiver."). On December 11, 2019, the presiding judge in this action, Chief Judge Burns, granted the parties' Joint Motion (ECF No. 156) to give limited consent to the undersigned to hear and directly decide all motions filed in this action to approve sales of receivership assets. ECF No. 160. *See also* 28 U.S.C. § 636(c); CivLR 72.1(g). All property sale motions are set before the undersigned pursuant to that grant of consent.

The Receiver filed the instant Motion on June 24, 2020. ECF No. 350. The Receiver seeks Court approval of the proposed sale of an improved property located at 3415 Mission

Boulevard, San Diego, California (the "Property"), comprising 2,250 square feet with a ground-floor commercial unit and three residential units above it. ECF No. 350 at 5. The Property is within the receivership estate. *See* ECF No. 76-2 at 4 (listing the Property as a mixed-use real property owned by the estate in the Preliminary Real Estate and Liquor License Asset Schedule filed on October 3, 2019).

The Court set a response deadline of July 9, 2020, a reply deadline of July 16, 2020, and a hearing date of August 3, 2020 for the Motion. ECF No. 353. Further, the Court ordered the Receiver to file a notice of non-receipt of overbids if no overbids were received by the deadline of July 21, 2020 set forth in the proposed publication of notice of the sale of the Property. *Id.* No opposition to the Motion was filed, and the Receiver filed a notice of non-receipt of qualified overbids on July 22, 2020. ECF No. 398. There being no qualified overbids and no opposition to the Motion, on July 29, 2020, the Court vacated the hearing and took this matter under submission. ECF No. 404.

## II.     LEGAL STANDARD

"[I]t is a recognized principle of law that the district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership." *SEC v. Lincoln Thrift Ass'n*, 577 F.2d 600, 606 (9th Cir. 1978). Where a district court sits in equity, "[u]nless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied. 'The great principles of equity, securing complete justice, should not be yielded to light inferences, or doubtful construction.'" *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946).

"[A] district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad." *Hardy*, 803 F.2d at 1037. As part of this broad discretion, the district court sitting in equity and having custody and control of property "has power to order a sale of the same in its discretion. The power of sale necessarily follows the power to take control of and to preserve property[.]" *SEC v. Am. Capital Investments, Inc.*, 98 F.3d 1133, 1144 (9th Cir.

1996), *abrogated on other grounds by Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998) (quoting 2 Ralph E. Clark, <u>Treatise on Law & Practice of Receivers</u> § 482 (3d ed. 1992)). If the court approves an equitable receiver's proposed property sale, the sale "does not . . . purport to convey 'legal' title, but rather 'good,' equitable title enforced by an injunction against suit." *Id.* (citing 2 Clark, <u>Treatise on Law & Practice of Receivers</u>, §§ 342, 344, 482(a), 487, 489, 491) (hereinafter "<u>Clark on Receivers</u>").

Pursuant to 28 U.S.C. § 2001(a), realty in the possession of an appointed receiver is subject to a public sale process, "upon such terms and conditions as the court directs." 28 U.S.C. § 2002 further requires that notice be published once a week for at least four weeks prior to the sale in at least one newspaper regularly issued and of general circulation in the county, state, or judicial district where the realty is located.[1] These safeguards of notice and opportunity to submit overbids help to ensure that the sale is able to fetch the best price possible, which is consistent with the principle that "a primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." *Hardy*, 803 F.2d at 1038. *See also United States v. Grable*, 25 F.3d 298, 303 (6th Cir. 1994) (noting that "the intent of" the requirement in 28 U.S.C. § 2001 that property be sold in the county in which the land is situated is "to bring a better price at the sale").

## III.   DISCUSSION

### A. Background of the Property and Proposed Sale

The Receivership Entities purchased the Property at 3415 Mission Boulevard in January 2015 for $1,375,00, and title was taken in the name of The Gina Champion-Cain Revocable Trust. ECF No. 350-1 at 5. The Receivership Entities used the ground-floor retail unit for one of the two Patio Express restaurant concepts, but the Receiver closed that

---

[1] 28 U.S.C. § 2001 also provides for a private sale process under subsection (b), but the requirements of that subsection are more stringent. The Receiver does not propose a private sale here.

operation in the early stages of the receivership. *Id.* The Receiver has completed market-rate leases for the three residential units in the Property, but based on recommendations from various brokers, the Receiver has not expended the resources necessary to lease out the retail space on the ground floor. *Id.*

Following her appointment, the Receiver analyzed the value of the property, and consulted with and interviewed various licensed brokers with expertise in selling mixed-use, multi-family properties in San Diego. *Id.* The Receiver ultimately selected Marcus & Millichap ("Broker"), based on its experience and competitive listing commission. *Id.* Broker listed the Property for sale at a list price of $1,875,000 on the Multiple Listing Service in March 2020. Broker also marketed the property through LinkedIn flyers and Broker's proprietary MNET system, sent periodic marketing emails to over 1,900 agents, and held approximately 20 in-person showings. *Id.* As a result of these efforts, a total of seven offers were received for the Property. The Receiver negotiated three of the offers via purchase and sale agreements, but the remaining four offers were verbal and/or non-competitive. *Id.* at 5-6; *see also* Declaration of Krista Freitag, ECF No. 350-2 ¶ 3.

Because there were multiple competitive offers, the Receiver negotiated terms with three prospective buyers and ultimately accepted the highest and best offer of $1,550,000 from Thomas Milton Funke, as trustee of the Thomas Milton Funke Trust ("Buyer"). ECF No. 350-1 at 6. Receiver and Buyer executed a California Residential Purchase Agreement and Joint Escrow Instructions ("Purchase Agreement") with an Effective Date of June 8, 2020, which included a provision making Court approval of the sale a condition to closing and providing for the overbid and auction process required by 28 U.S.C. § 2001(a). *See* ECF No. 350-3. Buyer deposited the required earnest money deposit of $45,000, and the Property went into escrow in June 2020. ECF No. 350-1 at 6, 7.

There are two encumbrances on the Property. First, the Property is encumbered by a deed of trust in favor of Pacific Premiere Bank ("PPB"). *Id.* at 6. Second, the Receiver learned upon receipt of the initial preliminary title report for the Property that a federal lien for unpaid taxes assessed to Receivership Entity Fireside by the Patio, LP ("Fireside")

appeared on the title, even though the Property is owned by The Gina Champion-Cain Revocable Trust. *Id. See also* ECF No. 350-4 (copy of the Notice of Federal Tax Lien). According to the Notice of the lien, Fireside owes $50,420.44 in income taxes to the Internal Revenue Service ("IRS"). *Id.* Based on her initial review of the limited information available, the Receiver asserts she has reason to question the accuracy of this figure, and that even if the figure is accurate, she is not aware of any basis for the lien to attach to the Property for taxes owed by Fireside given that the Property has no direct connection to Fireside. ECF No. 350-1 at 6-7. Despite her misgivings regarding the validity of the lien, the Receiver is concerned that the title company will not insure title to the Property unless the Court orders the removal of the tax lien from the title. *Id.* at 7. The Court addresses the tax lien in more detail in Section III.D below.

**B. Proposed Procedures and Distribution**

In the Motion, the Receiver proposed compliance with the overbid and auction process by publishing the following notice in the San Diego Union-Tribune once a week for four weeks:

> In the action pending in U.S. District Court for the Southern District of California, Case No. 19-CV-01628-LAB-AHG, Securities and Exchange Commission v. Gina Champion-Cain, et al., notice is hereby given that the court-appointed receiver will conduct a public auction for the real property located at 3415 Mission Boulevard in San Diego County, California. Sale is subject to Court confirmation after the auction is held. Minimum bid price is at least $1,600,000. The auction will take place on July 24, 2020 at 1:30 p.m. in front of the entrance to the United States Courthouse, 221 W. Broadway, San Diego, California or as the court otherwise directs. To be allowed to participate in the auction, prospective purchasers must meet certain bid qualification requirements, including submitted a signed purchase and sale agreement, an earnest money deposit of $49,500, and proof of funds. All bidders must be qualified by 5:00 p.m. PT on July 21, 2020, by submitting the required materials to the receiver at 501 West Broadway, Suite 290, San Diego, California, 92101.

ECF No. 350-1 at 11. For those interested in qualifying as bidders, the notice also provided a phone number and email address for the relevant point of contact. *Id.*

6

The above notice was published as proposed. On July 22, 2020 the Receiver filed a Notice of Non-Receipt of Qualified Overbids Regarding Motion for Approval of Sale of 3415 Mission Boulevard Property Free and Clear of Federal Tax Lien. ECF No. 398. In the Notice, the Receiver informs the Court that, after filing the Motion and in addition to publishing the notice in the San Diego Union-Tribune, she posted notice of the Motion on the receivership website anireceivership.com, and continued to market the property through Broker and notify potential purchasers about the opportunity to submit an overbid by July 21, 2020. *See id*. No overbids were submitted by the deadline. Therefore, Thomas Milton Funke, as trustee of the Thomas Milton Funke Trust, is still the intended Buyer.

Turning to the proposed distribution of the sale proceeds, the Receiver first intends to use the proceeds of the sale of the Property to pay off the PPB loan. ECF No. 350-1 at 6. Assuming an August 2020 closing, she estimates that the amount required to do so is approximately $1.2 million (with the exact amount to be reviewed and verified prior to closing). *Id.*; Freitag Decl. ¶ 5. The Receiver also estimates that the property taxes to be paid at closing will be between $1,500 and $3,000, and that costs of sale including escrow, title and recording fees will be approximately $7,750. ECF No. 350-1 at 6. Broker's fee pursuant to the listing agreement is 3% of the sale price, or $46,500. *Id.* Based on these estimates, the Receiver anticipates that the net sale proceeds for the receivership estate— without factoring in the purported federal tax lien, discussed in more detail below—will be in the range of $275,000 to $285,000. *Id.*; Freitag Decl. ¶ 5.

**C. Court Approval of the Proposed Procedures and Sale**

The Court has reviewed the documents submitted by the Receiver in support of the Motion and finds the purchase price of $1,550,000 to be fair and reasonable. Although the price is below the initial list price of $1,875,000, it exceeds the 2015 purchase price of the Property by $175,000, reflecting a return of more than 12%. ECF No. 350-1 at 5. More significantly, this price was the highest and best offer among seven total offers, and was obtained through the Receiver's negotiations with three different offerors. *Id.* at 5-6. Further, Broker broadly marketed and advertised the Property beginning in March 2020

7

through multiple platforms, resulting in approximately 20 in-person showings. *Id.* at 5. Thus, the Court has no reason to conclude that the Broker did not diligently market the Property, or that the original list price reflects a more realistic valuation of the amount that the Property could fetch, particularly in light of the fact that no overbids were received through the public sale and auction process. Additionally, Broker's proposed commission of 3% of the gross sales price is consistent with the lower range of industry standards.

The Court further finds that the Receiver's publication of notice seeking qualified overbids in the San Diego Union Tribune, in addition to the solicitation of overbids through the receivership website and continued efforts to market the property, establish that the Receiver fully satisfied the requirements for the public sale procedures set forth in 28 U.S.C. §§ 2001(a) and 2002 designed to ensure the best price is obtained. Therefore, upon review of the factual history and the Purchase Agreement itself, the Court finds the Purchase Agreement was negotiated at arm's length and, further, that the Receiver implemented sufficient safeguards by way of the notice and overbid process to garner the highest possible price for the property. The Court is thus satisfied that the intent of the statutory scheme—to ensure that the best and highest possible price is paid for property within the receivership estate—has been fulfilled.

### D. Approval of Sale Free and Clear of Tax Lien

A question remains with respect to the IRS lien clouding the title of the Property. Under the Court's Uniform Property Sale Procedures, the Receiver's proposed distribution must account for every creditor known to the Receiver to have a claim of a secured interest in the real property at issue, and must certify that the Receiver or her counsel have conferred—or attempted to confer—with any such creditor prior to filing the noticed motion. ECF No. 219 at 7-8. Here, the Receiver reports that she properly provided notice of the Motion to the IRS prior to filing. ECF No. 350-1 at 12. As noted, no opposition was filed to the Motion despite such notice being given. The IRS's failure to oppose the Motion may be construed by the Court as consent to it being granted. *See* CivLR 7.1.f.3.c. Moreover, rather than seeking to extinguish the lien, the Receiver asks the Court to order

that the lien attach to the net sale proceeds in the same validity and priority as it was with respect to the 3415 Mission Boulevard Property. ECF No. 350-1 at 12. Although the Receiver disputes whether there is any basis for the lien to attach to the Property, by permitting the lien to attach to the net sale proceeds, the Receiver contends the Court will adequately protect the asserted interest of the IRS. *Id.*

"'[I]t has long been recognized that under appropriate circumstances, a federal court presiding over a receivership may authorize the assets of the receivership to be sold free and clear of liens and related claims.'" *SEC v. Capital Cove Bancorp LLC*, No. SACV15980JLSJCX, 2015 WL 9701154, at *4 (C.D. Cal. Oct. 13, 2015) (quoting *Pennant Mgmt., Inc. v. First Farmers Fin., LLC*, No. 14-CV-7581, 2015 WL 4511337, at *4 (N.D. Ill. July 24, 2015) and *Regions Bank v. Egyptian Concrete Co.*, No. 4:09-CV-1260 CAS, 2009 WL 4431133, at *7 (E.D. Mo. Dec. 1, 2009)). The district court cases just cited in turn rely on an 1889 Supreme Court opinion, *Mellen v. Moline Malleable Iron Works*, 131 U.S. 352, 367 (1889) ("Besides, the removal of alleged liens or incumbrances upon property, the closing up of the affairs of insolvent corporations, and the administration of and distribution of trust funds are subjects over which courts of equity have general jurisdiction"). *Accord Miners' Bank of Wilkes-Barre v. Acker*, 66 F.2d 850, 853 (3d Cir. 1933) ("A court of equity under proper circumstances has power to order a receiver to sell property free and clear of all incumbrances").

In *Mellen*, the Supreme Court affirmed that the lower court, sitting in equity to administer the estate of an insolvent corporation, had jurisdiction to direct the sale of certain real property by a receiver free and clear of a creditor's lien. 131 U.S. at 365-69. Indeed, the Court held that jurisdiction existed even if the sale took place prior to the creditor's notice of the sale and without an opportunity for hearing, because even if such circumstances made the sale "irregular, . . . that is not a matter affecting the jurisdiction of the court to render a final decree in respect to [the creditor's] interest in the property; for the proceeds took the place of the property, and whatever rights [the creditor] had in the latter were transferred to the former." *Id.* at 370.

9

Significantly, the Court's approval of the sale does not purport to extinguish the federal tax lien and convey legal title to Buyer. As explained above, a judicial sale of receivership assets instead conveys "'good,' equitable title enforced by an injunction against suit." *Am. Capital Investments, Inc.*, 98 F.3d at 1145 n.17 (citing Clark on Receivers §§ 342, 344, 482(a), 487, 489, 491). Therefore, the Receiver's proposed solution of ordering the lien to attach to the proceeds of the sale of the Property (rather than extinguishing the lien) is fair, reasonable, consistent with the goals of equity, and properly within the Court's authority in the equitable receivership context. *See Mellen*, 131 U.S. at 370 (transferring the creditor's rights from the property to the proceeds of the sale); *see also Capital Cove*, 2015 WL 9701154, at *8 (protecting the interests of a creditor by attaching the interests to the proceeds of the sale); *In re Clark*, 266 B.R. 163, 171 (explaining that in the analogous bankruptcy context, to protect disputed interests, "[t]ypically, the proceeds of sale are held subject to the disputed interest and then distributed as dictated by the resolution of the dispute; such procedure preserves all parties' rights by simply transferring interests from property to dollars that represent its value.").

Based on these considerations, and noting that the IRS has not filed any opposition to the Motion, the Court will grant the Receiver's request to order the sale free and clear of the federal tax lien, but will order that the lien attach to the net sale proceeds of the 3415 Mission Boulevard Property.

## IV.   CONCLUSION

In sum, the Court finds the Receiver has sufficiently established that the proposed sale of the 3415 Mission Boulevard Property free and clear of the federal tax lien, and the proposed distribution of the sale proceeds, are consistent with principles of equity and the goal of a receivership to ensure the orderly and efficient administration of the estate for the benefit of creditors. *See Hardy*, 803 F.2d at 1038.

Accordingly, the Court **GRANTS** the Motion, and **APPROVES** the proposed sale of the improved property located at 3415 Mission Boulevard, San Diego, California to Buyer Thomas Milton Funke, as trustee of the Thomas Milton Funke Trust, or his designee,

as described in the Purchase Agreement attached as Exhibit A to the Declaration of the Receiver (ECF No. 350-3). The purchase price of $1,550,000 for the 3415 Mission Boulevard Property is confirmed and approved.

The Court further **ORDERS** the proceeds of the sale to be distributed from escrow at the close of sale as follows:

(1)     The Receiver is authorized to pay broker Marcus & Millichap a commission of 3% of the sale price, or $46,500;

(2)     The Receiver is authorized to pay Pacific Premiere Bank the amount necessary to pay off the mortgage on the Property, which is estimated to be approximately $1,200,000 (with the exact amount to be determined at closing);

(3)     The Receiver is authorized to pay the property taxes due from the seller at closing, which amount is estimated to be in the range of $1,500 to $3,000 (with the exact amount to be determined at closing);

(4)     The Receiver is immediately authorized to complete the sale transaction, including executing any and all documents as may be necessary and appropriate to do so;

(5)     The lien for Federal taxes as reflected on the Notice of Federal Tax Lien attached as Exhibit B to the Declaration of Krista L. Freitag in support of the Motion (ECF No. 350-4) is removed from title to the Property, effective upon the transfer of title to the Property to Buyer, and shall attach to the net sale proceeds received by the Receiver from escrow in the same validity and priority as it had with respect to the Property; and

(6)     After the aforementioned estimated amounts (with the exact amounts to be determined at closing) are paid out of escrow, the net sale proceeds, which are estimated to be in the range of $275,000 to $285,000 (with the exact amount to be determined at closing), shall be paid to the receivership estate.

After closing, the Receiver shall provide a full accounting of sale costs, property taxes paid, and the precise amount used to pay off the PPB loan. The Receiver's accounting must also include a status update regarding the federal tax lien, and in particular, the Receiver or her counsel's investigation of and consultation with the IRS regarding whether

3:19-cv-1628-LAB-AHG

the lien was properly recorded against the 3415 Mission Boulevard Property, the amount (if any) from the sale proceeds used to pay off the lien, and the amount ultimately returned to the receivership estate from the sale proceeds.

**IT IS SO ORDERED.**

Dated:  August 12, 2020

_____
Honorable Allison H. Goddard
United States Magistrate Judge