UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>GINA CHAMPION-CAIN AND ANI DEVELOPMENT, LLC,<br><br>　　　　　　　　　Defendants, and<br><br>AMERICAN NATIONAL INVESTMENTS, INC.,<br><br>　　　　　　　　　Relief Defendant. | Case No.: 3:19-cv-1628-LAB-AHG<br><br>**ORDER GRANTING MOTION FOR APPROVAL OF SALE OF THE SURF RIDER LA MESA PROPERTY AND ASSOCIATED PERSONAL PROPERTY AND LIQUOR LICENSE**<br><br>[ECF No. 351] |

This matter comes before the Court on the Receiver's Motion for Approval of Sale of the Surf Rider La Mesa Property and Associated Personal Property and Liquor License (the "Motion"). ECF No. 351. For the reasons explained more fully below, the Court **GRANTS** the Motion.

## I.  BACKGROUND

As described in prior orders, *see, e.g.*, ECF Nos. 54, 162, 163, this is an action brought by the Securities and Exchange Commission ("SEC") against Defendants ANI Development, LLC ("ANI Development") and Gina Champion-Cain and Relief Defendant American National Investments, Inc. ("ANI Inc."), alleging violations of federal securities laws based on a purportedly fraudulent liquor license loan scheme. ECF No. 1.

On September 3, 2019, the Court established an equitable receivership and appointed Krista L. Freitag ("Receiver") as a permanent receiver of ANI Development and ANI Inc., authorizing her to take control over all funds and assets owned, managed, or in the possession or control of the receivership entities. *See* ECF No. 6 (the "Appointment Order") at 14-16. In that role, the Receiver acts under the control and direction of the Court to facilitate the "orderly and efficient administration of the estate . . . for the benefit of creditors." *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986). *See also Atl. Tr. Co. v. Chapman*, 208 U.S. 360, 370 (1908) (explaining that a motion to appoint a receiver to take charge of property is "to the end that the property might be cared for and preserved for all who had or might have an interest in the proceeds of its sale. . . . Immediately upon such appointment and after the qualification of the receiver, the property passed into the custody of the law, and thenceforward its administration was wholly under the control of the court by its officer [], the receiver."). On December 11, 2019, the presiding judge in this action, Chief Judge Burns, granted the parties' Joint Motion (ECF No. 156) to give limited consent to the undersigned to hear and directly decide all motions filed in this action to approve sales of receivership assets. ECF No. 160. *See also* 28 U.S.C. § 636(c); CivLR 72.1(g). All property sale motions are set before the undersigned pursuant to that grant of consent.

The Receiver filed the Motion before the Court on June 24, 2020, seeking court approval of the sale of real property within the receivership estate located at 8381 La Mesa Boulevard, La Mesa, California 91942 (the "Property"). ECF No. 351-1 at 5; *see also* ECF No. 76-2 at 4 (listing the Property as a commercial property restaurant owned by the estate in the Preliminary Real Estate and Liquor License Asset Schedule filed on October 3, 2019). The Receiver also asks the Court to approve the sale of the personal property and liquor license associated with the Property. ECF No. 351-1 at 5, 14; ECF No. 351-3.

On the same day the Motion was filed, Court set a response deadline of July 9, 2020, a reply deadline of July 16, 2020, and a hearing date of August 3, 2020 for the Motion. ECF No. 353. Further, the Court ordered the Receiver to file a notice of non-receipt of overbids if no overbids were received by the deadline of July 13, 2020 set forth in the proposed publication of notice of the sale of the Property. *Id.* No opposition to the Motion was filed, and the Receiver filed a notice of non-receipt of qualified overbids on July 22, 2020. ECF No. 400. There being no qualified overbids and no opposition to the Motion, on July 29, 2020, the Court vacated the hearing and took this matter under submission. ECF No. 404.

## II.    LEGAL STANDARD

"[I]t is a recognized principle of law that the district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership." *SEC v. Lincoln Thrift Ass'n*, 577 F.2d 600, 606 (9th Cir. 1978). Where a district court sits in equity, "[u]nless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied. 'The great principles of equity, securing complete justice, should not be yielded to light inferences, or doubtful construction.'" *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946).

"[A] district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad." *Hardy*, 803 F.2d at 1037. As part of this broad discretion, the district court sitting in equity

and having custody and control of property "has power to order a sale of the same in its discretion. The power of sale necessarily follows the power to take control of and to preserve property[.]" *SEC v. Am. Capital Investments, Inc.*, 98 F.3d 1133, 1144 (9th Cir. 1996), *abrogated on other grounds by Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998) (quoting 2 Ralph E. Clark, Treatise on Law & Practice of Receivers § 482 (3d ed. 1992)). If the court approves an equitable receiver's proposed property sale, the sale "does not . . . purport to convey 'legal' title, but rather 'good,' equitable title enforced by an injunction against suit." *Id.* (citing 2 Clark, Treatise on Law & Practice of Receivers, §§ 342, 344, 482(a), 487, 489, 491).

Pursuant to 28 U.S.C. § 2001(a), real property in the possession of an appointed receiver is subject to a public sale process, "upon such terms and conditions as the court directs." 28 U.S.C. § 2002 further requires that notice be published once a week for at least four weeks prior to the sale in at least one newspaper regularly issued and of general circulation in the county, state, or judicial district where the realty is located.[1] The purpose of such notice "is to inform the public of the kind and condition of the property to be sold, the time, the place, and the terms of the sale. It is to secure bidders and prevent the sacrifice of the property." *Breeding Motor Freight Lines v. R.F.C.*, 172 F.2d 416, 422 (10th Cir. 1949). Therefore, the safeguards of notice and opportunity to submit overbids help to ensure that the sale is able to fetch the best price possible, which is consistent with the principle that "a primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." *Hardy*, 803 F.2d at 1038. *See also United States v. Grable*, 25 F.3d 298, 303 (6th Cir. 1994) (noting that "the intent of" the requirement in 28 U.S.C. § 2001 that property be sold in the county in which the land is situated is "to bring a better price at the sale").

---

[1] 28 U.S.C. § 2001 also provides for a private sale process under subsection (b), but the requirements of that subsection are more stringent. The Receiver does not propose a private sale here.

4

As for the sale of personal property, 28 U.S.C. § 2004 also lends the Court great discretion in directing sales of personalty, requiring such sales to comply with § 2001 "unless the court orders otherwise." The notice requirement of § 2002 governing realty sales by the receiver does not apply to sales of personalty.[2]

## III.  DISCUSSION

### A. Background of the Property and Proposed Sale

The Property is a 6,272 square foot building that the Receivership Entities purchased on January 12, 2016 for a purchase price of $1,025,000. ECF No. 351-1 at 5. Title was taken in the name of affiliated entity La Mesa Ventures I, LLC. *Id.*; *see also* ECF No. 6 at 5 (naming La Mesa Ventures I, LLC as an affiliate of Defendants and Relief Defendant in the Appointment Order). The Property was then improved, and since November 2018, the Property has housed an operating restaurant known as Surf Rider Pizza Co. – La Mesa ("Surf Rider"). ECF No. 351-1 at 5.

Following the Receiver's appointment, she evaluated the profitability of the Surf Rider restaurant to determine whether to continue restaurant operations while preparing for sale in the short term, or whether instead to cease operations. The Receiver ultimately determined that Surf Rider could be operated at break-even or better and should remain open for business, with guidance from Cohn Restaurant Group, while being prepared for sale in the short term. *Id*.

For all of the restaurant-related properties included in the receivership estate, the Receiver and her staff interviewed three licensed brokers with experience selling restaurants in San Diego, ultimately choosing two separate brokers—broker Colliers International for restaurant-related properties owned by the receivership entities (a leased

---

[2] Pursuant to the statutory grant of discretion, under the Court's uniform sale procedures, the requirements of § 2001 have been waived, and Receiver need not seek Court approval of sales of personal property within the receivership estate. ECF No. 219 at 9. Nonetheless, the Court presumes the Receiver seeks approval of the sales of associated personal property and liquor license in this instance because they are bound up with the sale of the realty.

parking lot was also included in this grouping), and broker Next Wave ("Broker") for the Surf Rider Pizza and Bao Beach restaurant concepts operated at leased and owned property locations, including the Property at issue here. *Id.* at 5-6.

To market the Property and other restaurant listings within the receivership estate, Broker created individual marketing flyers for each listing and sent them out via email campaigns to a targeted list of over 6,200 restaurant operators, buyers, brokers, and investors. ECF No. 351-1 at 6. Broker also used websites including CoStar, LoopNet, BizBuySell, and Next Wave Commercial to advertise the listing and distributed press releases to numerous local news publications. *Id.* Additionally, Broker hosted due diligence packages for each property online, along with an offering memorandum summarizing various marketing points about the restaurant properties and detailing the Court sale process, and a form Purchase and Sale Agreement and Joint Escrow Instructions ("Form PSA") prepared by Receiver and her counsel. *Id.* The Form PSA removes all contingencies and provides for the overbid, public auction, and Court approval process. Prospective purchasers had until the Receiver's "Call for Offers" deadline to complete their due diligence and submit an executed Form PSA. *Id.*

Notably, the Property is encumbered by a deed of trust securing a loan issued by American National Insurance Company ("ANICO"). *Id.* at 7. The Receiver estimates that the amount necessary to pay off the loan is approximately $2.3 million. Counsel for the Receiver conferred with counsel for ANICO regarding whether ANICO might consider a short sale of the Property allowing for a small recovery for the receivership estate, but ANICO was not willing to consider a short sale. *Id.*

Three offers were received by the call-for offers deadline, but only one offer (in the amount of $2,900,000) was sufficient to produce a net recovery for the receivership estate, given the need to pay off the ANICO loan. *Id.* at 6. Accordingly, the Receiver and the prospective buyer who offered $2.9 million executed a Form PSA. However, as a result of the COVID-19 pandemic, both the Governor of California and the City of San Diego issued orders in mid-March 2020 requiring the cessation of dining room operations at restaurants.

*Id.* at 6-7. In turn, the prospective buyer did not submit the required earnest money deposit into escrow and subsequently withdrew the $2.9 million offer. *Id.* at 7.

At Broker's suggestion, the Receiver continued to list the property without a specific deadline to submit an offer. *Id.* Broker engaged in efforts to solicit new offers or revive one of the previous offers, and eventually a new offer of $2,300,000 was received from Davles, LLC ("Buyer"), an affiliate of the Cohn Restaurant Group. *Id.* However, the Receiver was not willing to continue the sale process without the possibility of a net recovery for the receivership estate, again due to ANICO's refusal to consider a short sale. Thus, the Receiver countered Buyer's offer at $2,425,000 in order to attain a modest net recovery for the estate, and Buyer agreed to increase its offer to that amount. *Id.* Through counsel, Buyer and the Receiver finalized the Form PSA, with an Effective Date of June 9, 2020. *See* ECF No. 351-3.

### B. Proposed Distribution of Sale Proceeds

As previously noted, the sale of the Property also involves the transfer of the restaurant's liquor license to Buyer, which will require another layer of approval by the California Department of Alcohol and Beverage Control ("ABC"). ECF No. 351-1 at 7-8. Consequently, there are two separate escrows involved in the proposed sale—the real property escrow and the liquor license escrow. *Id.* at 7. Buyer has deposited $100,000 into the real property escrow and $10,000 into the liquor license escrow. *Id.* at 8. Once the Court approves the sale and Buyer has obtained a temporary liquor license from ABC, the real property escrow will close within five business days thereafter. *Id.* at 7. The liquor license escrow will not close until ABC approval of the transfer has been obtained, which is expected to take three to six months from Court approval. *Id.* at 7-8. At that time, the sale of both the personal property and liquor license will close. *Id.* at 8.

The Receiver intends to use the proceeds of the sale of the Property to pay off the ANICO loan, and estimates the amount required to do so will be approximately $2,300,000 (with the exact amount to be determined at closing). The Receiver also estimates that the property taxes to be paid at closing will be between $5,000 and $6,000, and that costs of

sale including escrow, title and recording fees will be approximately $14,500. ECF No. 351-1 at 8. Broker's commission pursuant to the listing agreement is 2.5% of the sale price, or $60,625. *Id.* Based on these estimates, the Receiver anticipates a net recovery of approximately $55,000 to $65,000 will be returned to the receivership estate, but not until after the close of the liquor license escrow. *Id.*

### C. Compliance with Overbid and Auction Process

In the Motion, the Receiver proposed compliance with the overbid and auction process by publishing the following notice in the San Diego Union-Tribune once a week for four weeks:

> In the action pending in U.S. District Court for the Southern District of California, Case No. 19-CV-01628-LAB-AHG, Securities and Exchange Commission v. Gina Champion-Cain, et al., notice is hereby given that the court-appointed receiver will conduct a public auction for the real and personal property located at 8381 La Mesa Blvd., La Mesa, California 91942 in San Diego County, California. Sale is subject to Court confirmation after the auction is held. Minimum bid price is at least $2,500,000. The auction will take place on July 16, 2020 at 1:30 p.m. in front of the entrance to the United States Courthouse, 221 W. Broadway, San Diego, California or as otherwise directed by the court. To be allowed to participate in the auction, prospective purchasers must meet certain bid qualification requirements, including submitting a signed purchase and sale agreement, an earnest money deposit of $110,000, and proof of funds. All bidders must be qualified by 5:00 p.m. PT on July 13, 2020, by submitting the required materials to the receiver at 501 West Broadway, Suite 290, San Diego, California, 92101.

ECF No. 351-1 at 12-13. For those interested in qualifying as bidders, the notice also provided a phone number and email address for the relevant point of contact. *Id.* at 13.

The above notice was published as proposed. On July 22, 2020, the Receiver filed a Notice of Non-Receipt of Qualified Overbids Regarding Motion for Approval of Sale of The Surf Rider La Mesa Property and Associated Personal Property and Liquor License. ECF No. 400. In the Notice, the Receiver informs the Court that, after filing the Motion and in addition to publishing the notice in the San Diego Union-Tribune, she posted notice of the Motion on the receivership website anireceivership.com, and continued to market

the property through Broker and notify potential purchasers about the opportunity to submit an overbid by July 13, 2020. *See id*. No overbids were submitted by the deadline. Therefore, Davles, LLC is still the intended Buyer.

### D. Court Approval of the Proposed Procedures and Sale

The Court has reviewed the documents submitted by the Receiver in support of the sale of the Property and the associated personalty and liquor license, and finds the proposed sale fair, reasonable, and in the best interest of the receivership estate.

In particular, the Court notes that Broker broadly marketed and advertised the Property. The Receiver reports that Broker's advertising on multiple websites produced over 150,000 ad views, and that press releases about the Next Wave-brokered restaurant properties were placed in the San Diego Union-Tribune, San Diego Business Journal, Eater San Diego, and elsewhere. ECF No. 151-1 at 6. These efforts resulted in three offers for the Property by the initial call-for-offers deadline. *Id.* Although the current COVID-19 pandemic resulted in the withdrawal of the initial best offer of $2.9 million, the Court recognizes the difficulty involved in securing fruitful offers for restaurant locations during a time when indoor dining operations are forbidden. Nonetheless, the Receiver continued to market the property for nearly three months after the $2.9 million offer was withdrawn, confirming she would not rush to accept a price that she believed was below market value. Indeed, the Receiver refused to accept an offer that would not result in a at least a modest recovery for the receivership estate, and successfully counter-offered Buyer's initial offer to increase the purchase price from $2.3 million to $2.425 million. *Id.* at 7. Although this purchase price will permit a relatively small recovery to the receivership estate in light of the approximately $2.3 million ANICO loan, it is more than twice the January 2016 purchase price of the property for $1,025,000 (prior to improvement). *Id.* at 5.

Moreover, the Receiver's publication of notice seeking qualified overbids in the San Diego Union-Tribune, in addition to the solicitation of overbids through the receivership website and continued efforts to market the property, establish that the Receiver fully satisfied the requirements for the public sale procedures set forth in 28 U.S.C. §§ 2001(a)

and 2002 designed to ensure the best price is obtained for real and personal property within the receivership estate. Therefore, the Court finds that the Receiver implemented sufficient safeguards by way of the notice and overbid process to garner the highest possible price for the Property and related assets at issue. The Court is thus satisfied that the intent of the statutory scheme—to ensure that the best and highest possible price is paid for property within the receivership estate—has been fulfilled.

All uniform property sale procedures have been satisfied. Based on these considerations, and noting in particular the lack of any express opposition to the Motion, the Court finds the Receiver has sufficiently established that the proposed sale of the Property and proposed distribution of the sale proceeds are in the best interest of the estate, and fulfill the goal of a receivership to ensure the orderly and efficient administration of the estate for the benefit of creditors. *See Hardy*, 803 F.2d at 1038.

### IV.   CONCLUSION

Based on the foregoing considerations, the Court **GRANTS** the Receiver's Motion for Approval of Sale of the Surf Rider La Mesa Property and Associated Personal Property and Liquor License (ECF No. 351).

Accordingly, the Court **APPROVES** the sale of the 6,272-square-foot building and operating restaurant located at 8381 La Mesa Boulevard, La Mesa, California 91942, and the associated personal property and liquor license, as described in Exhibit A to the Declaration of Krista L. Freitag in support of the Motion (ECF No. 351-3), by Krista L. Freitag, as receiver, to Davles, LLC, or its designee ("Buyer"). The purchase price of $2,425,000 for the real property, personal property, and liquor license is confirmed and approved.

The Court further **ORDERS** the proceeds of the sale to be distributed from escrow at the close of sale as follows:

(1)   The Receiver is authorized to pay broker Next Wave a commission of 2.5% of the sale price, or $60,625;

10

3:19-cv-1628-LAB-AHG

(2) The Receiver is authorized to pay American National Insurance Company the amount necessary to pay off the mortgage on the Property, which is estimated to be approximately $2,300,000 (with the exact amount to be determined at closing);

(3) The Receiver is authorized to pay the costs of sale due from the seller at closing, which are expected to total approximately $14,500 (with the exact amount to be determined at closing);

(4) After the aforementioned estimated amounts (with the exact amounts to be determined at closing) are paid out of escrow, the net sale proceeds, which are estimated to be in the range of $55,000 to $65,000 (with the exact amount to be determined at closing), shall be paid to the receivership estate; and

(5) The Receiver is immediately authorized to complete the sale transaction, including executing any and all documents as may be necessary and appropriate to do so.

**IT IS FURTHER ORDERED** that after both the real property escrow and liquor license escrow have closed, the Receiver shall provide a full accounting of sale costs, property taxes paid, the precise amount used to pay off the ANICO loan, and the amount ultimately returned to the receivership estate from the sale proceeds.

**IT IS SO ORDERED.**

Dated: August 14, 2020

_Allison H. Goddard_
Honorable Allison H. Goddard
United States Magistrate Judge