# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>GINA CHAMPION-CAIN AND ANI DEVELOPMENT, LLC,<br><br>　　　　　　　　　　　Defendants, and<br><br>AMERICAN NATIONAL INVESTMENTS, INC.,<br><br>　　　　　　　　　　　Relief Defendant. | Case No.:  3:19-cv-1628-LAB-AHG<br><br>**ORDER GRANTING RECEIVER'S MOTION FOR APPROVAL OF SALE OF 737 WINDEMERE COURT PROPERTY**<br><br>**[ECF No. 367]** |

1

3:19-cv-1628-LAB-AHG

This matter comes before the Court on the Receiver's Motion for Approval of Sale of 737 Windemere Court Property (the "Motion"). ECF No. 367. For the reasons that follow, the Court **GRANTS** the Motion.

## I.     BACKGROUND

As described in prior orders, *see, e.g.*, ECF Nos. 54, 162, 163, this is an action brought by the Securities and Exchange Commission ("SEC") against Defendants ANI Development, LLC ("ANI Development") and Gina Champion-Cain and Relief Defendant American National Investments, Inc. ("ANI Inc."), alleging violations of federal securities laws based on a purportedly fraudulent liquor license loan scheme. ECF No. 1.

On September 3, 2019, the Court established an equitable receivership and appointed Krista L. Freitag ("Receiver") as a permanent receiver of ANI Development and ANI Inc., authorizing her to take control over all funds and assets owned, managed, or in the possession or control of the receivership entities. *See* ECF No. 6 at 14-16 (the "Appointment Order"). In that role, the Receiver acts under the control and direction of the Court to facilitate the "orderly and efficient administration of the estate . . . for the benefit of creditors." *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986). *See also Atl. Tr. Co. v. Chapman*, 208 U.S. 360, 370 (1908) (explaining that a motion to appoint a receiver to take charge of property is "to the end that the property might be cared for and preserved for all who had or might have an interest in the proceeds of its sale. . . . Immediately upon such appointment and after the qualification of the receiver, the property passed into the custody of the law, and thenceforward its administration was wholly under the control of the court by its officer [], the receiver."). On December 11, 2019, the presiding judge in this action, Chief Judge Burns, granted the parties' Joint Motion (ECF No. 156) to give limited consent to the undersigned to hear and directly decide all motions filed in this action to approve sales of receivership assets. ECF No. 160. *See also* 28 U.S.C. § 636(c); CivLR 72.1(g). All property sale motions are set before the undersigned pursuant to that grant of consent.

The Receiver filed the present Motion on June 30, 2020. ECF No. 367. The Receiver seeks Court approval of the proposed sale of a single-family residential property within the

receivership estate located at 737 Windemere Court in the Mission Beach neighborhood of San Diego (the "Windemere Court Property" or the "Property"). *Id.*; *see also* ECF No. 76-2 at 3 (listing the Windemere Court Property as a vacation home property owned by the estate in the Preliminary Real Estate and Liquor License Asset Schedule filed on October 3, 2019).

The same day the Receiver filed the Motion, the Court entered a briefing schedule setting a response deadline of July 14, 2020, a reply deadline of July 21, 2020, and a hearing date of August 3, 2020. ECF No. 369. Further, the Court ordered the Receiver to file a notice of non-receipt of overbids if no overbids were received by the deadline of July 21, 2020 set forth in the proposed publication of notice of the sale of the Property. *Id.* No opposition to the Motion was filed, and the Receiver filed a notice of non-receipt of qualified overbids on July 22, 2020. ECF No. 399. There being no qualified overbids and no opposition to the Motion, on July 29, 2020, the Court vacated the hearing and took this matter under submission for determination on the papers. ECF No. 404.

## II.     LEGAL STANDARD

"[I]t is a recognized principle of law that the district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership." *SEC v. Lincoln Thrift Ass'n*, 577 F.2d 600, 606 (9th Cir. 1978). Where a district court sits in equity, "[u]nless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied. 'The great principles of equity, securing complete justice, should not be yielded to light inferences, or doubtful construction.'" *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946).

"[A] district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad." *Hardy*, 803 F.2d at 1037. As part of this broad discretion, the district court sitting in equity and having custody and control of property "has power to order a sale of the same in its discretion. The power of sale necessarily follows the power to take control of and to

3

preserve property[.]" *SEC v. Am. Capital Investments, Inc.*, 98 F.3d 1133, 1144 (9th Cir. 1996), *abrogated on other grounds by Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998) (quoting 2 Ralph E. Clark, Treatise on Law & Practice of Receivers § 482 (3d ed. 1992)). If the court approves an equitable receiver's proposed property sale, the sale "does not . . . purport to convey 'legal' title, but rather 'good,' equitable title enforced by an injunction against suit." *Id.* (citing 2 Clark, Treatise on Law & Practice of Receivers, §§ 342, 344, 482(a), 487, 489, 491).

Pursuant to 28 U.S.C. § 2001(a), realty in the possession of an appointed receiver is subject to a public sale process, "upon such terms and conditions as the court directs." 28 U.S.C. § 2002 further requires that notice be published once a week for at least four weeks prior to the sale in at least one newspaper regularly issued and of general circulation in the county, state, or judicial district where the realty is located.[1] These safeguards of notice and opportunity to submit overbids help to ensure that the sale is able to fetch the best price possible, which is consistent with the principle that "a primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." *Hardy*, 803 F.2d at 1038. *See also United States v. Grable*, 25 F.3d 298, 303 (6th Cir. 1994) (noting that "the intent of" the requirement in 28 U.S.C. § 2001 that property be sold in the county in which the land is situated is "to bring a better price at the sale").

### III. DISCUSSION

**A. Background of the Property and Proposed Sale**

The Windemere Court Property was purchased by ANI Commercial CA I LLC for $625,000 on August 12, 2011. ECF No. 367-1 at 5. Ownership of the Property was transferred to receivership entity Luv Surf LLC in December of 2012, and transferred to

---

[1] 28 U.S.C. § 2001 also provides for a private sale process under subsection (b), but the requirements of that subsection are more stringent. The Receiver does not propose a private sale here.

another receivership entity, Windemere Court LLC, in December of 2013. *Id. See also* ECF No. 6 at 4-6 (the Appointment Order listing these entities as subsidiaries and/or affiliates of Defendants and Relief Defendant). The Property underwent a significant remodel in 2017 and is used as a vacation rental property. ECF No. 367-2, Freitag Decl. ¶ 2.

Following her appointment, the Receiver and her staff reviewed automated valuation scores for the Windemere Court Property and a survey of market-comparable properties. ECF No. 367-1 at 5. The Receiver also consulted with and interviewed licensed brokers with experience selling residential properties in the Mission Beach area, ultimately selecting Pacific Pines Real Estate ("Broker") based on Broker's experience and low listing commission. *Id.* The Property was originally listed for sale at $1,699,900 on the Multiple Listing Service ("MLS") on or about September 30, 2019. *Id.*

In addition to listing the Property on the MLS, Broker listed the Windemere Court Property on its website, held multiple open houses, and showed the Property to all interested parties. *Id.* However, the Property received no offers at the list price. Considering the lack of offers at the list price, as well as the detrimental effect of the COVID-19 pandemic on buyers' interest in hospitality properties generally, the Receiver consulted with Broker and decided to reduce the list price to a range of $1,499,000 to $1,599,000. *Id.* at 5-6. Due to the COVID-19 pandemic, and in compliance with guidance from the California Association of Realtors, Broker implemented 3D marketing and socially-distant tours of the Property. *Id.* at 6. Four offers were received, and, following negotiations with the prospective buyers, the Receiver accepted an offer of $1,515,000 from Brent Zambon ("Buyer").

On June 1, 2020, the Receiver and Buyer executed a California Residential Purchase Agreement and Joint Escrow Instructions ("Purchase Agreement"), along with an Addendum (executed two days later on June 3) making court approval of the sale a condition to closing, and providing for the overbid and auction process required by 28 U.S.C. § 2001(a). ECF No. 367-3. Buyer has deposited $42,000 into escrow. ECF No. 367-1 at 7.

**B. Proposed Procedures and Distribution**

In the motion seeking approval of the sale, the Receiver proposed compliance with the overbid and auction process by publishing the following notice in the San Diego Union-Tribune once a week for four weeks:

> In the action pending in U.S. District Court for the Southern District of California, Case No. 19-CV-01628-LAB-AHG, Securities and Exchange Commission v. Gina Champion-Cain, et al., notice is hereby given that the court-appointed receiver will conduct a public auction for the real property located at 737 Windemere Court in San Diego County, California. Sale is subject to Court confirmation after the auction is held. Minimum bid price is at least $1,540,000. The auction will take place on July 24, 2020 at 1:30 p.m. in front of the entrance to the United States Courthouse, 221 W. Broadway, San Diego, California or as otherwise determined by the Court. To be allowed to participate in the auction, prospective purchasers must meet certain bid qualification requirements, including submitting a signed purchase and sale agreement, an earnest money deposit of $50,000, and proof of funds. All bidders must be qualified by 5:00 p.m. PT on July 21, 2020, by submitting the required materials to the receiver at 501 West Broadway, Suite 290, San Diego, California, 92101.

ECF No. 367-1 at 11. For those interested in qualifying as bidders, the notice also provided a phone number and email address for the relevant point of contact. *Id.*

The above notice was published as proposed. On July 22, 2020 the Receiver filed a Notice of Non-Receipt of Qualified Overbids Regarding Motion for Approval of Sale of 737 Windemere Court Property. ECF No. 399. In the Notice, the Receiver informs the Court that, after filing the Windemere Court Motion and in addition to publishing the notice in the San Diego Union-Tribune, she posted notice of the Motion on the receivership website anireceivership.com, and continued to market the property and notify potential purchasers about the opportunity to submit an overbid by July 21, 2020. *See id.* Despite these efforts, no overbids were submitted by the deadline. *Id.* Therefore, Brent Zambon is still the intended Buyer.

Turning to the Receiver's proposed distribution of the anticipated sale proceeds, the Windemere Court Property is one of seven properties in the receivership estate that were

6

3:19-cv-1628-LAB-AHG

encumbered by a deed of trust in favor of Axos Bank (the "Axos portfolio loan") at the time the receivership was established. Three of the other properties encumbered by the loan—1617 Thomas Avenue, 805 Brighton Court, and 724 Zanzibar Court—have already been sold following Court approval, leaving only four residential properties within the receivership estate encumbered by the loan. ECF No. 367-1 at 6. *See also* ECF Nos. 163, 226, 319. As explained in previous orders regarding the other properties subject to the Axos loan, the documents governing the loan provide for partial release prices to facilitate the sale of separate properties. Assuming an August 2020 closing with an August 2020 loan payment having been made in the ordinary course, the Receiver's estimate of the release price for the Windemere Court Property is $1,207,220. Freitag Decl. ¶ 5.[2] The Receiver estimates property taxes to be paid from sale proceeds at closing will be between $1,500 and $2,500, and that costs of sale including escrow, title and recording fees will be approximately $6,000. *Id.* The Broker's fee is $12,000. *Id.* Notably, Buyer's broker has agreed to waive its share of the commission, which would have been $37,875, thus resulting in a better reported market sale price of the Windemere Court Property of $1,552,875, which the Receiver expects will help support sale prices for other properties in the vacation rental portfolio. *Id.* n.1. Based on the above estimates, the Receiver anticipates that the net sale proceeds remaining to be distributed to the receivership estate after closing will be in the range of $285,000 to $290,000. *Id.* ¶ 5.

### C. Court Approval of the Proposed Procedures and Sale

The Court has reviewed the documents submitted by the Receiver in support of the Windemere Court Property Motion and finds the purchase price of $1,515,000 to be fair and reasonable. This price is more than double the 2011 purchase price of $625,000, which

---

[2] Prior to the sale of the Zanzibar Court property, the estimated principal balance outstanding for the Axos portfolio loan was $3.07 million. ECF No. 282-1 at 6 n.2. The Zanzibar Court Property was approved for sale at a purchase price of $1,875,000, and a release price of $1,524,704.14 was paid to Axos after closing. *See* ECF Nos. 319, 349.

represents a substantial return even taking into account the change in market conditions over nine years and the significant remodel of the property in 2017. Freitag Decl. ¶ 2. Further, although the sale price is $184,900 below the original list price of $1,699,900, the Receiver (in consultation with Broker) only decided to drop the list price after several months passed with no offers, and in well-reasoned consideration of the impact of the COVID-19 pandemic on the vacation rental property market. *Id.* ¶ 4. Notably, the price is nearly at the precise midpoint between the high and low market value estimations of the Property in the Preliminary Real Estate and Liquor License Asset Schedule filed in October 2019, reflecting an estimated market value based on four brokers' valuations long before the COVID-19 pandemic hit. *See* ECF No. 76-2 at 3. Additionally, the Receiver has established in the Motion that Broker diligently marketed and advertised the Property since it was first listed on September 30, 2019. The Court is thus persuaded that the initial lack of offers was due to a too-high listing price, rather than lack of effort or a rushed agreement.

Moreover, the Receiver's publication of notice seeking qualified overbids in the San Diego Union-Tribune, in addition to the solicitation of overbids through the receivership website and continued efforts to market the property, establish that the Receiver fully satisfied the requirements for the public sale procedures set forth in 28 U.S.C. §§ 2001(a) and 2002 designed to ensure the best price is obtained. Therefore, upon review of the factual history and the Purchase Agreement itself, the Court finds the Purchase Agreement was negotiated at arm's-length and, further, that the Receiver implemented sufficient safeguards by way of the notice and overbid process to garner the highest possible price for the property. Finally, as explained above, Buyer's broker's agreement to waive its $37,875 share of the commission is expected to benefit the receivership as a whole, by resulting in a higher reported market sale price of the Windemere Court Property that will support sale prices for other properties in the estate's vacation rental portfolio. The Court is thus satisfied that the intent of the statutory scheme—to ensure that the best and highest possible price is paid for property within the receivership estate—has been fulfilled.

\\

## IV.  CONCLUSION

Based on the foregoing considerations, and noting in particular the lack of any express opposition to the Motion, the Court finds the Receiver has sufficiently established that the proposed sale of the Windemere Court Property and proposed distribution of the sale proceeds are consistent with principles of equity and the goal of a receivership to ensure the orderly and efficient administration of the estate for the benefit of creditors. *See Hardy*, 803 F.2d at 1038.

Accordingly, the Court **GRANTS** the Receiver's Motion for Approval of Sale of 737 Windemere Court Property (ECF No. 367), and **APPROVES** the proposed sale of the real property located at 737 Windemere Court, San Diego, California, as described in Exhibit A to the Declaration of Krista L. Freitag in support of the Motion (ECF No. 367-3), by Krista L. Freitag, as Receiver, to Buyer Brent Zambon. The purchase price of $1,515,000 for the Windemere Court Property is confirmed and approved.

The Court further **ORDERS** the proceeds of the sale to be distributed from escrow at the close of sale as follows:

1. The Receiver is authorized to pay broker Pacific Pines Real Estate a commission of $12,000;

2. The Receiver is authorized to pay Axos Bank the amount necessary to pay off the mortgage on the Property, which is estimated to be approximately $1,207,220 (with the exact amount to be determined at closing);

3. The Receiver is authorized to pay the property taxes due from the seller at closing, which amount is estimated to be in the range of $1,500 to $2,500 (with the exact amount to be determined at closing);

4. The Receiver is authorized to pay costs of sale, including escrow, title and recording fees, which are estimated to be approximately $6,000 (with the exact amounts to be determined at closing);

5. After the aforementioned estimated amounts (with the exact amounts to be determined at closing) are paid out of escrow, the net sale proceeds, which are estimated

1 to be in the range of $285,000 to $290,000 (with the exact amount to be determined at
2 closing), shall be paid to the receivership estate; and

3       6.    The Receiver is immediately authorized to complete the sale transaction,
4 including executing any and all documents as may be necessary and appropriate to do so.

5       **IT IS FURTHER ORDERED** that after closing, the Receiver shall provide a full
6 accounting of sale costs, property taxes paid, the precise release price paid to Axos Bank,
7 and the amount ultimately returned to the receivership estate from the sale proceeds.

8       **IT IS SO ORDERED.**

10 Dated: August 21, 2020

_____
Honorable Allison H. Goddard
United States Magistrate Judge