UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>GINA CHAMPION-CAIN AND ANI DEVELOPMENT, LLC,<br><br>Defendants, and<br><br>AMERICAN NATIONAL INVESTMENTS, INC.,<br><br>Relief Defendant. | Case No.:  3:19-cv-1628-LAB-AHG<br><br>**ORDER:**<br><br>**(1) GRANTING REQUEST TO APPROVE SALE OF 809 SAN RAFAEL PLACE PROPERTY TO WINNING BIDDER; and**<br><br>**(2) GRANTING IN PART AND DENYING IN PART MOTION FOR APPROVAL OF SALE OF 809 SAN RAFAEL PLACE PROPERTY**<br><br>**[ECF Nos. 384, 410]** |

Before the Court is the Receiver's Notice of Results of Auction for 809 San Rafael Place Property and Request to Approve Sale to Winning Bidder. ECF No. 410. For the reasons that follow, the Receiver's request is **GRANTED**, and the sale of the 809 San Rafael Place Property to the Winning Bidder is **APPROVED**. Consequently, the Receiver's Motion for Approval of Sale of 809 San Rafael Place Property (ECF No. 384) is **GRANTED IN PART** and **DENIED IN PART**, insofar as the motion sought approval of the sale to the former buyer at a lower purchase price.

1

## I. BACKGROUND

As described in prior orders, *see, e.g.*, ECF Nos. 54, 162, 163, this is an action brought by the Securities and Exchange Commission ("SEC") against Defendants ANI Development, LLC ("ANI Development") and Gina Champion-Cain and Relief Defendant American National Investments, Inc. ("ANI Inc."), alleging violations of federal securities laws based on a purportedly fraudulent liquor license loan scheme. ECF No. 1.

On September 3, 2019, the Court established an equitable receivership and appointed Krista L. Freitag ("Receiver") as the receiver of ANI Development and ANI Inc., authorizing her to take control over all funds and assets owned, managed, or in the possession or control of the receivership entities. *See* ECF No. 6 at 14-16. In that role, the Receiver acts under the control and direction of the Court to facilitate the "orderly and efficient administration of the estate . . . for the benefit of creditors." *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986). *See also Atl. Tr. Co. v. Chapman*, 208 U.S. 360, 370 (1908) (explaining that a motion to appoint a receiver to take charge of property is "to the end that the property might be cared for and preserved for all who had or might have an interest in the proceeds of its sale. . . . Immediately upon such appointment and after the qualification of the receiver, the property [within the equitable receivership] passed into the custody of the law, and thenceforward its administration was wholly under the control of the court by its officer [], the receiver.").

On December 11, 2019, the presiding judge in this action, Chief Judge Larry A. Burns, granted the parties' Joint Motion (ECF No. 156) to give limited consent to the undersigned to hear and directly decide all motions filed in this action to approve sales of receivership assets. ECF No. 160. *See also* 28 U.S.C. § 636(c); CivLR 72.1(g). All property sale motions are set before the undersigned pursuant to that grant of consent.

Pursuant to 28 U.S.C. § 2001(a), realty in the possession of an appointed receiver is subject to a public sale process, "upon such terms and conditions as the court directs." 28 U.S.C. § 2002 further requires that notice be published once a week for at least four weeks prior to the sale in at least one newspaper regularly issued and of general circulation

in the county, state, or judicial district where the realty is located. The purpose of such notice "is to inform the public of the kind and condition of the property to be sold, the time, the place, and the terms of the sale. It is to secure bidders and prevent the sacrifice of the property." *Breeding Motor Freight Lines v. R.F.C.*, 172 F.2d 416, 422 (10th Cir. 1949). Therefore, the safeguards of notice and opportunity to submit overbids help to ensure that the sale is able to fetch the best price possible, which is consistent with the principle that "a primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." *Hardy*, 803 F.2d at 1038. *See also United States v. Grable*, 25 F.3d 298, 303 (6th Cir. 1994) (noting that "the intent of" the requirement in 28 U.S.C. § 2001 that property be sold in the county in which the land is situated is "to bring a better price at the sale").

The Receiver filed a Motion for Approval of Sale of 809 San Rafael Place Property (the "809 San Rafael Motion") on July 9, 2020. ECF No. 384. The motion concerns the sale of one of the real properties within the receivership estate, a single-family residential property used as a vacation rental property located at 809 San Rafael Place, San Diego, California (the "809 San Rafael Property"). *See* ECF No. 384-1 at 5; ECF No. 76-2 at 3 (listing the 809 San Rafael Property in the Preliminary Real Estate and Liquor License Asset Schedule filed on October 3, 2019 as a vacation home within the receivership estate).

At the time the motion was filed, the intended buyer of the 809 San Rafael Property was Alan Peller, Shane McCool-Peller, Andrew Hannaman, and Silvia Hannaman, and the intended sale price was $1,500,000. ECF No 384-1 at 6. In the motion, the Receiver proposed compliance with 28 U.S.C. §§ 2001 and 2002 by publishing notice in the San Diego Union-Tribune once a week for four weeks of the pending sale, and inviting prospective purchasers to submit overbids to qualify to bid at a public auction for the property on July 30, 2020. *Id.* at 12. To qualify, potential bidders were instructed to submit a signed purchase and sale agreement, an earnest money deposit of $10,000, and proof of funds by July 27, 2020. *Id.*

The Court set a deadline of July 23, 2020 to file any response in opposition to the 809 San Rafael Motion, and ordered the Receiver to file a notice of non-receipt of overbids if no qualified overbids were received by July 27, 2020. ECF No. 387. No opposition to the 809 San Rafael Motion was filed. However, on July 28, 2020, the Receiver filed a Notice of Receipt of Qualified Overbid, reporting that a qualified overbid was received for the 809 San Rafael Property. ECF No. 401. The Receiver, through her broker, obtained the consent of the original buyer and the qualified overbidder to conduct the live auction via videoconference on July 30, 2020. *Id.*

On August 4, 2020, the Receiver filed a Notice of Results of Auction for 809 San Rafael Property and Request to Approve Sale to Winning Bidder. ECF No. 410 ("Request to Approve Sale"). In the Request to Approve Sale, the Receiver requests that the Court approve the sale of the 809 San Rafael Property to the winning bidder, Thomas Crowder ("Winning Bidder"), and also to approve the sale of the property to the back-up bidder and original buyer Alan Peller, Shane McCool-Peller, Andrew Hannaman, and Silvia Hannaman ("Back-Up Bidder") in the event the Winning Bidder does not close the sale for any reason. *Id.* at 2-3. The Winning Bidder submitted a bid of $1,630,000 for the property, while the Back-Up Bidder submitted the second-highest bid of $1,621,000. *Id.* at 2. Other than approval of the sale to the Winning Bidder (and the Back-Up Bidder if the sale falls through) at a new sale price, all other relief requested in the 809 San Rafael Motion, including authority to pay off the mortgage on the property and pay the costs of sale from the sale proceeds, remains the same. *Id.* at 3.

Being fully advised and noting the lack of opposition to the 809 San Rafael Motion, the Court will **GRANT** (1) the request to approve the sale of the 809 San Rafael Property to the Winning Bidder; (2) the request to approve the sale of the 809 San Rafael Property to the Back-Up Bidder if the Winning Bidder does not close the sale for any reason; and (3) all relief requested in the 809 San Rafael Motion, other than the request to approve the sale to the former buyer at the sale price of $1,500,000. That portion of the 809 San Rafael Motion will be **DENIED**.

## II. LEGAL STANDARD

"[I]t is a recognized principle of law that the district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership." *SEC v. Lincoln Thrift Ass'n*, 577 F.2d 600, 606 (9th Cir. 1978). Where a district court sits in equity, "[u]nless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied. 'The great principles of equity, securing complete justice, should not be yielded to light inferences, or doubtful construction.'" *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946).

"[A] district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad." *Hardy*, 803 F.2d at 1037. As part of this broad discretion, the district court sitting in equity and having custody and control of property "has power to order a sale of the same in its discretion. The power of sale necessarily follows the power to take control of and to preserve property[.]" *SEC v. Am. Capital Investments, Inc.*, 98 F.3d 1133, 1144 (9th Cir. 1996), *abrogated on other grounds by Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998) (quoting 2 Ralph E. Clark, Treatise on Law & Practice of Receivers § 482 (3d ed. 1992)). If the court approves an equitable receiver's proposed property sale, the sale "does not . . . purport to convey 'legal' title, but rather 'good,' equitable title enforced by an injunction against suit." *Id.* (citing 2 Clark, Treatise on Law & Practice of Receivers, §§ 342, 344, 482(a), 487, 489, 491).

## III. DISCUSSION

### A. Background of the Property and Proposed Sale

The 809 San Rafael Property was purchased for $1,430,000 in May 2015. ECF No. 384-1 at 5. An attorney and friend of Defendant Gina-Champion Cain, James Lance, contributed $200,000 of his personal funds to the purchase price for the property. *Id.* Accordingly, title was ultimately taken jointly in the names of affiliated receivership entity 809 San Rafael Place, LLC and an entity owned by Mr. Lance, Con Coop Beach Rentals,

LLC. *Id. See also* ECF No. 6 at 6 (the Court's Appointment Order, listing 809 San Rafael Place, LLC as an entity subject to the equitable receivership).

Upon her appointment, the Receiver and her staff analyzed the value of the 809 San Rafael Place Property by reviewing automated valuation scores for the property and a survey of market-comparable properties. ECF No. 384-1 at 5. The Receiver also consulted with and interviewed licensed brokers with experience selling residential properties in the Mission Beach area, ultimately selecting Pacific Pines Real Estate ("Broker") based on Broker's experience and low listing commission. *Id.* The Property was originally listed for sale at $1,699,000 on the Multiple Listing Service ("MLS") on or about January 5, 2020. *Id.* In addition to listing the Property on the MLS, Broker listed the 809 San Rafael Property on its website, held multiple open houses, and showed the Property to all interested parties. *Id.* at 5-6. However, the Property received no offers at the list price. Considering the lack of offers at the list price, as well as the detrimental effect of the COVID-19 pandemic on buyers' interest in vacation rental properties generally, the Receiver consulted with Broker and decided to reduce the list price to a range of $1,499,000 to $1,599,000. *Id.* Due to the COVID-19 pandemic, and in compliance with guidance from the California Association of Realtors, Broker implemented 3D marketing and socially-distanced tours of the Property. *Id.* at 6. Two offers were received, and, following negotiations with the prospective buyers, the Receiver accepted an offer of $1,500,000 from former buyer (and Back-Up Bidder) Alan Peller, Shane McCool-Peller, Andrew Hannaman, and Silvia Hannaman. The Back-Up Bidder, as former buyer, previously deposited $10,000 into escrow. *Id.* at 8.

As mentioned above, the Receiver complied with the overbid and auction process by publishing the following notice in the San Diego Union-Tribune once a week for four weeks:

> In the action pending in U.S. District Court for the Southern District of California, Case No. 19-CV-01628-LAB-AHG, Securities and Exchange Commission v. Gina Champion-Cain, et al., notice is hereby given that the court-appointed receiver will conduct a public auction for the real property located at 809 San Rafael Place in San Diego County, California. Sale is

subject to Court confirmation after the auction is held. Minimum bid price is at least $1,525,000. The auction will take place on July 30, 2020 at 1:30 p.m. in front of the entrance to the United States Courthouse, 221 W. Broadway, San Diego, California or as otherwise determined by the Court. To be allowed to participate in the auction, prospective purchasers must meet certain bid qualification requirements, including submitting a signed purchase and sale agreement, an earnest money deposit of $10,000, and proof of funds. All bidders must be qualified by 5:00 p.m. PT on July 27, 2020, by submitting the required materials to the receiver at 501 West Broadway, Suite 290, San Diego, California, 92101.

ECF No. 384-1 at 12. For those interested in qualifying as bidders, the notice also provided a phone number and email address for the relevant point of contact. *Id.*

As previously noted, a qualified overbid was timely received, and Thomas Crowder was the Winning Bidder at the July 30, 2020 auction, with a bid price of $1,630,000 for the property. ECF No. 410 at 2. Back-Up Bidder Alan Peller, Shane McCool-Peller, Andrew Hannaman, and Silvia Hannaman submitted the second-highest bid of $1,621,000. *Id.* Both the Winning Bidder and Back-Up Bidder have executed a Form Purchase and Sale Agreement and Joint Escrow Instructions ("PSA") for the Property, removing all buyer contingencies, along with PSA addenda that outline the overbid and auction process. *See* ECF Nos. 410-1; 410-2. Each bidder has also provided an earnest money deposit of $10,000. ECF Nos. 410-1 at 3; 410-2 at 2. Pursuant to § 6.4 of the PSA addenda, the earnest money deposit is non-refundable to the Winning Bidder, and will only be returned to the Back-Up Bidder after the closing for the Winning Bidder occurs. ECF Nos. 410-1 at 18; 410-2 at 18. After the auction, on August 3, 2020, both the Winning Bidder and the Back-Up Bidder executed a First Amendment to their respective PSAs with the Receiver, which, among other terms, amends the purchase prices in the PSAs to correspond with their bids. ECF Nos. 410-1 at 21-24; 410-2 at 21-24.

**A. Proposed Procedures and Distribution**

The 809 San Rafael Property is one of seven properties in the receivership estate that were encumbered by a deed of trust in favor of Axos Bank (the "Axos portfolio loan") at the time the receivership was established. Three of the other properties encumbered by the

loan—1617 Thomas Avenue, 805 Brighton Court, and 724 Zanzibar Court—have already been sold following Court approval, leaving only four residential properties within the receivership estate encumbered by the loan.[1] ECF No. 384-1 at 6-7. *See also* ECF Nos. 163, 226, 319.

As explained in previous orders regarding the other properties subject to the Axos loan, the documents governing the loan provide for partial release prices to facilitate the sale of separate properties. In the original motion seeking approval of the sale of the 809 San Rafael Property, the Receiver estimated a release price payment to Axos of $315,000. ECF No. 384-1 at 6. Notably, however, this estimate does not reflect the actual release price of the property. *Id.* at 6 n.1. Instead, it is the estimated payoff amount for the ***entire*** portfolio loan after payment of the July and August mortgage and net of escrowed funds held by the lender, and the estimate was based on an assumption that the sale of the Windemere Court property would close first. *Id.* at 6.[2] Accordingly, the stalled closing of the Windemere Court property pending resolution of the disputed deed of trust on that property casts doubt on the accuracy of the estimated $315,000 "release price" of the

---

[1] On August 21, 2020, the Court approved the sale of a fourth property encumbered by the loan, 737 Windemere Court. ECF No. 434. However, the Receiver filed a motion to amend the order approving that sale on August 28, 2020 in light of a newly discovered disputed deed of trust on the Windemere Court Property. ECF No. 440. Accordingly, the sale has not yet closed.

[2] Prior to the sale of the Zanzibar Court property, the estimated principal balance outstanding for the Axos portfolio loan was $3.07 million. ECF No. 282-1 at 6 n.2. The Zanzibar Court property was approved for sale at a purchase price of $1,875,000, and a release price of $1,524,704.14 was paid to Axos after closing, leaving a principal balance of approximately $1.545 million. *See* ECF Nos. 319, 349. In the Court's order approving the sale of the 737 Windemere Court property, the Court approved a purchase price of $1,515,000 and payment to Axos of a release price of approximately $1,207,220, with the exact amount to be determined at closing. ECF No. 434 at 9. Because the closing of that sale is still pending, the exact release price to be paid to Axos from the Windemere Court property sale proceeds is not yet known.

property included in the 809 San Rafael Motion. Nonetheless, the Court finds that the Receiver has provided sufficient information regarding the remaining balance on the portfolio loan and the value of both the 737 Windemere Court and 809 San Rafael properties generally to approve the sale of the 809 San Rafael Property, notwithstanding the lack of clarity on the release price to be paid to Axos from the proceeds. However, the Court's approval of the sale carries the expectation that, if Axos so requires, the Receiver shall pay the full release price for the 809 San Rafael Property if the sale closes prior to the Windemere Court property sale (and thus before the Receiver is able to pay Axos the Windemere Court property release price from the proceeds of that sale).

Due in part to his $200,000 personal funds contribution toward the purchase price, Mr. Lance also has disputed claims to a share of the net sale proceeds from the Property. ECF No. 384-1 at 7. In addition to that contribution, around the same time as the purchase of the Property by 809 San Rafael Place and Con Coop Beach Rentals, LLC, Mr. Lance advanced an additional $237,000 of his personal funds to the receivership entities. *Id.* The Receiver acknowledges that in exchange, Mr. Lance was apparently later given a promissory note and an option to acquire a 50% interest in the neighboring vacation rental property 812 San Rafael Place, which is also owned by the receivership entities and is listed for sale between $1,499,000 to $1,599,000. *Id.* However, the Receiver asserts that Mr. Lance never contributed any funds necessary to cover operating expenses of the Property, although accounting records show that the Property operated at a net loss. *Id.* The Receiver and Mr. Lance have not reached an agreement regarding his share of liability for operating expenses or net losses suffered. *Id.* Further, the Receiver also disputes Mr. Lance's interest in the neighboring property at 812 San Rafael Place. *Id.* Nonetheless, the Receiver and Mr. Lance have agreed that both properties may be sold in the near term, and $635,000 in receivership funds will be held by the Receiver and not distributed until Mr. Lance's claims have either been settled (with Court approval) or resolved by the Court. *Id.*

Turning to the remaining anticipated distribution of sale proceeds, the Receiver estimates property taxes to be paid from sale proceeds at closing will be between $3,000

and $3,500, and that costs of sale including escrow, title and recording fees will be approximately $7,500. *Id.* The Broker's fee is $49,500, $37,500 of which will be paid to the buyer's broker. ECF No. 384-2, Freitag Decl. ¶ 5. Based on these estimates, the Receiver estimated in the 809 San Rafael Motion that the net sale proceeds for the receivership estate would be in the range of $1,115,000 to $1,125,000. *Id.* In light of the substantially higher winning bid ($1,630,000) and back-up bid ($1,621,000) compared to the formerly agreed-upon purchase price of $1,500,000, however, the resultant adjusted estimate of net sale proceeds for the receivership estate will be in the range of $1,245,000 to $1,255,000.[3]

### B. Court Approval of the Proposed Procedures and Sale

The Court has reviewed the documents submitted by the Receiver in support of the 809 San Rafael Motion (ECF No. 384), as well as the Request to Approve Sale to the Winning Bidder or to the Back-Up Bidder if the Winning Bidder does not close the sale for any reason (ECF No. 410). The Court finds that both the winning bid and the back-up bid are fair, reasonable, and will represent a reasonable return of proceeds to the receivership estate. Both bids exceed the May 2015 $1,430,000 purchase price of the Property by more than $190,000, representing a return of approximately 13% - 14%.

Although the COVID-19 pandemic interfered significantly with the Receiver's ability to secure a fruitful offer at the original list price, the Receiver continued to market the property, and successfully secured two offers after dropping the price. ECF No. 384-1 at 11. The Receiver then negotiated the former buyer's offer up from $1.4 million to $1.5 million. *See* ECF No. 384-3. Then, after entering into a purchase agreement with the former buyer and current Back-Up Bidder, the Receiver continued to market the Property, successfully obtaining an overbid and ultimately receiving two bids at the auction well above the original $1.5 million purchase price initially agreed upon with the Back-Up

---

[3] This updated estimated range was also provided in the proposed order the Receiver submitted to the Court upon filing the Request to Approve Sale.

Bidder. Although the winning bid is still $69,000 below the original list price of $1,699,000, the Receiver (in consultation with Broker) only decided to drop the list price after several months passed with no offers, and in well-reasoned consideration of the impact of the COVID-19 pandemic on the vacation rental property market. The Receiver has also established that Broker diligently marketed and advertised the Property since it was first listed on January 5, 2020. The Court is thus persuaded that the initial lack of offers was due to a too-high listing price, rather than lack of effort by Receiver or Broker to obtain the highest and best price for the Property.

Additionally, the Broker's fee of $49,500, to be split with the buyer's broker, is approximately 3% of the total purchase price (whether the Winning Bidder or the Back-Up Bidder purchases the property), which aligns with industry standards. Further, Broker's agreement to accept only a $12,000 fee is significantly lower than industry standards.

Finally, the Receiver's publication of notice seeking qualified overbids in the San Diego Union-Tribune, in addition to the solicitation of overbids and holding of a public auction, establish that the Receiver fully satisfied the requirements for the public sale procedures set forth in 28 U.S.C. §§ 2001(a) and 2002, which are designed to ensure the best price for real property is obtained. The carrying out of the notice and auction process alone suffices to show that the Receiver has secured the best and highest price for the 809 San Rafael Property, whether the sale closes with either the Winning Bidder or the Back-Up Bidder. The Court is thus satisfied that the intent of the statutory scheme—to ensure that the best and highest possible price is paid for property within the receivership estate—has been fulfilled. Even taking into account the need to pay off the Axos loan from the sale proceeds and the Receiver's agreement to set aside $635,000 in receivership funds in light of Mr. Lance's disputed claim to the sale proceeds, the anticipated return to the receivership estate will be substantial.

Based on these considerations, and noting the lack of any opposition to the 809 San Rafael Motion, the Court finds the Receiver has established that the proposed sale of the Property and proposed distribution of the sale proceeds, whether the sale closes with the

Winning Bidder or the Back-Up Bidder, are consistent with principles of equity and the goal of a receivership to ensure the orderly and efficient administration of the estate for the benefit of creditors. *See Hardy*, 803 F.2d at 1038.

## IV. CONCLUSION

Having considered the Receiver's Motion for Approval of Sale of 809 San Rafael Place Property (ECF No. 384), and the Receiver's Notice of Results of Auction for 809 San Rafael Place Property and Request to Approve Sale to Winning Bidder (ECF No. 410), the Court **GRANTS IN PART** and **DENIES IN PART** the 809 San Rafael Motion (ECF No. 384). Specifically, the Court **GRANTS** all relief requested therein, other than the approval of the sale to the former intended buyer at the former purchase price. The Court **GRANTS** the Receiver's request to approve the sale of the 809 San Rafael Place Property to the Winning Bidder at the winning bid price of $1,630,000. If the Winning Bidder does not close the sale for any reason, the Court further **APPROVES** the sale of the 809 San Rafael Place Property to the Back-Up Bidder at the sale price of $1,621,000.

Accordingly, it is **ORDERED** as follows:

(1) The sale of the real property located at 809 San Rafael Place, San Diego, California, as described in Exhibit A to the Receiver's Notice of Results of Auction for 809 San Rafael Place Property and Request to Approve Sale to Winning Bidder (ECF No. 410-1), by Krista L. Freitag, as receiver, to Thomas Crowder ("Winning Bidder") is confirmed and approved;

(2) The purchase price of $1,630,000, to be paid by Winning Bidder for the 809 San Rafael Place Property, is confirmed and approved;

(3) The Receiver is authorized to pay broker Pacific Pines Real Estate a fee of $49,500, to be split with the ultimate buyer's broker in a manner consistent with the terms of the governing Purchase and Sale Agreement and Joint Escrow Instructions;

(4)  The Receiver is authorized to pay Axos Bank the amount necessary to pay off the mortgage on the Property, which is estimated to be approximately $315,000, with the exact amount to be determined at closing;[4]

(5)  The Receiver is authorized to pay the property taxes due from the seller at closing, which amount is estimated to be in the range of $3,000 to $3,500 (with the exact amount to be determined at closing);

(6)  The Receiver is authorized to pay the costs of sale, including title, escrow, and recording costs, due from the seller at closing, which amount is estimated to be $7,500 (with the exact amount to be determined at closing);

(7)  After the aforementioned estimated amounts (with the exact amounts to be determined at closing) are paid out of escrow, the net sale proceeds, which are estimated to be in the range of $1,245,000 to $1,255,000 (with the exact amount to be determined at closing), shall be paid to the receivership estate;[5]

(8)  *If and only if the Winning Bidder fails to close the sale transaction for any reason*, the sale of the real property located at 809 San Rafael Place, San Diego, California, as described in Exhibit B to the Receiver's Notice of Results of Auction for 809 San Rafael Place Property and Request to Approve Sale to Winning Bidder (ECF No. 410-2), by Krista L. Freitag, as receiver, to Alan Peller, Shane McCool-Peller, Andrew Hannaman and Silvia

---

[4] As discussed *supra* pp. 8-9, the Court recognizes that the release price may exceed this amount due to the complications that have delayed the closing of the 737 Windemere Court property sale. If the Receiver and Axos agree to a higher release price payment in light of this delay, the Receiver is authorized to pay Axos such higher amount, not to exceed the release price for the 809 San Rafael Place property set forth in the documents governing the portfolio loan.

[5] Because the Court understands that numerous contingencies (e.g., whether the sale closes with the Winning Bidder or the Back-Up Bidder, the amount of property taxes owed, etc.) may affect the net sale proceeds of this particular sale, the Court approves the distribution of the net sale proceeds to the receivership estate even if the final amount is outside of this range.

Hannaman, or their designees ("Back-Up Bidder"), at a purchase price of $1,621,000, is confirmed and approved, and the Receiver is authorized to make the payments from escrow described above;

(9) The Receiver is immediately authorized to complete the sale transaction with the Winning Bidder or, if the Winning Bidder fails to close the sale, with the Back-Up Bidder, including executing any and all documents as may be necessary and appropriate to do so; and

(10) The amount of $635,000 in receivership estate funds shall be set aside by the Receiver and not distributed until such time as the claims asserted by James Lance on behalf of Con & Coop Beach Rentals, LLC have been either settled (with the settlement approved by the Court) or resolved by the Court.

After closing, the Receiver shall provide a full accounting of sale costs, property taxes paid, the precise amount used to pay the release price for the property to Axos Bank, and the amount ultimately returned to the receivership estate from the sale proceeds. The Receiver must also notify the Court of the status of the dispute with Mr. Lance and the set-aside receivership funds.

**IT IS SO ORDERED.**

Dated: September 3, 2020

_____
Honorable Allison H. Goddard
United States Magistrate Judge