UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>GINA CHAMPION-CAIN AND ANI DEVELOPMENT, LLC,<br><br>　　　　　　　　　　Defendants, and<br><br>AMERICAN NATIONAL INVESTMENTS, INC.,<br><br>　　　　　　　　　Relief Defendant. | Case No.: 3:19-cv-1628-LAB-AHG<br><br>**ORDER:**<br><br>**(1) GRANTING REQUEST TO APPROVE SALE OF 7565-7571 UNIVERSITY AVENUE TO WINNING BIDDER; and**<br><br>**(2) GRANTING IN PART AND DENYING IN PART MOTION FOR APPROVAL OF SALE OF 7565-7571 UNIVERSITY AVENUE PROPERTY**<br><br>**[ECF Nos. 406, 451]** |

**I.    BACKGROUND**

As described in prior orders, *see, e.g.*, ECF Nos. 54, 162, 163, this is an action brought by the Securities and Exchange Commission ("SEC") against Defendants ANI Development, LLC ("ANI Development") and Gina Champion-Cain and Relief Defendant American National Investments, Inc. ("ANI Inc."), alleging violations of federal securities laws based on a purportedly fraudulent liquor license loan scheme. ECF No. 1.

On September 3, 2019, the Court established an equitable receivership and appointed Krista L. Freitag ("Receiver") as the receiver of ANI Development and ANI Inc., authorizing her to take control over all funds and assets owned, managed, or in the possession or control of the receivership entities. *See* ECF No. 6 at 14-16. In that role, the Receiver acts under the control and direction of the Court to facilitate the "orderly and efficient administration of the estate . . . for the benefit of creditors." *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986). *See also Atl. Tr. Co. v. Chapman*, 208 U.S. 360, 370 (1908) (explaining that a motion to appoint a receiver to take charge of property is "to the end that the property might be cared for and preserved for all who had or might have an interest in the proceeds of its sale. . . . Immediately upon such appointment and after the qualification of the receiver, the property [within the equitable receivership] passed into the custody of the law, and thenceforward its administration was wholly under the control of the court by its officer [], the receiver.").

On December 11, 2019, the presiding judge in this action, Chief Judge Burns, granted the parties' Joint Motion (ECF No. 156) to give limited consent to the undersigned to hear and directly decide all motions filed in this action to approve sales of receivership assets. ECF No. 160. *See also* 28 U.S.C. § 636(c); CivLR 72.1(g). All property sale motions are set before the undersigned pursuant to that grant of consent.

The Receiver filed a Motion for Approval of Sale of 7565-7571 University Avenue Property ("University Avenue Motion") on July 29, 2020. ECF No. 406. The motion concerns one of the real properties within the receivership estate, a mixed-use property located at 7569-7571/7565 University Avenue, La Mesa, California, APN 469-620-11 & 12 (the "University Avenue Property"). *See* ECF No. 406-1 at 5; ECF No. 76-2 at 5 (listing the University Avenue Property in the Preliminary Real Estate and Liquor License Asset Schedule filed on October 3, 2019).

At the time the motion was filed, the intended buyer of the University Avenue Property was the David and Natalie Kurniadi Trust and the intended sale price was $1,290,000 (with a $25,000 credit to the buyer to use towards closing costs or a price

reduction). ECF No 406-1 at 7. In the motion, the Receiver proposed compliance with 28 U.S.C. §§ 2001 and 2002 by publishing notice in the San Diego Union-Tribune once a week for four weeks of a public auction for the property on August 27, 2020. *Id.* at 12-13. Potential bidders were invited to qualify for the auction by submitting a signed purchase and sale agreement, an earnest money deposit of $25,000[1], and proof of funds by August 24, 2020. *Id.*

The Court set a deadline of August 14, 2020 to file any response in opposition to the University Avenue Motion and ordered the Receiver to file a notice of non-receipt of overbids if no qualified overbids were received by August 24, 2020. ECF No. 407. No opposition to the University Avenue Motion was filed. However, on August 26, 2020, the Receiver filed a Notice of Receipt of Qualified Overbid, reporting that one qualified overbid was received for the University Avenue Property. ECF No. 439. The Receiver, through her broker, obtained the consent of the original buyer and the qualified overbidder to conduct the live auction via videoconference on August 27, 2020. *Id.* at 2.

On September 10, 2020, the Receiver filed a Notice of Results of Auction for Sale of 7566-7571 University Avenue and Request to Approve Sale to Winning Bidder ("Notice of Results"). ECF No. 451. In the Notice of Results, the Receiver requests that the Court approve the sale of the University Avenue Property to the winning bidder, Alan I. Baskin, as Trustee of the Baskin Family Trust, and also to approve the sale of the property to the backup bidder, David Kurniadi, as Trustee of the David and Natalie Kurniadi Trust, in the event the winning bidder does not close the sale for any reason. *Id.* at 2-3. The winning

---

[1] Though the discrepancy does not prove problematic, in the University Avenue Motion the Receiver quotes the published notice as requiring a $25,000 earnest money deposit, but then goes on to note that an earnest money deposit of $27,500 would be required. *See* ECF No. 406-1 at 12. The purchase and sale agreement signed by David Kurniadi lists the earnest money deposit as $25,000. *See* ECF No. 406-3 at 5, ECF No. 451-2 at 4. However, the purchase and sale agreement dont signed by the ultimate winner at auction lists the earnest money deposit paid as $27,500. ECF No. 451-1 at 5.

bidder submitted a bid of $1,400,000 for the property, while the backup bidder submitted the second-highest bid of $1,390,000. *Id.* Other than approval of the sale to the winning bidder (and the backup bidder if the sale falls through) at a new sale price, all other relief requested in the University Avenue Motion—including authority to pay amounts due to the lender, mechanic's lien claims, property taxes, and the costs of sale from the sale proceeds—remains the same. *Id.* at 3.

Being fully advised and noting the lack of opposition to the University Avenue Motion, the Court **GRANTS** (1) the request to approve the sale of the University Avenue Property to the winning bidder; (2) the request to approve the sale of the University Avenue Property to the backup bidder if the winning bidder does not close the sale for any reason; and (3) all relief requested in the University Avenue Motion, other than the request to approve the sale to the former buyer at the sale price of $1,290,000. That portion of the University Avenue Motion is **DENIED**.

## II. LEGAL STANDARD

"[I]t is a recognized principle of law that the district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership." *SEC v. Lincoln Thrift Ass'n*, 577 F.2d 600, 606 (9th Cir. 1978). Where a district court sits in equity, "[u]nless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied. 'The great principles of equity, securing complete justice, should not be yielded to light inferences, or doubtful construction.'" *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946).

"[A] district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad." *Hardy*, 803 F.2d at 1037. As part of this broad discretion, the district court sitting in equity and having custody and control of property "has power to order a sale of the same in its discretion. The power of sale necessarily follows the power to take control of and to preserve property[.]" *SEC v. Am. Capital Investments, Inc.*, 98 F.3d 1133, 1144 (9th Cir.

1996), *abrogated on other grounds by Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998) (quoting 2 Ralph E. Clark, Treatise on Law & Practice of Receivers § 482 (3d ed. 1992)). If the court approves an equitable receiver's proposed property sale, the sale "does not . . . purport to convey 'legal' title, but rather 'good,' equitable title enforced by an injunction against suit." *Id.* (citing 2 Clark, Treatise on Law & Practice of Receivers, §§ 342, 344, 482(a), 487, 489, 491).

Pursuant to 28 U.S.C. § 2001(a), realty in the possession of an appointed receiver is subject to a public sale process, "upon such terms and conditions as the court directs." 28 U.S.C. § 2002 further requires that notice be published once a week for at least four weeks prior to the sale in at least one newspaper regularly issued and of general circulation in the county, state, or judicial district where the realty is located.[2] These safeguards of notice and opportunity to submit overbids help to ensure that the sale is able to fetch the best price possible, which is consistent with the principle that "a primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." *Hardy*, 803 F.2d at 1038. *See also United States v. Grable*, 25 F.3d 298, 303 (6th Cir. 1994) (noting that "the intent of" the requirement in 28 U.S.C. § 2001 that property be sold in the county in which the land is situated is "to bring a better price at the sale").

### III.  DISCUSSION

#### A. Background of the Property and Proposed Sale

The University Avenue Property was purchased for $1,300,000 in June 2018, and title was taken in the name of ANI, Inc. ECF No. 406-1 at 5; ECF No. 460-2, Freitag Decl., ¶ 2. It is comprised of a four-unit partially renovated apartment complex, three small commercial units, and a single-family residence. ECF No. 406-1 at 6. Initially, the single-

---

[2] 28 U.S.C. § 2001 also provides for a private sale process under subsection (b), but the requirements of that subsection are more stringent. The Receiver does not propose a private sale here.

family residence was on a separate legal parcel, but as part of Defendants' renovation plan, Defendants hired contractors to consolidate the two separate legal parcels into one parcel through a Parcel Map Waiver. *Id.* Defendants also hired a contractor with the intent of tearing down most of the units on the combined parcel to build a 16-unit apartment complex. *Id.* at 5. However, Defendants ultimately determined that the cost to complete the apartment complex was prohibitive and plans were abandoned without a clear direction for the project. *Id.* at 6.

When the receivership took over, the Receiver initially determined that very little, if any, equity likely would be realized for the University Avenue Property. *Id.* at 5; ECF No. 460-2 ¶ 3. SFG Income Fund VI and Home Assistance Service, Inc. ("SFG") had issue two interest-only loans that are secured, respectively, by a first and second trust deed on the University Avenue Property (the "University Avenue Loans"). ECF No. 406-2 ¶ 3. These loans matured on January 1, 2020 and SFG informed the Receiver that, as of April 1, 2020, American National Investments, Inc. owed in excess of $1,072,588.69. *Id.* Additionally, the Receiver learned that a contractor had not been paid and a mechanic's lien in the approximate amount of $16,580 had been placed on the property. *Id.* ¶¶ 3-4. Given the partially-renovated status of the property, the large amount of debt owed, the unusual combination of improvements on one parcel[3], and the anticipated cost of marketing the property for sale, the Receiver determined that little equity would be realized for the receivership estate and declined to make any debt service payments to SFG on the loans. *Id.* ¶¶ 3-6. Instead, she arranged for the parties and SFG to file a Joint Motion for Order Granting Seattle Funding Group Relief from Preliminary Injunction to Foreclose on Real

---

[3] The Receiver was of the view that it would have been easier to sell the two parcels (one containing a single-family residence and the other consisting of the four-unit partially renovated apartment complex and three small commercial units) separately. ECF No. 406-2 ¶ 5. Unfortunately, she determined that the City of La Mesa did not have a Parcel Map Waiver process to separate parcels once joined. *Id.*

Property in order to allow SFG to proceed with a non-judicial foreclosure. ECF No. 303. Chief Judge Burns granted this motion on April 23, 2020. ECF No. 314.

The foreclosure order and the parties' agreement contemplated that the Receiver would continue to market the property while the foreclosure was pending and discuss any prospective sales with SFG. ECF No. 406-2 ¶6; ECF No. 314. In order to do so without incurring further expenses for the receivership, the Receiver had a member of her staff who is a licensed broker, Geno Rodriguez, list the property on the local MLS and show it to interested parties without charging a broker's commission. ECF No. 406-2 ¶¶ 7, 9. Mr. Rodriguez fielded inquiries about the property, provided due diligence information to five interested parties, and made the property available for tours by interested buyers. *Id.* ¶ 7. Ultimately, the Receiver negotiated terms with the prospective buyer through Mr. Rodriguez and discussed the sale with SFG before entering into escrow on or around May 14, 2020. *Id.* The prospective buyer, the David and Natalie Kurniadi Trust, agreed to a purchase price of $1,290,000 with a $25,000 credit to use towards closing costs or a price reduction. *Id.*

In the University Avenue Motion, the Receiver proposed compliance with the overbid and auction process mandated by 28 U.S.C. §§ 2001 and 2002 by publishing the following notice in the San Diego Union-Tribune once a week for four weeks:

> In the action pending in U.S. District Court for the Southern District of California, Case No. 19-CV-01628-LAB-AHG, Securities and Exchange Commission v. Gina Champion-Cain, et al., notice is hereby given that the court-appointed receiver will conduct a public auction for the real property located at 7565-7571 University Avenue, La Mesa, California 91942 in San Diego County, California. Sale is subject to Court confirmation after the auction is held. Minimum bid price is at least $1,340,000. The auction will take place on August 27, 2020 at 1:30 p.m. in front of the entrance to the United States Courthouse, 221 W. Broadway, San Diego, California or as the court otherwise directs. To be allowed to participate in the auction, prospective purchasers must meet certain bid qualification requirements, including submitted a signed purchase and sale agreement, an earnest money deposit of $25,000, and proof of funds. All bidders must be qualified by 5:00

       p.m. PT on August 24, 2020, by submitting the required materials to the receiver at 501 West Broadway, Suite 290, San Diego, California, 92101.

ECF No. 406-1 at 12-13. For those interested in qualifying as bidders, the notice also provided a phone number and email address for the relevant point of contact. *Id.*

       As previously noted, the Receiver filed a Notice of Receipt of Qualified Overbid Regarding the University Avenue Motion on August 26, 2020. ECF No. 439. In the Notice, the Receiver informed the Court that, after filing the University Avenue Motion, and in addition to publishing the above notice in the San Diego Union-Tribune as proposed, she posted notice of the Motion on the receivership website anireceivership.com and continued to market the property through Broker and notify potential purchasers about the opportunity to submit an overbid by August 24, 2020. *Id.* at 2. As a result, she received a qualified overbid. *Id.*

       At the live auction via Zoom, Alan I. Baskin, as Trustee of the Baskin Family Trust, was the winning bidder with a bid of $1,400,000. ECF No. 451 at 2. The backup bidder, David Kurniadi, as Trustee of the David and Natalie Kurniadi Trust, bid $1,390,000. *Id.* To qualify as overbidders at the auction, both the winning bidder and backup bidder had previously executed form purchase and sale agreements, removing all contingencies, and each of them also provided an earnest money deposit[4]. *See* ECF Nos. 451-1, Exs. A, B. Pursuant to §§ 2.2(a) and 15.4 of the form purchase and sale agreements, the earnest money deposit is non-refundable to the winning bidder and will only be returned to the backup bidder after the closing for the winning bidder occurs. *Id.* After the auction, on August 28, 2020, both the winning bidder and the backup bidder executed amendments to their respective purchase and sale agreements with the Receiver, which, among other terms, amended the purchase price in the purchase and sale agreements to correspond with their bids. ECF No. 451-1 at 53-55; ECF No. 452-2 at 58-60.

---

[4] Again, the winning bidder made a $27,500 earnest money deposit while the backup bidder's was $25,000.

## B. Proposed Procedures and Distribution

The Receiver intends to use the proceeds of the property sale to pay off the University Avenue Loans to SFG and estimates the amount required to do so will be in the range of $1,025,000 to $1,035,000[5], although that estimate in the Receiver's initial motion was based on the assumption that the sale would close in September 2020. ECF No. 406-1 at 7-8. The Receiver estimates that property taxes due at closing will be in the range of $20,000 to $22,000 and that costs of sale including escrow, title, and recording fees will be approximately $6,450. *Id.* at 8. With regard to the amount due to contractors for unpaid expenses, the Receiver received liens for $4,080 and $12,500. *Id.* at 7. The Receiver arranged for the smaller lien to be released in exchange for a payment of $2,040. *Id.* The larger lien holder, Iconik Builders ("Iconik"), alleges that receivership entities owe it in excess of $100,000 for work done on the University Avenue Property, the ANI headquarters building located at 3515 Hancock Street, and the former Patio on Goldfinch restaurant property. *Id.* However, the Receiver negotiated a release of all liens and claims against the receivership estate by Iconik in exchange for $12,500 (i.e. the full amount of its mechanic's lien on the University Avenue Property). *Id.*

As part of the originally anticipated sale to the David and Natalie Kurniadi Trust, the Receiver anticipated paying the buyer's broker a commission of 2% of the sale price, or $25,800. *Id.* at 8. Mr. Rodriguez agreed to receiving no commission, so no funds from the sales proceeds would be due to him. *Id.* It is not clear from the Notice of Results that the broker for the winning bidder is to receive the same 2% commission, but a broker is listed for the winning bidder (*see* ECF No. 45-1 at 24), so the Court anticipates a similar commission for this individual. Additionally, the purchase and sale agreement the winning bidder signed contains a provision providing for a closing cost credit of $25,000. ECF No. 451-1 at 14 (¶ 6.7). The May 14, 2020 purchase and sale agreement signed by David

---

[5] The Receiver notes that SFG agreed to remove nearly all of the more than $80,000 of default interest. ECF No. 460-1 at 8 n.1; ECF No. 406-2 ¶ 9 n.1.

Kurniadi contained an addendum providing a similar provision that seller would provide the buyers with a $25,000 credit towards closing costs. ECF No. 406-3 at 53.

Based on these costs and estimates, and taking into account the $25,000 credit, the Receiver estimated in the University Avenue Motion that the net sale proceeds for the receivership estate would be in the range of $160,000 to $170,000. *Id.* at 8. In light of the substantially higher winning bid ($1,400,000) and backup bid ($1,390,000) compared to the formerly agreed-upon purchase price of $1,290,000, however, the Court assumes an adjusted Broker's fee in the range of $27,800 to $28,000, and a resultant adjusted estimate of net sale proceeds for the receivership estate in the range of $265,000 to $288,000[6].

### C. Court Approval of the Proposed Procedures and Sale

The Court has reviewed the documents submitted by the Receiver in support of the University Avenue Motion, as well as the Notice of Results and request to approve the sale to the winning bidder or to the backup bidder if the winning bidder does not close the sale for any reason. The Court finds that both the winning bid and the backup bid are fair, reasonable, and will represent a decent return of proceeds to the receivership estate. The fact that the Receiver was able to achieve a sale garnering over $265,000 in net profit from a property initially subject to foreclosure *and* convince SFG to remove nearly all of the default interest is an unexpected benefit to the receivership estate.

Having Broker continue to market the property during the foreclosure proceedings satisfied the Receiver's duties under the district judge's April 23, 2020 order and ultimately yielded two bids above the bid minimum. Moreover, the Receiver's publication of notice seeking qualified overbids in the San Diego Union Tribune, in addition to the solicitation of overbids and holding of a public auction, establish that the Receiver fully satisfied the requirements for the public sale procedures set forth in 28 U.S.C. §§ 2001(a) and 2002, which are designed to ensure the best price for real property is obtained. The Court is

---

[6] Additional adjustments are anticipated in light of the delayed closing date.

convinced that the carrying out of the notice and auction process alone suffices to show that the Receiver has secured the best and highest price for the University Avenue Property, whether the sale closes with either the winning bidder or the backup bidder. The Court is thus satisfied that the intent of the statutory scheme—to ensure that the best and highest possible price is paid for property within the receivership estate—has been fulfilled. Even taking into account the need to pay off the loans and liens on the property from the sale proceeds, the anticipated return to the receivership estate is substantial.

Based on these considerations, and noting the lack of any opposition to the University Avenue Motion, the Court finds the Receiver has established that the proposed sale of the University Avenue Property and proposed distribution of the sale proceeds, whether the sale closes with the winning bidder or the backup bidder, are consistent with principles of equity and the goal of a receivership to ensure the orderly and efficient administration of the estate for the benefit of creditors. *See Hardy*, 803 F.2d at 1038.

## IV.  CONCLUSION

Having considered the Receiver's Motion for Approval of Sale of 7565-7571 University Avenue Property (ECF No. 406) and the Receiver's Notice of Results of Auction for Sale of 7566-7571 University Avenue and Request to Approve Sale to Winning Bidder (ECF No. 451), the Court **GRANTS IN PART** and **DENIES IN PART** the University Avenue Motion (ECF No. 406). Specifically, the Court **GRANTS** all relief requested therein, other than the approval of the sale to the former intended buyer at the former purchase price. That portion of the University Avenue Motion is **DENIED**. The Court **GRANTS** the Receiver's request to approve the sale of the University Avenue Property to the winning bidder at the winning bid price of $1,400,000. If the winning bidder does not close the sale for any reason, the Court further **APPROVES** the sale of the University Avenue Property to the backup bidder at the sale price of $1,390,000.

///
///
///

Accordingly, it is **ORDERED** as follows:

(1) The sale of the mixed-use property located at 7569-7571/7565 University Avenue, La Mesa, California, APN 469-620-11 & 12, as described in Exhibit A to the Receiver's Notice of Results of Auction for Sale of 7566-7571 University Avenue and Request to Approve Sale to Winning Bidder (ECF No. 451), by Krista L. Freitag, as receiver, to Alan I. Baskin, as Trustee of the Baskin Family Trust ("Winning Bidder") is confirmed and approved;

(2) The purchase price of $1,400,000, to be paid by Winning Bidder for the University Avenue Property, is confirmed and approved;

(3) ***If and only if the Winning Bidder does not close the sale for any reason***, the sale of the real property located at 7569-7571/7565 University Avenue, La Mesa, California, APN 469-620-11 & 12, as described in Exhibit B to the Receiver's Notice of Results of Auction for Sale of 7566-7571 University Avenue and Request to Approve Sale to Winning Bidder (ECF No. 451), by Krista L. Freitag, as receiver, to David Kurniadi, as Trustee of the David and Natalie Kurniadi Trust ("Backup Bidder"), at a purchase price of $1,390,000, is confirmed and approved;

(4) The Receiver is authorized to pay broker Leon Schorr (*see* ECF No. 451-1 at 24 listing Mr. Schorr as "Buyer's Broker" in Winning Bidder's purchase and sale agreement) a commission of up to 2% of the sale price, if the parties' separate agreement provided for a commission to Mr. Schorr;[7]

(5) The Receiver is authorized to pay SFG Income Fund VI and Home Assistance Service, Inc. the amount necessary to pay off the two interest-only loans that are secured, respectively, by a first and second trust deed on the University Avenue Property, which

---

[7] If the property is sold to Backup Bidder, the Receiver is authorized to pay David Zvaifler of Pacific Pines Real Estate a commission of 2% of the sale price (*see* ECF No. 451-2 at 34 listing Mr. Zvaifler as "Buyer's Broker" for the Backup Bidder).

amount is in the range of $1,025,000 to $1,035,000 (with the exact amount to be determined at closing);

(6) The Receiver is authorized to pay off the mechanic's lien claims in the amount of $12,500 and $2,040, respectively;

(7) The Receiver is authorized to pay the property taxes due from the seller at closing, which amount is estimated to be in the range of $20,000 to $22,000 (with the exact amount to be determined at closing);

(8) The Receiver is authorized to pay the costs of sale, including title, escrow, and recording costs, due from the seller at closing, which amount is estimated to be $6,450 (with the exact amount to be determined at closing);

(9) After the aforementioned estimated amounts (with the exact amounts to be determined at closing) and the sale credit of $25,000 are paid out of escrow, the net sale proceeds, which are estimated to be in the range of $265,000 to $288,000 (with the exact amount to be determined at closing), shall be paid to the receivership estate;[8] and

(10) The Receiver is immediately authorized to complete the sale transaction, including executing any and all documents as may be necessary and appropriate to do so.

(11) If the sale of the University Avenue Property ultimately closes with the Backup Bidder, the Receiver is authorized to complete the sale transaction with the Backup Bidder, including executing any and all documents as may be necessary and appropriate to do so.

///
///
///

---

[8] Because the Court understands that numerous contingencies (e.g., whether the sale closes with the Winning Bidder or the Backup Bidder, the amount of property taxes owed, etc.) may affect the net sale proceeds of this particular sale, the Court approves the distribution of the net sale proceeds to the receivership estate even if the final amount is outside of this range.

(12) After closing, the Receiver shall provide a full accounting of sale costs, property taxes paid, lien costs, the precise amount used to pay off the loans to SFG Income Fund VI and Home Assistance Service, Inc., and the amount ultimately returned to the receivership estate from the sale proceeds.

**IT IS SO ORDERED.**

Dated: October 16, 2020

*Allison H. Goddard*
Honorable Allison H. Goddard
United States Magistrate Judge