UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>GINA CHAMPION-CAIN AND ANI DEVELOPMENT, LLC,<br><br>Defendants, and<br><br>AMERICAN NATIONAL INVESTMENTS, INC.,<br><br>Relief Defendant. | Case No.: 3:19-cv-1628-LAB-AHG<br><br>**ORDER:**<br><br>**(1) GRANTING REQUEST TO APPROVE SALE OF PERSONAL PROPERTY, LIQUOR LICENSE, AND ASSIGNMENT OF COMMERCIAL LEASE ASSOCIATED WITH MISSION BEACH SURF RIDER RESTAURANT TO WINNING BIDDER; and**<br><br>**(2) GRANTING IN PART AND DENYING IN PART MOTION FOR APPROVAL OF SALE**<br><br>**[ECF Nos. 408, 454]** |

1

## I. BACKGROUND

As described in prior orders, *see, e.g.*, ECF Nos. 54, 162, 163, this is an action brought by the Securities and Exchange Commission ("SEC") against Defendants ANI Development, LLC ("ANI Development") and Gina Champion-Cain and Relief Defendant American National Investments, Inc. ("ANI Inc."), alleging violations of federal securities laws based on a purportedly fraudulent liquor license loan scheme. ECF No. 1.

On September 3, 2019, the Court established an equitable receivership and appointed Krista L. Freitag ("Receiver") as the receiver of ANI Development and ANI Inc., authorizing her to take control over all funds and assets owned, managed, or in the possession or control of the receivership entities. *See* ECF No. 6 at 14-16. In that role, the Receiver acts under the control and direction of the Court to facilitate the "orderly and efficient administration of the estate . . . for the benefit of creditors." *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986). *See also Atl. Tr. Co. v. Chapman*, 208 U.S. 360, 370 (1908) (explaining that a motion to appoint a receiver to take charge of property is "to the end that the property might be cared for and preserved for all who had or might have an interest in the proceeds of its sale. . . . Immediately upon such appointment and after the qualification of the receiver, the property [within the equitable receivership] passed into the custody of the law, and thenceforward its administration was wholly under the control of the court by its officer [], the receiver.").

On December 11, 2019, the presiding judge in this action, Chief Judge Burns, granted the parties' Joint Motion (ECF No. 156) to give limited consent to the undersigned to hear and directly decide all motions filed in this action to approve sales of receivership assets. ECF No. 160. *See also* 28 U.S.C. § 636(c); CivLR 72.1(g). All property sale motions are set before the undersigned pursuant to that grant of consent.

The Receiver filed the Motion for Approval of Sale of Personal Property, Liquor License, and Assignment of Commercial Lease Associated with Mission Beach Surf Rider Restaurant ("Surf Rider Motion") on August 3, 2020, seeking court approval of the sale of assets associated with the now closed Mission Beach Surf Rider Restaurant, which leased

the premises located at 3772-3774 Mission Boulevard, San Diego, CA. ECF No. 408-1 at 5; *see also* ECF No. 76-2 at 8 (listing "Surf Rider Pizza – Mission Beach" in the Preliminary Real Estate and Liquor License Asset Schedule filed on October 3, 2019).[1] The assets are owned by 2163 Abbott Street, LP, an affiliated receivership entity, and "include personal property (furniture, fixtures, and equipment), a liquor license, contracts, and a leasehold interest in the restaurant premises ("Assets")." *Id.*; *see also* ECF No. 6 at 5 (the Court's Appointment Order, listing 2163 Abbott Street, LP as an entity subject to the equitable receivership). Though the Receiver is authorized to sell personal property without prior court approval (*see* ECF No. 219 at 9), the Receiver concluded that the net recovery for the receivership estate would be greater if the Assets were sold as a package. ECF No. 408-1 at 5; ECF No. 408-2, Freitag Decl., ¶ 3.

At the time the motion was filed, the intended buyer of the Assets was the Grind and Prosper Hospitality Group LLC and the intended sale price was $375,000. ECF No. 408-1 at 7. In the motion, the Receiver proposed to conduct an auction consistent with 28 U.S.C. §§ 2001 and 2002 by publishing notice in the San Diego Union-Tribune once a week for

---

[1] In the Surf Rider Motion, the Receiver describes the former "Mission Beach Surf Rider Restaurant" as being located at 3772-3774 Mission Blvd. ECF No. 408-1 at 5. However, the Preliminary Real Estate and Liquor License Asset Schedule lists only a liquor license and lease for "Surf Rider Pizza - Mission Beach" located at 3770 Mission Blvd. ECF No. 76-2 at 8-9. In order to clarify this discrepancy, the Court ordered the Receiver to file a notice confirming whether these restaurants are the same facility and the correct address for the restaurant. ECF No. 484. The Receiver promptly filed a notice confirming that the 3770 Mission Boulevard and 3772-3774 Mission Boulevard addresses represent the same facility—the former Mission Beach Surf Rider Restaurant. ECF No. 486 at 2. Apparently the 3772-3774 Mission Boulevard address is the one reflected in official county records, on lease files, and on utility accounts for the building. *Id.* The 3770 Mission Boulevard address is the business address the former restaurant actually used and also is the address associated with the liquor license granted by the California Department of Alcoholic Beverage Control. *Id.* In light of this clarification, the Court is satisfied that these addresses represent the same receivership property, which includes assets subject to sale with Court approval.

four weeks of a public auction for the property on September 3, 2020. *Id.* at 12. Potential bidders were invited to qualify for the auction by submitting a signed purchase and sale agreement, an earnest money deposit of $55,000, and proof of funds by August 31, 2020. *Id.*

The Court set a deadline of August 17, 2020 to file any response in opposition to the Surf Rider Motion and ordered the Receiver to file a notice of non-receipt of overbids if no qualified overbids were received by August 31, 2020. ECF No. 409. No opposition to the Surf Rider Motion was filed. However, on September 2, 2020, the Receiver filed a Notice of Receipt of Qualified Overbid, reporting that two qualified overbids were received for the Assets. ECF No. 447. The Receiver, through her broker, obtained the consent of the original buyer and the qualified overbidders to conduct the live auction via videoconference on September 3, 2020. *Id.* at 2.

On September 11, 2020, the Receiver filed a Notice of Results of Auction for Sale of Personal Property, Liquor License, and Assignment of Commercial Lease Associated with Mission Beach Surf Rider Restaurant and Request to Approve Sale to Winning Bidder ("Notice of Results"). ECF No. 454. In the Notice of Results, the Receiver requests that the Court approve the sale of the Assets to the winning bidder, OMG Restaurant Group, LLC, and also approve the sale of the Assets to the backup bidder, Las Hadas, Inc., in the event the winning bidder does not close the sale for any reason. *Id.* at 2-3. The winning bidder submitted a bid of $402,500 for the Assets, while the backup bidder submitted the second-highest bid of $400,000. *Id.* Other than approval of the sale to the winning bidder (and the backup bidder if the sale falls through) at a new sale price, all other relief requested in the Surf Rider Motion—including authority to pay amounts due to the lender (if applicable) and the costs of sale from the sale proceeds—remains the same. *Id.* at 3.

Being fully advised and noting the lack of opposition to the Surf Rider Motion, the Court **GRANTS** (1) the request to approve the sale of the Assets to the winning bidder; (2) the request to approve the sale of the Assets to the backup bidder if the winning bidder does not close the sale for any reason; and (3) all relief requested in the Surf Rider Motion,

other than the request to approve the sale to the former buyer at the sale price of $375,000. That portion of the Surf Rider Motion is **DENIED**.

## II.     LEGAL STANDARD

"[I]t is a recognized principle of law that the district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership." *SEC v. Lincoln Thrift Ass'n*, 577 F.2d 600, 606 (9th Cir. 1978). Where a district court sits in equity, "[u]nless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied. 'The great principles of equity, securing complete justice, should not be yielded to light inferences, or doubtful construction.'" *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946).

"[A] district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad." *Hardy*, 803 F.2d at 1037. As part of this broad discretion, the district court sitting in equity and having custody and control of property "has power to order a sale of the same in its discretion. The power of sale necessarily follows the power to take control of and to preserve property[.]" *SEC v. Am. Capital Investments, Inc.*, 98 F.3d 1133, 1144 (9th Cir. 1996), *abrogated on other grounds by Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998) (quoting 2 Ralph E. Clark, Treatise on Law & Practice of Receivers § 482 (3d ed. 1992)). If the court approves an equitable receiver's proposed property sale, the sale "does not . . . purport to convey 'legal' title, but rather 'good,' equitable title enforced by an injunction against suit." *Id.* (citing 2 Clark, Treatise on Law & Practice of Receivers, §§ 342, 344, 482(a), 487, 489, 491).

Pursuant to 28 U.S.C. § 2001(a), realty in the possession of an appointed receiver is subject to a public sale process, "upon such terms and conditions as the court directs." 28 U.S.C. § 2002 further requires that notice be published once a week for at least four weeks prior to the sale in at least one newspaper regularly issued and of general circulation

in the county, state, or judicial district where the realty is located.[2] These safeguards of notice and opportunity to submit overbids help to ensure that the sale is able to fetch the best price possible, which is consistent with the principle that "a primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." *Hardy*, 803 F.2d at 1038. *See also United States v. Grable*, 25 F.3d 298, 303 (6th Cir. 1994) (noting that "the intent of" the requirement in 28 U.S.C. § 2001 that property be sold in the county in which the land is situated is "to bring a better price at the sale").

As for the sale of personal property, 28 U.S.C. § 2004 also lends the Court great discretion in directing sales of personalty, requiring such sales to comply with § 2001 "unless the court orders otherwise." The notice requirement of § 2002 governing realty sales by the receiver does not apply to sales of personalty.[3]

### III. DISCUSSION

**A. Background of the Property and Proposed Sale**

Upon appointment over the receivership, the Receiver reviewed the available financials and determined that the Mission Beach Surf Rider Restaurant should be closed. ECF No. 408-1 at 5. The Receiver consulted with multiple brokers and determined that the net recovery for the receivership estate would be higher if she sold the personal property, liquor license, contracts, and assignment of the lease as a package, as opposed to selling the personalty through licensed auctioneers. *Id.*

---

[2] 28 U.S.C. § 2001 also provides for a private sale process under subsection (b), but the requirements of that subsection are more stringent. The Receiver does not propose a private sale here.

[3] Pursuant to the statutory grant of discretion, under the Court's uniform sale procedures, the requirements of § 2001 have been waived, and the Receiver need not seek Court approval of sales of personal property within the receivership estate. ECF No. 219 at 9.

In preparation for sale of all of the restaurant-related properties included in the receivership estate, the Receiver and her staff interviewed three licensed brokers with experience selling restaurants in San Diego. *Id* at 5. Ultimately, she chose two separate brokers—broker Colliers International for stand-alone concept restaurant-related properties owned by the receivership entities (a leased parking lot also was included in this grouping), and broker Next Wave ("Broker") for the Surf Rider Pizza and Bao Beach restaurant concepts operated at leased and owned property locations. *Id.* at 5-6.

To market the Assets and other restaurant listings within the receivership estate, Broker created individual marketing flyers for each listing and sent them out via email campaigns to a targeted list of over 6,200 restaurant operators, buyers, brokers, and investors. *Id.* at 6. Broker also used websites including CoStar, LoopNet, BizBuySell, and Next Wave Commercial to advertise the listing and distributed press releases to numerous local news publications. *Id.* Additionally, Broker hosted due diligence packages for each property online and prepared an offering memorandum that summarized various marketing points about the restaurant properties and detailed the Court sale process. *Id.* A form Purchase and Sale Agreement and Joint Escrow Instructions ("Form PSA") prepared by Receiver and her counsel was provided by Broker to prospective purchasers. *Id.* The Form PSA removes all contingencies and provides for the overbid, public auction, and Court approval process. Prospective purchasers had until the Receiver's "Call for Offers" deadline to complete their due diligence and submit an executed Form PSA. *Id.*

The Call for Offers deadline passed and then only one offer was received, though it was withdrawn as a result of Covid-19 pandemic-related concerns. *Id.* Broker continued to market the Assets for months until eventually Grind and Prosper Hospitality Group LLC offered $375,000 and signed a Form PSA. *Id.* at 7. The Receiver, through counsel, finalized the Form PSA. *Id.*

A complicating factor in this transaction is that all of the assets held by 2163 Abbott Street, LP are subject to a UCC security interest in favor of First Choice Bank as security for an SBA loan. *Id.* The First Choice Bank loan also is secured by a second Deed of Trust

on real property located at 4364 Valle Vista, San Diego ("Valley Vista Property"). *Id.* A balance of approximately $475,000 remains on the First Choice Bank loan. *Id.*

Following negotiations with the Receiver, the tenant at the Valle Vista Property agreed to terminate her lease and vacate the property. *Id.* The Valle Vista Property now is being marketed for sale and, if sold before the sale of the Assets closes, is expected to pay off the First Choice Bank loan in full. *Id.*; ECF No. 408-2 ¶ 9. The Receiver believes this scenario is reasonably likely because the Assets' sale will not close until the California Department of Alcoholic Beverage Control approves the transfer of the liquor license (which is estimated to take three to six months). *Id.* If the Assets sell first, then the receivership estate will recover nothing from this sale, but the net proceeds (anticipated to be approximately $350,000) will pay down the First Choice Bank loan and result in an increased recovery for the estate when the Valle Vista Property eventually sells. ECF No. 408-1 at 7.[4]

In the Surf Rider Motion, the Receiver proposed compliance with the overbid and auction process described in 28 U.S.C. § 2001 by publishing the following notice in the San Diego Union-Tribune once a week for four weeks:

> In the action pending in U.S. District Court for the Southern District of California, Case No. 19-CV-01628-LAB-AHG, Securities and Exchange Commission v. Gina Champion-Cain, et al., notice is hereby given that the court-appointed receiver will conduct a public auction for the Mission Beach Surf Rider restaurant business and personal property located at 3772-3774 Mission Blvd., San Diego, California 92109 in San Diego County, California. Sale is subject to Court confirmation after the auction is held. Minimum bid price is at least $400,000. The auction will take place on September 3, 2020 at 1:30 p.m. in front of the entrance to the United States Courthouse, 221 W. Broadway, San Diego, California. To be allowed to participate in the auction, prospective purchasers must meet certain bid qualification requirements,

---

[4] It appears the Receiver's marketing efforts were successful because on October 14, 2020, the Receiver filed a motion seeking approval of the sale of the Valle Vista Property. ECF No. 478. She intends to use the same auction process for that property and overbids are not due until November 9, 2020. ECF No. 478-1 at 11.

including submitted a signed purchase and sale agreement, an earnest money deposit of $55,000, and proof of funds. All bidders must be qualified by 5:00 p.m. PT on August 31, 2020, by submitting the required materials to the receiver at 501 West Broadway, Suite 290, San Diego, California, 92101.

*Id.* at 12. For those interested in qualifying as bidders, the notice also provided a phone number and email address for the relevant point of contact. *Id.*

As previously noted, the Receiver filed a Notice of Receipt of Qualified Overbid regarding the Surf Rider Motion on September 2, 2020. ECF No. 447. In the notice, the Receiver informed the Court that, after filing the Surf Rider Motion, and in addition to publishing the above notice in the San Diego Union-Tribune as proposed, she posted notice of the motion on the receivership website anireceivership.com and continued to market the property through Broker and notify potential purchasers about the opportunity to submit an overbid by August 31, 2020. *Id.* at 2. As a result, she received two qualified overbids. *Id.*

At the live auction via Zoom, OMG Restaurant Group, LLC, was the winning bidder with a bid of $402,500. ECF No. 454 at 2. The backup bidder, Las Hadas, Inc., bid $400,000. *Id.* at 3. To qualify as overbidders at the auction, both the winning bidder and backup bidder had previously executed Form PSAs, removing all contingencies, and each of them also provided an earnest money deposit. *See id.*, Exs. A, B. Pursuant to §§ 2.2(a) and 14.4 of the Form PSAs, the earnest money deposit is non-refundable to the winning bidder and will only be returned to the backup bidder after the closing for the winning bidder occurs. *Id.* After the auction, on September 2, 2020, both the winning bidder and the backup bidder executed amendments to their respective purchase and sale agreements with the Receiver, which, among other terms, excluded Surf Rider intellectual property from the sale of the Assets. ECF No. 454-1 at 51-53; ECF No. 454-2 at 50-52.

**B. Proposed Procedures and Distribution**

As part of the originally anticipated sale to Grind and Prosper Hospitality Group LLC for $375,000, the Receiver intended to pay Broker's commission, which is 6% of the

sale price because Broker is acting as the sole agent for the transaction. ECF No. 408-1 at 7. The Form PSA signed by the winning bidder, OMG Restaurant Group, LLC, confirms that the winning bidder did not engage a broker in connection with the purchase. ECF No. 454-1 at 23 ¶ 13.1. The Form PSA signed by backup bidder, Las Hadas, Inc., indicates that the backup bidder engaged a broker named Brian Cording, but that Mr. Cording would be paid pursuant to a separate agreement he has with Broker. ECF No. 454-2 at 22 ¶ 13.1. The Receiver estimates that costs of sale will be approximately $1,875. ECF No. 408-1 at 7.

In light of the higher winning bid ($402,500) and backup bid ($400,000), compared to the formerly agreed-upon purchase price of $375,000, the Court assumes an adjusted Broker's fee in the range of $24,000 to $24,150, and a resultant adjusted estimate of net sale proceeds in the range of $374,000 to $376,500.

### C. Court Approval of the Proposed Procedures and Sale

The Court has reviewed the documents submitted by the Receiver in support of the Surf Rider Motion, as well as the Notice of Results and request to approve the sale to the winning bidder, or to the backup bidder if the winning bidder does not close the sale for any reason. The Court finds that both the winning bid and the backup bid are fair, reasonable, and will represent a decent return of proceeds to the receivership estate.

In particular, the Court notes with approval the Receiver's prudent decision to seek advice from multiple brokers about the best way to maximize the estate's recovery before opting to offer the personal property, liquor license, and lease assignment as a package. The Receiver had authority to simply sell the personal property through licensed auctioneers, which may have been the simpler route, though likely not the path to greatest recovery. Instead, by bundling the Assets, Broker was able to broadly market and advertise them, along with other restaurant properties and assets from the receivership, to a targeted audience. The Receiver reports that Broker's advertising on multiple websites produced over 150,000 ad views, and that press releases about the Next Wave-brokered restaurant properties were placed in the San Diego Union-Tribune, San Diego Business Journal, Eater San Diego, and elsewhere. ECF No. 408-1 at 6. In light of these efforts, and the fact that

Next Wave is the only broker on the deal, the Court finds Broker's 6% commission—which is within the range of industry standards—reasonable.

Although the current COVID-19 pandemic resulted in the withdrawal of the initial offer, the Court recognizes the difficulty involved in securing fruitful offers for restaurant locations during a time when indoor dining operations have intermittently been forbidden. Nonetheless, the Receiver continued to market the property for another five months, confirming she would not give up on securing the best return for the Assets. She also concurrently worked on negotiating with the Valle Vista Property tenant in order to facilitate sale of that property. By preparing that property for sale, the Receiver has maximized the likelihood of paying off the First Choice Bank loan in full and, thus, clearing the receivership estate of another debt.

Moreover, the Receiver's publication of notice seeking qualified overbids in the San Diego Union-Tribune (even though she was not required to utilize this procedure for personal property), in addition to the solicitation of overbids through the receivership website and continued efforts to market the property, establish that the Receiver put forth her best efforts to ensure the highest price is obtained for property within the receivership estate. The Court is convinced that the carrying out of the notice and auction process alone suffices to show that the Receiver has secured the best and highest price for the Assets, whether the sale closes with either the winning bidder or the backup bidder. The Court is thus satisfied that the intent of the statutory scheme has been fulfilled.

Based on these considerations, and noting the lack of any opposition to the Surf Rider Motion, the Court finds the Receiver has established that the proposed sale of the Assets and proposed distribution of the sale proceeds, whether the sale closes with the winning bidder or the backup bidder, are consistent with principles of equity and the goal of a receivership to ensure the orderly and efficient administration of the estate for the benefit of creditors. *See Hardy*, 803 F.2d at 1038.

///

///

## IV.  CONCLUSION

Having considered the Receiver's Motion for Approval of Sale of Personal Property, Liquor License, and Assignment of Commercial Lease Associated with Mission Beach Surf Rider Restaurant (ECF No. 408) and the Receiver's Notice of Results of Auction for Sale of Personal Property, Liquor License, and Assignment of Commercial Lease Associated with Mission Beach Surf Rider Restaurant and Request to Approve Sale to Winning Bidder (ECF No. 454), the Court **GRANTS IN PART** and **DENIES IN PART** the Surf Rider Motion (ECF No. 408). Specifically, the Court **GRANTS** all relief requested therein, other than the approval of the sale to the former intended buyer at the former purchase price. That portion of the Surf Rider Motion is **DENIED**. The Court **GRANTS** the Receiver's request to approve the sale of the Assets to the winning bidder at the winning bid price of $402,500. If the winning bidder does not close the sale for any reason, the Court further **APPROVES** the sale of the Assets to the backup bidder at the sale price of $400,000.

Accordingly, it is **ORDERED** as follows:

(1)  The sale of the Assets associated with the former Mission Beach Surf Rider Restaurant, which leased the premises located at 3772-3774 Mission Boulevard, San Diego, CA, as described in Exhibit A to the Receiver's Notice of Results[5] (ECF No. 454), by Krista L. Freitag, as receiver, to OMG Restaurant Group, LLC ("Winning Bidder") is confirmed and approved;

(2)  The purchase price of $402,500, to be paid by Winning Bidder for the Assets, is confirmed and approved;

---

[5] The Court notes again that this is the same property described on the Preliminary Real Estate and Liquor License Asset Schedule and in the liquor license granted by the California Department of Alcoholic Beverage Control as being located at 3770 Mission Boulevard, San Diego, California.

(3) ***If and only if the Winning Bidder does not close the sale for any reason***, the sale of the Assets associated with the former Mission Beach Surf Rider Restaurant, which leased the premises located at 3772-3774 Mission Boulevard, San Diego, CA, as described in Exhibit B to the Receiver's Notice of Results (ECF No. 454), by Krista L. Freitag, as receiver, to Las Hadas, Inc. ("Backup Bidder"), at a purchase price of $400,000, is confirmed and approved;

(4) The Receiver is authorized to pay broker Next Wave a commission of up to 6% of the sale price, or $24,150, according to the terms of their agreement;

(5) The Receiver is authorized to pay the costs of sale due from the seller at closing, which amount is estimated to be $1,875 (with the exact amount to be determined at closing);

(6) The Receiver is authorized to pay First Choice Bank the remaining net profits in order to pay down the loan, if the sale of the Assets closes before the sale of the Valle Vista Property;

(7) If the Valle Vista Property closes first and the Receiver is able to pay off the First Choice Bank loan in full from the profits of that sale, then the net sale proceeds of the Assets's sale, which are estimated to be in the range of $374,000 to $376,500 (with the exact amount to be determined at closing), shall be paid to the receivership estate;[6] and

(8) The Receiver is immediately authorized to complete the sale transaction, including executing any and all documents as may be necessary and appropriate to do so.

(9) If the sale of the Assets ultimately closes with the Backup Bidder, the Receiver is authorized to complete the sale transaction with the Backup Bidder, including executing any and all documents as may be necessary and appropriate to do so.

---

[6] Because the Court understands that numerous contingencies (e.g., whether the sale closes with the Winning Bidder or the Backup Bidder, etc.) may affect the net sale proceeds of this particular sale, the Court approves the distribution of the net sale proceeds to the receivership estate even if the final amount is outside of this range.

(10) After closing, the Receiver shall provide a full accounting of sale costs, the precise amount, if any, used to pay off the loan to First Choice Bank, and the amount, if any, ultimately returned to the receivership estate from the sale proceeds.

**IT IS SO ORDERED.**

Dated: October 23, 2020

_____
Honorable Allison H. Goddard
United States Magistrate Judge