UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>GINA CHAMPION-CAIN AND ANI DEVELOPMENT, LLC,<br><br>　　　　　　　　　Defendants, and<br><br>AMERICAN NATIONAL INVESTMENTS, INC.,<br><br>　　　　　　　　　Relief Defendant. | Case No.: 3:19-cv-1628-LAB-AHG<br><br>**ORDER GRANTING MOTION FOR APPROVAL OF SALE OF PERSONAL PROPERTY, LIQUOR LICENSE, AND ASSIGNMENT OF COMMERCIAL LEASE ASSOCIATED WITH THE OCEAN BEACH SURF RIDER RESTAURANT**<br><br>[ECF No. 462] |

**I.    BACKGROUND**

As described in prior orders, *see, e.g.*, ECF Nos. 54, 162, 163, this is an action brought by the Securities and Exchange Commission ("SEC") against Defendants ANI Development, LLC ("ANI Development") and Gina Champion-Cain and Relief Defendant American National Investments, Inc. ("ANI Inc."), alleging violations of federal securities laws based on a purportedly fraudulent liquor license loan scheme. ECF No. 1.

1

On September 3, 2019, the Court established an equitable receivership and appointed Krista L. Freitag ("Receiver") as the receiver of ANI Development and ANI Inc., authorizing her to take control over all funds and assets owned, managed, or in the possession or control of the receivership entities. *See* ECF No. 6 at 14-16. In that role, the Receiver acts under the control and direction of the Court to facilitate the "orderly and efficient administration of the estate . . . for the benefit of creditors." *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986). *See also Atl. Tr. Co. v. Chapman*, 208 U.S. 360, 370 (1908) (explaining that a motion to appoint a receiver to take charge of property is "to the end that the property might be cared for and preserved for all who had or might have an interest in the proceeds of its sale. . . . Immediately upon such appointment and after the qualification of the receiver, the property [within the equitable receivership] passed into the custody of the law, and thenceforward its administration was wholly under the control of the court by its officer [], the receiver.").

On December 11, 2019, the presiding judge in this action, Chief Judge Burns, granted the parties' Joint Motion (ECF No. 156) to give limited consent to the undersigned to hear and directly decide all motions filed in this action to approve sales of receivership assets. ECF No. 160. *See also* 28 U.S.C. § 636(c); CivLR 72.1(g). All property sale motions are set before the undersigned pursuant to that grant of consent.

The Receiver filed the Motion for Approval of Sale of Personal Property, Liquor License, and Assignment of Commercial Lease Associated with the Ocean Beach Surf Rider Restaurant ("Surf Rider Motion") on September 17, 2020, seeking court approval of the sale of assets associated with the Ocean Beach Surf Rider Restaurant, which leases the premises located at 2163 Abbott Street, San Diego, CA. ECF No. 462-1 at 5; *see also* ECF No. 76-2 at 8-9 (listing "Surf Rider Pizza – Ocean Beach" in the Preliminary Real Estate and Liquor License Asset Schedule filed on October 3, 2019). The assets are owned by 2163 Abbott Street, LP, an affiliated receivership entity, and "include personal property (furniture, fixtures, and equipment), a liquor license, contracts, and a leasehold interest in the restaurant premises ("Assets")." ECF No. 462-1 at 5; *see also* ECF No. 6 at 5 (the

Court's Appointment Order, listing 2163 Abbott Street, LP as an entity subject to the equitable receivership). Though the Receiver is authorized to sell personal property without prior court approval (*see* ECF No. 219 at 9), the Receiver concluded that the net recovery for the receivership estate would be greater if the Assets were sold as a package. ECF No. 462-1 at 5; ECF No. 462-2, Freitag Decl., ¶ 3.

On September 21, 2020, the Court entered an order setting a briefing schedule and an October 26, 2020 hearing on the Surf Rider Motion. ECF No. 465. The Court set a deadline of October 5, 2020 for responses in opposition to the motion and noted that "[i]f no opposition is filed by the deadline, and the overbid submission deadline has passed with no overbids, the Court may take the motion under submission without oral argument." *Id.* at 2. No opposition was filed. Further, bid qualifications from prospective bidders seeking to submit overbids pursuant to the notice and auction process set forth in 28 U.S.C. §§ 2001 and 2002 (described in more detail below) were due by October 12, 2020. *See* ECF No. 462-1 at 12. The Receiver filed a Notice of Non-Receipt of Qualified Overbids regarding the Surf Rider Motion on October 13, 2020. ECF No. 475. Accordingly, the Court took the motion under submission on the papers on October 21, 2020. ECF No. 485.

For the reasons explained more fully below, the Court **GRANTS** the Surf Rider Motion.

## II.    LEGAL STANDARD

"[I]t is a recognized principle of law that the district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership." *SEC v. Lincoln Thrift Ass'n*, 577 F.2d 600, 606 (9th Cir. 1978). Where a district court sits in equity, "[u]nless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied. 'The great principles of equity, securing complete justice, should not be yielded to light inferences, or doubtful construction.'" *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946).

///

"[A] district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad." *Hardy*, 803 F.2d at 1037. As part of this broad discretion, the district court sitting in equity and having custody and control of property "has power to order a sale of the same in its discretion. The power of sale necessarily follows the power to take control of and to preserve property[.]" *SEC v. Am. Capital Investments, Inc.*, 98 F.3d 1133, 1144 (9th Cir. 1996), *abrogated on other grounds by Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998) (quoting 2 Ralph E. Clark, Treatise on Law & Practice of Receivers § 482 (3d ed. 1992)). If the court approves an equitable receiver's proposed property sale, the sale "does not . . . purport to convey 'legal' title, but rather 'good,' equitable title enforced by an injunction against suit." *Id.* (citing 2 Clark, Treatise on Law & Practice of Receivers, §§ 342, 344, 482(a), 487, 489, 491).

Pursuant to 28 U.S.C. § 2001(a), realty in the possession of an appointed receiver is subject to a public sale process, "upon such terms and conditions as the court directs." 28 U.S.C. § 2002 further requires that notice be published once a week for at least four weeks prior to the sale in at least one newspaper regularly issued and of general circulation in the county, state, or judicial district where the realty is located.[1] These safeguards of notice and opportunity to submit overbids help to ensure that the sale is able to fetch the best price possible, which is consistent with the principle that "a primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." *Hardy*, 803 F.2d at 1038. *See also United States v. Grable*, 25 F.3d 298, 303 (6th Cir. 1994) (noting that "the intent of" the requirement in 28

---

[1] 28 U.S.C. § 2001 also provides for a private sale process under subsection (b), but the requirements of that subsection are more stringent. The Receiver does not propose a private sale here.

U.S.C. § 2001 that property be sold in the county in which the land is situated is "to bring a better price at the sale").

As for the sale of personal property, 28 U.S.C. § 2004 also lends the Court great discretion in directing sales of personalty, requiring such sales to comply with § 2001 "unless the court orders otherwise." The notice requirement of § 2002 governing realty sales by the receiver does not apply to sales of personalty.[2]

**III.   DISCUSSION**

**A. Background of the Property and Proposed Sale**

Upon appointment over the receivership, the Receiver reviewed the available financials and determined that the Ocean Beach Surf Rider Restaurant should continue to operate (with operational guidance from the Cohn Restaurant Group). ECF No. 462-1 at 5. The Receiver consulted with multiple brokers and determined that the net recovery for the receivership estate would be higher if she sold the personal property, liquor license, contracts, and assignment of the lease as a package, as opposed to selling the personalty through licensed auctioneers. *Id.*

In preparation for sale of all of the restaurant-related properties included in the receivership estate, the Receiver and her staff interviewed three licensed brokers with experience selling restaurants in San Diego. *Id* at 5. Ultimately, she chose two separate brokers—broker Colliers International for stand-alone concept restaurant-related properties owned by the receivership entities (a leased parking lot also was included in this grouping), and broker Next Wave ("Broker") for the Surf Rider Pizza and Bao Beach restaurant concepts operated at leased and owned property locations. *Id.* at 5-6.

To market the Assets and other restaurant listings within the receivership estate, Broker created individual marketing flyers for each listing and sent them out via email

---

[2] Pursuant to the statutory grant of discretion, under the Court's uniform sale procedures, the requirements of § 2001 have been waived, and the Receiver need not seek Court approval of sales of personal property within the receivership estate. ECF No. 219 at 9.

campaigns to a targeted list of over 6,200 restaurant operators, buyers, brokers, and investors. *Id.* at 6. Broker also used websites including CoStar, LoopNet, BizBuySell, and Next Wave Commercial to advertise the listing and distributed press releases to numerous local news publications. *Id.* Additionally, Broker hosted due diligence packages for each property online and prepared an offering memorandum that summarized various marketing points about the restaurant properties and detailed the Court sale process. *Id.* A form Purchase and Sale Agreement and Joint Escrow Instructions ("Form PSA") prepared by Receiver and her counsel was provided by Broker to prospective purchasers. *Id.* The Form PSA removes all contingencies and provides for the overbid, public auction, and Court approval process. Prospective purchasers had until the Receiver's "Call for Offers" deadline to complete their due diligence and submit an executed Form PSA. *Id.*

Three offers were received by the Call for Offers deadline, but all were subsequently withdrawn—likely as a result of Covid-19 pandemic-related concerns. *Id.* at 7. Broker continued to market the Assets without a specific deadline until eventually G Boys Holdings LLC ("Buyer") offered $85,000 and signed a Form PSA. *Id.* The Receiver, through counsel, finalized the Form PSA. *Id.*

In the Surf Rider Motion, the Receiver proposed compliance with the overbid and auction process described in 28 U.S.C. §§ 2001 and 2002 by publishing the following notice in the San Diego Union-Tribune once a week for four weeks:

> In the action pending in U.S. District Court for the Southern District of California, Case No. 19-CV-01628-LAB-AHG, Securities and Exchange Commission v. Gina Champion-Cain, et al., notice is hereby given that the court-appointed receiver will conduct a public auction for the Ocean Beach Surf Rider restaurant business and personal property located at 2163 Abbott Street, San Diego, California 92107 in San Diego County, California. Sale is subject to Court confirmation after the auction is held. Minimum bid price is at least $95,000. The auction will take place on October 19, 2020 at 1:30 p.m. in front of the entrance to the United States Courthouse, 221 W. Broadway, San Diego, California. To be allowed to participate in the auction, prospective purchasers must meet certain bid qualification requirements, including submitted a signed purchase and sale agreement, an earnest money deposit of $16,500, and proof of funds. All bidders must be qualified by 5:00 p.m. PT

>on October 12, 2020, by submitting the required materials to the receiver at 501 West Broadway, Suite 290, San Diego, California, 92101.

*Id.* at 12. For those interested in qualifying as bidders, the notice also provided a phone number and email address for the relevant point of contact. *Id.*

As previously noted, the Receiver filed a Notice of Non-Receipt of Qualified Overbids regarding the Surf Rider Motion on October 13, 2020. ECF No. 475. In the notice, the Receiver informed the Court that, after filing the Surf Rider Motion, and in addition to publishing the above notice in the San Diego Union-Tribune as proposed, she posted notice of the motion on the receivership website anireceivership.com and continued to market the Assets through Broker and notify potential purchasers about the opportunity to submit an overbid by October 12, 2020. *Id.* at 2. No overbids were submitted by the deadline. *Id.* Therefore, G Boys Holdings LLC remains the intended buyer.

### B. Proposed Procedures and Distribution

The Receiver intends to pay several expenses using the proceeds of the sale of the Assets. Jacmar Foodservice Distribution holds a UCC security interest on the Assets, which the Receiver estimates will cost $27,500 to resolve. ECF No. 462-1 at 7. Broker's commission under the listing agreement is 10% of the sale price, or $8,500. *Id.* Buyer has its own broker, so this amount will be split between the brokers. *Id.* The costs of sale are estimated to be approximately $1,000. *Id.* Based on these estimates, the Receiver anticipates that the net sale proceeds for the receivership estate will be about $48,000, though the sale will not close until the California Department of Alcoholic Beverage Control approves transfer of the liquor license (which is estimated to take from three to six months). *Id.*

### C. Court Approval of the Proposed Procedures and Sale

The Court has reviewed the documents submitted by the Receiver in support of the Surf Rider Motion, including the Form PSA, and finds the purchase price of $85,000 to be fair and reasonable. In particular, the Court notes with approval the Receiver's prudent decision to seek advice from multiple brokers about the best way to maximize the estate's

recovery before opting to offer the personal property, liquor license, and lease assignment as a package. The Receiver had authority to simply sell the personal property through licensed auctioneers, which may have been the simpler route, though likely not the path to greatest recovery. Instead, by bundling the Assets, Broker was able to broadly market and advertise them, along with other restaurant properties and assets from the receivership, to a targeted audience. The Receiver reports that Broker's advertising on multiple websites produced over 150,000 ad views, and that press releases about the Next Wave-brokered restaurant properties were placed in the San Diego Union-Tribune, San Diego Business Journal, Eater San Diego, and elsewhere. *Id.* at 6. In light of these efforts, though it is at the high end of the industry standard range, the Court also finds Broker's 10% commission reasonable, particularly given that it will be split with Buyer's broker.

Although the current COVID-19 pandemic resulted in the withdrawal of three offers, the Court recognizes the difficulty involved in securing fruitful offers for restaurant locations during a time when indoor dining operations intermittently have been forbidden. Nonetheless, the Receiver continued to market the property after the Call for Offers deadline passed, confirming she would not give up on securing the best return for the Assets. She also obtained other valuable concessions in the sale to Buyer, such as sale of the property "as is," removal of all contingencies except Court approval, and making the sale subject to the public notice and auction process of 28 U.S.C. §§ 2001 and 2002 (even though she was not required to utilize this procedure for personal property). *See* ECF No. 462-3 at 18-35. The Court is convinced that the carrying out of the notice and auction process alone suffices to show that the Receiver has secured the best and highest price for the Assets. The Court is thus satisfied that the intent of the statutory scheme has been fulfilled.

Based on these considerations, and noting the lack of any opposition to the Surf Rider Motion, the Court finds the Receiver has established that the proposed sale of the Assets and proposed distribution of the sale proceeds are consistent with principles of

equity and the goal of a receivership to ensure the orderly and efficient administration of the estate for the benefit of creditors. *See Hardy*, 803 F.2d at 1038.

## IV. CONCLUSION

Having considered the Receiver's Motion for Approval of Sale of Personal Property, Liquor License, and Assignment of Commercial Lease Associated with the Ocean Beach Surf Rider Restaurant (ECF No. 462) on its merits and noting that there is no opposition thereto, the Court **GRANTS** the Motion, and **APPROVES** the proposed sale of the Assets associated with the Ocean Beach Surf Rider Restaurant, which leases the premises located at 2163 Abbott Street, San Diego, CA to Buyer G Boys Holdings LLC, as described in the Form PSA attached as Exhibit A to the Declaration of Krista L. Freitag (ECF No. 462-3). The purchase price of $85,000 for the Assets is confirmed and approved.

The Court further **ORDERS** the proceeds of the sale to be distributed from escrow at the close of sale as follows:

(1) The Receiver shall pay lender Jacmar Foodservice Distribution the amount necessary to satisfy the debt secured by its UCC security interest on the Assets, which amount is estimated to be approximately $27,500;

(2) The Receiver is authorized to pay broker Next Wave a commission of up to 10% of the sale price, or $8,500, according to the terms of their agreement;

(3) The Receiver shall pay the seller's share of the costs of sale, which are anticipated to be approximately $1,000 (with the exact amount to be determined at closing); and

(4) The Receiver is immediately authorized to complete the sale transaction, including executing any and all documents as may be necessary and appropriate to do so, with the remaining sale proceeds, after the above-referenced payments have been made from escrow, going to the receivership estate.

///
///
///

(5) After closing, the Receiver shall provide a full accounting of sale costs, the precise amount paid to Jacmar Foodservice Distribution, and the amount ultimately returned to the receivership estate from the sale proceeds.

**IT IS SO ORDERED.**

Dated: October 26, 2020

_____
Honorable Allison H. Goddard
United States Magistrate Judge