UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>GINA CHAMPION-CAIN AND ANI DEVELOPMENT, LLC,<br><br>Defendants, and<br><br>AMERICAN NATIONAL INVESTMENTS, INC.,<br><br>Relief Defendant. | Case No.: 3:19-cv-1628-LAB-AHG<br><br>**ORDER:**<br><br>**(1) GRANTING REQUEST TO APPROVE SALE OF 812 SAN RAFAEL PLACE TO WINNING BIDDER; and**<br><br>**(2) GRANTING IN PART AND DENYING IN PART MOTION FOR APPROVAL OF SALE OF 812 SAN RAFAEL PLACE PROPERTY**<br><br>**[ECF Nos. 473, 505]** |

## I. BACKGROUND

As described in prior orders, *see, e.g.*, ECF Nos. 54, 162, 163, this is an action brought by the Securities and Exchange Commission ("SEC") against Defendants ANI Development, LLC ("ANI Development") and Gina Champion-Cain and Relief Defendant American National Investments, Inc. ("ANI Inc."), alleging violations of federal securities laws based on a purportedly fraudulent liquor license loan scheme. ECF No. 1.

On September 3, 2019, the Court established an equitable receivership and appointed Krista L. Freitag ("Receiver") as the receiver of ANI Development and ANI Inc., authorizing her to take control over all funds and assets owned, managed, or in the possession or control of the receivership entities. *See* ECF No. 6 at 14-16. In that role, the Receiver acts under the control and direction of the Court to facilitate the "orderly and efficient administration of the estate . . . for the benefit of creditors." *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986). *See also Atl. Tr. Co. v. Chapman*, 208 U.S. 360, 370 (1908) (explaining that a motion to appoint a receiver to take charge of property is "to the end that the property might be cared for and preserved for all who had or might have an interest in the proceeds of its sale. . . . Immediately upon such appointment and after the qualification of the receiver, the property [within the equitable receivership] passed into the custody of the law, and thenceforward its administration was wholly under the control of the court by its officer [], the receiver.").

On December 11, 2019, the presiding judge in this action, Chief Judge Burns, granted the parties' Joint Motion (ECF No. 156) to give limited consent to the undersigned to hear and directly decide all motions filed in this action to approve sales of receivership assets. ECF No. 160. *See also* 28 U.S.C. § 636(c); CivLR 72.1(g). All property sale motions are set before the undersigned pursuant to that grant of consent.

The Receiver filed the Motion for Approval of Sale of 812 San Rafael Place Property ("San Rafael Motion") on October 8, 2020. ECF No. 473. The motion concerns one of the real properties within the receivership estate, a single-family residence located at 812 San Rafael Place in the Mission Beach neighborhood of San Diego, California (the "San Rafael Property"). *See* ECF No. 473-1 at 5; ECF No. 76-2 at 3 (listing the San Rafael Property in the Preliminary Real Estate and Liquor License Asset Schedule filed on October 3, 2019).

At the time the motion was filed, the intended buyer of the San Rafael Property was the Carmel Creek LLC and the intended sale price was $1,565,000. ECF No 473-1 at 6. In the motion, the Receiver proposed compliance with 28 U.S.C. §§ 2001 and 2002 by publishing notice in the San Diego Union-Tribune once a week for four weeks of a public

auction for the property on November 6, 2020. *Id.* at 11. Potential bidders were invited to qualify for the auction by submitting a signed purchase and sale agreement, an earnest money deposit of $16,500, and proof of funds by November 2, 2020. *Id.*

The Court set a deadline of October 23, 2020, to file any response in opposition to the San Rafael Motion and ordered the Receiver to file a notice of non-receipt of overbids if no qualified overbids were received by November 2, 2020. ECF No. 474. No opposition to the San Rafael Motion was filed. However, on November 3, 2020, the Receiver filed a Notice of Receipt of Qualified Overbid, reporting that one qualified overbid was received for the San Rafael Property. ECF No. 496. The Receiver, through her broker, obtained the consent of the original buyer and the qualified overbidder to conduct the live auction via videoconference on November 6, 2020. *Id.* at 2.

On November 12, 2020, the Receiver filed a Notice of Results of Auction for Sale of 812 San Rafael Place Property and Request to Approve Sale to Winning Bidder ("Notice of Results"). ECF No. 505. In the Notice of Results, the Receiver requests that the Court approve the sale of the San Rafael Property to the winning bidder, Carmel Creek LLC ("Winning Bidder"), and also approve the sale of the property to the backup bidders, Ahmed and Michele Kira ("Backup Bidders"), in the event Winning Bidder does not close the sale for any reason. *Id.* at 2. Winning Bidder submitted a bid of $1,622,000 for the property, while Backup Bidders submitted the second-highest bid of $1,621,000. *Id.* Other than approval of the sale to Winning Bidder (and Backup Bidders if the sale falls through) at a new sale price, all other relief requested in the San Rafael Motion—including authority to pay the costs of sale from the sale proceeds—remains the same. *Id.* at 3.

Being fully advised and noting the lack of opposition to the San Rafael Motion, the Court **GRANTS** (1) the request to approve the sale of the San Rafael Property to Winning Bidder; (2) the request to approve the sale of the San Rafael Property to Backup Bidders if Winning Bidder does not close the sale for any reason; and (3) all relief requested in the San Rafael Motion, other than the request to approve the sale at the sale price of $1,565,000. That portion of the San Rafael Motion is **DENIED**.

## II. LEGAL STANDARD

"[I]t is a recognized principle of law that the district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership." *SEC v. Lincoln Thrift Ass'n*, 577 F.2d 600, 606 (9th Cir. 1978). Where a district court sits in equity, "[u]nless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied. 'The great principles of equity, securing complete justice, should not be yielded to light inferences, or doubtful construction.'" *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946).

"[A] district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad." *Hardy*, 803 F.2d at 1037. As part of this broad discretion, the district court sitting in equity and having custody and control of property "has power to order a sale of the same in its discretion. The power of sale necessarily follows the power to take control of and to preserve property[.]" *SEC v. Am. Capital Investments, Inc.*, 98 F.3d 1133, 1144 (9th Cir. 1996), *abrogated on other grounds by Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998) (quoting 2 Ralph E. Clark, Treatise on Law & Practice of Receivers § 482 (3d ed. 1992)). If the court approves an equitable receiver's proposed property sale, the sale "does not . . . purport to convey 'legal' title, but rather 'good,' equitable title enforced by an injunction against suit." *Id.* (citing 2 Clark, Treatise on Law & Practice of Receivers, §§ 342, 344, 482(a), 487, 489, 491).

Pursuant to 28 U.S.C. § 2001(a), realty in the possession of an appointed receiver is subject to a public sale process, "upon such terms and conditions as the court directs." 28 U.S.C. § 2002 further requires that notice be published once a week for at least four weeks prior to the sale in at least one newspaper regularly issued and of general circulation

in the county, state, or judicial district where the realty is located.[1] These safeguards of notice and opportunity to submit overbids help to ensure that the sale is able to fetch the best price possible, which is consistent with the principle that "a primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." *Hardy*, 803 F.2d at 1038. *See also United States v. Grable*, 25 F.3d 298, 303 (6th Cir. 1994) (noting that "the intent of" the requirement in 28 U.S.C. § 2001 that property be sold in the county in which the land is situated is "to bring a better price at the sale").

### III.  DISCUSSION

**A. Background of the Property and Proposed Sale**

The San Rafael Property was purchased on September 30, 2013, by San Rafael Place, LLC (an affiliated receivership entity) for $1,290,000. ECF No. 473-1 at 5; *see also* ECF No. 6 at 11 (the Court's Appointment Order, listing San Rafael Place, LLC as an entity subject to the equitable receivership). It is a single-family residence with three bedrooms and three baths that is used as a vacation rental property. ECF No. 473-1 at 5.

Following her appointment, the Receiver and her staff analyzed the value of the San Rafael Property by reviewing automated valuation scores and a survey of market-comparable properties. ECF No. 473-2 ¶ 3. The Receiver consulted with multiple licensed brokers experienced in selling properties in the Mission Beach area. *Id.* She ultimately selected Pacific Pines Real Estate ("Broker") and listed the property for sale at a listing price of $1,699,900. *Id.*

Beginning in January 2020, Broker marketed the San Rafael Property by listing it on the Multiple Listing Service ("MLS") and its website. ECF No. 473-1 at 5. Despite holding multiple open houses and showing the property to any interested parties, no offers

---

[1] 28 U.S.C. § 2001 also provides for a private sale process under subsection (b), but the requirements of that subsection are more stringent. The Receiver does not propose a private sale here.

were made at this price point. *Id.* In the meantime, the Covid-19 pandemic began and Broker was forced to switch to 3D marketing and socially-distanced property tours. *Id.* at 6. Under these circumstances, the Receiver and Broker agreed to periodically reduce the list price. Once it reached the range of $1,499,000 to $1,599,000, they received three offers. *Id.* at 5-6. The Receiver negotiated terms, and ultimately accepted an offer from Carmel Creek LLC ("Buyer") for $1,565,000. *Id.* at 6.

The Receiver and Buyer executed a California Residential Purchase Agreement and Joint Escrow Instructions ("Purchase Agreement"), along with an Addendum making court approval of the sale a condition of closing and providing for the overbid and auction process required by 28 U.S.C. §§ 2001 and 2002. ECF No. 473-3. Buyer paid an initial deposit of $5,000, agreed to deposit an additional $545,000 into escrow, and planned to finance the remainder. *Id.* at 3.

In the San Rafael Motion, the Receiver proposed compliance with the overbid and auction process mandated by 28 U.S.C. §§ 2001 and 2002 by publishing the following notice in the San Diego Union-Tribune once a week for four weeks:

> In the action pending in U.S. District Court for the Southern District of California, Case No. 19-CV-01628-LAB-AHG, Securities and Exchange Commission v. Gina Champion-Cain, et al., notice is hereby given that the court-appointed receiver will conduct a public auction for the real property located at 812 San Rafael Place in San Diego County, California. Sale is subject to Court confirmation after the auction is held. Minimum bid price is at least $1,590,000. The auction will take place on November 6, 2020 at 1:30 p.m. in front of the entrance to the United States Courthouse, 221 W. Broadway, San Diego, California or as otherwise determined by the Court. To be allowed to participate in the auction, prospective purchasers must meet certain bid qualification requirements, including submitted a signed purchase and sale agreement, an earnest money deposit of $16,500, and proof of funds. All bidders must be qualified by 5:00 p.m. PT on November 2, 2020, by submitting the required materials to the receiver at 501 West Broadway, Suite 290, San Diego, California, 92101.

ECF No. 473-1 at 11. For those interested in qualifying as bidders, the notice also provided a phone number and email address for the relevant point of contact. *Id.*

As previously noted, the Receiver filed a Notice of Receipt of Qualified Overbid Regarding the San Rafael Motion on November 3, 2020. ECF No. 496. In the notice, the Receiver informed the Court that, after filing the San Rafael Motion, and in addition to publishing the above notice in the San Diego Union-Tribune, she posted notice of the motion on the receivership website (anireceivership.com) and continued to market the property through Broker and notify potential purchasers about the opportunity to submit an overbid. *Id.* at 2. As a result, she received a qualified overbid. *Id.*

At the live auction via Zoom, Carmel Creek LLC was the winning bidder with a bid of $1,622,000. ECF No. 505 at 2. Backup Bidders, Ahmed and Michele Kira, bid $1,621,000. *Id.* To qualify as overbidders at the auction, both Winning Bidder and Backup Bidders previously had executed form purchase and sale agreements, removing all contingencies, and each of them also provided an earnest money deposit. *See* ECF Nos. 505, Exs. A, B. Both bidders also signed addendums to their purchase agreements acknowledging that the earnest money deposit is non-refundable to the winning bidder and only will be returned to the backup bidder after the closing for the winning bidder occurs. ECF No. 505-1 at 18, ECF No. 505-2 at 14-15. After the auction, both Winning Bidder and Backup Bidders executed amendments to their respective purchase and sale agreements with the Receiver, which, among other terms, amended the purchase price to correspond with their bids. ECF No. 505-1 at 24-27, ECF No. 505-2 at 18-20.

**B. Proposed Procedures and Distribution**

At the time the Receiver filed the San Rafael Motion, the San Rafael Property was subject to a loan with Axos Bank. ECF No. 473-1 at 6. The property was one of seven properties in the receivership estate that were encumbered by a deed of trust in favor of Axos Bank at the time the receivership was established (the "Axos portfolio loan"). *Id.*; *see also* ECF No. 319 at 6 (discussing the Axos portfolio loan with regard to the sale of one of the other seven properties). However, when the 737 Windemere Court Property sale closed recently, the proceeds paid off the Axos portfolio loan in full. ECF No. 505 at 3 n.1.

As a result, no proceeds from the sale of the San Rafael Property need be directed to paying off the loan. *Id.*

With no loan payment due, the bulk of the proceeds of the property sale will go to the receivership estate. The Receive estimates that, if the sale closes in December (after December 10, 2020), less than one thousand dollars of property taxes will be credited to the seller at closing. ECF No. 473-1 at 6. The costs of sale including escrow, title, and recording fees will be approximately $7,825[2] and the commission due to Broker is $51,125 ($39,125 of which will be paid to Buyer's broker, Keller Williams Realty).[3] *Id.* at 6; ECF No. 505-1 at 12.

Based on these costs and estimates, the Receiver originally expected that the net sale proceeds for the receivership estate would be approximately $1,506,000. ECF No. 473-1 at 6. In light of the substantially higher winning bid ($1,622,000) and backup bid ($1,621,000), compared to the formerly agreed-upon purchase price of $1,565,000, the Court anticipates that the adjusted estimate of net sale proceeds for the receivership estate will be in the range of $1,561,000 to $1,563,000.

**C. Court Approval of the Proposed Procedures and Sale**

The Court has reviewed the documents submitted by the Receiver in support of the San Rafael Motion, as well as the Notice of Results and request to approve the sale to Winning Bidder or to Backup Bidders if Winning Bidder does not close the sale for any

---

[2] In the amended proposed order recently lodged with Chambers, the Receiver now estimates this amount to be $8,110.

[3] These amounts are listed in the San Rafael Motion as flat rates (as opposed to a percentage of the sale price) and there is no indication in the Notice of Results that the amounts changed with the increase in sales price. Additionally, Carmel Creek LLC used a different relator than Backup Bidders and it is not clear from the briefing before the Court if the same distribution would apply, should the sale ultimately close with Backup Bidders. *See* ECF No. 505-1 at 12-13 (listing Keller Williams Realty as the broker for winning bidder Carmel Creek LLC), ECF No. 505-2 at 11 (listing Prestige Properties Enterprises, Inc. as the broker for backup bidders Ahmed and Michele Kira).

reason. The Court finds that both the winning bid and the backup bid are fair and reasonable. Though the Receiver had to lower the initial list price, the winning sale price exceeds the September 2013 purchase price of the property by $332,000. And, Broker persevered through the negative impacts of a global pandemic on hospitality properties, marketing the property for ten months and ultimately receiving three offers. Assuming Broker's commission (to be shared with Buyer's broker) remains $51,125, it is only about 3.2% of Winning Bidder's sale price, which is within the lower range of industry standards. The Receiver also obtained other valuable concessions from both Winning Bidder and Backup Bidders, such as sale of the property "as is," removal of all contingencies except Court approval, and making the sale subject to the requisite public notice and auction process of 28 U.S.C. §§ 2001 and 2002. *See* ECF No. 505-1 at 15-20; ECF No. 505-2 at 12-17. Moreover, with the Axos portfolio loan fully paid off, the anticipated return to the receivership estate is substantial.

As for the procedures followed, the Court finds that all of its uniform property sale procedures have been satisfied. *See* ECF No. 219. The Receiver's publication of notice seeking qualified overbids in the San Diego Union Tribune, in addition to the solicitation of overbids through the receivership website and continued efforts to market the property, establish that the Receiver fully satisfied the requirements for the public sale procedures set forth in 28 U.S.C. §§ 2001(a) and 2002, which are designed to ensure the best price for real property is obtained. The Court is convinced that the carrying out of the notice and auction process alone suffices to show that the Receiver has secured the best and highest price for the San Rafael Property, whether the sale closes either with the winning or backup bidders. The Court thus is satisfied that the intent of the statutory scheme—to ensure that the best and highest possible price is paid for property within the receivership estate—has been fulfilled.

Based on these considerations, and noting the lack of any opposition to the San Rafael Motion, the Court finds the Receiver has established that the proposed sale of the San Rafael Property and proposed distribution of the sale proceeds, whether the sale closes

with Winning Bidder or Backup Bidders, are consistent with principles of equity and the goal of a receivership to ensure the orderly and efficient administration of the estate for the benefit of creditors. *See Hardy*, 803 F.2d at 1038.

## IV.  CONCLUSION

Having considered the Receiver's Motion for Approval of Sale of 812 San Rafael Place Property (ECF No. 473) and the Receiver's Notice of Results of Auction for Sale of 812 San Rafael Place Property and Request to Approve Sale to Winning Bidder (ECF No. 505), the Court **GRANTS IN PART** and **DENIES IN PART** the San Rafael Motion (ECF No. 473). Specifically, the Court **GRANTS** all relief requested therein, other than approval of the sale to Buyer at the former purchase price. That portion of the San Rafael Motion is **DENIED**. The Court **GRANTS** the Receiver's request to approve the sale of the San Rafael Property to Winning Bidder at the winning bid price of $1,622,000. If Winning Bidder does not close the sale for any reason, the Court further **APPROVES** the sale of the San Rafael Property to Backup Bidders at the sale price of $1,621,000.

Accordingly, it is **ORDERED** as follows:

(1)   The sale of the single-family residence located at 812 San Rafael Place in the Mission Beach neighborhood of San Diego, California, as described in Exhibit A to the Receiver's Notice of Results (ECF No. 505), by Krista L. Freitag, as receiver, to Carmel Creek LLC is confirmed and approved;

(2)   The purchase price of $1,622,000, to be paid by Winning Bidder for the San Rafael Property, is confirmed and approved;

(3)   *If and only if Winning Bidder does not close the sale for any reason*, the sale of the real property located at 812 San Rafael Place in the Mission Beach neighborhood of San Diego, California, as described in Exhibit B to the Receiver's Notice of Results (ECF No. 505), by Krista L. Freitag, as receiver, to Ahmed and Michele Kira, at a purchase price of $1,621,000, is confirmed and approved;

///

///

(4) The Receiver is authorized to pay broker Pacific Pines Real Estate a commission of $51,125 ($39,125 of which will be paid to Winning Bidder's broker, or Backup Bidders' broker, if applicable), as provided for in their separate listing agreement[4];

(5) The Receiver is authorized to pay the property taxes due from the seller at closing, which amount is estimated to zero (with the exact amount to be determined at closing);

(6) The Receiver is authorized to pay the costs of sale, including title, escrow, and recording costs, due from the seller at closing, which amount is estimated to be $8,110 (with the exact amount to be determined at closing);

(7) After the aforementioned estimated amounts are paid out of escrow, the net sale proceeds, which are anticipated to be in the range of $1,561,000 to $1,563,000 (with the exact amount to be determined at closing), shall be paid to the receivership estate;[5] and

(8) The Receiver is immediately authorized to complete the sale transaction, including executing any and all documents as may be necessary and appropriate to do so.

(9) If the sale of the San Rafael Property ultimately closes with Backup Bidders, the Receiver is authorized to complete the sale transaction with Backup Bidders, including executing any and all documents as may be necessary and appropriate to do so.

---

[4] If Receiver and/or Broker and the broker for Winning Bidder negotiated different terms at the winning bid price, or if the sale closes with Backup Bidders and their agent negotiated different terms with Broker and/or the Receiver, the Court authorizes the Receiver to pay Broker the amount separately agreed upon. Under the Court's Uniform Property Sale Procedures, the Receiver may, but is not required to, seek authority to pay the real estate broker's commission from the sale proceeds. ECF No. 219 at 8. Thus, the Receiver already has authority to pay reasonable brokerage commissions and need not separately request modifications to the same.

[5] Because the Court understands that numerous contingencies (e.g., whether the sale closes with Winning Bidder or Backup Bidders, the amount of property taxes owed, etc.) may affect the net sale proceeds of this particular sale, the Court approves the distribution of the net sale proceeds to the receivership estate even if the final amount is outside of this range.

(10) After closing, the Receiver shall provide a full accounting of sale costs, property taxes paid, and the amount ultimately returned to the receivership estate from the sale proceeds.

**IT IS SO ORDERED.**

Dated: November 24, 2020

_____
Honorable Allison H. Goddard
United States Magistrate Judge