UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>GINA CHAMPION-CAIN AND ANI DEVELOPMENT, LLC,<br><br>Defendants, and<br><br><br>AMERICAN NATIONAL INVESTMENTS, INC.,<br><br>Relief Defendant. | Case No.: 3:19-cv-1628-LAB-AHG<br><br>**ORDER GRANTING RECEIVER'S MOTION FOR APPROVAL OF SALE OF YARMOUTH COURT PROPERTY**<br><br>**[ECF Nos. 491]** |

## I.   BACKGROUND

As described in prior orders, *see, e.g.*, ECF Nos. 54, 162, 163, this is an action brought by the Securities and Exchange Commission ("SEC") against Defendants ANI Development, LLC ("ANI Development") and Gina Champion-Cain and Relief Defendant American National Investments, Inc. ("ANI Inc."), alleging violations of federal securities laws based on a purportedly fraudulent liquor license loan scheme. ECF No. 1.

On September 3, 2019, the Court established an equitable receivership and appointed Krista L. Freitag ("Receiver") as the receiver of ANI Development and ANI Inc., authorizing her to take control over all funds and assets owned, managed, or in the possession or control of the receivership entities. *See* ECF No. 6 at 14-16. In that role, the Receiver acts under the control and direction of the Court to facilitate the "orderly and efficient administration of the estate . . . for the benefit of creditors." *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986). *See also Atl. Tr. Co. v. Chapman*, 208 U.S. 360, 370 (1908) (explaining that a motion to appoint a receiver to take charge of property is "to the end that the property might be cared for and preserved for all who had or might have an interest in the proceeds of its sale. . . . Immediately upon such appointment and after the qualification of the receiver, the property [within the equitable receivership] passed into the custody of the law, and thenceforward its administration was wholly under the control of the court by its officer [], the receiver.").

On December 11, 2019, the presiding judge in this action, Chief Judge Burns, granted the parties' Joint Motion (ECF No. 156) to give limited consent to the undersigned to hear and directly decide all motions filed in this action to approve sales of receivership assets. ECF No. 160. *See also* 28 U.S.C. § 636(c); CivLR 72.1(g). All property sale motions are set before the undersigned pursuant to that grant of consent.

The Receiver filed the Motion for Approval of Sale of Yarmouth Court Property ("Yarmouth Court Motion") on October 27, 2020. ECF No. 491. The motion concerns one of the real properties within the receivership estate, a single-family residence located at 750 Yarmouth Court in the Mission Beach neighborhood of San Diego, California (the "Yarmouth Court Property"). *See* ECF No. 491-1 at 5; ECF No. 76-2 at 3 (listing the Yarmouth Court Property in the Preliminary Real Estate and Liquor License Asset Schedule filed on October 3, 2019). The Court set a filing deadline of November 12, 2020, for any oppositions to the motion. ECF No. 474 at 2. No oppositions were filed.

Further, bid qualifications from prospective bidders seeking to submit overbids pursuant to the notice and auction process set forth in 28 U.S.C. §§ 2001 and 2002

(described in more detail below) were due by November 20, 2020. *See* ECF No. 491-1 at 11. The Receiver filed a Notice of Non-Receipt of Qualified Overbids regarding the Yarmouth Court Motion on November 23, 2020. ECF No. 510. The Court then took the motion under submission on the papers. ECF No. 507.

For the reasons explained more fully below, the Court **GRANTS** the Yarmouth Court Motion.

## II.   LEGAL STANDARD

"[I]t is a recognized principle of law that the district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership." *SEC v. Lincoln Thrift Ass'n*, 577 F.2d 600, 606 (9th Cir. 1978). Where a district court sits in equity, "[u]nless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied. 'The great principles of equity, securing complete justice, should not be yielded to light inferences, or doubtful construction.'" *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946).

"[A] district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad." *Hardy*, 803 F.2d at 1037. As part of this broad discretion, the district court sitting in equity and having custody and control of property "has power to order a sale of the same in its discretion. The power of sale necessarily follows the power to take control of and to preserve property[.]" *SEC v. Am. Capital Investments, Inc.*, 98 F.3d 1133, 1144 (9th Cir. 1996), *abrogated on other grounds by Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998) (quoting 2 Ralph E. Clark, Treatise on Law & Practice of Receivers § 482 (3d ed. 1992)). If the court approves an equitable receiver's proposed property sale, the sale "does not . . . purport to convey 'legal' title, but rather 'good,' equitable title enforced by an injunction against suit." *Id.* (citing 2 Clark, Treatise on Law & Practice of Receivers, §§ 342, 344, 482(a), 487, 489, 491).

///

Pursuant to 28 U.S.C. § 2001(a), realty in the possession of an appointed receiver is subject to a public sale process, "upon such terms and conditions as the court directs." 28 U.S.C. § 2002 further requires that notice be published once a week for at least four weeks prior to the sale in at least one newspaper regularly issued and of general circulation in the county, state, or judicial district where the realty is located.[1] These safeguards of notice and opportunity to submit overbids help to ensure that the sale is able to fetch the best price possible, which is consistent with the principle that "a primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." *Hardy*, 803 F.2d at 1038. *See also United States v. Grable*, 25 F.3d 298, 303 (6th Cir. 1994) (noting that "the intent of" the requirement in 28 U.S.C. § 2001 that property be sold in the county in which the land is situated is "to bring a better price at the sale").

### III.    DISCUSSION

#### A. Background of the Property and Proposed Sale

The Yarmouth Court Property was purchased for $1,005,000 on December 5, 2011 by ANI Commercial CA I LLC, and ultimately transferred to Luv Surf Brands, LLC[2]. ECF No. 491-1 at 5. It is a single-family residence with three bedrooms and three baths that is used as a vacation rental property. *Id.*

---

[1] 28 U.S.C. § 2001 also provides for a private sale process under subsection (b), but the requirements of that subsection are more stringent. The Receiver does not propose a private sale here.

[2] The Receiver states in her declaration that Luv Surf Brands, LLC is an affiliated receivership entity (ECF No. 491-2 ¶ 2), but Chief District Judge Burns's order appointing the Receiver does not list this LLC as a receivership entity (the closest named entity is "Luvsurf, LLC") (ECF No. 6 at 4-7). However, the order does expressly state that "750 Yarmouth Ct., San Diego, CA 92109" owned by "Luv Surf Brands, LLC" is a property subject to the receivership. *Id* at 11. Therefore, the Court finds that this property is part of the receivership estate and is subject to sale with court authorization.

Following her appointment, the Receiver and her staff analyzed the value of the Yarmouth Court Property by reviewing automated valuation scores and a survey of market-comparable properties. ECF No. 491-2 ¶ 3. The Receiver consulted with multiple licensed brokers experienced in selling properties in the Mission Beach area. *Id.* She ultimately selected Pacific Pines Real Estate ("Broker") and listed the property for sale at a listing price of $1,599,900. *Id.*

Beginning in January 2020, Broker marketed the Yarmouth Court Property by listing it on the local Multiple Listing Service ("MLS") and its website. ECF No. 491-1 at 5. Despite holding multiple open houses and showing the property to any interested parties, no offers were made at this price point. *Id.* In the meantime, the Covid-19 pandemic began and Broker was forced to switch to 3D marketing and socially-distanced property tours. *Id.* at 6. Under these circumstances, the Receiver and Broker agreed to periodically reduce the list price. Once it reached the list price of $1,399,900, they received two offers. *Id.* at 5-6. The first offer subsequently was withdrawn, so the Receiver negotiated terms with the other prospective buyers. *Id.* at 6. On September 30, 2020, the property went into escrow with Matthew G. Ball and Justine Tideman ("Buyers") for a purchase price of $1,350,000, with a $5,000 credit to Buyers. *Id.*

The Receiver and Buyers executed a California Residential Purchase Agreement and Joint Escrow Instructions ("Purchase Agreement"), along with an Addendum making court approval of the sale a condition of closing and providing for the overbid and auction process required by 28 U.S.C. §§ 2001 and 2002. ECF No. 491-3. Buyers paid an initial deposit of $30,000, agreed to deposit an additional $540,000 into escrow, and planned to finance the remainder. *Id.* at 3.

In the Yarmouth Court Motion, the Receiver proposed compliance with the overbid and auction process mandated by 28 U.S.C. §§ 2001 and 2002 by publishing the following notice in the San Diego Union-Tribune once a week for four weeks:

> In the action pending in U.S. District Court for the Southern District of California, Case No. 19-CV-01628-LAB-AHG, Securities and Exchange

> Commission v. Gina Champion-Cain, et al., notice is hereby given that the court-appointed receiver will conduct a public auction for the real property located at 750 Yarmouth Court in San Diego County, California. Sale is subject to Court confirmation after the auction is held. Minimum bid price is at least $1,365,000. The auction will take place on November 25, 2020 at 1:30 p.m. in front of the entrance to the United States Courthouse, 221 W. Broadway, San Diego, California or as otherwise determined by the Court. To be allowed to participate in the auction, prospective purchasers must meet certain bid qualification requirements, including submitted a signed purchase and sale agreement, an earnest money deposit of $33,000, and proof of funds. All bidders must be qualified by 5:00 p.m. PT on November 20, 2020, by submitting the required materials to the receiver at 501 West Broadway, Suite 290, San Diego, California, 92101.

ECF No. 491-1 at 11. For those interested in qualifying as bidders, the notice also provided a phone number and email address for the relevant point of contact. *Id.*

As previously noted, the Receiver filed a Notice of Non-Receipt of Qualified Overbids regarding the Yarmouth Court Motion on November 23, 2020. ECF No. 510. In the notice, the Receiver informed the Court that, after filing the Yarmouth Court Motion, and in addition to publishing the above notice in the San Diego Union-Tribune, she posted notice of the motion on the receivership website (anireceivership.com) and continued to market the property through Broker and notify potential purchasers about the opportunity to submit an overbid. *Id.* at 2. No overbids were submitted by the deadline. *Id.* Therefore, Matthew G. Ball and Justine Tideman remain the intended Buyers.

**B. Proposed Procedures and Distribution**

At the time the Receiver filed the Yarmouth Court Motion, the Yarmouth Court Property was subject to a loan with Axos Bank. ECF No. 491-1 at 6. The property was one of seven properties in the receivership estate that were encumbered by a deed of trust in favor of Axos Bank at the time the receivership was established (the "Axos portfolio loan"). *Id.*; *see also* ECF No. 319 at 6 (discussing the Axos portfolio loan with regard to the sale of one of the other seven properties). However, when the 737 Windemere Court Property sale closed recently, the proceeds paid off the Axos portfolio loan in full. ECF No. 505 at

3 n.1. As a result, no proceeds from the sale of the Yarmouth Court Property need be directed to paying off the loan. ECF No. 491-1 at 6.

With no loan payment due, the bulk of the proceeds of the property sale will go to the receivership estate. The Receiver estimates that, if the sale closes in December (after December 10, 2020), there will be a small credit to the seller at closing for property taxes. *Id.* The costs of sale including escrow, title, and recording fees will be approximately $6,750 and the commission due to Broker under the listing agreement is $12,000 plus 2.5% of the sale price, or $33,750, which amount will be paid to Buyers' broker. *Id.*

Based on these costs and estimates, the Receiver expects that the net sale proceeds for the receivership estate will be approximately $1,293,000.[3] *Id.* at 6.

**C. Court Approval of the Proposed Procedures and Sale**

The Court has reviewed the documents submitted by the Receiver in support of the Yarmouth Court Motion, including the Purchase Agreement, and finds the purchase price of $1,350,000 to be fair and reasonable. Even taking into account the $5,000 buyer credit, this price exceeds the December 2011 purchase price of the property by $340,000, which is an impressive profit. The Receiver obtained valuable concessions, such as sale of the property "as is with all faults," removal of all contingencies except Court approval, and making the sale subject to the requisite public notice and auction process of 28 U.S.C. §§ 2001 and 2002. *See* ECF No. 491-3 at 13-18. Additionally, the proposed total commission, which is less than 3.5% of the gross sales price and will be divided between Broker and the broker for the Buyers according to their agreement, is within the lower range of industry standards. The Court further finds the Receiver has demonstrated that

---

[3] The Receiver notes that this property was subject to a disputed lien on the title in favor of investor Charles Riharb. ECF No. 491-1 at 7 n.1. However, pursuant to the Order Granting Joint Motion for Approval of Settlement of Charlies Riharb's Disputed Deeds of Trust Recorded Against the 737 Windemere Court and 750 Yarmouth Court Properties, the disputed lien will be removed from the title to the Yarmouth Court Property in exchange for a payment to Mr. Riharb from the receivership estate. ECF No. 483.

Broker adequately marketed and advertised the property to be sure to fetch fair market value for the property. Indeed, Broker persevered through the negative impacts of a global pandemic on hospitality properties and marketed the property for nine months. *See* ECF No. 491-1 at 5-6. Moreover, with the Axos portfolio loan fully paid off, the anticipated return to the receivership estate is substantial.

As for the procedures followed, the Court finds that all of its uniform property sale procedures have been satisfied. *See* ECF No. 219. The Receiver's publication of notice seeking qualified overbids in the San Diego Union-Tribune, in addition to the solicitation of overbids through the receivership website and continued efforts to market the property, establish that the Receiver satisfied the public sale and auction procedures set forth in 28 U.S.C. §§ 2001 and 2002, which are designed to ensure that the best purchase price for realty within the receivership is obtained. Upon review of the factual history and the Purchase Agreement itself, the Court finds that the Receiver negotiated the best deal for the receivership estate and verified Buyers' ability to complete the transaction. Further, the Receiver provided the Court with a detailed breakdown of the proposed distributions from the sale proceeds, as required. The Court thus is satisfied that the intent of the statutory scheme—to ensure that the best and highest possible price is paid for property within the receivership estate—has been fulfilled.

Based on these considerations, and noting the lack of any opposition to the Yarmouth Court Motion, the Court finds the Receiver has established that the proposed sale of the Yarmouth Court Property and proposed distribution of the sale proceeds are consistent with principles of equity and the goal of a receivership to ensure the orderly and efficient administration of the estate for the benefit of creditors. *See Hardy*, 803 F.2d at 1038.

### IV.   CONCLUSION

Having considered the Receiver's Motion for Approval of Sale of Yarmouth Court Property (ECF No. 491) on its merits and noting that there is no opposition thereto, the Court **GRANTS** the Motion and **APPROVES** the proposed sale of the single-family property located at 750 Yarmouth Court, San Diego, California 92109 to Buyers Matthew

G. Ball and Justine Tideman, as described in the Purchase Agreement attached as Exhibit A to the Declaration of the Receiver (ECF No. 491-3). The purchase price of $1,350,000, with a $5,000 buyer credit, for the Yarmouth Court Property is confirmed and approved.

The Court **ORDERS** the proceeds of the sale to be distributed from escrow at the close of sale as follows:

(1) The Receiver shall pay the property taxes due from the seller at closing, if any (with the exact amount to be determined at closing);

(2) The Receiver is authorized to pay broker Pacific Pines Real Estate a commission of $12,000 plus 2.5% of the sale price, or $33,750, which amount will be paid to Buyers' broker in a fashion consistent with the listing agreement and the description in the Yarmouth Court Motion;

(3) The Receiver shall pay the seller's share of the costs of sale, including escrow, title, and recording fees, which are anticipated to be approximately $6,750; and

(4) The Receiver is immediately authorized to complete the sale transaction, including executing any and all documents as may be necessary and appropriate to do so, with the remaining sale proceeds—which are estimated to be approximately $1,293,000[4] (with the exact amount to be determined at closing)—going to the receivership estate.

**IT IS FURTHER ORDERED** that after closing, the Receiver shall provide a full accounting of sale costs, property tax credits received and/or property taxes paid, and the amount ultimately returned to the receivership estate from the sale proceeds.

**IT IS SO ORDERED.**

Dated: December 10, 2020

_____
Honorable Allison H. Goddard
United States Magistrate Judge

---

[4] Because the Court understands that numerous contingencies (e.g., the amount of property taxes owed, etc.) may affect the net sale proceeds of this particular sale, the Court approves the distribution of the net sale proceeds to the receivership estate even if the final amount is outside of this range.