UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>GINA CHAMPION-CAIN AND ANI DEVELOPMENT, LLC,<br><br>　　　　　　　　Defendants, and<br><br>AMERICAN NATIONAL INVESTMENTS, INC.,<br><br>　　　　　　　　Relief Defendant. | Case No.: 3:19-cv-1628-LAB-AHG<br><br>**ORDER GRANTING RECEIVER'S MOTION FOR APPROVAL OF SALE OF 3792 MISSION BLVD. PROPERTY**<br><br>**[ECF No. 509]** |

## I.    BACKGROUND

As described in prior orders, *see, e.g.*, ECF Nos. 54, 162, 163, this is an action brought by the Securities and Exchange Commission ("SEC") against Defendants ANI Development, LLC ("ANI Development") and Gina Champion-Cain and Relief Defendant American National Investments, Inc. ("ANI Inc."), alleging violations of federal securities laws based on a purportedly fraudulent liquor license loan scheme. ECF No. 1.

On September 3, 2019, the Court established an equitable receivership and appointed Krista L. Freitag ("Receiver") as a permanent receiver of ANI Development and ANI Inc., authorizing her to take control over all funds and assets owned, managed, or in the possession or control of the receivership entities. *See* ECF No. 6 at 14-16. In that role, the Receiver acts under the control and direction of the Court to facilitate the "orderly and efficient administration of the estate . . . for the benefit of creditors." *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986). *See also Atl. Tr. Co. v. Chapman*, 208 U.S. 360, 370 (1908) (explaining that a motion to appoint a receiver to take charge of property is "to the end that the property might be cared for and preserved for all who had or might have an interest in the proceeds of its sale. . . . Immediately upon such appointment and after the qualification of the receiver, the property passed into the custody of the law, and thenceforward its administration was wholly under the control of the court by its officer [], the receiver."). On December 11, 2019, the presiding judge in this action, Chief Judge Burns, granted the parties' Joint Motion (ECF No. 156) to give limited consent to the undersigned to hear and directly decide all motions filed in this action to approve sales of receivership assets. ECF No. 160. *See also* 28 U.S.C. § 636(c); CivLR 72.1(g). All property sale motions are set before the undersigned pursuant to that grant of consent.

On November 18, 2020, the Receiver filed the present Motion for Approval of Sale of 3792 Mission Blvd. Property (the "3792 Mission Blvd. Motion"). ECF No. 509. The motion concerns one of the commercial properties within the receivership estate, an office condominium with attached garage located at 3792 Mission Blvd., Suite A, San Diego, California 92109 (the "3792 Mission Blvd. Property"). *See* ECF No. 509-1 at 5; ECF No. 76-2 at 5 (listing the 3792 Mission Blvd. Property in the Preliminary Real Estate and Liquor License Asset Schedule filed on October 3, 2019). The Court set a deadline of December 16, 2020, for responses in opposition to the 3792 Mission Blvd. Motion. ECF No. 502 at 2. No oppositions were filed.

Further, bid qualifications from prospective bidders seeking to submit overbids pursuant to the notice and auction process set forth in 28 U.S.C. §§ 2001 and 2002

(described in more detail below) were due by December 14, 2020. *See* ECF No. 509-1 at 11. The Receiver filed a Notice of Non-Receipt of Qualified Overbids regarding the 3792 Mission Blvd. Motion on December 15, 2020. ECF No. 543. The Court then took the motion under submission on the papers. ECF No. 555.

For the reasons explained more fully below, the Court **GRANTS** the 3792 Mission Blvd. Motion.

## II. LEGAL STANDARD

"[I]t is a recognized principle of law that the district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership." *SEC v. Lincoln Thrift Ass'n*, 577 F.2d 600, 606 (9th Cir. 1978). Where a district court sits in equity, "[u]nless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied. 'The great principles of equity, securing complete justice, should not be yielded to light inferences, or doubtful construction.'" *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946).

"[A] district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad." *Hardy*, 803 F.2d at 1037. As part of this broad discretion, the district court sitting in equity and having custody and control of property "has power to order a sale of the same in its discretion. The power of sale necessarily follows the power to take control of and to preserve property[.]" *SEC v. Am. Capital Investments, Inc.*, 98 F.3d 1133, 1144 (9th Cir. 1996), *abrogated on other grounds by Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998) (quoting 2 Ralph E. Clark, Treatise on Law & Practice of Receivers § 482 (3d ed. 1992)). If the court approves an equitable receiver's proposed property sale, the sale "does not . . . purport to convey 'legal' title, but rather 'good,' equitable title enforced by an injunction against suit." *Id.* (citing 2 Clark, Treatise on Law & Practice of Receivers, §§ 342, 344, 482(a), 487, 489, 491).

Pursuant to 28 U.S.C. § 2001(a), realty in the possession of an appointed receiver is subject to a public sale process, "upon such terms and conditions as the court directs." 28 U.S.C. § 2002 further requires that notice be published once a week for at least four weeks prior to the sale in at least one newspaper regularly issued and of general circulation in the county, state, or judicial district where the realty is located.[1] These safeguards of notice and opportunity to submit overbids help to ensure that the sale is able to fetch the best price possible, which is consistent with the principle that "a primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." *Hardy*, 803 F.2d at 1038. *See also United States v. Grable*, 25 F.3d 298, 303 (6th Cir. 1994) (noting that "the intent of" the requirement in 28 U.S.C. § 2001 that property be sold in the county in which the land is situated is "to bring a better price at the sale").

### III. DISCUSSION

**A. Background of the Property and Proposed Sale**

The 3792 Mission Blvd. Property was purchased on August 26, 2015, by San Jose Parking Lot LLC, an affiliated receivership entity, for $375,000. ECF No. 509-1 at 5; *see also* ECF No. 6 at 11 (the Court's Appointment Order, listing San Jose Parking Lot LLC as an entity subject to the equitable receivership).

Following her appointment, the Receiver and her staff analyzed the value of the 3792 Mission Blvd. Property by reviewing automated valuation scores and a survey of market-comparable properties. ECF No. 509-2 ¶ 3. The Receiver consulted with multiple licensed brokers, selected Compass Realty ("Broker"), and listed the property for sale at a listing price of $450,000. *Id.*

---

[1] 28 U.S.C. § 2001 also provides for a private sale process under subsection (b), but the requirements of that subsection are more stringent. The Receiver does not propose a private sale here.

Beginning in June 2020, Broker marketed the 3792 Mission Blvd. Property by listing it on the local Multiple Listing Service ("MLS") and LoopNet. ECF No. 509-1 at 5. Broker also created marketing flyers with professional photos for use during socially-distanced property tours. *Id.* Additionally, information about the listing was sent to a targeted list of brokers and investors via email. *Id.* Due to a lack of interest, the Receiver and Broker agreed in August 2020 to reduce the list price to $425,000. *Id.* Two offers were received. *Id.* The Receiver negotiated terms with the prospective buyers and, on October 26, 2020, the 3792 Mission Blvd. Property went into escrow with buyer Paul Becker ("Buyer") at a purchase price of $399,000. *Id.* at 5-6.

The Receiver and Buyer executed a California Residential Purchase Agreement and Joint Escrow Instructions ("Purchase Agreement") making court approval of the sale a condition of closing and providing for the overbid and auction process required by 28 U.S.C. §§ 2001 and 2002. ECF No. 509-3. Buyer agreed that the sale would be as-is, removed all contingencies other than Court approval, and deposited $10,000 of earnest money into escrow. *Id.* at 5. The remainder of the purchase price will be paid in cash. ECF No. 509-1 at 7.

### B. Proposed Procedures and Distribution

In the motion seeking approval of the sale, the Receiver proposed compliance with the overbid and auction process mandated by 28 U.S.C. §§ 2001 and 2002 by publishing the following notice in the San Diego Union-Tribune once a week for four weeks:

> In the action pending in U.S. District Court for the Southern District of California, Case No. 19-CV-01628-LAB-AHG, Securities and Exchange Commission v. Gina Champion-Cain, et al., notice is hereby given that the court-appointed receiver will conduct a public auction for the real property located at 3792 Mission Blvd. in San Diego County, California. Sale is subject to Court confirmation after the auction is held. Minimum bid price is at least $409,000. The auction will take place on December 18, 2020 at 1:30 p.m. in front of the entrance to the United States Courthouse, 221 W. Broadway, San Diego, California or as otherwise determined by the Court. To be allowed to participate in the auction, prospective purchasers must meet certain bid qualification requirements, including submitted a signed purchase and sale

>agreement, an earnest money deposit of $11,000, and proof of funds. All bidders must be qualified by 5:00 p.m. PT on December 14, 2020, by submitting the required materials to the receiver at 501 West Broadway, Suite 290, San Diego, California, 92101.

ECF No. 509-1 at 11. For those interested in qualifying as bidders, the notice also provided a phone number and email address for the relevant point of contact. *Id.*

As previously noted, the Receiver filed a Notice of Non-Receipt of Qualified Overbids Regarding the 3792 Mission Blvd. Motion on December 15, 2020. ECF No. 543. In the Notice, the Receiver informed the Court that, after filing the 3792 Mission Blvd. Motion, and in addition to publishing the above notice in the San Diego Union-Tribune as proposed, she posted notice of the Motion on the receivership website (anireceivership.com) and continued to market the property through Broker and notify potential purchasers about the opportunity to submit an overbid by December 14, 2020. *Id.* at 2. No overbids were submitted by the deadline. *Id.* Therefore, Paul Becker remains the intended Buyer.

The 3792 Mission Blvd. Property was one of four properties in the receivership estate encumbered by a deed of trust in favor of Seattle Funding Group (the "SFG loan"). ECF No. 509-1 at 6. With the sale of the Bella Pacific Row and the 7940 University Avenue properties, and the anticipated closing of the Camino Degrazia Property (the sale of which the Court approved on December 11, 2020 (ECF No. 541)), the SFG loan may have been paid off completely.[2] If not, the Court calculates that only about $15 remains due.

---

[2] At the time the Receiver filed the 3792 Mission Blvd. Motion, the sale of the 7940 University Avenue property had not yet closed. ECF No. 509-1 at 6. Given the estimated amount to be paid from the proceeds of that sale to SFG, the Receiver estimated that $11,150 would be left on the loan. *Id.* The 7940 University Avenue property sale subsequently closed and a greater amount than estimated was paid to SFG. *See* ECF No. 536. The Court then received the Receiver's accounting from the Bella Pacific Row sale, which also included a larger than estimated payment to SFG. *See* ECF No. 534. Thus, by the Court's calculations based on the updated figures, approximately $15 remains due to

The Receiver estimates that, if the sale closes in January, only a small amount of property taxes will be owed by the seller.[3] ECF No. 509-1 at 6. The costs of sale including escrow, title, and recording fees will be approximately $2,000 and the commission due to Broker under the listing agreement is 4% of the sale price, or $15,960, which amount will be split with Buyer's broker. *Id.*

Based on these costs and estimates, the Receiver expects that the net sale proceeds for the receivership estate will be in the range of $368,000 to $370,000.[4] *Id.*

### C. Court Approval of Procedures and Proposed Sale

The Court has reviewed the documents submitted by the Receiver in support of the 3792 Mission Blvd. Motion, including the Purchase Agreement, and finds the purchase price of $399,000 to be fair and reasonable. Though the Receiver was unable to obtain her original list price, the sale price is $24,000 more than what the receivership entity paid for the property five years ago. And, given the current lockdown measures and depression of the hospitality market, interest in an office property in a predominantly touristy area likely was reduced from its typical level. Given that Broker marketed the property for two months on multiple platforms and obtained two offers, the Court is satisfied that the Receiver and Broker used their best efforts to obtain the highest recovery for the receivership estate.

---

SFG ($1,100,000 less $414,153 less $303,332 less $382,500). While this amount may be larger as a result of accrued interest, the Court expects this amount will be paid when the Camino Degrazia Property sale closes, thus fully satisfying the debt owed to SFG.

[3] Pursuant to the Order Establishing Uniform Property Sale Procedures, the Receiver is required to provide a specific dollar figure for all proposed distributions from the sale proceeds or explain why a precise calculation cannot be provided. ECF No. 219 at 7. Here, the Receiver does not specify the amount of property taxes likely to be due. However, given that the Receiver always has done so in the past when any appreciable amount is owed, the Court assumes the anticipated amount is *de minimis* and will not require the Receiver to file supplemental briefing.

[4] Factoring in the likelihood that nothing will remain due to SFG, the range would be closer to $380,00 to $382,000.

The Receiver also obtained agreement by Buyer to accept sale of the property "as is with all faults," remove all contingencies except Court approval, and make the sale subject to the requisite public notice and auction process of 28 U.S.C. §§ 2001 and 2002. *See* ECF No. 509-3 at 3, 7-8, 28-30. The proposed total commission of 4% of the gross sales price, to be split by Broker and the broker for the Buyer, is within the low to average range of industry standards and, thus, acceptable to the Court. And, importantly, the sale of the 3792 Mission Blvd. Property allows the receivership estate to pay off the SFG loan in full (if the loan has not already been discharged), which will reduce the ongoing monthly expenses of the receivership estate and thus aid the Receiver in ultimately creating a better return for all creditors.

As for the procedures followed, the Court finds that all of its uniform property sale procedures have been satisfied. *See* ECF No. 219. The Receiver's publication of notice seeking qualified overbids in the San Diego Union-Tribune, in addition to the solicitation of overbids through the receivership website and continued efforts to market the property, establish that the Receiver satisfied the public sale and auction procedures set forth in 28 U.S.C. §§ 2001 and 2002, which are designed to ensure that the best purchase price for realty within the receivership is obtained. Upon review of the factual history and the Purchase Agreement itself, the Court finds that the Receiver negotiated the best deal for the receivership estate and verified Buyer's ability to complete the transaction. Further, the Receiver provided the Court with a detailed breakdown of the proposed distributions from the sale proceeds, as required. The Court thus is satisfied that the intent of the statutory scheme—to ensure that the best and highest possible price is paid for property within the receivership estate—has been fulfilled.

Based on these considerations, and noting in particular the lack of any opposition to the 3792 Mission Blvd. Motion, the Court finds the Receiver has sufficiently established that the proposed sale of the 3792 Mission Blvd. Property and proposed distribution of the sale proceeds are consistent with principles of equity and the goal of a receivership to

ensure the orderly and efficient administration of the estate for the benefit of creditors. *See Hardy*, 803 F.2d at 1038.

## IV.   CONCLUSION

Having considered the Receiver's Motion for Approval of Sale of 3792 Mission Blvd. Property (ECF No. 509) on its merits and noting that there is no opposition thereto, the Court **GRANTS** the Motion, and **APPROVES** the proposed sale of the office condominium located at 3792 Mission Blvd., Suite A, San Diego, California 92109 to Buyer Paul Becker, as described in the Purchase Agreement attached as Exhibit A to the Declaration of the Receiver (ECF No. 509-3). The purchase price of $399,000 for the 3792 Mission Blvd. Property is confirmed and approved.

The Court **ORDERS** the proceeds of the sale to be distributed from escrow at the close of sale as follows:

(1)   The Receiver shall pay lender Seattle Funding Group any remaining amount due on the loan, including accrued interest, which is estimated to be approximately $15 (with the exact amount to be determined at closing);

(2)   The Receiver shall pay the property taxes due from the seller at closing, the amount of which is expected to be small (with the exact amount to be determined at closing);

(3)   The Receiver shall pay broker Compass Realty a commission of $15,960 (4% of the sale price), which amount will be split with Buyer's broker in a fashion consistent with the listing agreement and the description in the 3792 Mission Blvd. Motion;

(4)   The Receiver shall pay the seller's share of the costs of sale, including escrow, title, and recording fees, which are anticipated to be approximately $2,000 (with the exact amount to be determined at closing); and

(5)   The Receiver is immediately authorized to complete the sale transaction, including executing any and all documents as may be necessary and appropriate to do so, with the remaining sale proceeds—which are estimated to be in the range of $380,000 to

$382,000[5] (with the exact amount to be determined at closing)—going to the receivership estate.

**IT IS FURTHER ORDERED** that after closing, the Receiver shall provide a full accounting of sale costs, property tax credits received and/or property taxes paid, the precise amount paid to Seattle Funding Group, and the amount ultimately returned to the receivership estate from the sale proceeds.

**IT IS SO ORDERED.**

Dated: December 23, 2020

_____
Honorable Allison H. Goddard
United States Magistrate Judge

---

[5] Because the Court understands that numerous contingencies (e.g., the interest due on the loans, the amount of property taxes owed, etc.) may affect the net sale proceeds of this particular sale, the Court approves the distribution of the net sale proceeds to the receivership estate even if the final amount is outside of this range.