UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                                    Plaintiff,<br><br>v.<br><br>GINA CHAMPION-CAIN AND ANI DEVELOPMENT, LLC,<br><br>                                Defendants, and<br><br>AMERICAN NATIONAL INVESTMENTS, INC.,<br><br>                                Relief Defendant. | Case No.: 3:19-cv-1628-LAB-AHG<br><br>**ORDER:**<br><br>**(1) GRANTING REQUEST TO APPROVE SALE OF WEST WASHINGTON PROPERTY TO WINNING BIDDER; and**<br><br>**(2) GRANTING IN PART AND DENYING IN PART MOTION FOR APPROVAL OF SALE OF WEST WASHINGTON PROPERTY**<br><br>**[ECF Nos. 520, 559]** |

## I.     BACKGROUND

As described in prior orders, *see, e.g.*, ECF Nos. 54, 162, 163, this is an action brought by the Securities and Exchange Commission ("SEC") against Defendants ANI Development, LLC ("ANI Development") and Gina Champion-Cain and Relief Defendant American National Investments, Inc. ("ANI Inc."), alleging violations of federal securities laws based on a purportedly fraudulent liquor license loan scheme. ECF No. 1.

On September 3, 2019, the Court established an equitable receivership and appointed Krista L. Freitag ("Receiver") as a permanent receiver of ANI Development and ANI Inc., authorizing her to take control over all funds and assets owned, managed, or in the possession or control of the receivership entities. *See* ECF No. 6 at 14-16. In that role, the Receiver acts under the control and direction of the Court to facilitate the "orderly and efficient administration of the estate . . . for the benefit of creditors." *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986). *See also Atl. Tr. Co. v. Chapman*, 208 U.S. 360, 370 (1908) (explaining that a motion to appoint a receiver to take charge of property is "to the end that the property might be cared for and preserved for all who had or might have an interest in the proceeds of its sale. . . . Immediately upon such appointment and after the qualification of the receiver, the property passed into the custody of the law, and thenceforward its administration was wholly under the control of the court by its officer [], the receiver."). On December 11, 2019, the presiding judge in this action, Chief Judge Burns, granted the parties' Joint Motion (ECF No. 156) to give limited consent to the undersigned to hear and directly decide all motions filed in this action to approve sales of receivership assets. ECF No. 160. *See also* 28 U.S.C. § 636(c); CivLR 72.1(g). All property sale motions are set before the undersigned pursuant to that grant of consent.

On December 2, 2020, the Receiver filed the present Motion for Approval of Sale of West Washington Property (the "West Washington Motion"). ECF No. 520. The motion concerns one of the commercial properties within the receivership estate, a retail shopping center located at 901-905 West Washington Street, San Diego, California 92103 (the "West Washington Property"). *See* ECF No. 520-1 at 5; ECF No. 76-2 at 5 (listing the West Washington Property in the Preliminary Real Estate and Liquor License Asset Schedule filed on October 3, 2019)[1]. It consists of three rental units. ECF No. 520-1 at 5.

---

[1] The asset schedule lists the address as "901, 903, 904 W. Washington St., San Diego, CA." ECF No. 76-2 at 5.

2

At the time the motion was filed, the intended buyer of the West Washington Property was Soheil Nakhshab and the intended sale price was $1,650,000. ECF No 520-1 at 6. In the motion, the Receiver proposed compliance with 28 U.S.C. §§ 2001 and 2002 by publishing notice in the San Diego Union-Tribune once a week for four weeks of a public auction for the property on December 28, 2020. *Id.* at 11. Potential bidders were invited to qualify for the auction by submitting a signed purchase and sale agreement, an earnest money deposit of $275,000, and proof of funds by December 21, 2020. *Id.* at 11-12.

The Court set a deadline of December 16, 2020, for responses in opposition to the West Washington Motion and ordered the Receiver to file a notice of non-receipt of overbids if no qualified overbids were received by December 21, 2020. ECF No. 502 at 2. No oppositions were filed. However, on December 22, 2020, the Receiver filed a Notice of Receipt of Qualified Overbid, reporting that one qualified overbid was received for the West Washington Property. ECF No. 554. The Receiver, through her broker, obtained the consent of the original buyer and the qualified overbidder to conduct the live auction via videoconference on December 28, 2020. *Id.* at 2.

On January 4, 2021, the Receiver filed a Notice of Results of Auction of West Washington Property and Request to Approve Sale to Winning Bidder ("Notice of Results"). ECF No. 559. In the Notice of Results, the Receiver requests that the Court approve the sale of the West Washington Property to the winning bidder, Soheil Nakhshab ("Winning Bidder"), and also approve the sale of the property to the backup bidder, Iman I. Mikhail, as Trustee of the Mikhail Family Trust dated September 30, 2002 ("Backup Bidder"), in the event Winning Bidder does not close the sale for any reason. *Id.* at 2. Winning Bidder submitted a bid of $1,910,000 for the property, while Backup Bidder submitted the second-highest bid of $1,900,000. *Id.* at 2-3. Other than approval of the sale to Winning Bidder (and Backup Bidder if the sale falls through) at a new sale price, all other relief requested in the West Washington Motion—including authority to pay the costs of sale from the sale proceeds—remains the same. *Id.* at 3.

Being fully advised and noting the lack of opposition to the West Washington Motion, the Court **GRANTS** (1) the request to approve the sale of the West Washington Property to Winning Bidder; (2) the request to approve the sale of the West Washington Property to Backup Bidder if Winning Bidder does not close the sale for any reason; and (3) all relief requested in the West Washington Motion, other than the request to approve the sale at the sale price of $1,650,000. That portion of the West Washington Motion is **DENIED**.

## II.   LEGAL STANDARD

"[I]t is a recognized principle of law that the district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership." *SEC v. Lincoln Thrift Ass'n*, 577 F.2d 600, 606 (9th Cir. 1978). Where a district court sits in equity, "[u]nless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied. 'The great principles of equity, securing complete justice, should not be yielded to light inferences, or doubtful construction.'" *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946).

"[A] district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad." *Hardy*, 803 F.2d at 1037. As part of this broad discretion, the district court sitting in equity and having custody and control of property "has power to order a sale of the same in its discretion. The power of sale necessarily follows the power to take control of and to preserve property[.]" *SEC v. Am. Capital Investments, Inc.*, 98 F.3d 1133, 1144 (9th Cir. 1996), *abrogated on other grounds by Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998) (quoting 2 Ralph E. Clark, Treatise on Law & Practice of Receivers § 482 (3d ed. 1992)). If the court approves an equitable receiver's proposed property sale, the sale "does not . . . purport to convey 'legal' title, but rather 'good,' equitable title enforced by an injunction against suit." *Id.* (citing 2 Clark, Treatise on Law & Practice of Receivers, §§ 342, 344, 482(a), 487, 489, 491).

Pursuant to 28 U.S.C. § 2001(a), realty in the possession of an appointed receiver is subject to a public sale process, "upon such terms and conditions as the court directs." 28 U.S.C. § 2002 further requires that notice be published once a week for at least four weeks prior to the sale in at least one newspaper regularly issued and of general circulation in the county, state, or judicial district where the realty is located.[2] These safeguards of notice and opportunity to submit overbids help to ensure that the sale is able to fetch the best price possible, which is consistent with the principle that "a primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." *Hardy*, 803 F.2d at 1038. *See also United States v. Grable*, 25 F.3d 298, 303 (6th Cir. 1994) (noting that "the intent of" the requirement in 28 U.S.C. § 2001 that property be sold in the county in which the land is situated is "to bring a better price at the sale").

### III. DISCUSSION

#### A. Background of the Property and Proposed Sale

The West Washington Property was purchased on March 22, 2018, by American National Investments, Inc., a receivership entity, for $2,100,000. ECF No. 520-1 at 5. Following her appointment, the Receiver and her staff analyzed the value of the West Washington Property by reviewing automated valuation scores and a survey of market-comparable properties and by consulting with multiple licensed brokers. ECF No. 520-2 ¶ 3. It was not clear that a sale would yield a recovery sufficient to cover the mortgage debt, so the Receiver obtained an appraisal of the property. *Id.* The appraised value of the West Washington property as of December 31, 2019, was $2.1 million. *Id.*

Thereafter, the Receiver received an unsolicited offer for the appraised value of the property, but the deal fell through when the pandemic began. *Id.* Because the consensus

---

[2] 28 U.S.C. § 2001 also provides for a private sale process under subsection (b), but the requirements of that subsection are more stringent. The Receiver does not propose a private sale here.

among the brokers with whom the Receiver consulted was that the pandemic had negatively impacted the property's value and that sale of the West Washington Property would not yield a recovery for the receivership, the Receiver stipulated to relief from the litigation stay in order to allow the lender, Seattle Funding Group ("SFG"), to foreclose on the property. *Id.* ¶ 4; ECF No. 379.

The Receiver then received an unsolicited offer for an amount that would provide a small recovery for the receivership estate. ECF No. 520-2 ¶ 5. Though this buyer eventually withdrew the offer, Next Wave ("Broker") approached the Receiver with another interested buyer. *Id.* The Receiver agreed to list the property with Broker for $1,650,000 and promptly received two offers at the list price. *Id.* The Receiver negotiated terms with the prospective buyers and, on November 5, 2020, the West Washington Property went into escrow with Buyer Soheil Nakhshab at a purchase price of $1,650,000.[3] *Id.* at 5-6.

The Receiver and Buyer executed a California Residential Purchase Agreement and Joint Escrow Instructions ("Purchase Agreement") making court approval of the sale a condition of closing and providing for the overbid and auction process required by 28 U.S.C. §§ 2001 and 2002. ECF No. 520-3. Buyer agreed that the sale would be as-is, removed all contingencies other than Court approval, and deposited $100,000 of earnest money into escrow. *Id.* at 5. The Purchase Agreement specifies that, after providing written notice of approval during the contingency period, Buyer would deposit an additional $150,000 into escrow. *Id.* The remainder of the purchase price will be paid in cash. ECF No. 520-1 at 7.

///
///
///

---

[3] SFG originally had scheduled a foreclosure sale for November 30, 2020, but agreed to postpone it to February 2021, once the Receiver executed the sale contract with Buyer and Buyer deposited earnest money into escrow. ECF No. 520-2 ¶ 5 n.1.

### B. Proposed Procedures and Distribution

In the motion seeking approval of the sale, the Receiver proposed compliance with the overbid and auction process mandated by 28 U.S.C. §§ 2001 and 2002 by publishing the following notice in the San Diego Union-Tribune once a week for four weeks:

> In the action pending in U.S. District Court for the Southern District of California, Case No. 19-CV-01628-LAB-AHG, Securities and Exchange Commission v. Gina Champion-Cain, et al., notice is hereby given that the court-appointed receiver will conduct a public auction for the real property located at 901-905 West Washington Street in San Diego County, California. Sale is subject to Court confirmation after the auction is held. Minimum bid price is at least $1,660,000. The auction will take place on December 28, 2020 at 1:30 p.m. in front of the entrance to the United States Courthouse, 221 W. Broadway, San Diego, California or as otherwise determined by the Court. To be allowed to participate in the auction, prospective purchasers must meet certain bid qualification requirements, including submitted a signed purchase and sale agreement, an earnest money deposit of $275,000, and proof of funds. All bidders must be qualified by 5:00 p.m. PT on December 21, 2020, by submitting the required materials to the receiver at 501 West Broadway, Suite 290, San Diego, California, 92101.

ECF No. 520-1 at 11-12. For those interested in qualifying as a bidder, the notice also provided a phone number and email address for the relevant point of contact. *Id.* at 12.

As previously noted, the Receiver filed a Notice of Receipt of Qualified Overbid Regarding the West Washington Motion on December 22, 2020. ECF No. 554. In the notice, the Receiver informed the Court that, after filing the West Washington Motion, and in addition to publishing the above notice in the San Diego Union-Tribune, she posted notice of the motion on the receivership website (anireceivership.com) and continued to market the property through Broker and notify potential purchasers about the opportunity to submit an overbid. *Id.* at 2. As a result, she received a qualified overbid. *Id.*

Prior to the live auction via Zoom, Winning Bidder and Backup Bidder were required to qualify as overbidders at the auction by executing form purchase and sale agreements, removing all contingencies, and providing an earnest money deposit. *See* ECF No. 559, Exs. A, B. Both bidders also agreed that the earnest money deposit was non-

7

3:19-cv-1628-LAB-AHG

refundable to the winning bidder and only will be returned to the backup bidder after the closing for the winning bidder occurs. ECF No. 559-1 at 30, ECF No. 559-2 at 28-29. After the auction, both Winning Bidder and Backup Bidder executed amendments to their respective purchase and sale agreements with the Receiver, which, among other terms, amended the purchase price to correspond with their bids. ECF No. 559-1 at 50-52, ECF No. 559-2 at 49-51

The SFG loan has not been paid current, and the Receiver estimates that the payoff amount is approximately $1.442 million. ECF No. 520-1 at 7. Assuming the sale closes in January, the Receiver estimates the property taxes due at closing will be about $32,800. ECF No. 559 at 3 n.1. The costs of sale including escrow, title, and recording fees will be approximately $16,000 and the commission due to Broker under the listing agreement is 3% of the sale price, one third of which will be paid to Buyer's broker. ECF No. 520-1 at 7. Based on these costs and estimates, the Receiver expects that the net sale proceeds for the receivership estate will about $363,000.[4] *Id.*

### C. Court Approval of Procedures and Proposed Sale

The Court has reviewed the documents submitted by the Receiver in support of the West Washington Motion, as well as the Notice of Results and request to approve the sale to Winning Bidder (or to Backup Bidder if Winning Bidder does not close the sale for any reason). The Court finds that both the winning bid and the backup bid are fair and reasonable. Though the sale price is less than the purchase price, the Receiver was able to recoup a significant amount of the loss (in comparison to Buyer's original $1,650,000 offer) by soliciting bidders and holding an auction. And, the Receiver's perseverance saved the property from foreclosure. The Receiver also retained a Broker whose commission is a

---

[4] The Receiver provided this updated amount in an amended proposed order that took into account the winning bid price, the reduction in sales taxes following the Receiver's payment of a portion of the taxes in December 2020, and Broker's adjusted commission (3% of 1,910,000). Depending on whether the sale closes with Winning Bidder or Backup Bidder, the Court anticipates a recovery within the range of $352,000 to $363,000.

very reasonable 3% of Winning Bidder's sale price. In addition, the Receiver obtained other valuable concessions from both Winning Bidder and Backup Bidder, such as sale of the property "as is," removal of all contingencies except Court approval, and making the sale subject to the requisite public notice and auction process of 28 U.S.C. §§ 2001 and 2002.

As for the procedures followed, the Court finds that all of its uniform property sale procedures have been satisfied. *See* ECF No. 219. The Receiver's publication of notice seeking qualified overbids in the San Diego Union Tribune, in addition to the solicitation of overbids through the receivership website and continued efforts to market the property, establish that the Receiver fully satisfied the requirements for the public sale procedures set forth in 28 U.S.C. §§ 2001(a) and 2002, which are designed to ensure the best price for real property is obtained. The Court is convinced that the carrying out of the notice and auction process alone suffices to show that the Receiver has secured the best and highest price for the West Washington Property, whether the sale closes either with the winning or backup bidder. The Court thus is satisfied that the intent of the statutory scheme—to ensure that the best and highest possible price is paid for property within the receivership estate—has been fulfilled.

Based on these considerations, and noting the lack of any opposition to the West Washington Motion, the Court finds the Receiver has established that the proposed sale of the West Washington Property and proposed distribution of the sale proceeds, whether the sale closes with Winning Bidder or Backup Bidder, are consistent with principles of equity and the goal of a receivership to ensure the orderly and efficient administration of the estate for the benefit of creditors. *See Hardy*, 803 F.2d at 1038.

### IV.   CONCLUSION

Having considered the Receiver's Motion for Approval of Sale of West Washington Property (ECF No. 520) and the Receiver's Notice of Results of Auction of West Washington Property and Request to Approve Sale to Winning Bidder (ECF No. 559), the Court **GRANTS IN PART** and **DENIES IN PART** the West Washington Motion (ECF

No. 520). Specifically, the Court **GRANTS** all relief requested therein, other than approval of the sale to Buyer at the former purchase price. That portion of the West Washington Motion is **DENIED**. The Court **GRANTS** the Receiver's request to approve the sale of the West Washington Property to Winning Bidder at the winning bid price of $1,910,000. If Winning Bidder does not close the sale for any reason, the Court further **APPROVES** the sale of the West Washington Property to Backup Bidder at the sale price of $1,900,000.

Accordingly, it is **ORDERED** as follows:

(1) The sale of the retail shopping center located at 901-905 West Washington Street, San Diego, California 92103, as described in Exhibit A to the Receiver's Notice of Results (ECF No. 559), by Krista L. Freitag, as receiver, to Soheil Nakhshab is confirmed and approved;

(2) The purchase price of $1,910,000, to be paid by Winning Bidder for the West Washington Property, is confirmed and approved;

(3) *If and only if Winning Bidder does not close the sale for any reason*, the sale of the retail shopping center located at 901-905 West Washington Street, San Diego, California 92103, as described in Exhibit B to the Receiver's Notice of Results (ECF No. 559), by Krista L. Freitag, as receiver, to Iman I. Mikhail, as Trustee of the Mikhail Family Trust dated September 30, 2002, at a purchase price of $1,900,000, is confirmed and approved;

(4) The Receiver is authorized to pay the amount necessary to pay off the mortgage on the West Washington Property to the lender, Seattle Funding Group, which amount is estimated to be $1,442,000 (with the exact amount to be determined at closing);

(5) The Receiver is authorized to pay broker Next Wave a commission of 3% of the winning bid price or backup bid price (one third of which will be paid to Winning Bidder's broker, or Backup Bidder's broker, if applicable), as provided for in their separate listing agreement;

(6) The Receiver is authorized to pay the property taxes due from the seller at closing, which amount is estimated to $32,800 (with the exact amount to be determined at closing);

(7) The Receiver is authorized to pay the costs of sale, including title, escrow, and recording costs, due from the seller at closing, which amount is estimated to be $16,000 (with the exact amount to be determined at closing);

(8) After the aforementioned estimated amounts are paid out of escrow, the net sale proceeds, which are anticipated to be in the range of $352,000 to $363,000 (with the exact amount to be determined at closing), shall be paid to the receivership estate;[5] and

(9) The Receiver is immediately authorized to complete the sale transaction, including executing any and all documents as may be necessary and appropriate to do so.

(10) If the sale of the West Washington Property ultimately closes with Backup Bidder, the Receiver is authorized to complete the sale transaction with Backup Bidder, including executing any and all documents as may be necessary and appropriate to do so.

(11) After closing, the Receiver shall provide a full accounting of sale costs, property taxes paid, and the amount ultimately returned to the receivership estate from the sale proceeds.

**IT IS SO ORDERED.**

Dated: January 12, 2021

Honorable Allison H. Goddard
United States Magistrate Judge

---

[5] Because the Court understands that numerous contingencies (e.g., whether the sale closes with Winning Bidder or Backup Bidder, the amount of property taxes owed, etc.) may affect the net sale proceeds of this particular sale, the Court approves the distribution of the net sale proceeds to the receivership estate even if the final amount is outside of this range.