1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10
11

SECURITIES AND EXCHANGE
COMMISSION,

Case No.:  3:19-cv-1628-LAB-AHG

12

Plaintiff,

**ORDER:**

13
14

v.

**(1) GRANTING REQUEST TO
APPROVE SALE OF 3816 MISSION
BLVD. PROPERTY TO WINNING
BIDDER; and**

15

GINA CHAMPION-CAIN AND ANI
DEVELOPMENT, LLC,

16

Defendants, and

17
18

AMERICAN NATIONAL
INVESTMENTS, INC.,

**(2) GRANTING IN PART AND
DENYING IN PART MOTION FOR
APPROVAL OF SALE OF 3816
MISSION BLVD. PROPERTY**

19
20

Relief Defendant.

21

**[ECF Nos. 586, 604]**

22
23

**I.    BACKGROUND**

24

As described in prior orders, *see, e.g.*, ECF Nos. 54, 162, 163, this is an action

25

brought by the Securities and Exchange Commission ("SEC") against Defendants ANI

26

Development, LLC ("ANI Development") and Gina Champion-Cain and Relief Defendant

27

American National Investments, Inc. ("ANI Inc."), alleging violations of federal securities

28

laws based on a purportedly fraudulent liquor license loan scheme. ECF No. 1.

1

On September 3, 2019, the Court established an equitable receivership and appointed Krista L. Freitag ("Receiver") as the receiver of ANI Development and ANI Inc., authorizing her to take control over all funds and assets owned, managed, or in the possession or control of the receivership entities. *See* ECF No. 6 at 14-16. In that role, the Receiver acts under the control and direction of the Court to facilitate the "orderly and efficient administration of the estate . . . for the benefit of creditors." *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986). *See also Atl. Tr. Co. v. Chapman*, 208 U.S. 360, 370 (1908) (explaining that a motion to appoint a receiver to take charge of property is "to the end that the property might be cared for and preserved for all who had or might have an interest in the proceeds of its sale. . . . Immediately upon such appointment and after the qualification of the receiver, the property [within the equitable receivership] passed into the custody of the law, and thenceforward its administration was wholly under the control of the court by its officer [], the receiver.").

On December 11, 2019, the presiding judge in this action, Chief Judge Burns, granted the parties' Joint Motion (ECF No. 156) to give limited consent to the undersigned to hear and directly decide all motions filed in this action to approve sales of receivership assets. ECF No. 160. *See also* 28 U.S.C. § 636(c); CivLR 72.1(g). All property sale motions are set before the undersigned pursuant to that grant of consent.

Pursuant to 28 U.S.C. § 2001(a), realty in the possession of an appointed receiver is subject to a public sale process, "upon such terms and conditions as the court directs." 28 U.S.C. § 2002 further requires that notice be published once a week for at least four weeks prior to the sale in at least one newspaper regularly issued and of general circulation in the county, state, or judicial district where the realty is located. The purpose of such notice "is to inform the public of the kind and condition of the property to be sold, the time, the place, and the terms of the sale. It is to secure bidders and prevent the sacrifice of the property." *Breeding Motor Freight Lines v. R.F.C.*, 172 F.2d 416, 422 (10th Cir. 1949). Therefore, the safeguards of notice and opportunity to submit overbids help to ensure that the sale is able to fetch the best price possible, which is consistent with the principle that

"a primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." *Hardy*, 803 F.2d at 1038. *See also United States v. Grable*, 25 F.3d 298, 303 (6th Cir. 1994) (noting that "the intent of" the requirement in 28 U.S.C. § 2001 that property be sold in the county in which the land is situated is "to bring a better price at the sale").

The Receiver filed a Motion for Approval of Sale of 3816 Mission Blvd. Property (the "3816 Mission Blvd. Motion") on January 28, 2021. ECF No. 586. The motion concerns one of the real properties within the receivership estate, a mixed-use building containing one commercial unit (used as a surf shop) and one residential unit, located at 3816 Mission Boulevard, San Diego, California 92109 (the "3816 Mission Blvd. Property").[1] *See* ECF No. 586-1 at 5; ECF No. 76-2 at 4 (listing the 3816 Mission Blvd. Property in the Preliminary Real Estate and Liquor License Asset Schedule filed on October 3, 2019, and noting the building includes a surf shop on the ground floor and a rented apartment loft).

Both at the time the motion was filed and now, the intended buyer of the 3816 Mission Blvd. Property was Mauricio Schwartzman ("Buyer"). However, the previous intended sale price was $1,210,000. ECF No. 586-1 at 6. In the motion, the Receiver proposed compliance with 28 U.S.C. §§ 2001 and 2002 by publishing notice in the San Diego Union-Tribune once a week for four weeks of a public auction for the property on February 25, 2021. *Id.* at 11-12. Potential bidders were invited to qualify for the auction by submitting a signed purchase and sale agreement, an earnest money deposit of $55,000, and proof of funds by February 22, 2021. *Id.*

The Court set a deadline of February 11, 2021 to file any response in opposition to the 3816 Mission Blvd. Motion, and ordered the Receiver to file a notice of non-receipt of

---

[1] The address of the residential unit is 733 Salem Court, San Diego, California 92109. *See* ECF No. 586-1 at 5. For the sake of clarity, however, the Court refers to the entire property as the 3816 Mission Blvd. Property.

3:19-cv-1628-LAB-AHG

1   overbids if no qualified overbids were received by February 22, 2021. ECF No. 587. No

2   opposition to the 3816 Mission Blvd. Motion was filed. However, on February 23, 2021,

3   the Receiver filed a Notice of Receipt of Qualified Overbid, reporting that a qualified

4   overbid was received for the 3816 Mission Blvd. Property. ECF No. 596. The Receiver,

5   through her broker, obtained the consent of the Buyer and the qualified overbidder to

6   conduct the live auction via videoconference on February 25, 2021. *Id.*

7   On March 4, 2021, the Receiver filed a Notice of Results of Auction of 3816 Mission

8   Blvd. Property and Request to Approve Sale to Winning Bidder. ECF No. 604 ("Notice of

9   Results"). In the Notice of Results, the Receiver requests that the Court approve the sale of

10  the 3816 Mission Blvd. Property to the winning bidder (and original buyer) Mauricio

11  Schwartzman, and also to approve the sale of the property to the back-up bidder Steven

12  Ozbun in the event the winning bidder does not close the sale for any reason. *Id.* at 2-3.

13  The winning bidder submitted a bid of $1,590,000 for the property, while the back-up

14  bidder submitted the second-highest bid of $1,580,000. *Id.* Other than approval of the sale

15  to the winning bidder (and the back-up bidder if the sale falls through) at a new sale price,

16  all other relief requested in the 3816 Mission Blvd. Motion, including authority to pay the

17  costs of sale from the sale proceeds, remains the same. *Id.* at 3.

18  Being fully advised and noting the lack of opposition to the 3816 Mission Blvd.

19  Motion, the Court will **GRANT** (1) the request to approve the sale of the 3816 Mission

20  Blvd. Property to the winning bidder; (2) the request to approve the sale of the 3816

21  Mission Blvd. Property to the back-up bidder if the winning bidder does not close the sale

22  for any reason; and (3) all relief requested in the 3816 Mission Blvd. Motion, other than

23  the request to approve the sale at the price of $1,210,000. That portion of the 3816 Mission

24  Blvd. Motion will be **DENIED**.

25  **II.    LEGAL STANDARD**

26  "[I]t is a recognized principle of law that the district court has broad powers and

27  wide discretion to determine the appropriate relief in an equity receivership." *SEC v.*

28  *Lincoln Thrift Ass'n*, 577 F.2d 600, 606 (9th Cir. 1978). Where a district court sits in equity,

4

1   "[u]nless a statute in so many words, or by a necessary and inescapable inference, restricts

2   the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and

3   applied. 'The great principles of equity, securing complete justice, should not be yielded

4   to light inferences, or doubtful construction.'" *Porter v. Warner Holding Co.*, 328 U.S.

5   395, 398 (1946).

6   "[A] district court's power to supervise an equity receivership and to determine the

7   appropriate action to be taken in the administration of the receivership is extremely broad."

8   *Hardy*, 803 F.2d at 1037. As part of this broad discretion, the district court sitting in equity

9   and having custody and control of property "has power to order a sale of the same in its

10  discretion. The power of sale necessarily follows the power to take control of and to

11  preserve property[.]" *SEC v. Am. Capital Investments, Inc.*, 98 F.3d 1133, 1144 (9th Cir.

12  1996), *abrogated on other grounds by Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83,

13  93-94 (1998) (quoting 2 Ralph E. Clark, <u>Treatise on Law & Practice of Receivers</u> § 482

14  (3d ed. 1992)). If the court approves an equitable receiver's proposed property sale, the

15  sale "does not . . . purport to convey 'legal' title, but rather 'good,' equitable title enforced

16  by an injunction against suit." *Id.* (citing 2 Clark, <u>Treatise on Law & Practice of Receivers</u>,

17  §§ 342, 344, 482(a), 487, 489, 491).

18  **III.   DISCUSSION**

19       **A. Background of the Property and Proposed Sale**

20       The 3816 Mission Blvd. Property was purchased for $618,000 in March 2015 by

21  The Gina Champion Cain Revocable Trust. ECF No. 586-1 at 5. In April 2016, title was

22  transferred to the receivership entity 3816 Mission Blvd., LLC, the current owner. *Id.*; *See*

23  *also* ECF No. 6 at 5 (the Court's Appointment Order, listing 3816 Mission Blvd., LLC as

24  an entity subject to the equitable receivership).

25       Following her appointment, the Receiver and her staff analyzed the value of the 3816

26  Mission Blvd. Property by reviewing automated valuation scores and a survey of market-

27  comparable properties. ECF No. 586-1 at 5. The Receiver consulted with multiple licensed

28  brokers about the value of the property and terms of a potential listing agreement,

1 ultimately selecting Compass Realty ("Broker"), and listing the property for sale at a listing

2 price of $1,250,000. *Id.*

3     Broker marketed the 3816 Mission Blvd. Property by creating marketing flyers with

4 professional photos and sending the listing out via email campaigns to a targeted list of

5 brokers and investors. *Id.* Broker also advertised the property on key websites, including

6 the local MLS and LoopNet. *Id.* In compliance with guidance from the California

7 Association of Realtors, Broker held socially-distanced property tours. *Id.* The Receiver

8 explains that there was significant interest in the property throughout the time it was

9 marketed, leading to a total of four offers, although three such offers were withdrawn due

10 to the potential buyers' inability to secure acceptable financing. ECF No. 586-2, Freitag

11 Decl. ¶ 4. Through Broker, the Receiver negotiated terms with prospective buyers,

12 ultimately leading to the property going into escrow on or around December 30, 2020, with

13 Buyer to pay the original purchase price of $1.21 million. ECF No. 586-1 at 6. As

14 previously noted, however, pursuant to 28 U.S.C. §§ 2001 and 2002, the Receiver

15 published notice in the San Diego Union-Tribune of a public auction for the property and

16 ultimately received a qualified overbid. *Id.* at 11-12; *see also* ECF Nos. 596, 604. Based

17 on the results of the auction, the high bidder and current intended buyer remains Mauricio

18 Schwartzman, with a bid of $1,590,000. If the sale with Buyer falls through, the property

19 will be sold to back-up bidder Steven Ozbun, with a bid of $1,580,000. ECF No. 604.

20     Prior to the auction, both the winning bidder and back-up bidder executed a Form

21 Purchase and Sale Agreement and Joint Escrow Instructions ("Form PSA") removing all

22 contingencies, and each of them also provided an earnest money deposit of $50,000

23 (Buyer) and $55,000 (back-up bidder). *See* ECF Nos. 604-1 at 1-48; 604-2 at 1-48.

24 Following the auction, Buyer and the back-up bidder also executed amendments to their

25 PSAs to modify the purchase prices therein in accordance with their bids at the auction.

26 *See* ECF No. 604-1 at 49-52 (modifying Buyer's purchase price in his PSA from $1.21

27 million to $1.59 million); ECF No. 604-2 at 49-52 (modifying back-up bidder's purchase

28 price in his PSA from $1.4 million to $1.58 million).

3:19-cv-1628-LAB-AHG

## B. Proposed Procedures and Distribution

The 3816 Mission Blvd. Property is encumbered by a loan and deed of trust in favor of Axos Bank.[2] ECF No. 586-2, Freitag Decl. ¶ 5. The Receiver intends to use the proceeds of the sale of the property to pay off the loan and estimates the amount required to do so will be approximately $486,000, assuming a March 2021 closing. *Id.* The Receiver also estimates that approximately $2,300 to $3,300 in property taxes will be owed, again assuming a March 2021 closing. *Id.* The Receiver estimates that costs of sale including escrow, title and recording fees will be approximately $9,000. *Id.* The Broker's fee pursuant to the listing agreement is 4% of the sale price, or $48,400. *Id.* Based on these estimates, the Receiver estimated in the 3816 Mission Blvd. Motion that the net sale proceeds for the receivership estate would be approximately $664,000. *Id.*

In light of the higher winning bid ($1,590,000) and back-up bid ($1,580,000) compared to the formerly agreed-upon purchase price of $1,210,000, however, the Court assumes an adjusted Broker's fee in the range of $63,200 to $63,600, and an adjusted estimate of net sale proceeds for the receivership estate in the range of $1,019,200 to $1,028,800.[3]

## C. Court Approval of the Proposed Procedures and Sale

The Court has reviewed the documents submitted by the Receiver in support of the 3816 Mission Blvd. Motion, as well as the Notice of Results and request to approve the

---

[2] The Court understands that this Axos Bank loan is different from the Axos Bank portfolio loan that previously encumbered seven properties within the receivership estate, and which was paid off in full when the 737 Windemere Court Property closed (the Court approved the 737 Windemere Court Property sale on September 24, 2020). *See* ECF No. 505 at 3 n.1; ECF No. 467.

[3] Although the Receiver did not include any such estimate in the Notice of Results, the Receiver submitted a proposed order to the Court concurrently with the filing of the Notice, which includes an estimate that $1,029,000 will be returned to the receivership estate from the sale proceeds.

sale to the winning bidder or to the back-up bidder if the winning bidder does not close the sale for any reason. The Court finds that both the winning bid and the back-up bid are fair, reasonable, and will represent a strong return of proceeds to the receivership estate.

Both bids are more than double the March 2015 $618,000 purchase price of the property, representing a return of $972,000 (for the winning bid) or $962,000 (for the back-up bid). Broker broadly marketed and advertised the property through flyers, email campaigns, and online advertising, leading to significant interest, as reflected by the four offers received during the time the property was marketed. Moreover, the Receiver's publication of notice seeking qualified overbids in the San Diego Union Tribune, in addition to the solicitation of overbids and holding of a public auction, establish that the Receiver fully satisfied the requirements for the public sale procedures set forth in 28 U.S.C. §§ 2001(a) and 2002, which are designed to ensure the best price for real property is obtained. After receiving an offer from Buyer, the Receiver continued to market the property, and successfully secured an overbid above the original purchase price agreed upon with Buyer, triggering the auction process and ultimately fetching a far greater price. The Court finds that the carrying out of the notice and auction process alone suffices to show that the Receiver has secured the best and highest price for the property, whether the sale closes with either the winning bidder or the back-up bidder. The Court is thus satisfied that the intent of the statutory scheme—to ensure that the best and highest possible price is paid for property within the receivership estate—has been fulfilled. Even taking into account the need to pay off the loan on the property from the sale proceeds, the anticipated return to the receivership estate is substantial. Finally, Broker's proposed commission of 4% of sale price is consistent with industry standards.

Based on these considerations, and noting the lack of any opposition to the 3816 Mission Blvd. Motion, the Court finds the Receiver has established that the proposed sale of the 3816 Mission Blvd. Property and proposed distribution of the sale proceeds, whether the sale closes with the winning bidder or the back-up bidder, are consistent with principles

1    of equity and the goal of a receivership to ensure the orderly and efficient administration

2    of the estate for the benefit of creditors. *See Hardy*, 803 F.2d at 1038.

3    **IV.    CONCLUSION**

4         Having considered the Receiver's Motion for Approval of Sale of 3816 Mission

5    Blvd. Property (ECF No. 586), and the Receiver's Notice of Results of Auction for 3816

6    Mission Blvd. Property and Request to Approve Sale to Winning Bidder (ECF No. 604),

7    the Court **GRANTS IN PART** and **DENIES IN PART** the 3816 Mission Blvd. Property

8    Motion (ECF No. 586). Specifically, the Court **GRANTS** all relief requested therein, other

9    than the approval of the sale at the former purchase price. The Court **GRANTS** the

10   Receiver's request to approve the sale of the 3816 Mission Blvd. Property to Buyer and

11   winning bidder Mauricio Schwartzman at the winning bid price of $1,590,000. If the

12   winning bidder does not close the sale for any reason, the Court further **APPROVES** the

13   sale of the 3816 Mission Blvd. Property to the back-up bidder Steven Ozbun at the sale

14   price of $1,580,000.

15        Accordingly, it is **ORDERED** as follows:

16        (1)    The sale of property located at 3816 Mission Blvd., San Diego, California

17   92109, as described in Exhibit A to the Declaration of Krista L. Freitag in support of the

18   Notice of Results of Auction for 3816 Mission Blvd. Property and Request to Approve Sale

19   to Winning Bidder (ECF No. 604-1), by Krista L. Freitag, as receiver, to Mauricio

20   Schwartzman or his designee ("Buyer" or "Winning Bidder"), is confirmed and approved;

21        (2)    The purchase price of $1,590,000, to be paid by the Winning Bidder for the

22   3816 Mission Blvd. Property, is confirmed and approved;

23        (3)    The Receiver is authorized to pay Axos Bank the amount necessary to pay off

24   the mortgage on the Property, which is estimated to be approximately $485,000 (with the

25   exact amount to be determined at closing);

26        (4)    The Receiver is authorized to pay the property taxes due from the seller at

27   closing, which amount is estimated to be in the range of $2,300 to $3,300 (with the exact

28   amount to be determined at closing);

1       (5)    The Receiver is authorized to pay broker Compass Realty a commission of

2   4% of the sale price;

3       (6)    The Receiver is authorized to pay the costs for title, escrow, and recording,

4   which are estimated to be $9,000 (with the exact amount to be determined at closing);

5       (7)    After the aforementioned estimated amounts are paid, the net sale proceeds,

6   which are estimated to be approximately $1,029,000 (with the exact amount to be

7   determined at closing), shall be paid to the receivership estate; and

8       (8)    The Receiver is immediately authorized to complete the sale transaction,

9   including executing any and all documents as may be necessary and appropriate to do so.

10       (9)    *If and only if* the Winning Bidder does not close the sale transaction pursuant

11   to the Purchase and Sale Agreement and Joint Escrow Instructions (including the

12   Amendment thereto) attached to the Notice of Results of Auction as Exhibit A, then the

13   sale of the Property by the Receiver to Back-Up Bidder pursuant to the Purchase and Sale

14   Agreement and Joint Escrow Instructions (including the Amendment thereto), attached to

15   the Notice of Results of Auction as Exhibit B for $1,580,000, is approved, the Receiver is

16   authorized to make the payments from escrow described above, and the Receiver is

17   authorized to complete the sale to Back-Up Bidder (or his designee), including executing

18   any and all documents as may be necessary and appropriate to do so.

19       (10)    After closing, the Receiver shall provide a full accounting of sale costs,

20   property taxes paid, the precise amount used to pay off the loan to Axos Bank, and the

21   amount ultimately returned to the receivership estate from the sale proceeds.

22       **IT IS SO ORDERED.**

23

24   Dated:  March 9, 2021

25   _____

Honorable Allison H. Goddard

26   United States Magistrate Judge

27

28

3:19-cv-1628-LAB-AHG