1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11 | SECURITIES AND EXCHANGE            Case No.:  3:19-cv-1628-LAB-AHG
   | COMMISSION,
12 |                                    **ORDER GRANTING MOTION FOR**
   |                        Plaintiff,   **APPROVAL OF SALE OF 3816**
13 |                                    **MISSION BLVD. PROPERTY**
   | v.
14 |
   | GINA CHAMPION-CAIN AND ANI
15 | DEVELOPMENT, LLC,                  **[ECF No. 653]**
16 |                        Defendants, and
17 |
18 |
   | AMERICAN NATIONAL
19 | INVESTMENTS, INC.,
20 |                        Relief Defendant.

21
22
23
24
25
26
27
28

                              1

## I.    BACKGROUND

As described in prior orders, *see, e.g.*, ECF Nos. 54, 162, 163, this is an action brought by the Securities and Exchange Commission ("SEC") against Defendants ANI Development, LLC ("ANI Development") and Gina Champion-Cain and Relief Defendant American National Investments, Inc. ("ANI Inc."), alleging violations of federal securities laws based on a purportedly fraudulent liquor license loan scheme. ECF No. 1.

On September 3, 2019, the Court established an equitable receivership and appointed Krista L. Freitag ("Receiver") as the receiver of ANI Development and ANI Inc., authorizing her to take control over all funds and assets owned, managed, or in the possession or control of the receivership entities. *See* ECF No. 6 at 14-16. In that role, the Receiver acts under the control and direction of the Court to facilitate the "orderly and efficient administration of the estate . . . for the benefit of creditors." *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986). *See also Atl. Tr. Co. v. Chapman*, 208 U.S. 360, 370 (1908) (explaining that a motion to appoint a receiver to take charge of property is "to the end that the property might be cared for and preserved for all who had or might have an interest in the proceeds of its sale. . . . Immediately upon such appointment and after the qualification of the receiver, the property [within the equitable receivership] passed into the custody of the law, and thenceforward its administration was wholly under the control of the court by its officer [], the receiver.").

On December 11, 2019, the presiding judge in this action, Judge Larry A. Burns, granted the parties' Joint Motion (ECF No. 156) to give limited consent to the undersigned to hear and directly decide all motions filed in this action to approve sales of receivership assets. ECF No. 160. *See also* 28 U.S.C. § 636(c); CivLR 72.1(g). All property sale motions are set before the undersigned pursuant to that grant of consent.

Pursuant to 28 U.S.C. § 2001(a), realty in the possession of an appointed receiver is subject to a public sale process, "upon such terms and conditions as the court directs." 28 U.S.C. § 2002 further requires that notice be published once a week for at least four weeks prior to the sale in at least one newspaper regularly issued and of general circulation

in the county, state, or judicial district where the realty is located. The purpose of such notice "is to inform the public of the kind and condition of the property to be sold, the time, the place, and the terms of the sale. It is to secure bidders and prevent the sacrifice of the property." *Breeding Motor Freight Lines v. R.F.C.*, 172 F.2d 416, 422 (10th Cir. 1949). Therefore, the safeguards of notice and opportunity to submit overbids help to ensure that the sale is able to fetch the best price possible, which is consistent with the principle that "a primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." *Hardy*, 803 F.2d at 1038. *See also United States v. Grable*, 25 F.3d 298, 303 (6th Cir. 1994) (noting that "the intent of" the requirement in 28 U.S.C. § 2001 that property be sold in the county in which the land is situated is "to bring a better price at the sale").

On April 23, 2021, Court-appointed Receiver Krista L. Freitag (the "Receiver") filed a Second Motion for Approval of Sale of 3816 Mission Blvd. Property (the "Second Mission Blvd. Motion"). ECF No. 653. The motion is now ripe for ruling.

## II.   LEGAL STANDARD

"[I]t is a recognized principle of law that the district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership." *SEC v. Lincoln Thrift Ass'n*, 577 F.2d 600, 606 (9th Cir. 1978). Where a district court sits in equity, "[u]nless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied. 'The great principles of equity, securing complete justice, should not be yielded to light inferences, or doubtful construction.'" *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946).

"[A] district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad." *Hardy*, 803 F.2d at 1037. As part of this broad discretion, the district court sitting in equity and having custody and control of property "has power to order a sale of the same in its discretion. The power of sale necessarily follows the power to take control of and to

preserve property[.]" *SEC v. Am. Capital Investments, Inc.*, 98 F.3d 1133, 1144 (9th Cir. 1996), *abrogated on other grounds by Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998) (quoting 2 Ralph E. Clark, <u>Treatise on Law & Practice of Receivers</u> § 482 (3d ed. 1992)). If the court approves an equitable receiver's proposed property sale, the sale "does not . . . purport to convey 'legal' title, but rather 'good,' equitable title enforced by an injunction against suit." *Id.* (citing 2 Clark, <u>Treatise on Law & Practice of Receivers</u>, §§ 342, 344, 482(a), 487, 489, 491).

## III.   DISCUSSION

### A. Background of the Property and Proposed Sale

The 3816 Mission Blvd. Property is a mixed-use building containing one commercial unit (used as a surf shop) and one residential unit, located at 3816 Mission Boulevard, San Diego, California 92109 (the "3816 Mission Blvd. Property").[1] *See* ECF No. 586-1 at 5; ECF No. 76-2 at 4 (listing the 3816 Mission Blvd. Property in the Preliminary Real Estate and Liquor License Asset Schedule filed on October 3, 2019, and noting the building includes a surf shop on the ground floor and a rented apartment loft).

The Court previously granted the Receiver's motion to approve the sale of the same property, (ECF No. 586), as amended by the Receiver's Notice of Results of Auction for 3816 Mission Blvd. Property and Request to Approve Sale to Winning Bidder (ECF No. 604), approving the sale of the 3816 Mission Blvd. Property to winning bidder Mauricio Schwartzman at the winning bid price of $1.59 million and, if the sale did not close with the winning bidder, approving the sale of the property to back-up bidder Steven Ozbun at the price of $1.58 million. See ECF No. 614. The Court hereby incorporates by reference the background discussion contained in its earlier order granting the sale of the property to

---

[1] The address of the residential unit is 733 Salem Court, San Diego, California 92109. *See* ECF No. 586-1 at 5. For the sake of clarity, however, the Court refers to the entire property as the 3816 Mission Blvd. Property.

the winning bidder regarding how the property came into the receivership, and the efforts made by the Receiver and broker to market the property. *See* ECF No. 614 at 5-6.

In the Second Mission Blvd. Motion, the Receiver explains that the sale did not close with either the winning bidder or the back-up bidder. ECF No. 653-1 at 6. Accordingly, both bidders lost their earnest money deposits, totaling $105,000. *Id.* The former winning bidder Mauricio Schwartzman ("Buyer") continued to express serious interest in the property, however, and several other prospective purchasers also submitted Letters of Intent to Purchase or otherwise sent emails showing interest in the property after the sale fell through. *Id.* at 6-7. Through Broker, the Receiver negotiated terms with all prospective buyers and afforded them an opportunity to submit a highest and best offer subject to overbid. *Id.* at 7. Ultimately, the property once again went into escrow with Buyer Mauricio Schwartzman on or around April 19, 2021, at a new sale price of $1.36 million. *Id.* Buyer has deposited $30,000 into escrow. *Id.*

Even though the new sale agreement was with the previously approved buyer and high bidder at the first auction, the property sale was once more subject to the notice and auction process under the relevant statutory scheme. Therefore, in the Second Mission Blvd. Motion, the Receiver proposed compliance with 28 U.S.C. §§ 2001 and 2002 by publishing notice in the San Diego Union-Tribune once a week for four weeks of a public auction for the property on May 20, 2021. ECF No. 653 at 11-12. Potential bidders were invited to qualify for the auction by submitting a signed purchase and sale agreement, an earnest money deposit of $33,000, and proof of funds by May 17, 2021. *Id.*

The Court set a deadline of May 3, 2021 to file any response in opposition to the Second Mission Blvd. Motion, and ordered the Receiver to file a notice of non-receipt of overbids if no qualified overbids were received by May 17, 2021. ECF No. 654. No opposition to the Second Mission Blvd. Motion was filed, and no overbids were received by the deadline. *See* ECF No. 668. Accordingly, the Court vacated the hearing and took the matter under submission without oral argument. ECF No. 669. Being fully advised, and

noting the lack of opposition to the Second Mission Blvd. Motion, the Court will **GRANT** the motion.

## B. Proposed Procedures and Distribution

As described in the Court's prior order, the 3816 Mission Blvd. property is encumbered by a loan and deed of trust in favor of Axos Bank. ECF No. 614 at 7. The Receiver still intends to use the proceeds of the sale of the property to pay off the loan and estimates the amount required to do so will be approximately $485,000, assuming a May 2021 closing. ECF No. 653-1 at 7. The Receiver also estimates that approximately $1,000 will be owed to the receivership estate as a small property tax credit. *Id.* The Receiver estimates that costs of sale including escrow, title and recording fees will be approximately $9,000. *Id.* The Broker's fee pursuant to the listing agreement is 4% of the sale price, or $54,400. *Id.* Based on these figures, the Receiver estimates in the Second Mission Blvd. Motion that the net sale proceeds to be returned to the receivership estate will be approximately $812,000. *Id.*

## C. Court Approval of the Proposed Procedures and Sale

The Court has reviewed the documents submitted by the Receiver in support of the Second Mission Blvd. Motion, and finds the proposed sale to be fair and reasonable.

Although the new sale price of $1.36 million falls short of Buyer's previously approved high bid of $1.59 million, it exceeds Buyer's first agreed-upon purchase price of $1,210,000, as reflected in the original sale motion. *See* ECF No. 586-1 at 6. Additionally, neither Buyer nor the previous back-up bidder (who bid $1.58 million) followed through with their bids, instead opting to forfeit their earnest money deposits. Both bidders' unwillingness to close the sale in that higher range, coupled with the fact that no overbids were received over the new sale price of $1.36 million, suggest that the high bids at the auction may have exceeded the reasonable value of the property. And in any event, the Receiver took care to protect the assets of the receivership by including the earnest money forfeiture provisions in the Form Purchase and Sale Agreements signed by the winning and

3:19-cv-1628-LAB-AHG

back-up bidders after the original auction, thus ensuring some additional return to the estate despite the ultimate failure of either bidder to close the sale.

Moreover, as discussed in the Court's prior order, the Court is satisfied that Broker diligently and broadly marketed the property, and Broker's proposed commission of 4% of sale price is consistent with industry standards. Significantly, the notice and auction procedures set forth in the statutory scheme governing sales of real property in a receivership are in place to ensure that the best and highest price is obtained. The Receiver carried out the notice and auction process a second time after entering into the new agreement with Buyer, which once more indicates to the Court that the Receiver has likely secured the best and highest price for the property, in fulfillment of the intent of the statutory scheme.

Finally, the new sale price is more than double the March 2015 $618,000 purchase price of the property, representing a return of $742,000, plus the forfeited earnest money deposit of $55,000 submitted by the back-up bidder to participate in the first auction. *See* ECF No. 604-2 at 4. Even taking into account the need to pay off the loan on the property from the sale proceeds, the anticipated return to the receivership estate is substantial.

Based on these considerations, and noting the lack of any opposition to the Second Mission Blvd. Motion, the Court finds the Receiver has established that the proposed sale of the 3816 Mission Blvd. Property and proposed distribution of the sale proceeds are consistent with principles of equity and the goal of a receivership to ensure the orderly and efficient administration of the estate for the benefit of creditors. *Hardy*, 803 F.2d at 1038.

## IV.   CONCLUSION

Having considered the Receiver's Second Motion for Approval of Sale of 3816 Mission Blvd. Property (ECF No. 653), the Court **GRANTS** the motion. Accordingly, it is **ORDERED** as follows:

(1)   The sale of property located at 3816 Mission Blvd., San Diego, California 92109, as described in Exhibit A to the Declaration of Krista L. Freitag in support of the Second Motion for Approval of Sale of 3816 Mission Blvd. Property (ECF No. 653-3), by

Krista L. Freitag, as Receiver, to Mauricio Schwartzman or his designee ("Buyer"), is confirmed and approved;

(2)    The purchase price of $1,360,000, to be paid by Buyer for the 3816 Mission Blvd. Property, is confirmed and approved;

(3)    The Receiver is authorized to pay Axos Bank the amount necessary to pay off the mortgage on the Property, which is estimated to be approximately $485,000 (with the exact amount to be determined at closing);

(4)    The Receiver is authorized to pay the property tax amount due from the seller at closing, which in this instance is actually expected to be a small credit owed to seller of approximately $1,000 (with the exact amount to be determined at closing);

(5)    The Receiver is authorized to pay broker Compass Realty a commission of 4% of the sale price;

(6)    The Receiver is authorized to pay the costs for title, escrow, and recording, which are estimated to be $9,000 (with the exact amount to be determined at closing);

(7)    After the aforementioned estimated amounts are paid, the net sale proceeds, which are estimated to be approximately $812,000 (with the exact amount to be determined at closing), shall be paid to the receivership estate; and

(8)    The Receiver is immediately authorized to complete the sale transaction, including executing any and all documents as may be necessary and appropriate to do so.

(9)    After closing, the Receiver shall provide a full accounting of sale costs, property taxes paid, the precise amount used to pay off the loan to Axos Bank, and the amount ultimately returned to the receivership estate from the sale proceeds.

**IT IS SO ORDERED.**

Dated:  May 25, 2021

_____

Honorable Allison H. Goddard
United States Magistrate Judge

8