DAVID R. ZARO (BAR NO. 124334)
NORMAN M. ASPIS (BAR NO. 313466)
ALLEN MATKINS LECK GAMBLE
    MALLORY & NATSIS LLP
865 South Figueroa Street, Suite 2800
Los Angeles, California 90017-2543
Phone:  (213) 622-5555
Fax:  (213) 620-8816
E-Mail:  dzaro@allenmatkins.com
         naspis@allenmatkins.com

EDWARD G. FATES (BAR NO. 227809)
ALLEN MATKINS LECK GAMBLE
    MALLORY & NATSIS LLP
One America Plaza
600 West Broadway, 27th Floor
San Diego, California 92101-0903
Phone:  (619) 233-1155
Fax:  (619) 233-1158
E-Mail:  tfates@allenmatkins.com

Attorneys for Receiver
KRISTA FREITAG

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>GINA CHAMPION-CAIN and ANI DEVELOPMENT, LLC,<br><br>Defendants,<br><br>AMERICAN NATIONAL INVESTMENTS, INC.,<br><br>Relief Defendant. | Case No. 3:19-cv-01628-LAB-AHG<br><br>**FIFTH INTERIM FEE APPLICATION OF KRISTA L. FREITAG, COURT-APPOINTED RECEIVER, FOR PAYMENT OF FEES AND REIMBURSEMENT OF EXPENSES**<br><br>Date:          November 22, 2021<br>Time:          11:30 a.m.<br>Courtroom:  14A<br>Judge:        Hon. Larry Alan Burns |

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ...................................................................................4

II.  SUMMARY OF TASKS PERFORMED AND COSTS
     INCURRED ...........................................................................................8

     A.   Categories and Descriptions of Work ......................................8

          1.   General Receivership ......................................................8

          2.   Asset Investigation and Recovery ...............................9

          3.   Reporting .......................................................................10

          4.   Operations and Asset Sales.........................................10

          5.   Claims and Distributions .............................................12

          6.   Third-Party Recoveries ................................................13

          7.   Pending Litigation .......................................................13

          8.   Forensic Accounting ....................................................13

          9.   Summary of Expenses Requested for
               Reimbursement .............................................................15

III. STANDARDIZED FUND ACCOUNTING REPORT ................................16

IV.  THE FEES AND COSTS ARE REASONABLE AND SHOULD
     BE ALLOWED .....................................................................................16

V.   CONCLUSION ....................................................................................18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LAW OFFICES
atkins Leck Gamble

# TABLE OF AUTHORITIES

**Cases**                                                                     **Page(s)**

*Gaskill v. Gordon*,
    27 F.3d 248 (7th Cir. 1994)...........................................................................16

*In re Imperial 400 Nat'l, Inc.*,
    432 F.2d 232 (3d Cir. 1970)...........................................................................17

*SEC v. Elliot*,
    953 F.2d 1560 (11th Cir. 1992).......................................................................16

*SEC v. W.L. Moody & Co., Bankers (Unincorporated)*,
    374 F. Supp. 465 (S.D. Tex. 1974) ...............................................................17

*United States v. Code Prods. Corp.*,
    362 F. 2d 669 (3d Cir. 1966).........................................................................17

LAW OFFICES
atkins Leck Gamble

1   Krista Freitag ("Receiver"), the Court-appointed permanent receiver for

2   Defendant ANI Development, LLC, Relief Defendant American National

3   Investments, Inc., and their subsidiaries and affiliates ("Receivership Entities"),

4   hereby submits this fifth interim application for approval and payment of fees and

5   reimbursement of expenses ("Application").  This Application covers the period

6   from October 1, 2020 through December 31, 2020 ("Fifth Application Period") and

7   seeks interim approval of $327,895.70 in fees and $70,579.10 in expenses, and an

8   order authorizing the Receiver to pay, on an interim basis, 80% of the fees incurred

9   ($262,316.56) and 100% of expenses incurred.

10  **I.   INTRODUCTION**

11  This equity receivership involves a large, complex, and wide-ranging group

12  of enterprises and assets which are subject to an August 28, 2019 Complaint filed by

13  the United States Securities and Exchange Commission ("Commission").  The

14  Complaint alleges Defendants Gina Champion-Cain and ANI Development, LLC

15  perpetrated a large-scale fraud, raising over $300 million from investors since 2012,

16  and over $100 million in the year preceding the filing, for purported short-term,

17  high-interest loans to parties seeking to acquire liquor licenses.

18  Defendants agreed to the appointment of a permanent receiver by way of a

19  Joint Motion and Stipulated Request filed concurrently with the Complaint (Dkt. 2).

20  On September 3, 2019, the Court (the Hon. Marilyn Huff) granted the Joint Motion

21  and entered the Appointment Order (Dkt. 6.).

22  The Appointment Order confers broad duties, responsibilities, and powers on

23  the Receiver designed to allow her to collect and take custody, control, possession,

24  and charge of all the assets of Receivership Entities, to investigate and, where

25  appropriate, to institute, pursue, and prosecute all claims and causes of action, and to

26  make an accounting, as soon as practicable, of the Receivership Entities' financial

27  condition.  The Appointment Order also authorizes the Receiver to "employ

28  attorneys, accountants, appraisers and others" to assist her in the performance of her

LAW OFFICES
atkins Leck Gamble

duties.  Dkt. No. 6, Section X(F).  The Receiver promptly determined that her experienced staff at E3 Realty Advisors, Inc. dba E3 Advisors ("E3"), as well as experienced, qualified counsel was critical due to the size and complexity of the receivership estate.  Accordingly, the Receiver has used her team at E3 to assist in carrying out receivership duties and engaged Allen Matkins Leck Gamble Mallory & Natsis LLP ("Allen Matkins") as her general counsel for the receivership.

On November 22, 2019, the Court approved the Receiver's proposal to file reports and fee applications on a quarterly basis.  Dkt. 126.  This fee application should be read in conjunction with the Receiver's Sixth Interim Report ("Sixth Report") filed on March 12, 2021, which describes in detail the Receiver's and her counsel's activities during the Fifth Application Period. Dkt. 619.  So as to avoid a significant amount of repetition, references are sometimes made to relevant portions of the Sixth Report in the below descriptions of the Receiver's work.

This Application seeks interim approval of $327,895.70 in fees for a total of 1,680.60 hours worked, and payment on an interim basis of 80% of that amount, or $262,316.56.  The work performed is described task-by-task on Exhibit A and is broken down into the following categories:

| General Receivership (002) | $13,079.25 |
|---|---|
| Asset Investigation & Recovery (003) | $7,877.25 |
| Reporting (004) | $11,579.40 |
| Operations & Asset Sales (005) | $148,533.25 |
| Claims & Distributions (006) | $1,284.30 |
| Third Party Recoveries (007) | $5,798.25 |
| Pending Litigation (008) | $126.00 |
| Employment/Fees (009) | $0 |
| Forensic Accounting (010) | $139,618.00 |
| **Total Fees** | **$327,895.70** |

LAW OFFICES
atkins Leck Gamble

The early phase of a complex equity receivership always involves substantial work by the Receiver and the Receiver's professionals.  During the Fifth Application Period, a significant amount of time was spent (a) working to preserve and monetize the real property and other receivership asset recoveries, (b) working to provide repository documents, (c) working towards completion of the extremely large forensic accounting (which includes pursuit of additional records, and which is serving as a critical tool for the Receiver's pursuit of recoveries and the foundation for the forthcoming investor claims and distribution process), (d) preparing a preliminary investor-specific accounting report, and (e) advising the Court on the status of the Receiver's activities.

In this instance, as has been well documented, a substantial amount of time was required of the Receiver, her staff and her professionals to protect and salvage the net asset value in the receivership estate.

Through the fourth quarter of 2020, the Receiver made notable and substantial progress in preserving and marshalling the Receivership Entities' assets and otherwise discharging her duties.  Among other accomplishments, the Receiver closed on the sale of ten (10) real properties, made progress towards closing on five (5) real property and leasehold interests which completed in the first and second quarters of 2021, continued the marketing, sale or alternative resolution process for nearly all of the unsold real property assets, and recovered proceeds from various personal property and other assets.  The Receiver's team also made significant progress on the forensic accounting, to include the completion and filing of the Receiver's Investor-Specific Preliminary Forensic Accounting and Report (Dkt. No. 516-1) on December 1, 2020.

The largest category of work – Operations & Asset Sales – represents 45.3% of the fees incurred in the Fifth Application period.  This category required extensive time associated with managing through the continued COVID-19 pandemic crisis, oversight of the marketing, sale or alternative resolution process for

nearly all of the unsold real property receivership assets, oversight of the ongoing operations and tasks associated therewith, and moving out of the corporate office at 3515 Hancock. This category has dominated the Receiver and her team's time since the beginning of this case because of the large number of operations and assets in place at appointment. Many of the operations were shut down, and nearly all assets had significant and cumbersome secured debt. Adding additional layers of complexity, the ongoing operations were impacted by the pandemic, some properties were partially constructed and/or had outstanding liens, and thus the work required to achieve a net recovery for the receivership estate has been significant. The Receiver and her staff have worked diligently to recover net sales proceeds associated with the real property and certain other assets (as reflected on Exhibit A in the Sixth Report) in the total estimated range of $15-$16 million. Given the resolution of most of the operations and real property assets - more than 75% of the real property assets sold - as of December 31, 2020, this category will significantly decline in 2021.

The second largest category of work - Forensic Accounting - represents approximately 42.6% of the fees incurred in the Fifth Application Period. This category is critical in this case for a variety of reasons, including but not limited to the identification of investor net losses (ultimately the basis of the proposed claims and future distribution process), and identification of potential claims to recover assets. During the Fifth Application Period, the Receiver and her staff primarily worked on completing the accounting work on a few final operational, personal and corporate level accounts, preparing accountings for certain accounts associated with Kim Peterson and entities he controlled, reconciling and performing detailed review of the entire forensic accounting to date, testing and performing a detailed review of investor transactional details, and preparing her Receiver's Investor-Specific Preliminary Forensic Accounting and Report (Dkt. No. 516-1) on December 1, 2020. This category will dominate and remain significant through April of 2021

LAW OFFICES
atkins Leck Gamble

1  with the completion of the forensic accounting, culminating in the filing of the

2  Receiver's Updated Investor-Specific Forensic Accounting and Report on March 31,

3  2021 (Dkt. No. 630) and the Receiver's Forensic Accounting Report on April 30,

4  2021 (Dkt. No. 659).

5      While a tremendous amount of work occurred through 2020 in the Operations

6  & Asset Sales category and through April of 2021 in the Forensic Accounting

7  category, fees are generally expected to decrease over time and the material

8  categories are expected to then shift to Claims & Distributions and recovery-related

9  categories.

10     The Receiver has worked diligently to describe in detail the work performed

11 by her and her team in the spreadsheet attached hereto as Exhibit A.  It should be

12 noted, however, that due to the enormous number of tasks necessarily addressed in

13 this case, as well as from an operational standpoint on an ongoing basis, it was and

14 is not feasible to track each operations-related task on the basis of a six-minute

15 increment of time.  As such, certain of the time descriptions on Exhibit A reflect the

16 total time spent on business operations for that day, with general descriptions of the

17 types of operational tasks handled.

18     The Receiver has worked diligently and efficiently on the urgent issues facing

19 the receivership estate through the turbulent transition from a large, multi-

20 operations, active enterprise to a Court-ordered receivership and should be

21 compensated on an interim basis for her work.

22 II.   **SUMMARY OF TASKS PERFORMED AND COSTS INCURRED**

23     A.   **Categories and Descriptions of Work**

24         1.   General Receivership

25     The Receiver's work in the General Receivership category primarily focused

26 on gathering, organizing and producing records pursuant to the joint motion and

27 protective order approved by the Court for the establishment, scope, and cost-

28 sharing of the repository of ANI-related documents.  This category also includes

work associated with receivership entity tax returns.  These are largely non-recurring, but ongoing tasks.  The reasonable and necessary fees for work in this category during the Fifth Application Period total $13,079.25 (47.80 hours).

2.    Asset Investigation and Recovery

In addition to securing the real property assets, operations, and the bank accounts identified through investigation of materials obtained in the takeover, the Receiver identified several investments, loans, and other transfers to third parties made by the Receivership Entities thus far.  Such potentially recoverable assets are reflected on Exhibit A to the Sixth Report.

The Receiver's work during the Fifth Application Period includes the following tasks performed in conjunction with Allen Matkins, as necessary:

- Completing recovery of $234,669 from a Certificate of Deposit at Endeavor Bank.
- Working towards recovery of material funds from the Bandini Property ($1.3 million recovered in the first quarter of 2021), and Endeavor Bank shares (30,000 shares recovered in the first quarter of 2021).
- Preparing for and/or participating in mediations relating to claims against two attorneys that represented or were otherwise involved with one or more of the Receivership Entities prior to the receivership (William Adams and Randolph Houts).

The Receiver has continued to investigate and attempt to maximize the recovery from the Receivership Entities' other investments, loans, profiting investors and fraudulent transfers to third parties.  Thus, the work in this category is ongoing. It is important to note that some of this work inherently crosses over into the third-party recovery and forensic accounting categories as the receivership and forensic accounting progress.

In addition to the recovery of the initial cash and real property assets, the combined efforts of the Receiver and Allen Matkins to recover on these purported

LAW OFFICES
atkins Leck Gamble

investments, loans, and other transfers have most notably generated the $11.3 million of funds held by Chicago Title, $347,040 from an Arkansas real estate investment, $330,000 from the settlement with Dan and Barbara Champion, $183,204 of legal retainers, $495,888 from the sale of the Pullman Lofts interest, and the aforementioned $234,669 from the recovery of the Endeavor Bank CD.  To date in 2021, millions more of recoveries have been secured.  The reasonable and necessary fees for work in this category during the Fifth Application Period total $7,877.25 (approximately 25.40 hours).

3.    Reporting

The Receiver's work in this category during the Fifth Application Period focused on completing her Fifth Interim Report (Dkt. No. 556).  The Fifth Interim Report, filed on December 23, 2020, provided detailed descriptions of the Receiver's activities to implement the Appointment Order and carry-out her Court-ordered duties, including remaining business operations, asset sales, receipts and disbursements, and investor communications.  The report also contains the Receiver's then current assessment of receivership assets and recommendations for the continued administration of the receivership estate.  The reasonable and necessary fees for work in this category during the Fifth Application Period total $11,579.40 (approximately 56.20 hours).

4.    Operations and Asset Sales

The Receiver's time in this category reflects the volume and complexity of issues that arose during the Fifth Application Period in connection with the COVID-19 pandemic crisis and the real and personal property owned and operated by Receivership Entities.  During the Fifth Application Period, the Receiver's staff also worked towards moving out of the corporate headquarter office space. The Sixth Report, including Exhibit A thereto presents a detailed narrative of the status of the receivership estate assets.  The Receiver's progress through December 31, 2020 in monetizing the assets can be summarized as follows:

1.  Ten (10) properties closed in the fourth quarter of 2020, resulting in a total of 28 (includes four (4) leasehold interest and/or liquor license) assets sold as of December 31, 2020; and

    a.  Four (4) of these assets qualified for auction, resulting in notable increased sale prices.

2.  Progress was made towards the sale of five (5) additional real property and leasehold interests which sold in the first and second quarters of 2021.

    a.  Three (3) of these assets qualified for auction, resulting in notable increased sale prices.

3.  The vast majority of the remaining personal property auctions were completed.

It should also be noted that as of the date of this report, the one (1) remaining real property asset with material recoverable value is in escrow, pending Court approval.

While the large volume of the assets and activities is well documented in this case, it is important to remember the level of detailed work necessary to prepare, market and sell each real property, as well as the amount of work previously performed by approximately 70 corporate level employees that has since been performed, necessarily and in large part by the Receiver and her staff (the last of the remaining corporate-level ANI employees ceased at the end of May 2021). As discussed in prior reports, the Receiver and her staff addressed numerous operational-related matters, including insurance, tax, property management and economic improvements of various of the assets (e.g., getting apartment rentals to market rent, commencing evictions where appropriate, resolving pre-receiver issues and recovering tens of thousands of dollars from the California Employment Development Department, among other things).

LAW OFFICES
atkins Leck Gamble

1   Lastly, and while a detailed narrative is presented in the Sixth Report
2   regarding the COVID-19 global pandemic's impact on both continued operations
3   and asset sales, a few summary items are presented herein.  During the Fifth
4   Application Period, the only operations which continued with COVID-19
5   modifications were the vacation rentals, the two remaining Surf Rider Pizza
6   restaurants and the Keller Co-work space, as appropriate.  While operations
7   continued, as allowed, in a modified capacity in order to preserve asset value,
8   revenues from said operations were impacted.

9   Despite the impact of the COVID-19 pandemic on restaurant, co-working,
10  and vacation rental operations, as well as interest from buyers and financing
11  available for real properties, the Receiver was able to continue to make notable
12  progress on the disposition of the portfolio of assets as noted above.  The Receiver
13  continued to list properties for sale, to negotiate offers received, and when deals
14  were reached, to seek Court approval of sales.

15  This category was the single largest portion of work done by the Receiver and
16  her staff, which is appropriate considering the corporate office move, the costs
17  associated with maintaining real and personal property assets and the importance of
18  marketing and selling such assets (e.g., 10 real properties closed in the fourth quarter
19  of 2020) in a prompt and efficient manner, particularly in light of the cumbersome
20  debt on the real properties.  The reasonable and necessary fees for work during the
21  Fifth Application Period in this category total $148,533.25 (approximately 912.70
22  hours).

23  5.   Claims and Distributions

24  During the Fifth Application Period, the Receiver worked to respond to direct
25  inquiries from investors regarding the receivership.  Upon receipt of Court approval
26  thereof, this category is expected to become more material as the Receiver
27  anticipates completing claims and distribution processes. The reasonable and
28

LAW OFFICES
atkins Leck Gamble

necessary fees for work during the Fifth Application Period in this category total $1,284.30 (approximately 5.50 hours).

### 6.    Third-Party Recoveries

During the Fifth Application Period, the Receiver's work in this category related primarily to working to review, investigate and provide support for proposed claims against Chicago Title, as well as to review/facilitate proposed settlements between Chicago Title and investor groups.  Additional work in this category involved initial drafting of the clawback claims motion and proposed communications associated therewith. The reasonable and necessary fees for work during the Fifth Application Period in this category total $5,798.25 (approximately 19.00 hours).

### 7.    Pending Litigation

During the Fifth Application Period, the Receiver's work, albeit minimal, involved updates on the litigation pending in Florida against SunTrust Bank (now known as Truist Bank).  The reasonable and necessary fees in this category total $126.00 (approximately .40 hours).

### 8.    Forensic Accounting

This category focuses on continued preparation of the forensic analysis. Because the Receivership Entities' books and records did not thoroughly reflect investor monies paid into and out of the various entities, a forensic accounting is necessary to determine where the money raised by the Receivership Entities came from, how it was transferred between and among the Receivership Entities, and to whom it was disbursed.  This is an integral project necessary to be able to confirm investor claims and identify claims to recover sums from third parties.

As previously discussed, the ANI entities frequently acted as a conduit to transfer funds to and from Chicago Title, the Third-Party Aggregator Entities (defined below), and individual investors.  Money that was raised from investors was often moved from Chicago Title, through ANI, either to the ANI Business

Entities (defined below) or for use by Gina Champion-Cain or other third parties.
The accounting for these transactions was not accurately maintained by the ANI
accounting department.  The Receiver's accounting thus involves creating
accountings for each account from subpoenaed records where necessary,
reviewing/testing/reconciling ANI accounting detail where it exists, and
categorizing the transactional level detail.

During the Fifth Application Period, the Receiver's team primarily worked on
completing the accounting work for a few final operational, personal and corporate
level accounts, preparing accountings for certain accounts associated with Kim
Peterson and entities he controlled, reconciling and performing detailed review of
the entire forensic accounting to date, testing and performing a detailed review of
investor transactional details, and drafting and filing her Receiver's Investor-
Specific Preliminary Forensic Accounting and Report (Dkt. No. 516-1) on
December 1, 2020.  It is important to note that as the testing procedures progressed,
additional entities and bank accounts were identified.  Thus, critical bank records
and other records held by third parties were obtained as the accounting progressed.

The categories being tested including the following: (1) investor deposits and
disbursements that flowed through Chicago Title, (2) investor deposits and
disbursements that flowed directly to or from various ANI related entities ("ANI
Scheme Entities"), (3) investor deposits and disbursements that flowed through
various third-party recruiter/aggregator entities to either Chicago Title or the ANI
Scheme Entities directly, (4) the ANI businesses which operated legitimate
operations such as the restaurants, specialty shops, rental properties or commercial
buildings ("Business Entities") and all intercompany or inter-account transfers, and
(5) the use of investor funds benefiting Gina Champion-Cain and other third parties.

Due to the complexity and scope of the alleged scheme, the number of
affiliated entities and bank accounts used, the high volume of transfers to, from, and
between Receivership and other entities (over $1 billion), and the lack of a thorough

LAW OFFICES
atkins Leck Gamble

1  and centralized accounting system for investor data, the forensic accounting project

2  took hundreds of hours to complete.  That said, the Receiver filed her Investor-

3  Specific Preliminary Forensic Accounting and Report on December 1, 2020 (Dkt.

4  516-1), an updated investor-specific report was filed on March 31, 2021 (Dkt. No.

5  630), and the Receiver's Forensic Accounting Report was filed on April 30, 2021

6  (Dkt. No. 659).  As a result, significant time continued to be spent on this matter

7  through April 2021.

8        The reasonable and necessary fees for work during the Fifth Application

9  Period in this category total $139,618.00 (approximately 613.60 hours).

10              9.        Summary of Expenses Requested for Reimbursement

11        The Receiver requests the Court approve reimbursement of $70,579.10 in out-

12  of-pocket costs.  The itemization of such expenses is attached hereto as Exhibit B

13  and is summarized below by category.  Other than additional and continued costs

14  incurred in 2020 for the forensic computer data collection, processing and storage,

15  the majority of the expenses incurred relate to work performed by special conflicts

16  counsel who has assisted with several clawback recoveries, which the Receiver

17  necessarily engaged to handle discrete matters for which the Receiver's general

18  counsel has a conflict of interest.  The Receiver also incurred expenses associated

19  with updating the project website for investor access to information and other

20  miscellaneous administrative tasks. Regarding the forensic computer data collection,

21  processing, and storage costs, because the Receivership Entities utilized a

22  combination of onsite and cloud services for hosting their data, an enormous amount

23  of company data was created.  The initial work presented in the First Interim Fee

24  Application included imaging of onsite computer hard drives, server and many

25  individual user emails, and indicated that approximately 80 terabytes of data were

26  identified.  The costs presented herein reflect a continuation of the processing of

27  data collection; additional costs (approximately $43,000) are expected to be incurred

28  to finalize processing of this data.

LAW OFFICES
atkins Leck Gamble

The total reasonable and necessary costs incurred by the Receiver during the Fifth Application Period is $70,579.10 and is broken out by category as follows:

| Category | Total |
|---|---|
| Forensic Computer Data Collection, Processing, Storage | $60,550.00 |
| Special Counsel Legal Fees/Costs | $8,402.60 |
| Website/Phone Maintenance/Updates | $694.97 |
| Duplication & Postage | $372.88 |
| Other Administrative | $265.00 |
| **TOTAL** | **$70,579.10** |

## III.   STANDARDIZED FUND ACCOUNTING REPORT

Attached hereto as Exhibit C is a Standardized Fund Accounting Report, which includes information on receipts and disbursements during the Fifth Application Period.

## IV.   THE FEES AND COSTS ARE REASONABLE AND SHOULD BE ALLOWED

"As a general rule, the expenses and fees of a receivership are a charge upon the property administered."  *Gaskill v. Gordon*, 27 F.3d 248, 251 (7th Cir. 1994). These expenses include the fees and expenses of this Receiver and his professionals, including Allen Matkins.  Decisions regarding the timing and amount of an award of fees and costs to me and his Professionals are committed to the sound discretion of the Court.  *See SEC v. Elliot*, 953 F.2d 1560, 1577 (11th Cir. 1992) (rev'd in part on other grounds, 998 F.2d 922 (11th Cir. 1993)).

In allowing fees, a court should consider "the time, labor and skill required, but not necessarily that actually expended, in the proper performance of the duties imposed by the court upon the Receiver, the fair value of such time, labor and skill

measured by conservative business standards, the degree of activity, integrity and dispatch with which the work is conducted and the result obtained." *United States v. Code Prods. Corp*., 362 F. 2d 669, 673 (3d Cir. 1966) (internal quotation marks omitted).  In practical terms, receiver and professional compensation thus ultimately rests upon the result of an equitable, multi-factor balancing test involving the "economy of administration, the burden that the estate may be able to bear, the amount of time required, although not necessarily expended, and the overall value of the services to the estate." *In re Imperial 400 Nat'l, Inc*., 432 F.2d 232, 237 (3d Cir. 1970).  Regardless of how this balancing test is formulated, no single factor is determinative and "a reasonable fee is based [upon] all circumstances surrounding receivership." *SEC v. W.L. Moody & Co., Bankers (Unincorporated)*, 374 F. Supp. 465, 480 (S.D. Tex. 1974).

As a preliminary matter, the Appointment Order confers on the Receiver substantial duties and powers, including to conduct such investigation and discovery as is necessary to locate and account for all receivership assets, take such action as is necessary and appropriate to assume control over and preserve receivership assets, and employ attorneys and others to investigate and, where appropriate, institute, pursue, and prosecute all claims and causes of action of whatever kind and nature. *See* Appointment Order, Part X.  The Court also approved the Receiver's proposal to file interim reports and fee applications on a quarterly basis.  Dkt. 126.

The Receiver has submitted a detailed fee application which describes the nature of the services rendered, and the identity and billing rate of each individual performing each task.  *See* Exhibit A.  The Receiver endeavors to staff matters as efficiently as possible, while remaining cognizant of the complexity of issues presented.  The request for fees is based on the Receiver's customary billing rates charged for comparable services provided in other matters, less a 10% discount.

The work performed by the Receiver was critically essential to carrying out her Court-ordered duties and preserving and monetizing the net asset value of the

LAW OFFICES
atkins Leck Gamble

1  assets in the receivership estate.  The Receiver and Allen Matkins have worked
2  diligently since the Receiver's appointment to preserve and protect the assets of
3  receivership estate.  Moreover, the Receiver seeks payment of only 80% of fees
4  incurred on an interim basis in recognition of the fact that her work is ongoing.
5  Payment of the proposed 20% holdback will be sought at the conclusion of
6  receivership.  The Receiver's fees are fair and reasonable and should be approved
7  and paid on an interim basis.

8  **V.      CONCLUSION**

9        The Receiver therefore respectfully requests this Court enter an Order:

10       1.      Approving the Receiver's fees, on an interim basis, of $327,895.70;

11       2.      Authorizing and directing the Receiver to pay 80% of approved fees, or

12  $262,316.56, from the assets of receivership estate;

13       3.      Approving the Receiver's costs in the amount of $70,579.10, and

14  authorizing and directing reimbursement of such costs in full; and for such other and

15  further relief as the Court deems appropriate.

16

17  Dated:  October 13, 2021                    By:

18                                                        KRISTA L. FREITAG
                                                          Court-appointed Receiver
19

20

21

22

23

24

25

26

27

28