UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>GINA CHAMPION-CAIN AND ANI DEVELOPMENT, LLC,<br><br>Defendants, and<br><br>AMERICAN NATIONAL INVESTMENTS, INC.,<br><br>Relief Defendant. | Case No.: 3:19-cv-1628-LAB-AHG<br><br>**ORDER GRANTING RECEIVER'S MOTION FOR APPROVAL OF SALE OF 1775 DIAMOND PROPERTY**<br><br>[ECF No. 707] |

## I. BACKGROUND

As described in prior orders, *see, e.g.*, ECF Nos. 54, 162, 163, this is an action brought by the Securities and Exchange Commission ("SEC") against Defendants ANI Development, LLC ("ANI Development") and Gina Champion-Cain and Relief Defendant American National Investments, Inc. ("ANI Inc."), alleging violations of federal securities laws based on a purportedly fraudulent liquor license loan scheme. ECF No. 1.

1

On September 3, 2019, the Court established an equitable receivership and appointed Krista L. Freitag ("Receiver") as a permanent receiver of ANI Development and ANI Inc., authorizing her to take control over all funds and assets owned, managed, or in the possession or control of the receivership entities. *See* ECF No. 6 at 14-16. In that role, the Receiver acts under the control and direction of the Court to facilitate the "orderly and efficient administration of the estate . . . for the benefit of creditors." *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986). *See also Atl. Tr. Co. v. Chapman*, 208 U.S. 360, 370 (1908) (explaining that a motion to appoint a receiver to take charge of property is "to the end that the property might be cared for and preserved for all who had or might have an interest in the proceeds of its sale. . . . Immediately upon such appointment and after the qualification of the receiver, the property passed into the custody of the law, and thenceforward its administration was wholly under the control of the court by its officer [], the receiver."). On December 11, 2019, the presiding judge in this action, Judge Burns, granted the parties' Joint Motion (ECF No. 156) to give limited consent to the undersigned to hear and directly decide all motions filed in this action to approve sales of receivership assets. ECF No. 160. *See also* 28 U.S.C. § 636(c); CivLR 72.1(g). All property sale motions are set before the undersigned pursuant to that grant of consent.

On September 22, 2021, the Receiver filed her Second Motion for Approval of Sale of 1775 Diamond Property (the "1775 Diamond Motion"). ECF No. 707. The motion concerns one of the residential real properties within the receivership estate, a condominium located at 1775 Diamond Street, #301, San Diego, California 92109 (the "1775 Diamond Property"). *See* ECF No. 707-1 at 5; ECF No. 76-2 at 6 (listing the 1775 Diamond Property in the Preliminary Real Estate and Liquor License Asset Schedule filed on October 3, 2019).

This is the Receiver's Second Motion seeking approval of the sale of the 1775 Diamond Property. The Court previously approved the Receiver's first Motion for Approval of Sale of 1775 Diamond Property (ECF No. 684) on July 20, 2021 to buyer Abdullah Hafid, for a purchase price of $419,000. *See* ECF No. 695. However, Mr. Hafid

failed to close the sale transaction, thus forfeiting his earnest money deposits totaling $12,570, and the Receiver put the property back on the market. ECF No. 707-1 at 5. The Receiver now seeks approval of the sale of the property to a new buyer at a purchase price of $425,000. *Id.* at 7.

On September 22, 2021, the Court entered an order setting a briefing schedule and a November 1, 2021 hearing on the 1775 Diamond Motion. ECF No. 708. The Court set a deadline of October 14, 2021 for responses in opposition to the motion, and noted that "[i]f no opposition is filed by the deadline, and the overbid submission deadline has passed with no overbids, the Court may take the motion under submission without oral argument." *Id.* at 2. No opposition was filed. Further, bid qualifications from prospective bidders seeking to submit overbids pursuant to the notice and auction process set forth in 28 U.S.C. §§ 2001 and 2002 (described in more detail below) were due by October 18, 2021. *See* ECF No. 707-1 at 11. The Receiver filed a Notice of Non-Receipt of Qualified Overbids regarding the 1775 Diamond Motion on October 19, 2021. ECF No. 717. Accordingly, the Court vacated the hearing and took the motion under submission on October 20, 2021. ECF No. 718.

For the reasons explained more fully below, the Court **GRANTS** the 1775 Diamond Motion (ECF No. 717).

II.   **LEGAL STANDARD**

"[I]t is a recognized principle of law that the district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership." *SEC v. Lincoln Thrift Ass'n*, 577 F.2d 600, 606 (9th Cir. 1978). Where a district court sits in equity, "[u]nless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied. 'The great principles of equity, securing complete justice, should not be yielded to light inferences, or doubtful construction.'" *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946).

"[A] district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad." *Hardy*, 803 F.2d at 1037. As part of this broad discretion, the district court sitting in equity and having custody and control of property "has power to order a sale of the same in its discretion. The power of sale necessarily follows the power to take control of and to preserve property[.]" *SEC v. Am. Capital Investments, Inc.*, 98 F.3d 1133, 1144 (9th Cir. 1996), *abrogated on other grounds by Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998) (quoting 2 Ralph E. Clark, Treatise on Law & Practice of Receivers § 482 (3d ed. 1992)). If the court approves an equitable receiver's proposed property sale, the sale "does not . . . purport to convey 'legal' title, but rather 'good,' equitable title enforced by an injunction against suit." *Id.* (citing 2 Clark, Treatise on Law & Practice of Receivers, §§ 342, 344, 482(a), 487, 489, 491).

Pursuant to 28 U.S.C. § 2001(a), realty in the possession of an appointed receiver is subject to a public sale process, "upon such terms and conditions as the court directs." 28 U.S.C. § 2002 further requires that notice be published once a week for at least four weeks prior to the sale in at least one newspaper regularly issued and of general circulation in the county, state, or judicial district where the realty is located.[1] These safeguards of notice and opportunity to submit overbids help to ensure that the sale is able to fetch the best price possible, which is consistent with the principle that "a primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." *Hardy*, 803 F.2d at 1038. *See also United States v. Grable*, 25 F.3d 298, 303 (6th Cir. 1994) (noting that "the intent of" the requirement in 28 U.S.C. § 2001 that property be sold in the county in which the land is situated is "to bring a better price at the sale").

---

[1] 28 U.S.C. § 2001 also provides for a private sale process under subsection (b), but the requirements of that subsection are more stringent. The Receiver does not propose a private sale here.

### III.  DISCUSSION

**A. Background of the Property and Proposed Sale**

The 1775 Diamond Property is a condominium that was purchased in June 2016 by the Gina Champion Cain Revocable Trust for $300,000. ECF No. 707-1 at 5. In August 2016, ownership was then transferred first to 6050 El Cajon Blvd LLC and, days later, to current owner (and receivership entity) 2466 1st Avenue LLC. *Id.*

At the time of the Receiver's appointment, the condominium was leased to and occupied by a former employee of Defendant ANI Development, LLC ("ANI"). *Id.* The ANI employee stopped paying rent shortly after the Receiver's appointment, but the Receiver's efforts to evict the tenant were delayed due to the COVID-19 eviction moratorium. *Id.* The Receiver and the tenant eventually reached an agreement for the tenant to vacate the property in March 2021. *Id.*

Following her appointment, the Receiver and her staff analyzed the value of the 1775 Diamond Property by reviewing automated valuation scores and a survey of market-comparable properties. *Id.* The Receiver consulted with multiple licensed brokers about the value of the property and the terms of a potential listing agreement, ultimately selecting Pacific Pines Real Estate ("Broker") and listing the property for sale at $419,000 on April 12, 2021. *Id.*

Broker marketed the 1775 Diamond Property by creating marketing flyers and listing the property on various websites, including local MLS. *Id.* at 6. There was significant interest in the property, and two offers were initially received, including an offer from previously approved buyer Abdullah Hafid for $419,000 (the previously approved sale price). *Id.*; *see also* ECF Nos. 684, 695.

After Court approval of the sale was obtained, Mr. Hafid declined to close the sale transaction and forfeited his earnest money deposit of $12,570 to the receivership estate. ECF No. 707-1 at 6. Broker put the property back on the market and thereafter received two additional offers. *Id.* Through Broker, the Receiver negotiated terms with the

prospective buyers, and the property went into escrow again with Jordan Johnson and Malia Wooten ("Buyer") on September 1, 2021, with a purchase price of $425,000. *Id.*

The Receiver and Buyer executed a California Residential Purchase Agreement and Joint Escrow Instructions ("Purchase Agreement"), along with an Addendum making court approval of the sale a condition to closing and providing for the overbid and auction process required by 28 U.S.C. §§ 2001 and 2002. *See* ECF No. 707-3. Buyer has deposited $5,000 into escrow. ECF No. 707-1 at 7.

### B. Proposed Procedures and Distribution

In the motion seeking approval of the sale, the Receiver proposed compliance with the overbid and auction process mandated by 28 U.S.C. §§ 2001 and 2002 by publishing the following notice in the San Diego Union-Tribune once a week for four weeks:

> In the action pending in U.S. District Court for the Southern District of California, Case No. 19-CV-01628-LAB-AHG, Securities and Exchange Commission v. Gina Champion-Cain, et al., notice is hereby given that the court-appointed receiver will conduct a public auction for the real property located at 1775 Diamond Street, #301, in San Diego County, California. Sale is subject to Court confirmation after the auction is held. Minimum bid price is at least $430,000. The auction will take place on October 21, 2021 at 1:30 p.m. in front of the entrance to the United States Courthouse, 221 W. Broadway, San Diego, California or as otherwise determined by the Court. To be allowed to participate in the auction, prospective purchasers must meet certain bid qualification requirements, including submitting a signed purchase and sale agreement, an earnest money deposit of $5,500, and proof of funds. All bidders must be qualified by 5:00 p.m. PT on October 18, 2021, by submitting the required materials to the receiver at 501 West Broadway, Suite 290, San Diego, California, 92101.

ECF No. 707-1 at 11. For those interested in qualifying as bidders, the notice also provided a phone number and email address for the relevant point of contact. *Id.*

As previously noted, the Receiver filed a Notice of Non-Receipt of Qualified Overbids regarding the 1775 Diamond Property on October 19, 2021. ECF No. 717. In the Notice, the Receiver informs the Court that, after filing the second 1775 Diamond Motion, and in addition to publishing the above notice in the San Diego Union-Tribune as proposed,

she posted notice of the Motion on the receivership website anireceivership.com, and continued to market the property through Broker and notify potential purchasers about the opportunity to submit an overbid by October 18, 2021. *Id.* at 2. No overbids were submitted by the deadline. *Id.* Therefore, Jordan Johnson and Malia Wooten remain the intended Buyer.

Turning to the proposed distribution of the $425,000 purchase price, the Receiver estimates that the receivership estate will owe approximately $825 in property taxes after closing. ECF No. 707-1 at 6. The Receiver also estimates that costs of sale including escrow, title and recording fees will be approximately $3,500. *Id.* at 7. The Receiver has also agreed to give Buyer a $5,000 credit for repairs. *Id.* Broker's commission pursuant to the listing agreement is $17,000, or 4% of the sale price, with 2.5% of the commission going to Buyer's broker. *Id.* at 6-7. The 1775 Diamond Property is not encumbered by any debt. Based on these estimates, the Receiver anticipates that the net sale proceeds for the receivership estate will be approximately $398,675. *Id.* at 7.

### C. Court Approval of Procedures and Proposed Sale

The Court has reviewed the documents submitted by the Receiver in support of the second 1775 Diamond Motion, including the Purchase Agreement, and finds the purchase price of $425,000 to be fair and reasonable, for the same reasons it previously approved the sale of the same property for $419,000 with a nearly identical estimated return to the receivership estate.

Once again, the sale price exceeds the June 2016 purchase price of the property by a significant amount (here, $125,000), representing a return of over 40%. Although the sale to the first buyer fell through, the Receiver—through Broker—was able to obtain an even higher offer for the property from the current Buyer, above the original list price, which indicates that the Receiver has prioritized receiving a good value for the property over completing the sale quickly. Additionally, the proposed total commission of 4% of the gross sales price, with 2.5% going to Buyer's broker, is within the range of industry standards. The Court further finds the Receiver has demonstrated that Broker adequately

1 marketed and advertised the property to be sure to fetch fair market value for the property.
2 *See* ECF No. 707-1 at 6.

3       As for the procedures followed, the Court finds that all of its uniform property sale procedures have been satisfied. *See* ECF No. 219. The Receiver's publication of notice seeking qualified overbids in the San Diego Union-Tribune, in addition to the solicitation of overbids through the receivership website and continued efforts to market the property even after the property went into escrow with both the previous and the current Buyer, establish that the Receiver satisfied the public sale and auction procedures set forth in 28 U.S.C. §§ 2001 and 2002, which are designed to ensure that the best purchase price for realty within the receivership is obtained. Upon review of the factual history and the Purchase Agreement itself, the Court finds the Purchase Agreement was negotiated at arm's-length and, further, that the Receiver implemented sufficient safeguards by way of the notice and overbid process to garner the highest possible price for the property. The Court is thus satisfied that the intent of the statutory scheme—to ensure that the best and highest possible price is paid for property within the receivership estate—has been fulfilled.

      Based on these considerations, and noting the lack of opposition, the Court finds the Receiver has sufficiently established that the proposed sale of the 1775 Diamond Property and proposed distribution of the sale proceeds are consistent with principles of equity and the goal of a receivership to ensure the orderly and efficient administration of the estate for the benefit of creditors. *See Hardy*, 803 F.2d at 1038.

### IV.  CONCLUSION

      Having considered the Receiver's Second Motion for Approval of Sale of 1775 Diamond Property (the "Motion") (ECF No. 707) on its merits, and noting that there is no opposition thereto, the Court **GRANTS** the Motion, and **APPROVES** the proposed sale of the condominium located at 1775 Diamond Street, #301, San Diego, California 92109, as described in the Residential Purchase Agreement and Joint Escrow Instructions attached as Exhibit A to the Declaration of the Receiver (ECF No. 707-3), by Krista L. Freitag, as

receiver, to Jordan Johnson and Malia Wooten or their designee ("Buyer"). The purchase price of $425,000 for the 1775 Diamond Property is confirmed and approved.

The Court further **ORDERS** the proceeds of the sale to be distributed from escrow at the close of sale as follows:

(1) The Receiver is authorized to pay the property taxes, which are estimated to be $825 (with the exact amount to be determined at closing);

(2) The Receiver is authorized to pay the costs for title, escrow, and recording, which are estimated to be $3,500 (with the exact amount to be determined at closing);

(3) The Receiver is authorized to pay the repair credit at closing in the amount of $5,000;

(4) After the aforementioned estimated amounts are paid, along with the commission owed to the Receiver's broker, the net sale proceeds, which are estimated to be approximately $398,675 (with the exact amount to be determined at closing), shall be paid to the receivership estate; and

(5) The Receiver is immediately authorized to complete the sale transaction, including executing any and all documents as may be necessary and appropriate to do so.

**IT IS FURTHER ORDERED** that after closing, the Receiver shall provide a full accounting of sale costs, property taxes paid, and the amount ultimately returned to the receivership estate from the sale proceeds.

**IT IS SO ORDERED.**

Dated: November 2, 2021

_____
Honorable Allison H. Goddard
United States Magistrate Judge