DAVID R. ZARO (BAR NO. 124334)
MICHAEL R. FARRELL (BAR NO. 173831)
ALLEN MATKINS LECK GAMBLE
   MALLORY & NATSIS LLP
865 South Figueroa Street, Suite 2800
Los Angeles, California 90017-2543
Phone: (213) 622-5555
Fax: (213) 620-8816
E-Mail: dzaro@allenmatkins.com
         mfarrell@allenmatkins.com

EDWARD G. FATES (BAR NO. 227809)
ALLEN MATKINS LECK GAMBLE
   MALLORY & NATSIS LLP
One America Plaza
600 West Broadway, 27th Floor
San Diego, California 92101-0903
Phone: (619) 233-1155
Fax: (619) 233-1158
E-Mail: tfates@allenmatkins.com

Attorneys for Receiver
KRISTA FREITAG

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>  Plaintiff,<br><br>  v.<br><br>GINA CHAMPION-CAIN and ANI DEVELOPMENT, LLC,<br><br>  Defendants,<br><br>AMERICAN NATIONAL INVESTMENTS, INC.,<br><br>  Relief Defendant. | Case No. 3:19-cv-01628-LAB-AHG<br><br>**RECEIVER'S NINTH INTERIM REPORT AND RECOMMENDATIONS**<br><br>Ctrm:  14A<br>Judge: Hon. Larry Alan Burns |

0.0

# **TABLE OF CONTENTS**

| | | Page |
|---|---|---|
| I. | BACKGROUND | 4 |
| II. | EXECUTIVE SUMMARY | 4 |
| III. | SUMMARY OF RECEIVER'S ACTIVITIES | 5 |
| | A. Third Quarter 2021 Funds Recovered | 5 |
| | B. Status of Real and Personal Property Assets | 6 |
| | C. Property Taxes | 8 |
| | D. Insurance | 8 |
| | E. Debt Service | 8 |
| | F. Loans and Other Investments | 9 |
| | G. Investigation of Third-Party Claims | 10 |
| | H. Receivership Estate Operations | 11 |
| | I. Pending Litigation | 11 |
| | J. Claims Process & Taxes | 12 |
| | K. Receipts and Disbursements | 13 |
| | L. Investor/Creditor Communications | 14 |
| IV. | CONCLUSION | 14 |
| | 1. Document Recovery Efforts | 15 |
| | 2. Asset Investigation and Recovery Efforts | 15 |
| | 3. Accounting | 15 |
| | 4. Continuation of Receivership | 16 |

# TABLE OF AUTHORITIES

**Statutes**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**Page(s)**

28 U.S.C. § 2002 ................................................................................................... 4

28 U.S.C. § 2001 ................................................................................................... 4

Krista Freitag ("Receiver"), the Court-appointed permanent receiver for Defendant ANI Development, LLC, Relief Defendant American National Investments, Inc., and their subsidiaries and affiliates ("Receivership Entities"), hereby submits her Ninth Interim Report and Recommendations ("Ninth Report").

## I. BACKGROUND

This equity receivership involves a large, complex, and wide-ranging group of enterprises and assets which are the subject of the Complaint filed by the United States Securities and Exchange Commission ("Commission"). This quarterly report covers the Receiver's activities during the third quarter of 2021 and reflects the status of certain assets as of the date of this report, if material activity has occurred between September 30, 2021 and the date of this report.

## II. EXECUTIVE SUMMARY

As previously reported, the receivership estate assets were primarily comprised of cash, 33 commercial and residential properties, 27 restaurant and retail operations, not including commissary kitchen operations (both owned and leased properties), voluminous personal property (including restaurant equipment, product inventory, retail merchandise, liquor licenses and intellectual property associated with the operations of the enterprise), various notes receivable or equity investments made by the Receivership Entities, and potential causes of action. During the third quarter of 2021, the Receiver continued to make steady progress in marshalling the Receivership Entities' assets, and otherwise discharging her duties. Those efforts include participating in Court-ordered settlement conferences, pursuing significant clawback recoveries and associated documentation review, and continued preparation for implementation of the claims process. The Receiver also continued the marketing, sale or alternative resolution process for all of the real property assets using procedures consistent with the requirements of 28 U.S.C. §§ 2001-2002 and following the Court's Order Establishing Uniform Property Sale Procedures (Dkt. 219).

As of the date of this report, all real property and nearly all personal property assets have been monetized or otherwise resolved. The remaining personal property value is expected to be negligible and consists of a few art pieces that have been difficult to sell and electronic assets that are being held out of abundance of caution until it is determined that they are no longer needed. During the period, the Receiver re-listed 1775 Diamond, negotiated an offer and sought Court approval for the sale. That sale was recently closed after the Court's approval of the sale motion (Dkt. 720). Finally, two liquor license sales were finalized and a third is currently in escrow.

To date, the Receiver has closed sales of real properties and leasehold interests (including associated liquor licenses) with an aggregate gross sale price of over $40 million. As previously discussed, all but one real property was encumbered with significant debt. In connection with the Court-approved sale closings, the Receiver paid off nearly $24 million in secured debt through escrow, thereby eliminating those secured claims against the receivership estate.

As discussed herein, the Receiver and her professionals have made an extraordinary amount of progress, however, work remains to be done – notably on the settling of or filing complaints on clawback claims, pursuing causes of action against third parties, and completing a claims and distribution process.

### III. SUMMARY OF RECEIVER'S ACTIVITIES

**A.     Third Quarter 2021 Funds Recovered**

With the sales of real property, business interests and personal property, the Receiver has recovered additional funds for the benefit of investors. A few recovery highlights during the third quarter of 2021 include:

- $104,843 recovered in the sale of the liquor licenses associated with the former Himmelberg's and Fireside restaurants.

- $554,487 recovered in the Court-approved settlement with William Adams and his law firm, Norton Moore & Adams ("Adams Parties").[1]
- $1,130,336 representing 36 clawback settlements.[2]

As discussed below, the Receiver's tangible asset sales are nearly complete, however, recovery efforts are ongoing.

Additional recovery detail through the third quarter of 2021 is included on the receipts and disbursements schedule attached hereto as Exhibit B.

### B. Status of Real and Personal Property Assets

Throughout this case, the Receiver has taken significant steps to implement the Appointment Order, including managing all assets controlled, operated, leased, or owned by the Receivership Entities. Attached as Exhibit A is an updated schedule of all known real property, businesses/operations, third-party investments/loans, and liquor license assets of the Receivership Entities. Notes and applicable recoveries and/or estimated values are included therein.

The following summarizes the status of the Receiver's real-time progress on real and personal property asset dispositions:

1. 29 real property, and three (3) leasehold interest (with personal property), sales have been completed.
2. Sales of liquor licenses and personal property associated with eight (8) former restaurant operations (Patio on Goldfinch, Patio 101, Chicken Pharm in Petaluma, La Mesa Surf Rider, Ocean Beach Surf Rider, Mission Beach Surf Rider, Himmelberg's and Fireside) have been

---

[1] The Receiver expects to recover additional funds under the settlement agreement with the Adams Parties -- $150,000 of insurance proceeds were held by the insurance carrier in reserve for one year and are to be released to the Receiver at the end of that period, unless such funds have been used to defend claims made against the Adams Parties.

[2] As of the date of this report, over $3.2 million of payments, representing 56 clawback settlements, have been received.

   completed. One (1) liquor license sale (Patio on Lamont) is currently pending ABC approval.

3. Seven (7) joint motions concerning real properties (for which limited ownership-related expenses have been paid by the receivership estate on a net, aggregate basis) were filed and approved by the Court for limited relief from the Receivership stay order.

 a. Three (3) foreclosures have occurred – the former Patio on Lamont, Hancock Street corporate office, and former Himmelberg's (also known as 10th and J Street) properties.

 b. One (1) property is in the process of being resolved by the interested parties, *i.e.*, general contractor and lender (301 D. Street Property).

 c. Two (2) properties were sold by the Receiver (in lieu of foreclosure); these transactions closed on October 30, 2020 (7569-7571 University Property) and January 22, 2021 (901 – 915 West Washington Property).

 d. The Bandini Street property, which was owned by Ms. Champion-Cain and her husband Steven Cain, was refinanced with Court approval, resulting in a $1.3 million[3] payment to the receivership estate.

4. The Receiver has completed auctions for most of the personal property. Based upon the best information currently available, the Receiver currently estimates the total net sales proceeds from the assets listed on Exhibit A to be approximately $16 million[4]. To date, over $15.9 million has been recovered and an additional $165,000 is currently in escrow.

---

[3] This number has never been included on Exhibit A or in the Receiver's net sale recovery estimates.

[4] This estimate does not include the $1.3 million recovery from the Bandini Street Property.

As previously discussed, the extensive secured debt encumbering the assets had a substantial impact on the gross numbers presented in prior reports (and as presented in the current version of) Exhibit A, thus the net sale proceeds for most of the assets are small (relative to the prior or currently estimated market values of the assets, as applicable). It is important to note that the $16 million estimate does not and has never included any amounts associated with potential recoveries from clawback claims, causes of action or third-party recoveries not reflected specifically on Exhibit A hereto (discussed further below). It also is reflective of actual net sales proceeds and does not reflect revenue or expenses associated with the listed assets leading up to the sale thereof.

**C.**     **Property Taxes**

As the final real property was sold, no further property tax obligations are expected.

**D.**     **Insurance**

As the final real property was sold, the final property and general liability policy was cancelled. As no employees remain, the related insurance policies (e.g., health insurance and worker's compensation) have been cancelled; however, a one-year tail on the EPLI claims made policy has been purchased. The worker's compensation insurance final audit has been completed, resulting in a refund during the period.

As previously discussed, the Receiver filed a claim against the insurance policy covering theft and other criminal acts arising from the actions of the former Chief Financial Officer of ANI, Crispin Torres. The claim has been denied; however, the Receiver has not accepted such denial and continues to pursue the claim with the carrier.

**E.**     **Debt Service**

Since appointment, the Receiver maintained effective working relationships with the various lenders. As a result of these efforts, two properties that were

previously earmarked for foreclosure were sold by the Receiver and approximately $629,000 of additional net sale proceeds were recovered. Additionally, various agreements were made to avoid default interest that could have been applicable under the initial circumstances of the case; as an example, these efforts saved nearly $500,000 with one lender.

**F.     Loans and Other Investments**

Through her investigation, meetings, and document review, the Receiver identified numerous loans and investments made by Champion-Cain and the Receivership Entities, as well as associated business interests and assets. Based upon interviews with Champion-Cain and records reviewed by the Receiver, it appears that millions of dollars were spent in connection with investments in various enterprises and loans to third parties. The Receiver has recovered certain of these items to date (see Exhibit A) and will continue efforts to do so in a cost-effective manner. It is important to note that many of these investments or loans were highly speculative with few cost-effective alternatives for recovery.

During the period, the Receiver, as a noteholder for BayMedica, a cannabis/pharmaceutical company, signed documents allowing the sale of the company to a publicly listed Canadian pharmaceutical company. The debt was converted to equity and the Receiver has received shares in the acquiring company along with a small amount of cash. The shares and cash are held in escrow until the fourth quarter of 2022, however, based on the current share price, it is anticipated that the funds invested will be substantially recovered.

Other loans/investments appear to be significantly less likely to pay as the underlying investments are the subject of litigation (Trek Partners), or a product that is still in the startup phase with few orders (Dash Wagon). The Receiver continues to make progress reaching out to other investments to assess the likelihood of recovery.

Finally, the Receiver reached out to two of the major co-owners of the Receivership Entities largest investment, Casa del Zorro, to inquire if either investor would be interested in buying out the Receivership Entities interest. One party declined to consider the purchase and the other offered to purchase the investment at a significant discount.

**G.     Investigation of Third-Party Claims**

The Receiver is aware of significant claims against third parties for the substantial losses suffered by the Receivership Entities and indirectly, the investors and creditors of the Receivership Entities. The Receiver has identified certain third parties who directly or indirectly aided and abetted the principals of the receivership entities in wrongful conduct resulting in tens of millions of dollars of losses.

With respect to Chicago Title, the Receiver has filed a motion seeking authority to file a related action in this Court against Chicago Title. Dkt. 323. An initial hearing on the motion was held on August 26, 2020, a continued hearing occurred on December 17, 2020, and a further hearing was held on April 12, 2021; this motion is pending Court approval.

The Receiver has also been in contact with other third parties who had a role in the ANI scheme regarding claims held by the receivership estate. This includes professionals engaged by the Receivership Entities prior to the Receiver's appointment. The Receiver negotiated and completed a settlement with one such former professional (William Adams); her motion for approval of this settlement was approved by the Court. Dkt. 682.

The Receiver attended a mediation in May 2021 and agreed to attend a follow-up mediation in September 2021 with another former professional. To the extent the discussions with other third parties do not result in settlement, the Receiver will seek authority to pursue claims against them.

The Receiver has also received authorization to proceed with claims to recover profits, referral fees, commissions and other amounts paid to profiting

investors and other third parties ("Clawback Claims"). Dkt. 551. The Receiver, through her counsel, has been in communication with profiting investors and other third parties to discuss Clawback Claims and potential settlements. The Receiver has since signed settlement agreements for 56 Clawback Claims and anticipates that additional settlements may be reached soon. When settlements within the Court-approved settlement parameters cannot be reached (and several large Clawback Claims have thus far not settled), the Receiver has filed 11 Clawback actions, and is prepared to initiate additional actions, if deemed appropriate, to recover on Clawback Claims.

The Clawback Actions that have been filed thus far have been transferred to this Court as related actions. The Receiver's counsel has been in communication with Magistrate Judge Goddard's chambers to schedule ENE conferences in these actions.

**H.  Receivership Estate Operations**

The Receiver continues to engage the temporary, part-time, human resources and tax specialist to assist with the wind-down of the various entities and related tasks. That employee continues to work remotely and typically works only a few hours a week at minimal cost. The IT vendor, AMA Networks, continues to monitor the corporate network operations for a minimal monthly charge and responds to requests on an as-needed basis. The remaining general operational work is completed by the Receiver's staff, as needed.

Concurrent with the sale of the 3816 Mission Blvd/733 Salem Court property and the resignation of the final employee, the Receiver closed the corporate office of the Receivership Entities and transferred servers, related IT, records, and the remaining assets to the Receiver's San Diego office or to Iron Mountain storage.

**I.  Pending Litigation**

At the time of the Receiver's Appointment, there were two pending litigation matters involving the Receivership Entities. In one of these matters, one of the

Receivership Entities had been sued in San Diego Superior Court by a former employee. This case has been stayed because of the litigation stay contained in the Appointment Order.

In the other pending case, one of the Receivership Entities, Westlink Development, LLC ("Westlink"), along with other co-plaintiffs, had sued SunTrust Bank in Pinellas County, Florida. Westlink was being represented by counsel located in San Diego, as well as a firm located in Florida (which was also representing the co-plaintiffs). Both firms were being paid on an hourly basis and Westlink was advancing all fees and costs for the other co-plaintiffs.

The Receiver, with assistance of her counsel, gathered information about the case, spoke to the lawyers in San Diego and Florida, and spoke to the two remaining co-plaintiffs. The Receiver, one of the co-plaintiffs, and the firm in Florida ultimately agreed, subject to Court approval, on a new proposed contingent fee arrangement and allocation of the net recovery. The Receiver filed a motion seeking authority to engage the Florida law firm as special counsel and for approval of the parties' agreement, which was approved on April 23, 2020. Dkt. 313. The litigation is now proceeding in the Florida state court for Pinellas County.

**J.      Claims Process & Taxes**

The Receiver filed her Motion for Order (1) Approving Procedures for the Administration of Claims against the Receiver Estate; (2) Setting Claims Bar Date; and (3) Approving Claims Bar Date Notice and Proof of Claim Forms (Dkt. No. 681). That motion was granted by the Court (Dkt. No. 716) on October 14, 2021. Primarily on November 2, 2021, the Receiver sent out the relevant proof of claim form packages to known investors and creditors of the Receivership Entities. Investors and creditors must submit their claims back to the Receiver so they are received on or before December 31, 2021 (the "Claims Bar Date"). The Receiver is to file a motion to approve or deny claims and seek approval of a distribution plan within 150 days of the Claims Bar Date.

Once the foregoing process is complete and after consultation with tax professionals as to the propriety of transmitting the IRS Form 1099 to investors in these circumstances, the Receiver will notify the investors as to how Form 1099s will be handled.

In any event, it is important to note that the Receiver cannot provide tax advice to investors and each investor should consult with their own tax accountant or counsel regarding the appropriate tax reporting for their investments in the Receivership Entities.

Regarding the Receivership Entities' tax returns, the Receiver continues to make progress on the tax returns for 70 separate entities. A significant number of prior year returns (2016, 2017 & 2018) had not been completed at the time of the Receiver's appointment. The Receiver will continue to file Receivership Entity tax returns, as necessary, in the most cost-effective and efficient manner possible.

**K.     Receipts and Disbursements**

The following reflects the cash activity in the receivership estate from the inception of the receivership on September 3, 2019 through September 30, 2021. A summary of the receipts and disbursements is as follows:

| | |
|---|---|
| Bank Balance at 09/03/2019[5] (accounts listed in Appointment Order) | $368,614 |
| Additional Bank Account Recoveries post-takeover | $1,447,947 |
| Chicago Title Funds Received | $11,311,344 |
| Total Receipts | $26,681,393 |
| Total Disbursements | ($14,999,397) |
| **Ending Bank Balance at 09/30/2021** | **$24,809,902** |

A more detailed summary of the receipts and disbursements is attached hereto as Exhibit B. As noted above, since September 30, 2021 through the date of this

---

[5] While September 3, 2019 is the date of the Appointment Order, the order was entered late in the afternoon, and the takeover occurred on September 4, 2019, so certain bank activity occurred (including certain September rents and debt service payments) on September 3rd, prior to the freeze order taking effect.

report, the Receiver has realized more than $1.9 million in additional net sales proceeds and third party recoveries, including recoveries on Clawback Claims.

**L.     Investor/Creditor Communications**

The Receiver continues to maintain a dedicated website which is being used to provide case information, regular updates, and answers to frequently asked questions to investors and creditors.  The website is not intended to duplicate the Court's electronic case filing system for this case, but it is intended to provide investors with important information about the receivership.  The Internet address for the website is: www.anireceivership.com.  In addition, the Receiver maintains a dedicated e-mail address (ani@ethreeadvisors.com) and telephone line for investor and creditor inquiries.  The Receiver has had her staff attempt to respond to investor and creditor correspondence to acknowledge receipt of their correspondence (via email and/or phone).

The Receiver has provided communications directing all investors and creditors to the receivership website for further notices, information, and updates, and notifies them of the opportunity to subscribe to the receive automatic periodic e-mail updates with links to reports and other relevant documents filed with the Court. Investors and creditors are reminded of the importance of maintaining current contact information with the Receiver's office to ensure receipt of important information relating to the claims approval process, distributions, and other important updates.

## IV.     CONCLUSION

The Receiver's efforts to marshal and recover assets and relevant Receivership Entity documents and records are ongoing.  The Receiver and her professionals make the following recommendations regarding the continued administration of the receivership.

### 1. **Document Recovery Efforts**

The Receiver continues to obtain records from all financial institutions where the Receivership Entities or other relevant parties maintained accounts as well as from attorneys and accountants engaged by the Receivership Entities. The Receiver has served subpoenas on certain institutions, individuals, and entities and proposes to proceed with these efforts to obtain necessary documents, assets, and information. It may also be necessary to take the depositions of certain individuals.

### 2. **Asset Investigation and Recovery Efforts**

The Receiver will continue to seek to locate any presently unaccounted for receivership assets that may exist. The Receiver also will continue to investigate third parties who aided Champion-Cain in connection with this enterprise. As part of her investigation, the Receiver will evaluate whether such third parties should be liable for damages caused to the Receivership Entities and their investors.

### 3. **Accounting**

The Receiver and her staff have completed the forensic accounting report; a preliminary investor-specific report was filed on December 1, 2020 (Dkt. No. 516-1), an updated investor-specific report was filed on March 31, 2021 (Dkt. No. 630), and the Receiver's Forensic Accounting Report was filed on April 30, 2021 (Dkt. No. 659). As previously mentioned, this accounting has and will continue to be used to identify receivership assets, and to establish where the funds obtained by the Receivership Entities came from and where they went after they were received by the Receivership Entities. The accounting is the foundation for the Receiver's review and analysis of investor/lender and other creditor claims, as well as Clawback Claims.

### 4. Continuation of Receivership

Based upon the Receiver's investigation and findings to date, the Receiver recommends and requests that the Court order that the receivership continue pursuant to the Appointment Order and supplemental orders issued by the Court.

Dated:  November 15, 2021

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP

By: *s/Edward G. Fates*
EDWARD G. FATES
Attorneys for Receiver
KRISTA FREITAG