UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>GINA CHAMPION-CAIN and ANI DEVELOPMENT, LLC,<br><br>　　　　Defendants,<br><br>AMERICAN NATIONAL INVESTMENTS, INC.,<br><br>　　　　Relief Defendant. | Case No. 3:19-cv-01628-LAB-AHG<br><br>**ORDER CONDITIONALLY GRANTING RENEWED MOTION FOR AUTHORITY TO PURSUE CLAIMS AGAINST CHICAGO TITLE**<br><br>**[Dkt. 703]** |

　　The Securities and Exchange Commission brought this action against Defendant ANI Development, LLC and Gina Champion-Cain ("Cain"), the CEO of ANI Development's parent, Relief Defendant American National Investments, Inc. (collectively, "Defendants"). The SEC alleged that ANI Development sold fraudulent investment products and asked that the Court require Defendants to disgorge the fruits of this scheme. To this end, the Court appointed Krista Freitag as permanent receiver (the "Receiver") for ANI Development, American National Investments, and their subsidiaries and affiliates (collectively, the "Receivership Entities"). The Receiver is the Court's

agent for "promot[ing] orderly and efficient administration of" the Receivership Entitites' assets (the "Receivership Estate") "for the benefit of creditors." *S.E.C. v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986).

In furtherance of that goal, the Receiver may "sue for . . . obligations upon such conditions and for such purposes as the court shall direct." 28 U.S.C. § 3103(b)(A). She now moves the Court for an order permitting her to sue non-parties Chicago Title Company and Chicago Title Insurance Company (together, "CTC") in California state court. CTC, she alleges, participated in Defendants' fraudulent scheme by falsely certifying that it would hold investor funds in escrow. Because the Court finds that filing such a suit would benefit the Receivership Entities' creditors so long as counsel are paid on a contingency basis, the motion is **CONDITIONALLY GRANTED**. CTC's related request for a stay of related actions that Defendants' investors brought against CTC in state court is **DENIED WITHOUT PREJUDICE**.

## BACKGROUND

The SEC alleges that Defendants engaged in a fraudulent investment scheme under which Cain "offer[ed] investors the opportunity to make high-interest, short-term loans to applicants seeking California liquor licenses." (Compl., Dkt. 1 ¶ 12). Cain purported to place the funds in escrow accounts subject to a form agreement restricting the funds' use. (*Id.* ¶¶ 13–18). In truth, Cain placed the funds in accounts subject to a different agreement giving Cain unlimited access to investor funds. (*Id.* ¶ 36). After the SEC filed this action, the Court appointed the Receiver to manage the Receivership Estate, accounting for its assets and distributing the funds received through illegal conduct.

Alleging that Cain acted with the full knowledge and participation of the escrow company, CTC, several of Defendants' investors have filed lawsuits against CTC in San Diego County Superior Court. (*See* Mot. Ex. B, Dkt. 703-

2, at 2 (listing nine related cases against CTC)). Those cases are all before the same judge. (*See id.*) (*See, e.g.,* Receiver's Proposed Compl., Dkt. 703-1 ¶¶ 11, 14). The Receiver now seeks to file a complaint (the "Proposed Complaint") in the same court as a related action, asserting claims for aiding and abetting fraud, negligence, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and breach of contract. (Dkt. 703-1 ¶¶ 62–99). While the Receiver's theories of liability differ from those available to the investors, the Receiver seeks damages that overlap, in whole or in part, with the damages the investors seek. (Dkt. 706-2 at 13:9–17). The Receiver contends that the addition of these theories improves the investors' ultimate odds of recovery and permits recovery of some categories of damages unavailable under the investors' claims. (Dkt. 703 at 6). CTC disagrees, and argues that filing the Proposed Complaint would be a waste of receivership funds. (Dkt. 706 at 7). If the Court does permit the Receiver to file the Proposed Complaint, CTC asks for an order staying the investors suits.

## ANALYSIS

### I. Permitting the Receiver to file the Proposed Complaint Will Likely Provide a Net Benefit to the Estate's Creditors

A receivership's purpose is to protect the interests of the estate's creditors. *Hardy*, 803 F.2d at 1038. The principal question presented when a receiver seeks permission to act, then, is whether the proposed action is expected to expand the pot of assets available for distribution to those creditors. The Court has "broad discretionary power" in answering such questions. *Id.*

The costs of filing the Proposed Complaint are likely to be outweighed by the benefits, and even moreso if the Receiver pays attorneys' fees on a contingency basis. The litigation costs here are mitigated by anticipated coordination with related cases in state court and the amount of related

discovery already conducted are likely to significantly reduce those costs. (*See* Dkt. 647 at 12:10–20, 39:13–21). And paying the Receiver's counsel on a contingency basis further reduces the risk that the suit will result in a net loss to the Receivership Estate.

On the other side of the ledger are substantial benefits to creditors. The Receivership Entities may be able to recover and then distribute damages not available under the creditors' own claims.[1] For example, only the Receiver can recover fees that ANI paid to CTC. (*See* Dkt. 703 at 6; Dkt. 703-1 ¶¶ 35, 55). Moreover, the Proposed Complaint seeks "consequential damages including, but not limited to, receivership." (Dkt. 703-1 ¶ 72.) The receivership process itself has been costly to the Receivership Estate and, by extension, its creditors. (*See, e.g.,* Dkt. 721; Dkt. 722). CTC may be liable to the Receivership Estate for some portion of these costs under California law. *See Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 826 (2011) ("[A]ttorney fees incurred as a direct result of another's tort are recoverable damages."); *Kass v. Weber*, 261 Cal. App. 2d 417, 423–24 (1968) (costs of receivership available as consequential damages).

CTC may also be liable to the Receivership Entities for exemplary damages unavailable to the Receivership Entities' creditors. CTC owed allegedly owed a fiduciary duty to the Receivership Entities, a duty not owed to the investors. The exemplary damages available for a fraudulent breach of that duty, then, can only be recovered by the Receivership Entities. *See Michelson v. Hamada*, 29 Cal. App. 4th 1566, 1582 (1994) ("[P]unitive damages are appropriate for a breach of fiduciary duty").

---

[1] Contrary to CTC's suggestion, the Receiver's admission that the damages available to the Receiver "overlap" with those available to investors isn't the same as an admission that the two sets of damages are congruent. (*See* Dkt. 706 at 4; Dkt. 706-2 at 04:11–17).

Filing the Proposed Complaint offers another benefit to creditors: adding additional theories of liability improves the likelihood of a complete recovery. Plaintiffs commonly assert multiple theories to pursue the same damages to protect against the risk that they will fail to prove one or more claims. The same rationale applies here. Requiring CTC to defend against *all* theories of liability makes it less likely that damages available under one theory but not others will slip through the cracks.

Nor is the Court concerned that the problem of overlapping damages will result in duplicative liability. As the parties appear to agree, filing the Proposed Complaint as a related case to the pending investor actions enables the state court to address questions of duplicative liability. (*See* Dkt. 703 at 4 (seeking to file Proposed Complaint as a related case to pending actions); Dkt. 706 at 3 (asking the Court to "at least order the Receiver to sue . . . *in the same court, before the same judge*" (emphasis in original)).

CTC argues, though, that there is no upside to filing the Proposed Complaint because the Receiver's theories are "frivolous." (Dkt. 706 at 5 n.2). But merely pointing to the existence of potential affirmative defenses, as CTC does, isn't enough to make the claims frivolous.[2] Nor would this argument be complete, even if the Court were to accept it: it doesn't address the Receiver's claims for aiding and abetting fraud, negligence, and aiding and abetting breach of fiduciary duty. The purported weakness of some, but not all, of the Receiver's claims isn't enough to persuade the Court that the Receivership

---

[2] CTC's argument regarding limitations on its fiduciary duty is particularly unpersuasive. Relying on *Summit Fin. Holdings, Ltd. v. Continental Lawyers Title Co.*, 27 Cal.4th 705, 711 (2002), it contends that its fiduciary duty was limited to following its client's instructions. (Dkt. 706 at 5 n.2). But *Summit Fin. Holdings* makes clear that this limitation applies only "[a]bsent clear evidence of fraud." *Id.* The Receiver alleges that CTC knew of Cain's fraud and that the Receivership Entities were victims of it. (*See* Dkt. 703-1 ¶¶ 62–77).

Estate won't benefit from filing its claims.

Finally, CTC contends that there's no need to file the Proposed Complaint because CTC is aware of the nature of the claims, its insurers are "fully engaged" in the settlement process, and having the claims on file simply won't affect CTC's willingness to settle. (*See* Dkt. 706 at 4–5.) But even presuming that CTC will settle the claims, as this argument would require, the argument defies common sense. CTC may be aware of the claims, but as long as it knows, too, that the Receiver doesn't have authorization to file them, the claims' settlement value is a fraction of the value they would otherwise have. Granting authorization to file the claims permits the Receiver to recover their full value.

Permitting the Receiver to file the Proposed Complaint is likely to expand the pool of assets available for distribution to creditors and ensure a complete recovery. The motion for authority to pursue those claims is **GRANTED**.

## II.    A Stay of Investor Lawsuits Isn't Necessary

CTC next asks (though without filing a formal motion) that the Court stay all related state court actions so long as the Proposed Complaint is pending. The Court may issue such a stay where necessary protect the receivership *res. See, e.g., Zacarias v. Stanford Int'l Bank, Ltd.*, 945 F.3d 883, 897 (5th Cir. 2019) (court has jurisdiction to bar claims that "directly affect the receiver's assets"). This authority is an exception to the Anti-Injunction Act, 28 U.S.C. § 2283, and so it "should not be enlarged by loose statutory construction." *Atl. Coast Line R. Co. v. Bd. Of Loco. Eng'rs*, 398 U.S. 281, 287 (1970). Narrowly construed, the necessity exception isn't capacious enough to encompass the circumstances here.

Some courts have found it necessary to protect a receivership *res* by enjoining investors in the receivership entities from pursuing state litigation. *See, e.g., Zacarias*, 945 F.3d at 894; *S.E.C. v. Stanford Int'l Bank*, 927 F.3d

830, 850–51 (5th Cir. 2019); *S.E.C. v. DeYoung,* 850 F.3d 1172, 1183 (10th Cir. 2017); *S.E.C. v. Wencke,* 622 F.2d 1363, 1369 (9th Cir. 1980). In those cases, the courts acted either to protect the receivership *res* from suits brought directly against the receivership entities, *Wencke,* 622 F.2d at 1369, or to protect the receivership's settlements with third parties where the third parties had conditioned settlement on the issuance of a bar order protecting them from investor suits. *Zacarias,* 945 F.3d at 894; *Stanford,* 927 F.3d at 850–51; *DeYoung,* 850 F.3d at 1183.

The investor suits in question here don't seek to recover from the Receivership Entities, nor have the Receiver and CTC agreed to any settlement that would fall apart absent a stay. And while the overlapping nature of the investors' claims and the Receiver's claims could lead to inefficiency or duplicative liability, a federal court's stay isn't necessary to avoid these outcomes. The investor suits are consolidated in state court before a single judge. Because the Receiver asks to file the Proposed Complaint as a related case to those investor suits, the Receiver's action will most likely be heard by the same judge. That court, not this one, is best positioned to determine whether staying the investor actions is necessary for efficient resolution of all actions, and it's similarly well-situated to determine which parties should recover in the event CTC is found liable to multiple parties for the same damages. The request for a stay of investor actions against CTC is **DENIED WITHOUT PREJUDICE**.

## CONCLUSION

The receivership's purpose in this action is to gather and distribute the Receivership Entities' assets equitably among their investors. The Court, in turn, must ensure that the Receiver has the authority necessary to maximize the value of those assets. Because the Receiver has persuaded the Court that filing the Proposed Complaint against CTC, with counsel paid on a contingency

basis, will benefit the Receivership Estate, the motion for authority to follow that course is **CONDITIONALLY GRANTED**. (Dkt. 703). The Receiver may file the Proposed Complaint in San Diego County Superior Court, as an action related to the investor suits identified in Exhibit B to that motion, so long as the Receiver's counsel can be retained for that work on the contingency terms previously described to the Court. (*See* Dkt. 323-1).

CTC hasn't demonstrated that it is necessary for this Court to stay the investor suits to preserve the receivership *res* or efficiently manage the receivership, so that request is **DENIED**. But because new circumstances may arise that necessitate such a stay, that denial is without prejudice.

**IT IS SO ORDERED.**

Dated: December 13, 2021

Hon. Larry Alan Burns
United States District Judge