# EXHIBIT A

# Allen Matkins

Allen Matkins Leck Gamble Mallory & Natsis LLP
Attorneys at Law
865 South Figueroa Street, Suite 2800 | Los Angeles, CA 90017-2543
Telephone: 213.622.5555 | Facsimile: 213.620.8816
www.allenmatkins.com

**David R. Zaro**
E-mail: dzaro@allenmatkins.com
Direct Dial: 213.955.5518   File Number: 378827.00002/4854-7480-1945.1

March 30, 2022

John H. Stephens
Mulvaney Barry Beatty Linn & Mayers LLP
401 W. A Street, 17th floor
San Diego, California

> **Re:**   ***Securities and Exchange Commission v. Gina Champion Kane and ANI Development LLC* – USDC Case No. 3:19-CV-01628:**
> **CalPrivate Bank - Proof of Claim Dispute**

Dear Mr. Stephens:

The Receiver has received and reviewed the Investor Proof of Claim form received from CalPrivate Bank (fna San Diego Private Bank), ("CalPrivate") with regard to the ANI Development LLC receivership. CalPrivate states that it has a first priority perfected security interest in the assets of ANI Development held by the Receiver for $12,475,000, plus interest, charges and attorneys' fees. The Receiver disputes that CalPrivate has a perfected secured claim as well as the stated amount of the claim.

The Receiver objects to CalPrivate's claim as submitted to the Receiver and is prepared to recommend to the Court that CalPrivate have an allowed unsecured claim in the amount of $9,520,080.13[1] for the following reasons:

- In accordance with the Order: (1) Approving Procedures for Administration of Claims Against the Receivership Estate; (2) Setting Claims Bar Date; and (3) Approving Claims Bar Date Notices and Proof of Claim Forms, [Doc. 716], CalPrivate's claim is limited to the net loss amount based upon the Receiver's money in/money out calculation.

- CalPrivate does not have a perfected security interest in any deposit accounts or proceeds recovered by the Receiver from the sale of real or personal property.

With regard to the amount of CalPrivate's claim, the Receiver understands that CalPrivate does not dispute the transactional history presented by the Receiver to CalPrivate in connection with the proof of claims process. Instead, CalPrivate appears to believe that the amount of its claim

---

[1] In the event CalPrivate settles with Chicago Title, such amount would be adjusted down by such Chicago Title settlement.

Ex. A, pg. 6

Allen Matkins Leck Gamble Mallory & Natsis LLP
Attorneys at Law

John H. Stephens
March 30, 2022
Page 2

should be based upon CalPrivate's accounting which reflects that certain payments received by CalPrivate consisted of principal and other payments consisted of interest.   The Receiver's calculation, as approved by the District Court, does not consider whether payments received by CalPrivate were applied to principal or interest.  The amount of CalPrivate's claim for the purposes of the Court approved claims' calculation would be based solely upon netting the total amount invested or lent by CalPrivate to the scheme against the amounts paid to CalPrivate from the scheme.  Both the Court's Orders and relevant case law support this methodology for calculating claims in a federal equity receivership.  Please note, the Receiver recognizes that CalPrivate's actual losses (i.e. consequential damages) may exceed the proposed allowed claim amount.  This process is not an attempt to adjudicate such damages, however, such claims may theoretically become relevant in the event that the Receiver were to recover in excess of 100% of investors' and lenders' money in-money out (MIMO) net losses.

CalPrivate has also asserted that it has a secured claim based upon certain UCC filings made in connection with the so-called loans to or investments in the scheme.  CalPrivate originally claimed that it had a security interest in the money held in a deposit account by Chicago Title.  In addition, we understand that CalPrivate also claims a security interest in the proceeds from the Receiver's sale of real and personal property in connection with this receivership.

As you are aware, the only means by which a secured creditor can obtain a perfected security interest in a deposit account (or funds contained therein) is through possession or a control agreement under California Commercial Code sections 9312(b)(1), 9314(b) ("a security interest in deposit accounts. . . is perfected by control under Sections 7106, 9104, 9105 or 9107 when the secured party obtains control and remains perfected by control only while the secured party retains control." *See Full Throttle Films Inc. v. National Mobile Television, Inc.*, 180 Cal.App.4th 1438, 1442 (2009).  At no time has CalPrivate possessed any ANI Development funds or had control over an ANI Development deposit account.  It is also undisputed that CalPrivate never obtained a deposit account control agreement ("DACA") with regard to any bank account.  Even if CalPrivate, at some point in time, had a security interest in the funds on deposit or proceeds held by ANI Development or Chicago Title, those perfected security interests were lost when control and possession of the funds were turned over to the Receiver.  *See* Cal Commercial Code section 9332(a)(b); Clark, The Law of Secured Transactions §1.08[13][B], pages 1-291.

As any bank customer knows, the customer has the absolute right to withdraw money from their bank accounts without bank interference.  Barkley and Barbara Clark, the Law of Bank Deposits, Collections and Credit Cards, § 7.06[1], pp. 7-16 (2017).  The law is clear, where a creditor has a secured interest in a deposit account or similar collateral, a withdrawal of funds from that account that is effectuated <u>before</u> the secured creditor acts, will trump the security interest.  As at least one circuit court has noted, a bank cannot "refuse to exercise its rights under [a] security agreement, thereby maintaining the [debtor] as a going concern, while it impairs the status of other creditors. . . . [To] do so would fly the face of all of Article 9, which is premised upon a debtor's

Allen Matkins Leck Gamble Mallory & Natsis LLP
Attorneys at Law

John H. Stephens
March 30, 2022
Page 3

ability to exercise its rights in the property." *Frierson v. United Farm Agency Inc.*, 868 F.2d 302, 305 (8th Cir. 1989). The same is true under California's application of the UCC. *See, e.g., Orix Financial Services Inc. v. Kovacs*, 167 Cal.App.4th 242, 241-51 (2008) (holding that unsecured creditors' satisfaction of judgment from a debtor's bank account superseded secured creditors' rights against the same, and specifically noting that "any suggestion that the rights of a secured creditor cannot be compromised by junior creditors is not persuasive.").

Here, CalPrivate took no action during the pre-receivership period to put in place a DACA or to otherwise enforce its security interests against the funds located at Chicago Title or in ANI Development accounts. The Receiver's appointment and the turnover requirements of the Court's order appointing the Receiver, paired with the Receiver's specific turnover demands, effectuated a de facto withdrawal of the deposits. Similarly, there is no basis for CalPrivate to assert a security interest in the proceeds from the Receiver's sale of assets and subsequent sale proceeds deposited into Receivership Entity bank accounts for the benefit of all investors and other claimants. Accordingly, even assuming arguendo that CalPrivate could have taken control over accounts during the pre- or post-receivership periods, it did not to do so.

Finally, it should be noted that, in the context of this claim process, the Receiver does not distinguish between the claims of CalPrivate and other victims of the scheme. While CalPrivate may have prepared the documents for its so-called loans, other victims similarly relied on promissory notes and other agreements. All of these documents, regardless of who prepared them, were part of a fraudulent enterprise and there is no legal or equitable basis for the Receiver to favor one victim over another based upon the sham documentation underlying a purported loan or investment.

Of course, the Receiver would welcome further discussions and exchange of information regarding CalPrivate's claims in connection with the claims process. Accordingly, once you have had an opportunity to review this, please not hesitate to contact me to discuss this matter further.

Very truly yours,

David R. Zaro

DRZ:klt

cc:   Krista Freitag
      Ted Fates