# EXHIBIT B

1 Columbia Place
401 West A Street
17th Floor
San Diego, CA 92101

P (619) 238-1010
F (619) 238-1981

mulvaneybarry.com

jstephens@mulvaneybarry.com

# Mulvaney Barry

**Mulvaney Barry Beatty Linn & Mayers LLP**
Attorneys At Law

Everett G. Barry, Jr.
Robert A. Linn
Rex B. Beatty
John A. Mayers
John H. Stephens
Christopher B. Ghio
George A. Rios, III
Jamie D. Mottola
Trevor G. Moran

Matthew R. Souther
Of Counsel

James F. Mulvaney
(1922 – 2010)
Paula Rotenberg
(Retired)
George A. Foster
(Retired)
Patrick L. Prindle
(Retired)

April 12, 2022

VIA E-MAIL AND U.S. MAIL

David R. Zaro
Allen Matkins
865 South Figueroa Street, Ste. 2800
Los Angeles, CA 90017
Email: dzaro@allenmatkins.com

Re: *SEC v. Gina Champion Cain and ANI Development, LLC*; USDC Case No.: 3:19-CV-01628; CalPrivate Bank, Proof of Claim

Dear Mr. Zaro:

We dispute the Receiver's objections to CalPrivate Bank's ("CalPrivate" f/k/a San Diego Private Bank) Proof of Claim both as to the amount of its claim and whether it has a perfected security interest in Receivership assets.

The Receiver does not question that the unpaid balance of CalPrivate's loan to ANI License Fund, LLC ("ANI License"), is $12,475,000 plus interest, charges and fees. She also does not dispute that the loan is subject to Commercial Security Agreements that CalPrivate entered with ANI License and ANI Development, LLC ("ANI Development"); and that CalPrivate filed UCC Financing Statements against both entities as debtors, which broadly identify all present and future interests of both entities as the "Collateral."

Rather, the Receiver contends that: (1) CalPrivate should be treated as any other unsecured creditor under the court order approving procedures for administering claims against the Receivership estate; and (2) CalPrivate does not have a "perfected" security interest in any Receivership property including deposit accounts and proceeds generated by the sale of Receivership property.

As a general rule receivers are to administer estates as nearly as possible in accordance with the administration of bankruptcy estates. *CFTC v. Topworth Int'l, Ltd.*, 205 F.3d 1107, 1116 (9th Cir. 1999). Secured claims have priority over unsecured claims in right of payment from a bankruptcy estate. This priority is incorporated into equity receiverships where administrative professional claims are first, secured investor claims are second, unsecured investor claims are third, tax claims are fourth, and noninvestor claims are fifth. *SEC v. Capital Cove Bancorp Llc*, 2018 U.S. Dist. LEXIS 244726, p. 9. Consequently, CalPrivate's claim has priority over claims of unsecured investors and lenders, and is junior only to administrative claims.

MULVANEY BARRY BEATTY LINN & MAYERS LLP
Attorneys At Law

David R. Zaro
April 12, 2022
Page 2

### CalPrivate Preserved its First-Priority Security Interest in ANI Development's Escrow Account

In this instance, the Receiver proposes to treat secured lender CalPrivate the same as any other unsecured investor relying on the procedures for administering claims. However, from the Receivership's inception, CalPrivate informed Allen Matkins of its priority claim. Just weeks after the SEC filed its compliant, this firm sent Ted Fates the documents establishing CalPrivate's perfected first-priority security interest in all assets of ANI License and ANI Development. (9/16/19 letter from Everett Barry).

More importantly, when the Receiver pursued contempt proceedings against Chicago Title for its failure to turn-over the funds in ANI Development's escrow account, CalPrivate responded that it did not object provided the funds remained subject to its claim of a priority security interest. (Dkt. No. 31.) As you know, Judge Burns referred the matter to Magistrate Judge Goddard whose report recommended that Chicago Title turn over the funds; and she also commented that determining ownership of the funds would be deferred. (Dkt. No. 54.) Judge Burn's adopted the report with certain modifications that did not affect ownership of the funds. Instead, he ordered the parties to meet and confer to determine how the funds could be used. (Dkt. No. 127.)

The Receiver does not acknowledge that thereafter, the parties, including Allen Matkins as Receiver's counsel and this firm as CalPrivate's, entered a Joint Motion which stipulated that the parties were reserving all rights regarding "(a) the nature, extent and priority of claims; and (b) any plan of distributions ...." and that "Nothing herein is intended to be a release or waiver of claims or rights by any party." (Dkt. No. 157.) Judge Burns granted the Joint Motion and ordered that parties reserved all rights as stipulated. (Dkt. No. 395.) The Receiver cannot now contend that turnover of ANI Development's escrow account precludes CalPrivate from claiming its priority security interest in the funds.

### CalPrivate Preserved its First-Priority Security Interest in the Proceeds of Property Sales

The other funds subject to CalPrivate's priority security interest are those the Receiver collected through the sale of assets held by Receivership entities, primarily real and personal property. The Receiver implies that CalPrivate's claim against those funds is recent. Not so. When the Receiver filed her first motions for approvals of pending sales, CalPrivate responded that it did not oppose the sales provided it retained its claim of a first-priority security interest in the sales proceeds. (Dkt. Nos. 198 & 204.) Judge Goddard stated in her order regarding the pending sales that "CalPrivate's claim of an interest is not waived by the Court's approval of any sale of receivership assets." (Dkt. No. 226.) Accordingly, CalPrivate has preserved its priority security interest against both ANI Development's escrow account and the sales proceeds in the full amount of the debt owed under its loan documents.

### ANI Development's Escrow Account Was Not a Deposit Account and, Regardless, CalPrivate Controlled It

The Receiver contends that CalPrivate did not perfect its security interest in ANI Development's escrow account because it did not "control" the "deposit account," and relies heavily on the *Full Throttle* case, but it has no application here. *Full Throttle Films, Inc. v. National Mobile Television, Inc.*, 180 Cal.App.4th 1438 (2009). Unlike ANI Development's

MULVANEY BARRY BEATTY LINN & MAYERS LLP
Attorneys At Law

David R. Zaro
April 12, 2022
Page 3

escrow account, which is not a deposit account, the case involved competing creditors that were attempting to levy on traditional "deposit accounts" at Wachovia Bank. The case is further distinguishable because, although the third-party creditor did have control agreements, it did not show that the agreements were for the accounts on which it levied; or that it filed UCC financing statements covering those accounts in California; or that the deposit accounts on which it levied were in Delaware where it had filed UCC financing statements.

The ANI Development escrow account was not a deposit account. Under the UCC, "'Deposit Account' means a demand, time, savings, passbook, or similar account maintained by a bank." Cal. Com. Code § 9102 (29). They are one-dimensional accounts commonly used by businesses and individuals. By contrast, the "Holding Funds" escrow account maintained at Chicago Title was a dynamic account where CalPrivate's funds were wired-in for distribution to other accounts. Although Champion-Cain diverted the funds for her personal use, it did not change the nature of the account. A deposit account and the escrow account are fundamentally different by function and purpose. Accordingly, CalPrivate's security interest in the escrow account was perfected when it filed the UCC-1 Financing Statement with its broad description of collateral that includes "accounts" (as well as "deposit accounts").

Assuming ANI Development's escrow account was a deposit account, CalPrivate still had control and, accordingly, its security interest was perfected. In this regard, the *Full Throttle* case is helpful in its discussion of the alternative ways that control can be established, and a security interest perfected. The case acknowledges that the control necessary to perfect a security interest in a deposit account is also satisfied if "[t]he secured party becomes the bank's customer with respect to the deposit account." *Full Throttle* at 1442, citing Cal. Com. Code § 9104 (a)(2). Such a secured party "has control, even if the debtor retains the right to direct disposition of the funds from the deposit account." Cal. Com. Code § 9104 (b). The Receiver's is incorrect that the only way a security interested in a deposit account can be perfected is through possession or a control agreement.

In this instance, Cal Private as the secured party became the customer regarding the escrow account because it wired funds directly to Chicago Title. In addition, CalPrivate's money-wires identified the individual liquor license escrows to be funded by Chicago Title, and Chicago Title similarly identified the liquor license escrows in wiring funds back to CalPrivate. Thus, CalPrivate was the customer even if ANI Development as the debtor retained the right to direct disbursement of the funds from the account. Consequently, CalPrivate has a perfected security interest in the escrow account, assuming it was a "deposit account," which it wasn't.

In overruling Chicago Title's demurrers to the numerous complaints against it, Judge Styn used similar reasoning that Chicago Title owed a duty to third-party depositors such as CalPrivate. Citing, *Tribecca Companies, LLC v. First American Title Ins. Co.*, 239 Cal.4th 1088, 1096 (2015).

## CalPrivate's Priority Security Interest Was Perfected in the Sales Proceeds of Receivership Asset Sales

As discussed in CalPrivate's Proof of Claim, it also has a first-priority perfected security interest in the funds received from Receiver's sale of property held by Receivership entities. It is undisputed that the cash used to purchase the property flowed through ANI Development's

MULVANEY BARRY BEATTY LINN & MAYERS LLP
Attorneys At Law

David R. Zaro
April 12, 2022
Page 4

escrow account, apparently to either Champion-Cain's personal account or her trust account, and then to other Receivership entities. Accordingly, CalPrivate's security agreement with ANI Development and UCC-1 financing statement perfected it first-priority interest.

In this regard, the Receiver already has recognized the perfected security interests in Receivership assets that were held by First Choice Bank and Jacmar Foodservice Distribution. The debts owed to them were paid from the sale of personal and leasehold interests owned by Receivership entity 2163 Abbott Street, LP. A significant question exists whether Abbott Street ever held a legitimate ownership interest in any of the property sold, but the secured creditors were paid regardless. CalPrivate also could have more properly asserted its security interest when the assets and properties were sold, but did not waive its rights to the sales proceeds as Judge Goddard has ordered. Rather than engage in expensive serial actions to enforce its security interest when each property was sold, CalPrivate has waited until adequate funds were generated to cover its entire claim. The Receiver cannot now take an opposite position than she has taken throughout the Receivership, when other security interests were acknowledged.

## No Creditor Withdrew Funds From ANI Development's Escrow Account

Receiver's last contention has the least support and, notably, no citation to any receivership law or even bankruptcy law. There you argue that because the funds at Chicago Title were in a deposit account, and because CalPrivate took no action to enforce its security interest, the Receiver effectively "withdrew" the funds which were then free of CPB's security interest. This analysis is unavailing in numerous regards.

First, the escrow account was not a deposit account as discussed above. Second, CPB immediately took action to enforce its security interest when the Receiver sought a turnover of the funds. Both Judge Burns and Judge Goddard ordered that CalPrivate (and all other parties) were reserving all rights regarding their claims, including priority, despite the turnover. Allen Matkins as Receiver's counsel stipulated to that. Third, the Official Comments on California's UCC states that notwithstanding a transferee's ability to take funds free of a security interest, "**it does not apply to transfers of the deposit account itself** ...." Cal. Com. Code § 9-332, emphasis in text. Regardless, the Receiver is not a transferee.

The *Frierson* and *Orix* cases, that Receiver cites for the proposition that a secured creditor does not always have priority rights over other creditors, have no application here. *See, Frierson v. United Farm Agency*, 868 F.2d 302 (8th Cir. 1989); *Orix Financial Services, Inc. v. Kovacs*, 167 Cal.App.4th 242 (2008). The question is not whether CalPrivate has priority over a judgment creditor, as was involved in those cases, it is whether CalPrivate's perfected security interest has priority over *unsecured* creditors that do not have judgments.

In *Frierson*, the court applied Missouri law and concluded that a secured creditor bank does, in fact, have priority rights to a borrower's deposit accounts at its bank, but does not necessarily have priority rights over a judgment creditor to accounts at other banks, unless it declares the loan in default. Nevertheless, the creditor bank's security interest in the funds at other banks "will continue and [creditor bank] can trace and recapture when it chooses to declare the loan in default and accelerate the debt." *Frierson*, at 305. None of that is involved here but, still, the court recognized the creditor bank's priority security interest. Moreover, CalPrivate did declare its loan in default, and there are no judgment creditors claiming senior rights.

**MULVANEY BARRY BEATTY LINN & MAYERS LLP**
Attorneys At Law

David R. Zaro
April 12, 2022
Page 5

Similarly, *Orix* considered whether a judgment creditor could properly satisfy his judgment from funds in the debtor's bank account free of the secured creditor's interest in the funds. The court held he could because under California's UCC (section 9-332(b)) he was a "transferee" of the funds, not because he was a creditor, which was "irrelevant." Again, the case has no value in evaluating CalPrivate's priority security interest because here no "transferees" of "completed transactions" are involved.

With no cited authority, Receiver asserts that her appointment coupled with the turnover requirements effectuated a *de facto* withdrawal of the deposits allowing her to take funds free of any security interest. However, there was no withdrawal, nor is the Receiver a transferee. And again, Receiver's counsel stipulated that the parties reserved "all rights" regarding funds turned over and did not "release or waive" any claims or rights as Judges Burns and Goddard ordered.

The Receiver chooses not to distinguish between CalPrivate and other creditors, but by law she must. Others might have had promissory notes or some type of agreement, but CalPrivate has not only a loan agreement, but also security agreements perfected by UCC-1 financing statements that were recorded first in time. The fact that CalPrivate is entitled to a priority security interest does not mean other creditors have no claims. Their claims as unsecured creditors are just junior to CalPrivate's. CalPrivate structured its secured lending program for protection in these circumstances, and others could have too, but did not.

We appreciate the attention given to CalPrivate's claim and though we disagree, are available for further discussions.

Very truly yours,

*[signature]*

John H. Stephens
For the Firm

JHS:la

cc: Rick L. Sowers (Via Email)
Everett Barry (Via Email)
Mike Yoder (Via Email)
Ted Fates (Via Email)

SDPB.147.1114168.1