# EXHIBIT E

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN DIEGO
CENTRAL

MINUTE ORDER

DATE: 04/12/2021                TIME: 11:05:00 AM          DEPT: C-74
JUDICIAL OFFICER PRESIDING: Ronald L. Styn
CLERK: Kim Mulligan
REPORTER/ERM: Not Reported
BAILIFF/COURT ATTENDANT:

CASE NO: **37-2020-00034947-CU-FR-CTL**   CASE INIT.DATE: 10/01/2020
CASE TITLE: **Ovation Finance Holdings 2 LLC vs Chicago Title Insurance Company [IMAGED]**
CASE CATEGORY: Civil - Unlimited       CASE TYPE: Fraud

**APPEARANCES**

The Court, having taken the above-entitled matter under submission on 04/02/2021 and having fully considered the arguments of all parties, both written and oral, as well as the evidence presented, now rules as follows:

**After taking this matter under submission the court confirms and modifies its tentative ruling.**

The court addresses the evidentiary issues. Defendants Chicago Title Company and Chicago Title Insurance Company's request for judicial notice is GRANTED. Plaintiffs Ovation Finance Holdings 2 LLC; Ovation Fund Management II, LLC and Banc of California N.A.'s request for judicial notice is GRANTED.

The court then rules as follows on Defendants Chicago Title Company and Chicago Title Insurance Company's demurrers to the Second Amended Complaint in *Kim Funding, LLC et al. v. Chicago Title Co. et al.*, No. 37-2019-00066633-CU-FR-CTL; the First Amended Complaint in *Wakefield v. Chicago Title Co. et. al.*, No. 37-2020-00012568-CU-FR-CTL; the First Amended Complaint in *Fenley v. Chicago Title Co. et al.*, No. 37-2020-00022394-CU-FR-CTL; the First Amended Complaint in *Yu v. Chicago Title Co. et al.*, No. 37-2020-00022467-CU-FR-CTL; the First Amended Complaint in *Ovation Finance Holdings 2, LLC et al. v. Chicago Title Co. et al.*, No. 37-2020-00034947-CU-FR-CTL; and the First Amended Complaint in *CalPrivate Bank v. Chicago Title Company, et al.* No. 37-2020-00039790-CU-BC-CTL.

**Negligence**

Chicago Title's demurrer is OVERRULED.

The premise of all of Chicago Title's arguments is that Chicago Title owes no duty to Plaintiffs. The court considers the arguments the parties raise and the authorities the parties submit. The authorities the parties rely on are all premised on the existence of an actual escrow and the escrow holder's duties

to the parties to the escrow and/or to third-parties. However, the complaints and causes of action therein are not premised on an actual escrow. Rather, as pled, the complaints allege a fraudulent scheme, facilitated by Chicago Title personnel, involving escrows that did not actually exist (the "Form Escrows") and an escrow that did exist (the "Holding Funds Account") but to which Plaintiffs were not parties. For example, the Model Complaint alleges:

32. This financing was structured such that a third-party lender would deposit funds directly into an account maintained by Chicago Title often after Champion-Cain provided the lender with information regarding the applicant name and license number of the application. For many of those who ultimately fell victim to the ANI/ Chicago Title scheme, Champion-Cain would provide the lender with an escrow agreement purportedly signed by Champion-Cain and by an escrow officer at Chicago Title. Under the escrow agreement (the "Form Escrow") these lenders received, the funds being deposited by the lender could only then be used to fund a single, specific liquor license escrow. The lender, who expressly remained the owner of the funds under the terms of its agreement with ANI and the Form Escrow, was an express intended third-party beneficiary of the Form Escrow, which prohibited Chicago Title from releasing the escrowed loan amount to anyone other than the lender or using the funds for any other purpose. When the application was granted, Chicago Title would return the principal to the lender, with the lender also to receive its agreed share of the interest, returning the balance of the interest to Champion-Cain. This arrangement was designed to secure lenders' funds and to ensure that their principal was never at serious risk. For several years, Chicago Title in fact accepted money wired directly from third-party lenders-like Plaintiffs-into a Chicago Title account. It then directly returned funds to lenders when liquor license escrows purportedly closed.

108. Contrary to the representations made to Plaintiffs, there were no safe individual escrow accounts under the Form Escrow where the lenders were third-party beneficiaries.

110. Many of the executed Form Escrow agreements provided to the lenders were forgeries. Chicago Title knew that Champion-Cain was signing Form Escrows in the names of Chicago Title escrow agents. Other Form Escrows may have been physically signed by DuCharme or Elixman, but Chicago Title never treated them as effective over the funds deposited by Plaintiffs. Despite the statements of Chicago Title to the contrary, the lenders' funds were not deposited into accounts in the names of lenders that were earmarked for individual liquor license applicants.

111. Instead, the lenders were all unknowingly wiring their money into a single account which Chicago Title allowed Champion-Cain to treat as if it were her own. Chicago Title did so despite the fact that Chicago Title's policy-and indeed the standard of all reasonable escrow companies in the industry-is to require written instructions from third-party depositors who deposit money in an escrow account. ANI and Chicago Title entered into an annual agreement between ANI and Chicago Title (the "Holding Funds Account"), with nearly identical terms each year. See Ex. 7. The Holding Funds Account agreement addressed only a "deposit" that ANI was to make into the account. The agreement did not authorize either ANI or Chicago Title to do anything with respect to lenders' deposits. See Ex. 7. In fact, the agreement provided no indication that anyone other than ANI would be depositing funds into the account. Indeed, the Holding Funds Account was not an "escrow account" at all, as that term is defined in the statutes that regulate Chicago Title's escrow practices. By suggesting to Plaintiffs and other victims of the ANI scheme that it was holding funds in an escrow account, Chicago Title was engaged in deception. When lenders, like Plaintiffs here, wired their money into what they reasonably believed was an escrow account, they did not intend to relinquish title to the funds they believed were being held by Chicago Title in escrow.

DATE: 04/12/2021
DEPT: C-74

MINUTE ORDER

Page 2
Calendar No.

Ex. E, pg. 29

CASE TITLE: Ovation Finance Holdings 2 LLC vs Chicago Title Insurance Company [IMAGED]　　CASE NO: 37-2020-00034947-CU-FR-CTL

Case 3:19-cv-01628-LAB-AHG   Document 837-14   Filed 07/25/22   PageID.16359   Page 4 of 11

None of the authorities the parties rely on involve similar facts and none involve allegations of an escrow holder's complicity in a fraudulent scheme involving representations of escrows that did not actually exist. Considering these circumstances, the court finds it is not appropriate to analyze Chicago Title's demurrer under the traditional rules applicable to escrows as set forth in cases such as *Summit Financial Holdings, Ltd. v. Continental Lawyers Title Co.* (2002) 27 Cal.4th 1160A, *Tribeca Companies, LLC v. First American Title Ins. Co.* (2015) 239 Cal.App.4th 1088 and *Alereza v. Chicago Title Co.* (2016) 6 Cal.App.5th 551. Instead, the court looks to the basic duty analysis applicable to negligence causes of action. Because of the alleged fraudulent scheme, the issue is not whether Chicago Title owed a duty to Plaintiffs as parties to the escrow, but whether Chicago Title owed a duty to Plaintiffs as third-party depositors. The court finds allegations that the standard in the industry (and Chicago Title's own internal policies) requires third-party deposit instructions [Model Complaint ¶¶ 127, 128], and allegations that Chicago Title accepted and disbursed Plaintiffs' third-party deposited funds without instructions from Plaintiffs [Model Complaint ¶ 129], sufficient to support a finding of duty (and breach) so as to support a negligence cause of action. Such a duty to third-party depositors is recognized in case authorities including *Tribeca*. ["First American's standard procedure is to require third party instructions whenever a third party deposits funds into an escrow." *Tribeca*, 239 Cal.App.4th at 1096.] See also, *Tribeca*, 239 Cal.App.4th at 1108. ["Tribeca could not assert entitlement to the funds in escrow except upon the terms stipulated in the depositing party's instructions. (*Kellogg v. Curry* (1951) 101 Cal.App.2d 856, 860–861 [226 P.2d 381].) Grishin [the third-party depositor] never provided any instruction to First American, other than the one requesting it to return his funds "immediately." And, the allegations are sufficient to establish Chicago Title's duty to Plaintiffs as third-party depositors in this case.

Although the parties also discuss the *Biakanja* test [*Biakanja v. Irving* (1958) 49 Cal.2d 647], the court finds a *Biakanja* analysis is not required in this case. *Biakanja* applies to the issue of whether a defendant owes a duty of due care to a plaintiff with whom the defendant is not in "privity of contract." These are not the circumstances of this case. In this case, Chicago Title's duty is to Plaintiffs, not as strangers to an escrow, but as third-party depositors to the escrow. Even if the court were to apply the *Biakanja* test the result would not change. The complaints allege facts sufficient to support a finding in favor of Plaintiffs as to each of the six factors set forth in *Biakanja* – and weigh significantly in Plaintiffs' favor on the moral blame and policy of preventing future harm factors.

In addition to joining in the *Ovation* Plaintiffs' opposition, Plaintiff Cal Private Bank also advances an argument for an implied in fact escrow under which Chicago Title agreed to act as escrow holder. None of the authorities Cal Private Bank relies on support such a theory. *Summit* recognizes that "[i]f the escrow holder fails to carry out an instruction it has contracted to perform, the injured party has a cause of action for breach of contract." *Summit*, 27 Cal.4th at 711. As set forth below, Cal Private Bank's breach of implied contract cause of action remains viable.

**Breach of Fiduciary Duty**

Chicago Title's demurrer is SUSTAINED.

As pled this cause of action is premised on the actual existence of the Form Escrows. The Model Complaint alleges:

307. At least since February 1, 2017, acting through agents upon whom Chicago Title endowed with ostensible authority in their interactions with Depositing Plaintiffs, Chicago Title became party to Form Escrows, under which Depositing Plaintiffs are express third party beneficiaries.

DATE: 04/12/2021　　　　　　　　　　MINUTE ORDER　　　　　　　　　　Page 3
DEPT: C-74　　　　　　　　　　　　　　　　　　　　　　　　　　　　Calendar No.

Ex. E, pg. 30

CASE TITLE: Ovation Finance Holdings 2 LLC vs CASE NO: 37-2020-00035647-CU-FR-CTL
Chicago Title Insurance Company [IMAGED]

Case 3:19-cv-01628-LAB-AHG Document 837-14 Filed 07/25/22 PageID.ced947 Page 5 of 11

Cal Private Banks's First Amended Complaint alleges:

> 60. By their statements, conduct and actions, Chicago Title entered into an implied in fact agreement with Plaintiff and, specifically, agreed that in return for Plaintiff's wiring loan advances to Chicago Title as part of Champion-Cain's Liquor License Escrow Program, Chicago Title would deposit and maintain such advances in escrow accounts for specific liquor license transfers as mandated by California law, and that, as escrow holder, it would insure that such funds were only used for such purpose, and that such funds would be returned to Plaintiff upon approval or termination of the liquor license transfer application.
>
> . . . .
>
> 67. As the escrow holder under the implied in fact contract alleged above, Chicago Title owed a fiduciary duty to Plaintiff, including, but not limited to, the duty to: (1) refrain from acting against Plaintiff's interests in administering funds Plaintiff deposited into accounts Plaintiff believed to be controlled by the individual liquor license transfer escrow agreements; (2) disclose any materially adverse information, such as the nature of the ANI Deposit Account; (3) exercise reasonable skill and diligence in carrying out the individual liquor license transfer escrow agreements; and (4) act on Plaintiff's behalf with the utmost good faith and not seek an advantage over Plaintiff by any type of misconduct, misrepresentation, or concealment

However, as alleged, the Form Escrows did not actually exist. And for the reasons set forth below, the court rejects Cal Private Bank's implied-in-fact escrow agreement theory and reliance on ¶ 23 and ¶ 30 of its First Amended Complaint. *Summit* and *Alereza* confirm that escrow holders owe fiduciary duties only to the parties to the escrow. As pled, Plaintiffs were not a party to an actual escrow with Chicago Title. Absent allegations that Plaintiffs were a party to an actual escrow, or allegations of another basis to establish a fiduciary relationship between Plaintiffs and Chicago Title, the court finds the complaints, including the Cal Private Bank First Amended Complaint, fail to allege facts sufficient to support the imposition of a fiduciary duty owing from Chicago Title to Plaintiffs. While the court finds the depositor-depository relationship sufficient to establish a basic negligence duty, and also finds the allegations of an implied contract sufficient to state a separate cause of action for breach of contract, none of the authorities before the court support imposition of a fiduciary duty based solely on a depositor-depository relationship or a contractual relationship.

**Money Had and Received**
**Conversion**

Chicago Title's demurrer is OVERRULED.

Both sides rely on *Welco Electronics, Inc. v. Mora* (2014) 223 Cal.App.4th 202.

" 'Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages....' [Citation.]" (*Los Angeles Federal Credit Union v. Madatyan* (2012) 209 Cal.App.4th 1383, 1387, 147 Cal.Rptr.3d 768; see CACI 2100; *Gruber v. Pacific States Sav. & Loan Co.* (1939) 13 Cal.2d 144, 148, 88 P.2d 137 [conversion is the wrongful exercise of dominion "over another's personal property in denial of or inconsistent with his rights therein"].)

DATE: 04/12/2021　　　　　　　　　　　MINUTE ORDER　　　　　　　　　　　Page 4
DEPT: C-74　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Calendar No.

Ex. E, pg. 31

*Welco*, 223 Cal.App.4th at 208.

Chicago Title first cites to *Farrington v. A. Teichert & Son* (1943) 59 Cal.App.2d 468, for the holding "the law is well settled that there can be no conversion where an owner either expressly or impliedly assents to or ratifies the taking, use or disposition of his property." *Farrington*, 59 Cal.App.2d at 474. Chicago Title also cites to *Summit* as preventing non-parties from placing "demands into an escrow that violate the escrow agent's instructions from its principal." Chicago Title's reliance on these authorities and the arguments based thereon ignore allegations of Chicago Title's duties to Plaintiffs as third-party depositors and allegations that Plaintiffs' lending of funds was specifically conditioned on representations made by Chicago Title personnel to Plaintiffs that the funds Plaintiffs were lending would remain in escrow and could only be paid to the lender depositing the funds. The Model Complaint alleges:

46. . . . . Plaintiffs were assured, and Chicago Title confirmed, that at the time the funds associated with a loan made by one of the Plaintiffs were to be repaid, the funds Chicago Title was holding in escrow could only be paid to the lender that deposited the funds, along with the interest that the lender had earned . . . .

The court finds these and the other allegations sufficient to support a finding of Plaintiffs' ownership or right to possession of the funds at issue and Chicago Title's conversion of such funds by a wrongful act or disposition of property rights. See, *Welco*, 224 Cal.App.4th at 208.

The court is not persuaded by Chicago Title's arguments based on Chicago Title status as an escrow holder. As set forth above, Plaintiffs' claims are premised, not on Chicago Title's duties to the parties to the escrow, but on Chicago Title's duties to Plaintiffs as third-party depositors. Such circumstances allow for liability for conversion. See, *Fong v. East West Bank* (2018) 19 Cal.App.5th 224, 235 ["[f]inancial institutions can be liable to their depositors for transferring money out of their accounts on forged instruments"].

Chicago Title also argues that Plaintiffs have not sufficiently identified the funds at issue. The court finds Exhibits 22 and 23 to the Model Complaint sufficient to withstand demurrer on this ground. The "illegitimate Ponzi 'interest' " issue Chicago Title raises is more properly the subject of discovery.

Chicago Title does not separately address the Money Had and Received cause of action.

Preliminarily, this common count cause of action "is not subject to attack by general demurrer or by a special demurrer for uncertainty." *Weitzenkorn v. Lesser* (1953) 40 Cal.2d 778, 793. As the implied contract cause of action survives demurrer, so does this common count. See, *McBride v. Boughton* (2004) 123 Cal.App.4th 379, 395.

Nonetheless, the court addresses the merits, *Stratton v. Hanning* (1956) 139 Cal.App.2d 723 explains,

[i]t is well settled that no contract is necessary to support an action for money had and received other than the implied contract which results by operation of law where one person receives the money of another which he has no right, conscientiously, to retain. Under such circumstances the law will imply a promise to return the money. The action is in the nature of an equitable one and is based on the fact that the defendant has money which, in equity and good conscience, he ought to pay to the plaintiffs. Such an action will lie where the money is paid under a void agreement, where it is obtained by fraud or where it was paid by a mistake of fact. (17 Cal.Jur., Secs. 1, 2, 9 and 12.)

DATE: 04/12/2021　　　　　　　　　　MINUTE ORDER　　　　　　　　　　Page 5
DEPT: C-74　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Calendar No.

Ex. E, pg. 32

*Stratton*, 139 Cal.App.2d at 727.

The court finds the allegations, including those of ¶¶ 32, 37, 46 and 79 sufficient to support a finding that Chicago Title received money from Plaintiffs and that, in equity and good conscience, Chicago Title "ought to pay to plaintiffs."

### *Misjoinder*

Chicago Title relies exclusively on arguments previously raised. For the same reasons set forth in this court's ruling of January 13, 2021, Chicago Title's demurrer is OVERRULED.

### *Consequential Damages (Plaintiffs Ovation Management and Banc of California)*

Chicago Title's demurrer is OVERRULED.

Chicago Title demurrers, not to a cause of action, but only to the allegations of consequential damages in the *Ovation* Plaintiffs' First Amended Complaint at ¶ 246 (as to Ovation Management) and ¶247 (as to Banc of California). However, as on the previous demurer, none of the authorities Chicago Title relies on allow for a demurrer to allegations of damages. As Chicago Title does not argue that the damages allegations of ¶ 246 and ¶ 247 render any cause of action infirm, Chicago Title fails to establish grounds for sustaining its demurrer on this basis.

Even if the court were to reach the merits, the result would not change.

The court finds the *Ovation* Plaintiffs' First Amended Complaint alleges facts sufficient apprise Chicago Title of Plaintiffs' claims for damages so as to allow Chicago Title to answer and defend. See, *Harron, Rickard & McCone v. Wilson, Lyon & Co.* (1906) 4 Cal.App. 488, 492. The court is not persuaded by the authorities Chicago Title relies on. *Lewis Jorge Construction Management, Inc. v. Pomona Unified School Dist.* (2004) 34 Cal.4th 960 is not a pleading case and does not provide any useful discussion of the applicable pleading standard. *Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481 addresses a pleading issue but in the context of a fraud cause of action with the applicable heightened pleading standard. Chicago Title fails to articulate how this fraud-based analysis applies to the non-fraud causes of action at issue in the *Ovation* Plaintiffs' First Amended Complaint.

Although Chicago Title raises many questions as to the *Ovation* Plaintiffs' ability to prove their alleged damages, resolution of the factual issues relating to the foreseeability of the damages claimed, and resolution of issues as to whether Plaintiffs are entitled to recover consequential damages, whether the alleged damages were caused by Chicago Title and the amount of any such damages, are issues not properly resolved on demurrer.

Chicago Title also argues that Plaintiff Ovation Management cannot recover for damages to Plaintiff Ovation Finance. However, as pled, the *Ovation* Plaintiffs' First Amended Complaint seeks damages for harm directly to Ovation Management [*Ovation* First Amended Complaint ¶ 246].

DATE: 04/12/2021　　　　　　　　　　　MINUTE ORDER　　　　　　　　　　　Page 6
DEPT: C-74　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Calendar No.

Ex. E, pg. 33

Corporations Code § 25504.1 [Ovation Finance, Banc of California and Wakefield]

Chicago Title's demurrer is OVERRULED as to the *Ovation* Plaintiffs and SUSTAINED as to the *Wakefield* Plaintiffs.

Pursuant to Corporations Code § 25504.1

Any person who materially assists in any violation of Section 25110, 25120, 25130, 25133, or 25401, or a condition of qualification under Chapter 2 (commencing with Section 25110) of Part 2 of this division imposed pursuant to Section 25141, or a condition of qualification under Chapter 3 (commencing with Section 25120) of Part 2 of this division imposed pursuant to Section 25141, or an order suspending trading issued pursuant to Section 25219, with intent to deceive or defraud, is jointly and severally liable with any other person liable under this chapter for such violation.

The Model Complaint alleges:

336. ANI and Champion-Cain committed dozens of violations of California Corporations Code Section 25401 by offering or selling securities within the State of California by means of written or oral communications including untrue statements of material fact and by omitting to state material facts necessary to make the statements not misleading.

337. Defendants materially assisted ANI and Champion-Cain in the violations of Corporations Code Section 25401. Defendants engaged in their acts of material assistance with the intent to deceive or defraud the victims of the ANI/Chicago Title scheme.

Thus, the underlying violation at issue is Corporations Code § 25401.

Chicago Title raises two arguments as to both the *Ovation* Plaintiffs and the *Wakefield* Plaintiffs and a third separate argument specific to the *Wakefield* Plaintiffs.

Chicago Title first argues that to state cause of action under § 25504.1, Plaintiffs must allege a violation of § 25504.1 "by someone from whom Plaintiffs purchased securities." Chicago Title goes on to argue that while the complaint alleges Champion-Cain and ANI violated § 25504.1, there are no allegations that Plaintiffs purchased securities from Champion-Cain or ANI. Instead, the allegations are that Plaintiffs' lent their money to Kim Funding. The court finds allegations that the *Ovation* Plaintiffs had direct contractual relationships with ANI [Model Complaint ¶¶ 272-275 (Ovation) ¶¶ 276-277 (Banc of California)] sufficient to support a finding of privity under the analysis of *Moss v. Kroner* (2011) 197 Cal.App.4th 860. *Moss* explains,

Although *Seaboard* has regularly been cited as the source of a rule that strict privity is required for any suit resting on an underlying violation of section 25401, even if the liability is based on section 25504 or 25504.1 (see, e.g., *In re Diasonics Securities Litigation* (N.D.Cal.1984) 599 F.Supp. 447, 459 [§ 25504] ); (*Lubin v. Sybedon* (S.D.Cal.1988) 688 F.Supp. 1425, 1453 [§ 25504, 25504.1] ), interpreting *Seaboard* in this manner not only ignores its express recognition of liability-expanding section 25504.1 but also has the effect of reading sections 25504 and 25504.1 out of existence. Numerous courts have recognized that strict privity is required only for claims of primary liability under section 25401 and 25501, and not for secondary liability suits alleging joint and several liability for a violation of section 25401 by means of sections 25504 and/or 25504.1. . . . The need for privity stems from the liability derived from § 25501 which the courts [ ] have uniformly interpreted to require privity. [Citation.] However, this does not mean

DATE: 04/12/2021　　　　　　　　　　　　MINUTE ORDER　　　　　　　　　　　　Page 7
DEPT: C-74　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Calendar No.

Ex. E, pg. 34

that the person alleged to be secondarily liable must be in privity with the plaintiffs. . . . We agree with these courts that as long as primary liability is stated or established with the privity required by section 25501 and a violation of section 25401, secondary liability may also exist under sections 25504 and 25504.1 for others who participated in the violation in the specific roles listed in those sections without any further need for privity between these secondarily liable actors and the plaintiff. (Accord, *People ex rel. DuFauchard v. O'Neal* (2009) 179 Cal.App.4th 1494, 1502–1503, 102 Cal.Rptr.3d 573 [declining to import the privity requirement for lawsuits alleging a violation of section 25401 (through section 25501) to administrative proceedings (under section 25530) alleging a violation of section 25401].)

*Moss,* 197 Cal.App.4th at 874–875.

The court also finds the Model Complaint alleges facts sufficient to support a finding of Champion-Cain/ANI's primary liability for violation of Corporations Code § 25401 and Chicago Title's secondary liability under Corporations Code § 25504.1.

The court is not persuaded by Chicago Title's reply argument that Plaintiffs "must allege that they purchased securities from ANI (not Kim Funding) in order to allege actionable conduct under § 25401 that could serve as the basis for their § 25504.1 claim against Chicago Title." The authorities Chicago Title relies on do not support this argument. While § 25401 imposes liability only the "actual seller" § 25504.1 expressly expands that liability to persons other than the seller. As *Apollo Capital Fund, LLC v. Roth Capital Partners, LLC* (2007) 158 Cal.App.4th 226, explains,

The federal statutes impose liability only on a "seller," without expressly addressing the liability of participants. California law, by contrast, defines the liability of various participants in a transaction in separate sections of the statute. For example, section 25504 imposes liability on a broker-dealer or agent who materially aids in the act or transaction, and section 25504.1 imposes liability on any person who materially assists in a violation with intent to deceive or defraud. Consequently, federal and state laws in this regard are not "substantially identical," and no need exists to widen liability to persons other than the seller by an expansive interpretation of section 25501. As Marsh & Volk's treatise observes, "no occasion or justification exists for a court to impose liability based on [a participation] theory on anyone other than the actual vendor of that security under Corp.Code §§ 25401 and 25501 ... because Corp.Code §§ 25504, 25504.1, and 25504.2 precisely set forth the extent to which persons other than the vendor may also be liable."13 (1 Marsh & Volk, Practice Under the Cal. Securities Laws (rev. ed.2006) § 14.03[4][b], p. 14–23, fns. omitted (rel.32–6/04) (Marsh & Volk); see *Kamen v. Lindly, supra,* 94 Cal.App.4th at p. 203, fn. 2, 114 Cal.Rptr.2d 127 ["courts afford great deference to [the Marsh & Volk] treatise when interpreting California securities law," because Marsh was the reporter for the committee that drafted the law and Volk was the Commissioner of Corporations at the time].)

*Apollo Capital Fund,* 158 Cal.App.4th at 253–254.

Chicago Title also argues that the complaint does not allege that Chicago Title materially assisted in the securities law violation by ANI. The court is not persuaded by Chicago Title's limited interpretation of the term "materially assisted." Again *Apollo Capital Fund* explains,

Section 25504.1 of the Act provides that any person who "materially assists" in a violation of section 25401, "with intent to deceive or defraud, is jointly and severally liable with any other person liable" for the violation. In California, the Supreme Court has repeatedly indicated that "intent to defraud" is the intent "to induce reliance" on the knowing misrepresentation or omission. (E.g., *Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638, 49 Cal.Rptr.2d 377, 909 P.2d 981.) Thus, to the extent the complaint alleges

DATE: 04/12/2021
DEPT: C-74

MINUTE ORDER

Page 8
Calendar No.

Ex. E, pg. 35

facts to show Roth materially assisted eNucleus in selling the bridge notes by false or misleading statements, and intended to induce the investors to rely on representations known to be false or misleading, the complaint properly alleges a claim for liability under section 25504.1. (See In re ZZZZ Best Securities Litigation (C.D.Cal. Jul. 23, 1990, No. CV 87–3574) 1990 WL 132715, pp. 18–19, 1990 U.S.Dist. Lexis 11867, pp. 51–52 [allegation that defendant law firm acted with the statutorily required intent to deceive or defraud, when read in conjunction with allegations of actual knowledge, properly alleges secondary liability under § 25504.1].) Again, because we have concluded the complaint sufficiently states a claim of fraud based on certain of the misrepresentations alleged-in particular, the representations that the bridge notes would be paid off with the proceeds of the preferred stock offering-it necessarily states a claim to the same extent for liability under section 25504.1.

Apollo Capital Fund, 158 Cal.App.4th at 257.

The court finds allegations of representations made by Chicago Title that were relied on by the Ovation Plaintiffs in continuing their lending [Model Complaint ¶ 299] sufficient to support a finding that Chicago Title materially assisted in the securities law violation.

Specific to the Wakefield Plaintiffs, Chicago Title raises the argument that the Wakefield First Amended Complaint fails to allege that the Wakefield Plaintiffs had any communications with Chicago Title. The Wakefield Plaintiffs do not respond to Chicago Title's demurrer specific to the Wakefield Plaintiffs' First Amended Complaint. The court finds, as pled, the Wakefield Complaint fails to allege facts sufficient to support a finding of the requisite privity so as to allow for liability under Corporations Code § 25504.1.

**Breach of Contract [Wakefield]**
**Breach of Implied Contract [Cal Private Bank]**

Chicago Title's demurrer is OVERRULED.

A cause of action for breach of implied contract has the same elements as does a cause of action for breach of contract, except that the promise is not expressed in words but is implied from the promisor's conduct. (Chandler v. Roach (1957) 156 Cal.App.2d 435, 440, 319 P.2d 776.)

Yari v. Producers Guild of America, Inc. (2008) 161 Cal.App.4th 172, 182.

The court finds the Wakefield Plaintiffs' First Amended Complaint and the Cal Private Bank First Amended Complaint allege fact sufficient to state a cause of action for breach of implied contract. A contract [Wakefield FAC ¶¶ 100-109; Cal Private Bank FAC ¶ 59, 60, 61]; Plaintiffs performance or excuse for non-performance [Wakefield FAC ¶ 101; Cal Private Bank FAC ¶ 62]; Chicago Title's breach [Wakefield FAC ¶¶ 110-115; Cal Private Bank FAC ¶ 63]; and damages [Wakefield FAC ¶ 116; Cal Private Bank FAC ¶ 64]. See, Wall Street Network, Ltd. v. New York Times Co. (2008) 164 Cal.App.4th 1171, 1178.

The court is not persuaded by any of the arguments Chicago Title raises. The court finds the allegations sufficient to establish a "meeting of the minds" with agreement upon terms between Plaintiffs and Chicago Title and to set forth conduct by both Plaintiffs and Chicago Title demonstrating the parties' agreement with respect to Chicago Title's obligations regarding the funds deposited by Plaintiffs with

DATE: 04/12/2021
DEPT: C-74

MINUTE ORDER

Page 9
Calendar No.

Ex. E, pg. 36

Chicago Title.

## Accounting [Wakefield]

Chicago Title's demurrer is SUSTAINED.

A cause of action for an accounting requires a showing that a relationship exists between the plaintiff and defendant that requires an accounting, and that some balance is due the plaintiff that can only be ascertained by an accounting. (*Brea v. McGlashan* (1934) 3 Cal.App.2d 454, 460, 39 P.2d 877; 5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 819, p. 236.)

An action for accounting is not available where the plaintiff alleges the right to recover a sum certain or a sum that can be made certain by calculation. (*St. James Church of Christ Holiness v. Superior Court* (1955) 135 Cal.App.2d 352, 359, 287 P.2d 387.)

*Teselle v. McLoughlin* (2009) 173 Cal.App.4th 156, 179.

The court finds, even if the *Wakefield* First Amended Complaint sufficiently alleges a relationship with Chicago Title that requires an accounting, as pled, the *Wakefield* First Amended Complaint fails to allege facts sufficient to establish that there is a balance due that can only be ascertained by an accounting. In opposition, the *Wakefield* Plaintiffs concede that they are able to "state the basis of the total sums conveyed to Chicago Title" but argue that "the precise disposition of those funds, any remaining balance at Chicago Title, any debits therefrom, any credits thereto, and any interest thereon, can, and should, be accounted for by Chicago Title." Such argument supports only the conclusion that the *Wakefield* Plaintiffs seek a sum that can be made certain by calculation. Such claims will not support an accounting cause of action.

Chicago Title shall answer with 10 days of this ruling.

IT IS SO ORDERED.

Judge Ronald L. Styn

DATE: 04/12/2021
DEPT: C-74

MINUTE ORDER

Page 10
Calendar No.

Ex. E, pg. 37