UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                      Plaintiff,<br><br>v.<br><br>GINA CHAMPION-CAIN and ANI DEVELOPMENT, LLC,<br><br>                      Defendants. | Case No.: 19-CV-1628 TWR (AHG)<br><br>**ORDER DENYING KIM PETERSON'S MOTION FOR LEAVE TO FILE CROSSCLAIM**<br><br>(ECF No. 1034) |

Presently before the Court is Kim Peterson's Motion for Leave to File Cross-Complaint Against the Receiver ("Mot.," ECF No. 1034), as well as the Opposition ("Opp'n," ECF No. 1038) filed by Plaintiff Krista Freitag, the Court-appointed permanent receiver for ANI Development, LLC; American National Investments, Inc.; and their subsidiaries and affiliates (the "Receivership Entities" or "Entities") and Mr. Peterson's Reply (ECF No. 1040). The Court held a hearing on November 7, 2024. (*See generally* ECF No. 1050.) Upon consideration of the Parties' arguments, Mr. Peterson's proposed Crossclaim ("Crosscl.," ECF No. 1038-12), those documents properly subject to judicial notice, and the applicable law, the Court **DENIES** Mr. Peterson's Motion.

/ / /

/ / /

# BACKGROUND

## I. The SEC Enforcement Action

On August 28, 2019, the United States Securities and Exchange Commission ("SEC") initiated a civil enforcement action against Gina Champion-Cain and ANI Development, LLC ("ANI Development") and relief defendant American National Investments, Inc. ("American National Investments") pursuant to Sections 20(b), 20(d)(1) and 22(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77t(b), 77t(d)(1), & 77v(a), and Sections 21(d)(1), 21(d)(3)(A), 21(e), and 27(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d)(1), 78u(d)(3)(A), 78u(e) & 78aa(a). (*See generally* ECF No. 1.) The SEC alleged that Champion-Cain and ANI Development had been perpetuating a Ponzi scheme, in which they "claimed to be offering investors an opportunity to make short-term, high-interest loans to parties seeking to acquire California alcohol licenses." (*See id.* ¶ 4.)

On September 3, 2019, the Honorable Larry Alan Burns granted the SEC's request for a preliminary injunction and appointed "Krista L. Freitag . . . as permanent receiver of Defendant ANI Development and Relief Defendant American National Investments and their subsidiaries and affiliates." (*See* ECF No. 6 at 14.) Among other things, the order authorized the Receiver to do the following:

> I.   to investigate and, where appropriate, to institute, pursue, and prosecute all claims and causes of action of whatever kind and nature that may now or hereafter exist as a result of the activities of present or past employees or agents of Defendant ANI Development and Relief Defendant American National Investments, and their subsidiaries and affiliates[; and]
>
> J.   to institute, compromise, adjust, appear in, intervene in, or become party to such actions or proceedings in state, federal, or foreign courts, which (i) the receiver deems necessary and advisable to preserve or recover any Assets, or (ii) the receiver deems necessary and advisable to carry out the receiver's mandate under this Order[.]

(*See id.* at 16.)

## B. Kim Peterson's Role

"In early 2012, Champion-Cain approached Peterson about the ANI Loan Program." (21CV1620 ECF No. 67-7 ("Jt. Stmt.") J-34.) "Beginning in 2012, Peterson, initially through trusts he controlled, placed substantial monies into the ANI Loan Program, transferring funds to ANI Development in order to fund purported loans to liquor license applicants." (*Id.* J-36.)

"In light of the apparent success of the early loans, Peterson placed additional monies into the ANI Loan Program and later, through Kim Funding, became business partners with Champion-Cain, acquiring a 1% economic membership interest and 50% voting membership interest in ANI Development in early 2015." (*Id.* J-41.) "Peterson actively recruited other persons and entities to provide funding for the ANI Loan Program," (*id.* J-42), and, "through the Funding Entities, substantially expanded the ANI Loan Program and became its largest source of funding." (*Id.* J-44.)

"Peterson formed ANI License in late 2015 to serve as another vehicle to facilitate additional funding for the ANI Loan Program." (*Id.* J-65.) "On or about September 9, 2015, ANI License and [San Diego Private Bank ("SDP Bank")] entered into the CalPrivate Loan Agreement," (*id.* J-142), pursuant to which "SDP Bank agreed to fund the CalPrivate Loan to ANI License, specifically agreeing to fund up to $5,000,000 in one or more loans to ANI License."[1] (*Id.* J-143.) "Peterson, in his capacity as trustee of the [Peterson Family Trust dated April 14, 1992 (the "1992 Trust")], executed and delivered to SDP Bank the 1992 Trust/CalPrivate Guaranty," (*id.* J-148), under which "the 1992 Trust agreed to guarantee the full payment of the debt owed by ANI License to SDP Bank in connection with the CalPrivate Loan and the performance of all of ANI License's obligations under the ANI License/CalPrivate Note." (*Id.* J-149.) Through a series of

///

---

[1] "Effective on March 21, 2018, SDP Bank changed its name from 'San Diego Private Bank' to 'CalPrivate Bank[.']" (Jt. Stmt. at J-169.)

modifications, SDP Bank ultimately increased the principal amount to $12,500,000, guaranteed by Peterson as trustee of the 1992 Trust. (*See id.* J-150–177.)

On or about September 10, 2019—after the SEC instituted its civil enforcement action—"ANI License failed to make the monthly payment for accrued interest of $87,844.79 that was due and owing to CalPrivate under the ANI License/CalPrivate Note (as modified)." (*See id.* J-178.) "Since September 10, 2019, neither ANI License nor the 1992 Trust has made any payments to CalPrivate that have come due on account of the ANI License/CalPrivate Note (as modified) or 1992 Trust/CalPrivate Guaranty (as modified), respectively." (*Id.* J-179.)

### C. CalPrivate Litigation

On August 29, 2022, CalPrivate filed suit against Mr. Peterson for breach of guaranty, fraud, aiding and abetting fraud, and negligent misrepresentation, *CalPrivate Bank v. Peterson et al.*, No. 37-2022-00035215-CU-BC-CTL (Cal. Super. filed Aug. 29, 2022) (the "CalPrivate Action"). "On February 17, 2023, the Receiver and CalPrivate entered into the CalPrivate Settlement," (Jt. Stmt. at J-180; *see also* ECF No. 956), which Judge Burns approved in the SEC Action on April 24, 2023. (*See* Jt. Stmt. at J-181; *see also* ECF No. 995.) "Pursuant to the CalPrivate Settlement, the Receiver was assigned all of CalPrivate's right, title, and interest in any claims held by CalPrivate against Peterson or the entities or trusts that he owned or controlled, including any claims arising out of the ANI License/CalPrivate Note (as modified) or the 1992 Trust/CalPrivate Guaranty (as modified)." (Jt. Stmt. at J-182.)

On June 2, 2023, the Superior Court granted the Receiver's motion to be substituted as plaintiff in the CalPrivate Action. (*See* ECF No. 1038-5.) Peterson filed his answer to the operative complaint in the CalPrivate Action, (*see* ECF No. 1038-11)—together with a crossclaim against the Receiver, (*see generally* Crosscl.)—on December 11, 2023. Concluding that Peterson had violated the *Barton* doctrine, the Superior Court granted the Receiver's demurrer to Peterson's cross-complaint on August 2, 2024, giving Peterson
/ / /

until August 28, 2024, to seek leave from this Court.  (*See* ECF No. 1038-13.)  The instant *Barton* Motion followed on August 28, 2024.  (*See generally* ECF No. 1034.)

## LEGAL STANDARD

"[T]he *Barton* doctrine, established by the Supreme Court over a century ago, . . . provides that, before suit can be brought against a court-appointed receiver, 'leave of the court by which he was appointed must be obtained.'"  *In re Crown Vantage, Inc.*, 421 F.3d 963, 970–71 (9th Cir. 2005) (quoting *Barton v. Barbour*, 104 U.S. 126, 127 (1881)) (citing *Davis v. Gray*, 83 U.S. 203, 218 (1872)).  In *Barton*, the Supreme "Court held that if leave of court were not obtained, then the other forum lacked subject matter jurisdiction over the suit."  *Id.* at 971 (citing *Barton*, 104 U.S. at 127).  "Part of the rationale underlying *Barton* is that the court appointing the receiver has in rem subject matter jurisdiction over the receivership property."  *Id.* at 885 (citing *Barton*, 104 U.S. at 136).  "As the Supreme Court explained, allowing the unauthorized suit to proceed 'would have been a usurpation of the powers and duties which belonged exclusively to another court.'"  *Id.* at 886 (quoting *Barton*, 104 U.S. at 136).

"The court granting leave to sue in another forum must . . . evaluate the claims that are being asserted against the [receiver] in order to make its independent determination of whether to grant leave to sue."  *See In re Kashani*, 190 B.R. 875, 885–86 (B.A.P. 9th Cir. 1995).  Accordingly, the party seeking leave "must set forth a *prima facie* case against the [receiver]."  *Id.* (citing *Anderson v. United States*, 520 F.2d 1027, 1029 (5th Cir. 1975)).  "Additionally, the discretion of the court in exercising its power to grant or deny leave to sue the [receiver] in a court other than the one in which the [receiver] has been appointed should include the balancing of the interests of all parties involved."  *Id.* (citing *In re Adolf Gobel, Inc.*, 89 F.2d 171, 172 (2d Cir. 1937)).

The Ninth Circuit recognizes two exceptions to the *Barton* doctrine.  First, the *Barton* doctrine does not apply where a receiver "acts in excess of his authority and is sued in a state court for such acts."  *See Leonard v. Vrooman*, 383 F.2d 556, 560 (9th Cir. 1967); *see also Barton*, 104 U.S. at 134 (noting that the doctrine does not apply where "the

1  receiver . . . act[s] *ultra vires*").  Second, "a limited statutory exception to the *Barton*
2  doctrine is codified at 28 U.S.C. § 959(a),"[2] which "applies only if the trustee or other
3  officer is actually operating the business."  *See In re Crown Vantage, Inc.*, 421 F.3d 963,
4  971 (9th Cir. 2005).  In other words, "[a]ctions taken in the mere continuous administration
5  of property under order of the court do not constitute an 'act' or 'transaction' in carrying
6  on business connected with the estate."  *Id.* at 972 (quoting *Muratore v. Darr*, 375 F.3d
7  140, 144 (1st Cir. 2004)).

## ANALYSIS

Through his *Barton* Motion, Mr. Peterson seeks leave to file a crossclaim in the CalPrivate Action against the Receiver asserting five causes of action for (1) rescission of the Note and Guaranties, (2) fraud in the inducement of the agreement, (3) financial abuse of an elder, (4) contribution, and (5) indemnity.  (*See generally* Crosscl.)  Mr. Peterson argues that the Court "may not properly refuse leave to sue when it cannot afford in intervention the same relief as the applicant is entitled to in an independent action, or when, by virtue of a statute or constitutional provision, a particular kind of action must be brought in a jurisdiction other than that in which the original special proceeding is pending."  (*See* Mot. at 4 (quoting *Ostrowski v. Miller*, 226 Cal. App. 2d 79, 84 (1964)).  Citing *Ostrowski*, Mr. Peterson contends that the Court must grant the *Barton* Motion because his crossclaims are compulsory and the Receiver chose to proceed with the CalPrivate Action in state court.  (*See id.* at 4–5.)  Further, the cross-complaint "does not seek any monetary damages against the Receiver.  Nor does Peterson seek to recover property of the Receivership estate." (*See*

---

[2]  Section 959(a) provides:

> Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property.  Such actions shall be subject to the general equity power of such court so far as the same may be necessary to the ends of justice, but this shall not deprive a litigant of his right to trial by jury.

28 U.S.C. § 959(a).

*id.* at 5.) The Receiver opposes on the grounds that Mr. Peterson fails to establish that any of his crossclaims are viable. (*See* Opp'n at 12–15.)

As an initial matter, to clear up an issue of some confusion at oral argument, the Receiver, as "[t]he assignee[,] 'stands in the shoes' of the assignor, taking his rights and remedies, subject to *any defenses* which the *obligor* has against the assignor prior to notice of the assignment." *See Johnson v. Cnty. of Fresno*, 111 Cal. App. 4th 1087, 1096 (2003) (emphasis in original). Accordingly, when the Receiver was substituted for CalPrivate in the CalPrivate Action, she stepped into CalPrivate's shoes, subject to any defenses Mr. Peterson has against CalPrivate. Consequently, to the extent Mr. Peterson wishes to assert any crossclaims that he could have asserted against *CalPrivate*, he does not require this Court's permission. To the extent Mr. Peterson seeks to assert crossclaims against the Receiver in her capacity as the Receiver, however, Mr. Peterson must first obtain leave from this Court. Given the distinction between the Receiver's capacities as assignee and Receiver, the Court doubts Mr. Peterson's contention that his crossclaims are compulsory given that they appear to be against the Receiver qua Receiver as opposed to the Receiver as successor-in-interest to CalPrivate. *Cf.* Cal. Code Civ. Proc. 426.30(a) ("Except as otherwise provided by statute, if a party against whom a complaint has been filed and served fails to allege in a cross-complaint any related cause of action which (at the time of serving his answer to the complaint) he has against the plaintiff, such party may not thereafter in any other action assert against the plaintiff the related cause of action not pleaded.").

Moving to the merits, Mr. Peterson alleges in his crossclaim that Ms. Freitag is "the Court appointed Receiver for ANI DEVELOPMENT ("Development"), AMERICAN NATIONAL INVESTMENTS, INC ("ANI"), GINA CHAMPION-CAIN ("Cain") and related entities." (Crosscl. ¶ 2; *see also id.* ¶ 6 ("Around September 2019, the Receiver was appointed to take control of the assets of Cain and her entities."); ¶ 10 ("The Receiver stands in the shoes of Cain, ANI, and Development.").) Ms. Freitag purchased the underlying Loan, (*see id.* ¶ 8), for which there were five guarantors: (1) Mr. Peterson,

(2) the Peterson Family Irrevocable Trust (the "Peterson Trust"), (3) Ms. Champion-Cain, (4), ANI, and (5) Development.³  (*See id.* ¶ 9.)

All of Mr. Peterson's proposed crossclaims are based in whole or in part on the erroneous allegations that the Receiver stands in the shoes of Ms. Champion-Cain. (*See id.* ¶¶ 13, 18 ("As alleged above, Cain fraudulently induced Cross-Complainant to borrow money from Cal Private (i.e. the Loan) and sign a Guaranty of the Loan."); *id.* ¶¶ 15, 20 ("As a result of Cain's fraud and deceit, in which the Receiver stands in the shoes of the Receiver Group, there is a lack of consideration for the Loan which provides and allows for rescission of the Loan, all promissory notes, all guaranties and all related loan documents."); *id.* ¶ 25 ("Cain's conduct, as alleged above, constitutes financial abuse of an elder."); *id.* ¶ 30 ("[A]ny award against Cross-Complainant should be reduced and offset by 60%, the Receiver's share of Contribution (as the Receiver stands in the shoes of Cain, ANI and Development, three of the five guarantors)."); *id.* ¶ 34 ("As Cain is primarily responsible for the money being borrowed, based on her fraud and deceit, and the Receiver stands in the shoes of the Receiver Group, Cross-Complainant is entitled to full indemnity from the Receiver.").)  As the Receiver notes, (*see* Opp'n at 12), Judge Burns explicitly appointed her "as permanent receiver of Defendant ANI Development and Relief Defendant American National Investments and their subsidiaries and affiliates (including but not limited to those subsidiaries and affiliates identified above in Section IV)." (*See* ECF No. 6 at 14.)  Not only does the Receiver not stand in Ms. Cain's shoes, but Ms. Cain's "inequitable conduct is not imputed to [the Receiver]."  *See F.D.I.C. v. O'Melveny & Myers*, 61 F.3d 17, 19 (9th Cir. 1995).

In response, Mr. Peterson contends:

---

³ Upon review of the underlying documents, it appears that originally, as of September 9, 2015, there were four guarantors: (1) Mr. Peterson; (2) the Peterson Family Trust dated April 14, 1992; (3) Ms. Champion-Cain; and (4) the Gina Champion-Cain Revocable Trust Agreement dated June 26, 2012. (*See* ECF No. 1038-3 ("Compl.") at 21.)  ANI Development was added as an additional guarantor on April 4, 2017. (*See id.* at 53.)  It does not appear that American National Investments, which was the borrower, ever signed as a guarantor. (*See generally id.*; *see also* Reply at 5–6.)

> While the proposed Cross-Complaint could be slightly clearer, Peterson's argument is not that Cain—solely in her individual capacity—defrauded Peterson. Instead, the Cross-Complaint alleges that Cain, acting through the entities now under the control of the Receiver, including [ANI and Development] (in whose shoes the Receiver now stands) fraudulently induced Peterson to form ANI License LLC, execute the loan documents, and personally guaranty the debt to CalPrivate.

(*See* Reply at 2.) This is not simply a matter of ambiguous drafting—the cross-complaint clearly alleges that the first, second, third, and fifth causes of action are based on *Ms. Champion-Cain's* conduct. (*See* Crosscl. ¶¶ 13, 18 ("As alleged above, Cain fraudulently induced Cross-Complainant . . . ."); *id.* ¶¶ 15, 20 ("As a result of Cain's fraud and deceit . . . ."); *id.* ¶ 25 ("Cain's conduct, as alleged above, constitutes financial abuse of an elder."); *id.* ¶ 34 ("As Cain is primarily responsible for the money being borrowed, based on her fraud and deceit . . . .").) Accordingly, to the extent Mr. Peterson seeks to assert crossclaims against the Receiver based on Ms. Champion-Cain's conduct, he cannot meet his burden of setting forth a *prima facie* case. The Court therefore **DENIES** Mr. Peterson's *Barton* Motion to the extent he seeks leave to file crossclaims one, two, three, and five as currently drafted.

That said, "[r]eceivers are bound by the contractual commitments made by the entities for whom they act." *See Sec. & Exch. Comm'n v. Horwitz*, No. 2:21-CV-2927-CAS-PDX, 2023 WL 11694914, at *3 (C.D. Cal. Aug. 11, 2023) (citing *Sharp v. Duff & Phelps, LLC*, No. CV 20-8069-DSF (MRWx), 2021 WL 8154951, at *1 (C.D. Cal. Jan. 28, 2021)); *see also O'Melveny & Myers*, 61 F.3d at 19 (holding that, subject to certain exceptions, "[a] receiver occupies no better position than that which was occupied by the person or party for whom he acts . . . and any defense good against the original party is good against the receiver" (alterations in original) (quoting *Allen v. Ramsay*, 179 Cal. App. 2d 843, 854 (1960))). Consequently, the Receiver is bound by ANI Development's guaranty. (*See* Compl. at 53.) As is clear on the face of the CalPrivate Action Complaint, however, Mr. Peterson also remains bound by his September 9, 2015 "waive[r of] all rights of subrogation, reimbursement, indemnification, and contribution and any other rights and

defenses that are or may become available to Guarantor by reason of California Civil Code Sections 2787 to 2855, inclusive." (*See* Compl. at 33.)  To the extent Mr. Peterson now contends that his fourth and fifth crossclaims are for *equitable* contribution and indemnity, respectively, (*see* Opp'n at 14–15 & n.3), his fifth crossclaim is premature, *see Tesoro Ref. & Mktg. Co. v. City of Long Beach*, 334 F. Supp. 3d 1031, 1049 (C.D. Cal. 2017) ("The cause of action for equitable indemnity accrues when the indemnitee suffers a loss through payment of an adverse judgment or settlement." (quoting *Sullins v. Exxon/Mobil Corp.*, 729 F. Supp. 2d 1129, 1139 (N.D. Cal. 2010))), and he fails to set forth a *prima facie* showing as to his fourth crossclaim given that the receivership has paid $10,020,080.13 to CalPrivate, (*see* ECF Nos. 956, 995), more than ANI Development's 20% share of the guarantors' obligations on the $12,500,000 loan.  The Court therefore **DENIES** Mr. Peterson's *Barton* Motion.

## CONCLUSION

In light of the foregoing, the Court **DENIES** Mr. Peterson's Motion (ECF No. 1034).

**IT IS SO ORDERED.**

Dated:  November 14, 2024

_____
Honorable Todd W. Robinson
United States District Judge